JOHN J. SHAEFFER (SBN 138331)
  JShaeffer@FoxRothschild.com
FOX ROTHSCHILD LLP
Constellation Place
10250 Constellation Blvd, Suite 900
Los Angeles, CA 90067
Telephone:  310.598.4150
Facsimile:   310.556.9828
Attorneys for Plaintiffs
Sunil Kumar, Ph.D. and Praveen Sinha, Ph.D.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUNIL KUMAR, Ph. D., PRAVEEN SINHA, Ph. D.,<br><br>Plaintiffs,<br><br>v.<br><br>DR. JOLENE KOESTER, in her official capacity as Chancellor of California State University, LARRY L. ADAMSON, DIANA AGUILAR-CRUZ, DIEGO ARAMBULA, JACK B. CLARKE JR., ADAM DAY, DOUGLAS FAIGIN, JEAN P. FIRSTENBERG, WENDA FONG, LESLIE GILBERT-LURIE, LILLIAN KIMBELL, MARIA LINARES, JULIA I. LOPEZ, JACK MCGRORY, ANNA ORTIZ-MORFIT, YAMMILETTE RODRIGUEZ, ROMEY SABALIUS, LATEEFAH SIMON, CHRISTOPHER STEIN HAUSER, and JOSE ANTONIO VARGAS, in their official capacities as trustees of California State University,<br><br>Defendants. | Case No. _____<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

**COMPLAINT**

Plaintiffs, California State University professors Sunil Kumar, Ph.D ("Professor Kumar") and Praveen Sinha, Ph.D ("Professor Sinha") (collectively "Plaintiffs"), by and through their attorneys, Fox Rothschild LLP, hereby assert the following causes of action against Defendants, Dr. Jolene Koester, in her official capacity as Chancellor of California State University, and Larry L. Adamson, Diana Aguilar-Cruz, Diego Arambula, Jack B. Clarke, Jr., Adam Day, Douglas Faigin, Jean P. Firstenberg, Wenda Fong, Leslie Gilbert-Lurie, Lillian Kimbell, Maria Linares, Julia I. Lopez, Jack McGrory, Anna Ortiz-Morfit, Yammilette Rodriguez, Romey Sabalius, Lateefah Simon, Christopher Stein Hauser and Jose Antonio Vargas, in their official capacities as Trustees of California State University, (collectively "Defendants"), as follows:

**INTRODUCTION**

1.     On January 1, 2022, California State University ("CSU") instituted an interim anti-discrimination policy that prohibits "[d]iscrimination based on any Protected Status: i.e., Age, Disability (physical and mental), Gender (or sex, including sex stereotyping), Gender Identity (including transgender), Gender Expression, Genetic Information, Marital Status, Medical Condition, Nationality, Race or Ethnicity (including color, ***caste***, or ancestry), Religion (or religious creed), Sexual Orientation, and Veteran or Military Status."  Ex. A, Interim CSU Policy Prohibiting Discrimination, Harassment, Sexual Exploitation, Dating Violence, Domestic Violence, Stalking and Retaliation ("Interim Policy"), at p. 1, Art. II (A) (emphasis added).

2.     Among the changes to the Interim Policy was the addition of "caste" to discrimination based on Ethnicity.

3.     Unfortunately, it appears that Defendants either intentionally or implicitly intended to wrongly and unfairly target members of the Indian/South Asian

139081045.1

community and adherents of the Hindu religion for disparate treatment under the Interim Policy.  For example, the State of California, under which CSU operates, takes the position that "caste" is inextricably intertwined with the Hindu religion and India/South Asia.

4.     As detailed below, it seems that the intent was not the laudable goal of broadly protecting individuals from discrimination based on, for example, social or economic status in all of its forms, but, instead is directed to persons of Indian/South Asian origin and in particular those who identify as, or are perceived to be, practitioners of the Hindu religion.

5.     Consequently, the Interim Policy seeks to define the Hindu religion as including "caste" and an alleged oppressive and discriminatory caste system as foundational religious tenets.  That not only is an inaccurate depiction of the Hindu religion, but the First Amendment to the United State Constitution prohibits California and CSU from defining the contours of Hinduism (or any religion).  *See, e.g., Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 140 S.Ct. 2049, 2060 (2020) ("the Religion Clauses protect the right of churches and other religious institutions to decide matters of faith and doctrine without government intrusion."); *Commack Self-Serv. Kosher Meats, Inc. v. Weiss*, 294 F.3d 415, 427 (2d. Cir. 2002) (Establishment Clause violated where law "require[s] New York to adopt an official State position on a point of religious doctrine").

6.     The Interim Policy also singles out only CSU's Hindu employees, professors and students, as well as those of Indian/South Asian origin.  No other Protected Status in the Interim Policy addresses any specific ethnicity, ancestry, religion or alleged religious practice "[A]ny official action that treats a person differently on account of his race or ethnic origin is inherently suspect." *Fisher v. Univ. of Tex.*, 570 U.S. 297, 310 (2013) (quoting *Fullilove v. Klutznick*, 448 U.S. 448, 523 (1980) (Stewart, J., dissenting) (internal quotation marks omitted)).  That is the

139081045.1

case "even for so-called 'benign' racial classifications . . . ." *Johnson v. Calif.*, 543 U.S. 499, 505 (2005) (citations omitted). As a result, the Interim Policy violates the Equal Protection Clause of the Fourteenth Amendment.

7. Further, the Interim Policy does not define "caste" among its 44 specifically defined terms. "Caste" is not a term understood by people of ordinary intelligence; indeed, many of the CSU employees, professors and students who will be governed by the Interim Policy are unfamiliar with the term or its meaning or contexts. Therefore, the Interim Policy is unconstitutionally vague in violation of the Due Process Clause of the Fourteenth Amendment.

8. Plaintiffs are Hindu professors at CSU who are of Indian descent. They bring this action to prevent Defendants from enforcing the Interim Policy and to safeguard their constitutional rights, as well as the rights of other CSU employees, professors and students who are similarly situated.

9. While Plaintiffs applaud CSU's effort to take a firm stance in favor of inclusion and against discrimination – something on which they are in complete agreement – the addition of "caste" as a form of "Ethnicity" in the Interim Policy's Protected Statuses unfairly singles out and targets them as persons of Indian/South Asian origin and members of the Hindu religion.

10. By this lawsuit, Plaintiffs seek a determination that the term "caste" as used in the Interim Policy is unconstitutionally vague, and the Interim Policy as drafted violates the rights of Plaintiffs (and similarly situated individuals) under the First and Fourteenth Amendments to the United States Constitution, as well as their rights under the California Constitution.

11. CSU does not need to include the pejorative and demeaning term "caste" to protect persons of Indian/South Asian descent or those who identify with, or are perceived to be, practitioners of the Hindu religion since its policy already precludes discrimination specifically based on ethnicity and religion.

139081045.1

12.     Plaintiffs also seek an injunction to prohibit Defendants from enforcing the unconstitutional Interim Policy.

13.     The harm at issue here is significant.   As the Supreme Court has repeatedly held, the "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

14.     That is precisely what the Interim Policy does by seeking to define the Hindu religion as including caste and an alleged oppressive and discriminatory caste system, and by singling out only adherents of the Hindu religion and those of Indian/South Asian descent.

## PARTIES

15.     Plaintiffs hereby incorporate by reference the foregoing paragraphs as though fully set forth herein.

16.     Plaintiff Sunil Kumar, Ph. D., is a Professor of Electrical Engineering and the Thomas G. Pine Faculty Fellow in the ECE Department at San Diego State University, which is a CSU school.  Professor Kumar was born in India and is an adherent of Hinduism.

17.     Plaintiff Praveen Sinha, Ph. D., is a professor of Accountancy in the College of Business Administration at California State University, Long Beach, which is a CSU school.  Professor Sinha was born in India and is an adherent of Hinduism.

18.     Both Professor Kumar and Sinha hold the sincere religious belief that neither caste nor a discriminatory caste system are in any way part of the Hindu religion or its teachings.  To the contrary, they abhor the notion that a caste system is a tenet of Hinduism and sincerely believe that the Hindu religion's core principals are compassion, equanimity, generosity, and equal regard for all humans in order to

139081045.1

honor the divine in everyone, which is directly contrary to a discriminatory caste system.

19.   In addition, Plaintiffs do not identify as being members of any caste and fear that CSU will ascribe a caste to them under the Interim Policy.  Indeed, how else will CSU be able to determine if discrimination based on caste occurred unless they ascribe a caste not only to the allegedly discriminating actor but to the alleged victim as well?

20.   By linking the Hindu religion with a caste system and caste discrimination, California and CSU have infringed the constitutional rights of Plaintiffs by singling out their religious beliefs for ridicule, by seeking to define the Hindu religion's practices and customs as including a caste system, and by improperly ascribing to it an oppressive and discriminatory intent.

21.   Further, the use of caste in the Interim Policy singles out Plaintiffs and others from India/South Asia.

22.   Plaintiffs fully support efforts to end all discrimination on CSU campuses, and elsewhere, that are consistent with the United States and California Constitutions, and which do not single out any religion, alleged religious practice or group of individuals (like Indians and South Asians or Hindus).[1]

23.   California State University, which is not a Party to this action, is a public university operated by the State of California with 23 campuses across the State.  *See Steshenko v. Gayrard*, 44 F. Supp. 3d 941, 949 (N.D. Cal. 2014) (citing *Stanley v. Trs. Of the Cal. State. Univ.*, 433 F.3d 1129, 1133 (9th Cir. 2006)); The California

---

[1]   Had the Interim Policy used neutral and generally applicable terms to broadly protect individuals from discrimination based on, for example, social or economic status in all of its forms, Plaintiffs would not have filed this action. Instead, the Interim Policy uses a term that California associates only to Hinduism and that also is directly targeted to people of Indian/South Asian descent.

State University, The CSU System, About the CSU, https://www.calstate.edu/csu-system/about-the-csu/Pages/default.aspx (last visited Sept. 16, 2022).

24.     Defendants, the individual trustees of CSU and the Chancellor of CSU, are responsible for adopting and/or enforcing the Interim Policy.  They are named as Defendants in this lawsuit in their official capacities only.

25.     Defendants are considered to be an arm of the State of California. However, because Defendants are being sued in their official capacities for prospective injunctive relief, the sovereign immunity provisions of the Eleventh Amendment do not apply to them.

## JURISDICTION AND VENUE

26.     Plaintiffs hereby incorporate by reference the foregoing paragraphs as though fully set forth herein.

27.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this case arises under the laws and Constitution of the United States; specifically, 42 U.S.C. § 1983 *et seq*.

28.     This Court should exercise supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. § 1367 because the state law claims arise from the same case or controversy that give rise to jurisdiction under 28 U.S.C. § 1331.

29.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because all of the claims asserted by Plaintiffs arose within this District.

## FACTUAL BACKGROUND

30.     Plaintiffs hereby incorporate by reference the foregoing paragraphs as though fully set forth herein.

### The Interim Policy

31.     The Interim Policy, effective as of January 1, 2022, applies to CSU employees, professors (like Plaintiffs here) and students.  Ex. A, Interim Policy at p. 1.  It prohibits, among other things, discrimination and harassment for a number of

COMPLAINT
7

Protected Statuses, which consist of: Age, Disability, Gender, Gender Identity, Gender Expression, Genetic Information, Marital Status, Medical Condition, Nationality, "***Race or Ethnicity (including color, caste, or ancestry),***" Religion (or religious creed), Sexual Orientation, and Veteran or Military Status. *Id.* at p. 1, Art. II (emphasis added).

32.    The Interim Policy further provides that "[e]mployees who are found to have violated [it] will be subject to discipline that is appropriate for the violation and in accordance with state and federal requirements and other CSU policies." *Id.* at p. 42, Interim Procedures, Art. I(A).

33.    In addition to prohibiting discrimination and harassment based on Ethnicity, which now specifically includes caste, CSU employees (like Plaintiffs) have an affirmative duty to "promptly report" any discriminatory or harassing incidents. *Id.*at p. 3, Art. V(A).

34.    Significantly, however, "caste" is not among the 44 specifically defined terms in the Interim Policy nor does it provide any explication of how caste equates in any way with ethnicity. *Id.* at pp. 6–16, Art. VII(A)(B).

35.    Caste is not a term that is familiar to the vast majority of CSU employees, professors or students. *See* Ex. B, Jan. 18, 2022 Equality Labs Press Release at p. 2 (quoting Prof. Dr. Sarah Taylor, Chair, Dept. of Social Work, CSU East Bay that, "[f]or many of us, caste is not yet part of our regular lexicon, but it needs to be.").

36.    Thus, employees are left to guess – at their peril – what constitutes reportable conduct.  Similarly, an employee or student who is unfamiliar with "caste" could be accused of violating the Interim Policy despite the lack of definition.

**CSU Equates Caste Only to the Hindu Religion and India/South Asia**

37.    The State of California, under which CSU operates, takes the position that caste is inextricably intertwined with the Hindu religion and India.  Specifically,

the California Department of Civil Rights, formerly known as the Department of Fair Employment and Housing ("DFEH")[2] describes "*India's* caste system" as "a strict *Hindu* social and *religious* hierarchy . . . based on [a person's] *religion*, *ancestry, national origin/ethnicity*, and race/color . . . ." that mandates discrimination and segregation of certain castes "by social custom and legal mandate." Ex. C, Complaint in *Doe v. Cisco* (pending before the Superior Court of California, Santa Clara County) ("Doe Compl.") at ¶ 1; *Id.* at ¶ 62 (emphasis added) (alleging that the California Fair Employment and Housing Act "prohibits harassment based on the employee's protected characteristics including, but not limited to, their caste, which includes *religion*, ancestry, national origin/ethnicity, and race/color"); *id.* at ¶¶ 63–64 (same).

38.    In addition, in promulgating the Interim Policy, CSU had the support of, and upon information and belief relied on, resolutions passed by the California Faculty Association ("CFA") and California State Student Association ("CSSA"), which equate "caste" to people of only Indian (South Asian) origin and the Hindu religion, and (incorrectly) conclude that "[c]aste is present in the *Hindu religion and common in communities in South Asia and in the South Asian Diaspora* . . . ." Ex. D, CFA Resolution at p. 1 (emphasis added); *see also* Ex. E, CSSA Resolution.

39.    Thus, as is clear from the express language of the Interim Policy, California's position in currently pending litigation, and the CFA and CSSA Resolutions relied on by CSU, "caste" is the only Protected Status in the Interim Policy that targets a specific religion and a specific class of CSU employees, professors and students on the basis of nationality or ethnicity; all of the other categories are neutral and generally applicable.

---

[2]  As of June 30, 2022, DFEH is now known as the Civil Rights Department.

139081045.1

**LEGAL FRAMEWORK**

40.     Plaintiffs hereby incorporate by reference the foregoing paragraphs as though fully set forth herein.

**The First Amendment**

41.     The First Amendment to the United States Constitution provides, in part, that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. CONST. amend I (the "Religion Clauses").

42.     Those Religion Clauses are the basis of the religious freedoms enjoyed in the United States.

43.     The Religion Clauses are applicable to the States under the Fourteenth Amendment.  *See, e.g., Kennedy v. Bremeton Sch. Dist.*, 142 S. Ct. 2407, 2421 (2022).

44.     The Religion Clauses have "'complementary' purposes, not warring ones where one Clause is always sure to prevail over the other . . . ."  *Id.* at 2426 (quoting *Everson v. Bd. of Educ. of Ewing*, 330 U.S. 1, 13 (1947)).  As the Supreme Court recently held:

> Among other things, ***the Religion Clauses protect the right of churches and other religious institutions to decide matters of faith and doctrine without government intrusion***.  State interference in that sphere would obviously violate the free exercise of religion, and ***any attempt by government to dictate or even influence such matters would constitute one of the central attributes of an establishment of religion.  The First Amendment outlaws such intrusion***.

*Our Lady of Guadalupe Sch.,* 140 S.Ct. at 2060 (internal punctuation and citations omitted) (emphasis added).

45.     As the Supreme Court held long ago, "when . . . presented with a state law granting a denominational preference, [Supreme Court] precedents demand that [courts] treat the law as suspect and that [courts] apply strict scrutiny in adjudging its constitutionality." *Larson v. Valente*, 456 U.S. 228, 246–48 (1982); *see also Trump*

139081045.1

*v. Hawaii*, 138 S. Ct. 2392, 2417 (2018); *Washington v. Trump*, 847 F.3d 1151, 1167 (9th Cir. 2017).

46.     This case now before the Court "pits two competing values that we cherish as a nation: the principle of non-discrimination on the one hand, and the First Amendment's protection of free exercise of religion on the other hand. . . . ***Under the First Amendment, our government must be scrupulously neutral when it comes to religion:  It cannot treat religious groups worse than comparable secular ones.***" *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, No. 22-15827, 2022 WL 3712506, at \*\*2–3 (9th Cir. 2022) (emphasis added).

47.     Specifically, state actors like Defendants cannot single out particular religions for ridicule by ascribing to them tenets that are not part of their faith and that members of that faith find repugnant.

48.     The First Amendment ***requires*** that government "proceed in a manner neutral toward and tolerant" of people's "religious beliefs." *Masterpiece Cakeshop Ltd. v. Colo. C.R. Comm'n*, 138 S.Ct. 1719, 1731 (2018).  And, while neutrality is compelled as between religious and secular groups, there must be "strict adherence to the 'principal of denominational neutrality . . . .'" where, as here, one religion is treated differently than all others. *Adair v. England*, 183 F. Supp.2d 31, 48 (D.D.C. 2002) (quoting *Larson*, 456 U.S. at 246–47).  This has been bedrock constitutional law for decades. *See, e.g., Larson*, 456 U.S. at 246 (quoting *Abington Sch. Dist. v. Schempp*, 374 U.S. 203, 305 (1963) (internal punctuation omitted) ("the fullest realization of true religious liberty requires that government effect no favoritism among sects and that it work deterrence of no religious belief")); *Epperson v. Arkansas*, 393 U.S. 97, 98 (1968) (emphasis added) (citations omitted) ("The First Amendment mandates governmental neutrality between religion and religion . . . . The State may not aid or oppose any religion . . . . This prohibition is absolute.").

139081045.1

49.   The Interim Policy violates those basic tenets of the Religion Clauses by ascribing an oppressive and discriminatory caste system to the entire Hindu religion.  In this manner, the Interim Policy ascribes a negative (and false) attribute to a particular faith – Hinduism – that is not neutral or generally applicable since it singles out only a supposed practice of the Hindu religion.

50.   Not only is California constitutionally prohibited from linking a caste system with the Hindu religion, that conclusion is simply wrong.

51.   Indeed, Plaintiffs here do not believe in nor engage in caste discrimination at all.  Rather, they abhor it, as they abhor all forms of discrimination. It is their sincerely held religious belief that the Hindu religion in no way includes or endorses an oppressive and discriminatory caste system, yet CSU and the State have now told them that it is a part of their religion.

**The Equal Protection Clause**

52.   The Equal Protection Clause of the Fourteenth Amendment "prohibits the government from classifying people based on suspect classes, unless the classification is narrowly tailored to satisfy a compelling governmental interest . . . ."  *Al Saud v. Days*, 36 F.4th 949, 953 (9th Cir. 2022) (citing *Kadmas v. Dickinson Pub. Sch.*, 487 U.S. 450, 457–58 (1988)).

53.   "[A]ny official action that treats a person differently on account of his race or ethnic origin is inherently suspect."  *Fisher*, 570 U.S. at 310 (quoting *Fullilove*, 448 U.S. at 523).

54.   Consequently, the general rule is that when a state actor explicitly treats an individual differently on the basis of race, strict scrutiny is applied.  *Id.; Johnson*, 543 U.S. at 505; *Adarand Const., Inc. v. Pena*, 515 U.S. 200, 227 (1995).  The Supreme Court has "insisted on strict scrutiny in every context, even for so-called 'benign' racial classifications, such as race-conscious university admissions policies,

139081045.1

race-based preferences in government contracts, and race-based districting intended to improve minority representation." *Johnson*, 543 U.S. at 505.

55.    Race, ethnicity, national origin and religion are protected classes under the Equal Protection Clause.  *See, e.g., Days*, 36 F. 4th 954; *Mitchell v. Washington*, 818 F.3d 436, 444–45 (9th Cir. 2018).

56.    By drafting the Interim Policy to specifically include caste within the meaning of ethnicity, CSU impermissibly singled out Hindu employees, professors (like Plaintiffs) and students, and those of Indian/South Asian origin, based on their perceived national origin or ancestry (Indian/South Asian) and religion (Hinduism).

57.    The Interim Policy singles out Plaintiffs (as well as others similarly situated) with inaccurate stereotypes – that they adhere to a "caste system" characterized as a racist and inhumane system of discrimination and violence against others.   Ex. E, CSSA Resolution at p. 1 (erroneously concluding that caste is "a structure of oppression," where "[c]aste oppressed groups . . . experience brutal violence at the hands of 'upper' castes . . .").

### The Due Process Clause – Vagueness

58.    The Due Process Clause of the Fourteenth Amendment requires:

> First, laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. . . . The vagueness doctrine's second requirement aims to avoid arbitrary and discriminatory enforcement, and demands that laws provide explicit standards for those who apply them. A law that relies on a subjective standard—such as whether conduct amounts to an annoyance—is constitutionally suspect.

*Edge v. City of Everett*, 929 F.3d 657, 664–65 (9th Cir. 2019) (internal citations and quotation marks omitted); *see also Arce v. Douglas*, 793 F.3d 968, 988 (9th Cir. 2015).  This is referred to as the vagueness doctrine.  *See Edge*, 929 F.3d at 664.

59.    In sum, while a statute or policy need not be perfectly clear in order to survive a vagueness challenge, it must nonetheless provide a code of conduct that

139081045.1

ordinary citizens can follow to reasonably avoid violation. *See Wal-Mart Stores, Inc. v. City of Turlock*, 483 F. Supp.2d 987, 1021 (E.D. Cal. 2006) (internal citations and quotation marks omitted) ("If a statute is not sufficiently clear to provide guidance to citizens concerning how they can avoid violating it and to provide authorities with principles governing enforcement, the statute is invalid."); *Santa Cruz Lesbian & Gay Comm. Ctr. v. Trump*, 508 F. Supp.3d 521, 536 (N.D. Cal. 2020) (executive orders considered void for vagueness when they left plaintiffs unsure as to whether they could continue providing diversity and inclusion training without violating them).

60.     The Interim Policy is unconstitutionally vague to the extent that it prohibits discrimination based on "caste."

61.     While the Interim Policy defines 44 terms, "caste" is not one of them (Ex. A, Interim Policy at pp. 6–16, Art. VII(A)(B)), and the Interim Policy provides no other explanation for why it includes "caste" within the meaning of "Ethnicity."

62.     Even those of Indian origin or those who identify as Hindu may very well be unfamiliar with what caste means because there simply is no universally agreed upon definition and because it is a foreign concept. *See* Nani Walker, *Cal. State system adds caste to anti-discrimination policy in groundbreaking decision*, L.A. TIMES (Jan. 20, 2022) https://www.latimes.com/california/story/2022-01-20/csu-adds-caste-to-its-anti-discrimination-policy (noting that "[f]or most South-Asians, caste practice in the U.S. is a faraway and foreign concept").

63.     But more importantly, "caste" is not a term that is familiar to the vast majority of CSU employees, professors or students. *See* Ex. B, Jan. 18, 2022 Equality Labs Press Release at p. 2 (quoting Prof. Dr. Sarah Taylor, Chair, Dept. of Social Work, CSU East Bay that "[f]or many of us, caste is not yet part of our regular lexicon, but it needs to be").

139081045.1

## CLAIMS

### FIRST CLAIM FOR DECLARATORY JUDGMENT

### (AGAINST ALL DEFENDANTS)

64.    Plaintiffs hereby incorporate by reference the foregoing paragraphs as though fully set forth herein.

65.    Plaintiffs have viable claims under the First and Fourteenth Amendments to the United States Constitution as explained herein.

66.    Consequently, Plaintiffs certainly face impending injuries under the Interim Policy.

67.    A declaratory judgment holding the Interim Policy unconstitutional, and thus unenforceable, as to caste discrimination will relieve the Plaintiffs of their very realistic fears of impending injury.  *See Crossley v. Cal.*, 479 F. Supp.3d 901, 920 (S.D. Cal. 2020) (quoting *Steffel v. Thompson*, 415 U.S. 452, 460 (1974) (In order to prevail on a claim for declaratory relief, "[t]he plaintiff must demonstrate that the probability of [a] future [undesirable] event is real and substantial [and] 'of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'")).

68.    Plaintiffs are therefore entitled to declaratory relief declaring the Interim Policy to be unconstitutional to the extent that it references "caste" and to injunctive relief enjoining Defendants from enforcing the "caste" provision of the Interim Policy.

### SECOND CLAIM FOR VIOLATION OF FREE EXERCISE CLAUSE OF THE FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION – 42 U.S.C. § 1983

### (AGAINST ALL DEFENDANTS)

69.    Plaintiffs hereby incorporate by reference the foregoing paragraphs as though fully set forth herein.

139081045.1

70.   42 U.S.C. §1983 prohibits any state actor or person acting under color of state law from depriving others of their rights, privileges, or immunities under the United States Constitution.

71.   Defendants were state actors and/or acting under color of state law when they promulgated the Interim Policy.

72.   Defendants are state actors and/or acting under color of state law in enforcing the Interim Policy.

73.   Violations of the First Amendment are actionable under 42 U.S.C. § 1983.

74.   "The [Free Exercise Clause of the] First Amendment protects the right of religious institutions 'to decide for themselves, free from state interference, matters of church government as well as those of faith and doctrine.'" *Our Lady of Guadalupe Sch.*, 140 S. Ct. at 2055 (citing *Kedroff v. St. Nicholas Cathedral of Russian Orthodox Church in N. Am.*, 344 U.S. 94, 116 (1952)).

75.   The Interim Policy violates the Free Exercise Clause of the First Amendment by, *inter alia*, defining the contours and practices of the Hindu religion by impermissibly (and erroneously) concluding that inherent to the teachings and practices of Hinduism is a "caste system" characterized as a racist and inhumane system of discrimination and violence against others.

76.   The Interim Policy is neither neutral nor generally applicable in that it, *inter alia*, refers to caste (which California and CSU consider to be a "religious practice" of Hinduism); is being specifically applied only to the Hindu religion; and does not apply to any other sincerely-held religious beliefs.

77.   The Interim Policy is not narrowly tailored to meet a compelling government interest.

78.   As a result of the Interim Policy violating the Free Exercise Clause, Plaintiffs have suffered a *de facto* irreparable injury.

139081045.1

79.    Enforcing the Interim Policy will not only cause Plaintiffs (and others similarly situated) to live with the fear of being disciplined for committing discrimination they did not commit, such accusations – and indeed the mere stereotypes and implicit bias the Interim Policy has perpetuated – will follow them throughout the rest of their careers.

80.    Similarly, because the Interim Policy does not describe what repercussions exist for alleged "caste" discrimination (or even explain what "caste" discrimination is), *any* employee within the CSU system, regardless of their ancestry or actual religious beliefs, could be subject to losing privileges at the university, their tenures, or even their professorship positions, if they are even *accused of* caste discrimination.

81.    Plaintiffs have no adequate remedy at law to prevent or redress the irreparable injuries alleged herein.

82.    Unless Defendants are enjoined and restrained from enforcing the portion of the Interim Policy applying caste as a Protected Status, Plaintiffs will be irreparably injured, as they will be deprived of their rights under the United States Constitution forever.

83.    As Plaintiffs' constitutional violations are ongoing and capable of repetition, Plaintiffs are entitled to injunctive relief.

84.    Because Defendants' actions required Plaintiffs to retain counsel and incur attorneys' fees and costs to bring this action, Plaintiffs are entitled to the recovery of those fees and costs pursuant to, *inter alia*, 42 U.S.C. § 1983 *et seq.* and 42 U.S.C. § 1988(b).

139081045.1

### THIRD CLAIM FOR VIOLATION OF THE ESTABLISHMENT CLAUSE OF THE FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION – 42 U.S.C. § 1983
### (AGAINST ALL DEFENDANTS)

85.     Plaintiffs hereby incorporate by reference the foregoing paragraphs as though fully set forth herein.

86.     CSU and California, through the Interim Policy and elsewhere, have unilaterally determined that the contours of Hinduism include caste and an oppressive and discriminatory caste system.

87.     No other religion or religious practice is included in the Interim Policy.

88.     The Interim Policy is not narrowly tailored to meet a compelling government interest.

89.     Defendants were state actors and/or acting under color of state law when they promulgated the Interim Policy.

90.     Defendants are state actors and/or acting under color of state law in enforcing the Interim Policy.

91.     As a result of the Interim Policy violating the Establishment Clause, Plaintiffs have suffered a *de facto* irreparable injury.

92.     Enforcing the Interim Policy will not only cause Plaintiffs (and others similarly situated) to live with the fear of being disciplined for committing discrimination they did not commit, such accusations – and indeed the mere stereotypes and implicit bias the Interim Policy has perpetuated – will follow them throughout the rest of their careers.

93.     Similarly, because the Interim Policy does not describe what repercussions exist for alleged "caste" discrimination (or even explain what "caste" discrimination is), *any* employee within the CSU system, regardless of their ancestry or actual religious beliefs, could be subject to losing privileges at the university, their

139081045.1

tenures, or even their professorship positions, if they are even **accused of** caste discrimination.

94.   Plaintiffs have no adequate remedy at law to prevent or redress the irreparable injuries alleged herein.

95.   Unless Defendants are enjoined and restrained from enforcing the portion of the Interim Policy applying caste as a Protected Status, Plaintiffs will be irreparably injured, as they will be deprived of their rights under the United States Constitution forever.

96.   As Plaintiffs' constitutional violations are ongoing and capable of repetition, Plaintiffs are entitled to injunctive relief.

97.   Because Defendants' actions required Plaintiffs to retain counsel and incur attorneys' fees and costs to bring this action, Plaintiffs are entitled to the recovery of those fees and costs pursuant to, *inter alia*, 42 U.S.C. § 1983 *et seq.* and 42 U.S.C. § 1988(b).

**FOURTH CLAIM FOR VIOLATION OF THE NO PREFERENCE AND ESTABLISHMENT CLAUSES OF THE CALIFORNIA CONSTITUTION (AGAINST ALL DEFENDANTS)**

98.   Plaintiffs hereby incorporate by reference the foregoing paragraphs as though fully set forth herein.

99.   The No Preference and Establishment Clauses of the California Constitution (the "Religion Clauses of the California Constitution") provide that "[f]ree exercise and enjoyment of religion without discrimination or preference are guaranteed . . . .   The Legislature shall make no law respecting an establishment of religion." Cal. Const., art. I, § 4.

100.   The Religion Clauses of the California Constitution offer religion the same, if not more, protections as those under the Federal Constitution. *See Barnes Wallace v. City of San Diego*, 704 F.3d 1067, 1082 (9th Cir. 2012).  Accordingly,

139081045.1

Defendants have violated the Religion Clauses of the California Constitution for reasons discussed *supra.*

101.   The Interim Policy does not satisfy strict scrutiny for the reasons discussed *supra.*

102.   Enforcing the Interim Policy will not only cause Plaintiffs (and others similarly situated) to live with the fear of being disciplined for committing discrimination they did not commit, such accusations – and indeed the mere stereotypes and implicit bias the Interim Policy has perpetuated – will follow them throughout the rest of their careers.

103.   Similarly, because the Interim Policy does not describe what repercussions exist for alleged "caste" discrimination (or even explain what "caste" discrimination is), *any* employee within the CSU system, regardless of their ancestry or actual religious beliefs, could be subject to losing privileges at the university, their tenures, or even their professorship positions, if they are even *accused of* caste discrimination.

104.   Unless Defendants are enjoined and restrained from enforcing the portion of the Interim Policy applying caste as a Protected Status, Plaintiffs will be irreparably injured, as they will be deprived of their rights under the United States Constitution forever.

105.   As Plaintiffs' constitutional violations are ongoing and capable of repetition, Plaintiffs are entitled to immediate and permanent injunctive relief.

**FIFTH CLAIM FOR VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION – 42 U.S.C. § 1983**

**(AGAINST ALL DEFENDANTS)**

106.   Plaintiffs hereby incorporate by reference the foregoing paragraphs as though fully set forth herein.

139081045.1

107.   Pursuant to the Fourteenth Amendment to the United States Constitution, no state shall "deny to any person within its jurisdiction the equal protection of the laws."

108.   Violations of the Equal Protection Clause are actionable under 42 U.S.C. § 1983.

109.   The Equal Protection Clause "prohibits the government from classifying people based on suspect classes, unless the classification is narrowly tailored to satisfy a compelling governmental interest (*i.e.*, the government's action passes strict scrutiny)." *Days*, 36 F.4th at 953 (citing *Kadmas*, 487 U.S. at 457–58).

110.   The Interim Policy creates *de facto* suspect classes by targeting Hindus (religion) and people of Indian/South Asian descent (ancestry) while no other religion or ancestry is treated similarly.

111.   Defendants were state actors and/or acting under color of state law when they promulgated the Interim Policy.

112.   Defendants are state actors and/or acting under color of state law in enforcing the Interim Policy.

113.   The Interim Policy singles out Plaintiffs, as well as other Hindu CSU employees, professors and students and those of Indian/South Asian origin.

114.   By including "caste" in the Interim Policy, Defendants impermissibly created, and therefore targeted, suspect classes of Hindu CSU employees, professors, and students and those of Indian/South Asian origin.

115.   No other religion, alleged religious practice, or ancestry are contained in the Interim Policy.

116.   Plaintiffs have no adequate remedy at law to prevent or redress the irreparable injuries alleged herein.

117.   Unless Defendants are enjoined and restrained from enforcing the portion of the Interim Policy applying caste as a Protected Status, Plaintiffs will be

139081045.1

1  irreparably injured, as they will be deprived of their rights under the United States

2  Constitution forever.

3      118.   As Plaintiffs' constitutional violations are ongoing and capable of

4  repetition, Plaintiffs are entitled to injunctive relief.

5      119.   Because Defendants' actions required Plaintiffs to retain counsel and

6  incur attorneys' fees and costs to bring this action, Plaintiffs are entitled to the

7  recovery of those fees and costs pursuant to, *inter alia*, 42 U.S.C. § 1983 *et seq.* and

8  42 U.S.C. § 1988(b).

9        **SIXTH CLAIM FOR VIOLATION OF THE EQUAL PROTECTION**

10       **CLAUSE OF THE CALIFORNIA STATE CONSTITUTION RELIEF**

11                    **(AGAINST ALL DEFENDANTS)**

12      120.   Plaintiffs hereby incorporate by reference the foregoing paragraphs as

13  though fully set forth herein.

14      121.   "The equal protection analysis under the California Constitution is

15  substantially similar to analysis under the federal Equal Protection Clause." *Cal.*

16  *Growers Ass'n v. City of Long Beach*, 521 F. Supp.3d 902, 912 (C.D. Cal. 2021)

17  (quoting *RUI One Corp. v. City of Berkeley*, 371 F.3d 1137, 1154 (9th Cir. 2004)).

18  Accordingly, the Interim Policy violates the equal protection clause of the California

19  Constitution for the reasons set forth *supra.*

20      122.   As explained above, Plaintiffs have and will continue to suffer harm as

21  a result of the violation of the Equal Protection Clause of the California state

22  constitution.

23

24

25

26

27

28

139081045.1

**SEVENTH CLAIM FOR VIOLATION OF THE DUE PROCESS CLAUSE**
**OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES**
**CONSTITUTION – 42 U.S.C. § 1983**
**(AGAINST ALL DEFENDANTS)**

123.   Plaintiffs hereby incorporate by reference the foregoing paragraphs as though fully set forth herein.

124.   "A fundamental principle in our legal system is that laws which regulate persons or entities must give fair notice of conduct that is forbidden or required." *FCC v. Fox TV Stations, Inc.*, 567 U.S. 239, 253 (2012).

125.   A government policy, statute or regulation violates the Due Process Clause of the Fourteenth Amendment where it "is unclear as to what facts must be proved" to violate it.  *United States v. Williams*, 553 U.S. 285, 306 (2008).

126.   Such vagueness claims are actionable under 42 U.S.C. § 1983.

127.   The Ninth Circuit has explained that the vagueness doctrine contains two separate requirements:

> First, laws [must] give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. . . . The vagueness doctrine's second requirement aims to avoid arbitrary and discriminatory enforcement, and demands that laws provide explicit standards for those who apply them. A law that relies on a subjective standard—such as whether conduct amounts to an annoyance—is constitutionally suspect.

*Edge*, 929 F.3d at 664.

128.   The Interim Policy violates the vagueness doctrine by prohibiting "caste" discrimination without defining that term.  Indeed, it is not among the 44 other specifically defined terms in the Interim Policy.  Ex. A, Interim Policy at pp. 6–16, Art. VII(A)(B).

129.   The term is so vague that people of ordinary intelligence do not know what conduct is prohibited by the Interim Policy.  In fact, many of the CSU

139081045.1

employees, professors, and students who are governed by the Interim Policy are not familiar with the meaning of the term "caste."

130.   The Interim Policy does not provide explicit standards sufficient to survive a vagueness challenge.

131.   Thus, the Interim Policy is unconstitutionally vague in violation of the Due Process Clause to the extent that it prohibits discrimination based on "caste."

132.   Enforcing the Interim Policy will not only cause Plaintiffs (and others similarly situated) to live with the fear of being disciplined for committing discrimination they did not commit, such accusations – and indeed the mere stereotypes and implicit bias the Interim Policy has perpetuated – will follow them throughout the rest of their careers, potentially having negative implications such as the denial of tenure or the loss of their positions in academia.

133.   Similarly, because the Interim Policy does not describe what repercussions exist for alleged "caste" discrimination (or even explain what "caste" discrimination is), *any* employee within the CSU system, regardless of their ancestry or actual religious beliefs, could be subject to losing privileges at the university, their tenures, or even their professorship positions, if they are even *accused of* caste discrimination.

134.   Unless Defendants are enjoined and restrained from enforcing the portion of the Interim Policy applying caste as a Protected Status, Plaintiffs will be irreparably injured, as they will be deprived of their rights under the United States Constitution forever.

135.   As Plaintiffs' constitutional violations are ongoing and capable of repetition, Plaintiffs are entitled to injunctive relief.

136.   Because Defendants' actions required Plaintiffs to retain counsel and incur attorneys' fees and costs to bring this action, Plaintiffs are entitled to the

139081045.1

recovery of those fees and costs pursuant to, *inter alia*, 42 U.S.C. § 1983 *et seq.* and 42 U.S.C. § 1988(b).

## EIGHTH CLAIM FOR VOID FOR VAGUENESS UNDER THE
## CALIFORNIA CONSTITUTION RELIEF
### (AGAINST ALL DEFENDANTS)

137.   Plaintiffs hereby incorporate by reference the foregoing paragraphs as though fully set forth herein.

138.   "A void for vagueness challenge can be brought under either the California constitution or the Fourteenth Amendment of the U.S. Constitution." *Nat'l City Puppy, LLC v. City of Nat'l City*, No. 19cv1942, 2019 WL 5550247, at *2 n.1 (S.D. Cal. Oct. 28, 2019) (quoting *People v. Toledo*, 26 Cal. 4th 221, 228–29 (2001)); *see also Martinez v. City of Fresno*, No. 1:22-cv-00307, 2022 WL 1645549, at *12 (E.D. Cal. May 24, 2022).   Accordingly, the Interim Policy is void for vagueness under the California Constitution for the same reasons it is void for vagueness under the Federal Constitution.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs respectfully pray for judgment against Defendants, in their official capacities, and relief as follows:

a. For a preliminary injunction enjoining Defendants from enforcing the Interim Policy to the extent that it prohibits discrimination based on "caste";

b. For permanent injunctive relief preventing Defendants from enforcing the Interim Policy to the extent that it prohibits discrimination based on "caste";

c. For a declaration that the Interim Policy is unconstitutional to the extent that it prohibits discrimination based on "caste";

d. For attorneys' fees and costs; and

139081045.1

1

           e.  For such other and further relief as this Court deems just and

2

appropriate.

3

Dated: October 17, 2022                      Respectfully submitted,

4

                                       */s/ John Shaeffer*

5

                                       **FOX ROTHSCHILD, LLP**
                                       John Shaffer (SBN 138331)

6

                                       Constellation Place

7

                                       10250 Constellation Blvd.
                                       Suite 900

8

                                       Los Angeles, CA 90067
                                       (310) 228-4481 (tel)

9

                                       jshaffer@foxrothschild.com

10

                                       Michael Twersky

11

                                       Beth Weisser
                                       Erika Page

12

                                       **FOX ROTHSCHILD, LLP**

13

                                       980 Jolly Road, Suite 110
                                       Blue Bell, PA 19422

14

                                       (610) 397-6500
                                       mtwersky@foxrothschild.com

15

                                       bweisser@foxrothshchild.com
                                       epage@foxrothschild.com

16

                                       *Pro Hac Vice* Applications Pending

17

18

*Of Counsel*
Suhag A. Shukla (Fl. Bar I.D. 124869)

19

Samir Kalra (Ca. Bar I.D. 250011)
**HINDU AMERICAN FOUNDATION**

20

910 17th Street NW
Washington, DC 20006

21

202-223-8222

22

suhag@hinduamerican.org
samir@hinduamerican.org

23

24

25

26

27

28

139081045.1

1

## DEMAND FOR JURY TRIAL

2      In accordance with Rule 38(b) of the Federal Rules of Civil Procedure.

3   Plaintiffs hereby demand trial by jury on all issues so triable.

4   Dated: October 17, 2022                    Respectfully submitted,

5
                                              */s/ John Shaeffer*
6                                             **FOX ROTHSCHILD, LLP**
                                              John Shaffer (SBN 138331)
7                                             Constellation Place
                                              10250 Constellation Blvd.
8                                             Suite 900
                                              Los Angeles, CA 90067
9                                             (310) 228-4481 (tel)
                                              jshaffer@foxrothschild.com
10

11                                            Michael K. Twersky
                                              Beth Weisser
12                                            Erika Page
                                              **FOX ROTHSCHILD, LLP**
13                                            980 Jolly Road, Suite 110
                                              Blue Bell, PA 19422
14                                            (610) 397-6500
                                              mtwersky@foxrothschild.com
15                                            bweisser@foxrothshchild.com
16                                            epage@foxrothschild.com
17                                            *Pro Hac Vice* Applications Pending

18
    *Of Counsel*
19  Suhag A. Shukla (Fl. Bar I.D. 124869)
    Samir Kalra (Ca. Bar I.D. 250011)
20  **HINDU AMERICAN FOUNDATION**
21  910 17th Street NW
    Washington, DC 20006
22  202-223-8222
    suhag@hinduamerican.org
23  samir@hinduamerican.org

24

25

26

27

28
                              COMPLAINT
                                 27
    139081045.1