RICHARD A. PAUL (SBN 057976)
rich.paul@quarles.com
JEFFREY P. MICHALOWSKI (SBN 248073)
jeff.michalowski@quarles.com
MATTHEW W. BURRIS (SBN 325569)
matt.burris@quarles.com
ADRIELLI FERRER (SBN 348068)
adrielli.ferrer@quarles.com
**QUARLES & BRADY LLP**
101 West Broadway, Ninth Floor
San Diego, California 92101-8285
Telephone: 619-237-5200
Facsimile: 619-615-0700

Attorneys for Chancellor Jolene Koester

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

| | |
|---|---|
| SUNIL KUMAR, Ph. D., PRAVEEN SINHA, Ph. D., <br><br> Plaintiffs, <br><br> v. <br><br> DR. JOLENE KOESTER, in her official capacity as Chancellor of California State University, <br><br> Defendant. | Case No. 2:22-cv-07550-RGK-MAA <br><br> **CHANCELLOR KOESTER'S NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS** <br><br> Date:             June 26, 2023 <br> Time:             9:00 a.m. <br> Judge:           R. Gary Klausner <br> Trial Date:     October 31, 2023 |

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on June 26, 2023, at 9:00 a.m., or as soon thereafter as the matter may be heard before Judge R. Gary Klausner in Courtroom 850 of the United States District Court-Central District, located at 255 East Temple Street, Los Angeles, California, Defendant Chancellor Jolene Koester ("Defendant") by and through her attorneys of record, will and hereby does move for judgment on the pleadings pursuant to the Federal Rules of Civil Procedure, Rule 12(c). This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on April 27, 2023.

Specifically, Defendant respectfully requests judgment on the pleadings, on the following grounds:

1. Plaintiffs allege no "injury in fact," and thus lack standing.
2. Plaintiffs' claims are unripe for purposes of Article III.
3. Prudential ripeness considerations require deferring the issues until an actual controversy arises.
4. Plaintiffs' Free Exercise clause claims fail because the challenged Policy is neutral toward religion; does not burden the exercise of religion; and does not interfere with the autonomy of any religious institution.
5. Plaintiffs' Establishment Clause claims fail because the challenged Policy is not hostile to religion; because the challenged Policy has a secular purpose; and because history and tradition favor prohibiting discrimination in education.
6. Plaintiffs' Equal Protection Clause claim fails because the Policy applies neutrally and does not have a discriminatory purpose.
7. Plaintiffs' vagueness claims fail because the term "caste" is understandable to people of ordinary intelligence.

The motion is based on this notice of motion, the memorandum of points and authorities, the request for judicial notice and accompanying documents, and

2

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS

1  plaintiffs First Amended Complaint and attachments thereto, the pleadings and

2  filings in this action, and the arguments of counsel.

3      Pursuant to Federal Rule of Civil Procedure, Rule 44.1, defendant further

4  provides notice that its motion raises an issue about a foreign country's law (*i.e.*, the

5  Constitution of India, and the Indian Prevention of Atrocities Act), and requests

6  judicial notice of the Constitution of Indian and the Indian Prevention of Atrocities

7  Act.

8

9  Dated:  May 15, 2023          QUARLES & BRADY LLP

10

11                    By: _____

12                        RICHARD A. PAUL
                         JEFFREY P. MICHALOWSKI
13                        MATTHEW W. BURRIS
                         ADRIELLI FERRER
14                        Attorneys for Chancellor Jolene Koester

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS

# TABLE OF CONTENTS

I.  INTRODUCTION .................................................................................... 1

II.  FACTUAL BACKGROUND ................................................................... 2

    A.  What Is Caste Discrimination and Why Does It Matter? ..................... 2

        1.  Caste discrimination is a recognized form of discrimination. ................................................................... 2

        2.  Caste systems are not limited to India or South Asia. .................. 3

        3.  Caste systems are not coextensive with religion. ......................... 3

        4.  Caste discrimination exists within the United States. .................. 4

    B.  CSU's Policy Bars *All* Discrimination Based on Caste. .................... 5

    C.  CSU's Policy Has Not Yet Been Enforced. ........................................ 6

III.  LEGAL STANDARD ............................................................................... 7

IV.  JUDGMENT ON THE PLEADINGS IS WARRANTED ........................... 7

    A.  Plaintiffs' Claims Are Not Justiciable. ............................................... 7

        1.  Plaintiffs lack standing because they allege no injury in fact. ................................................................................. 7

            a.  *Fear of future injury is not enough.* .................................. 8

            b.  *Stigma is not enough without personal harm.* ................... 9

        2.  Plaintiffs' claims are not ripe. ..................................................... 10

    B.  Judgment is Warranted on Plaintiffs' Free Exercise Cause of Action (2nd). ....................................................................... 10

        1.  The Policy is neutral and applies to all forms of caste discrimination. ................................................................... 11

        2.  The Policy does not burden plaintiffs' exercise of religion. ...... 13

        3.  The Policy does not interfere with the autonomy of Hindu institutions. .................................................................... 14

    C.  Judgment for Defendant is Warranted on Plaintiffs' Establishment Clause Causes of Action (3rd and 4th). ...................... 15

        1.  There is no violation of the U.S. Constitution. ............................ 15

            a.  *The Policy is neutral toward religion, not hostile to it.* .................................................................. 15

i

b.   *Laws that have a secular purpose are permissible, even if they have consequences for religion.* ..................... 16

c.   *History and tradition favor neutral policies prohibiting discrimination.* ................................. 18

2.   The California Establishment Clause claim likewise fails. ........ 19

D.   Judgment for Defendant is Warranted on Plaintiffs' Equal Protection Causes of Action (5th and 6th). ........................... 19

E.   Judgment for Defendant is Warranted on Plaintiffs' "Void for Vagueness" Causes of Action (7th and 8th). ........................ 20

1.   The term "caste" is understandable to people of ordinary intelligence. ................................................................. 21

2.   CSU's Policy provides fair notice of the prohibited conduct. ..................................................................... 21

F.   Judgment in Defendant's Favor is Warranted On Plaintiffs' Cause of Action for Declaratory Relief (1st Cause of Action). ........... 22

V.   CONCLUSION ................................................ 23

# TABLE OF AUTHORITIES

Page(s)

Cases

*Allen v. Wright*,
    568 U.S. 737 (1984)..................................................................................9

*American Family Ass'n Inc. v. City & Cnty. of S.F.*,
    277 F.3d 1114 (9th Cir. 2002) .................................................................13

*Ass'n of Irritated Residents v. EPA*,
    10 F.4th 937 (9th Cir. 2021) ...................................................................10

*Barnes-Wallace v. City of San Diego*,
    704 F.3d 1067 (9th Cir. 2012) .................................................................19

*Bob Jones Univ. v. United States*,
    461 U.S. 574 (1983)................................................................................18

*Boyce Motor Lines v. U.S.*,
    342 U.S. 337 (1952)................................................................................21

*Cal. Grocers Ass'n v. City of Long Beach*,
    521 F.Supp.3d. 902 (C.D. Cal. 2021) .....................................................20

*Calif. Parents for Equalization of Educational Materials v. Noonan*,
    600 F. Supp. 2d 1088 (E.D. Cal. 2009) ...................................................16

*Calif. Parents for Equalization of Educational Materials v. Torlakson*,
    370 F. Supp. 3d 1057 (N.D. Cal. 2019)...................................................16

*Calif. Parents for the Equalization of Educational Materials v. Torlakson*,
    973 F.3d 1010 (9th Cir. 2020) .....................................................13, 14, 16

*Catholic League for Religious & Civ. Rights v. City & Cnty. of San Francisco*,
    624 F.3d 1043 (9th Cir. 2010) (en banc) ...................................................9

*Catholic League for Religious & Civil Rights v. City & Cnty. of San Francisco*,
    567 F.3d 595 (9th Cir. 2009) ..............................................................17, 18

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*,
    508 U.S. 520 (1993) ................................................................................ 11

*Cooper v. Aaron*,
    358 U.S. 1 (1958) .................................................................................... 18

*D.W. v. Raufer*,
    839 F. App'x 723 (3d Cir. 2020) .............................................................. 3

*Dev. Corp. v. State of California*,
    24 Cal. 4th 693 (2000) ........................................................................... 19

*EEOC v. Catastrophic Mgmt. Solutions*,
    852 F.3d 1018 (11th Cir. 2016) .............................................................. 21

*Employment Division v. Smith*,
    494 U.S. 871, 879 (1990) ....................................................................... 11

*Ervins v. Sun Prairie Area Sch. Dist.*,
    609 F. Supp. 3d 709 (W.D. Wis. July 1, 2022) ..................................... 17

*Every Nation Campus Ministries at San Diego State Univ. v. Achtenberg*,
    2006 WL 8455445 (S.D. Cal. May 2, 2006) .......................................... 21

*Fleming v. Pickard*,
    581 F.3d 922 (9th Cir. 2009) .................................................................... 7

*Grayned v. City of Rockford*,
    408 U.S. 104 (1972) ................................................................................ 21

*Grove v. Mead Sch. Dist. No. 354*,
    753 F.2d 1528 (9th Cir. 1985) ................................................................ 14

*Hartmann v. Cal. Dep't of Corrections & Rehab*,
    707 F.3d 1114 (9th Cir. 2013) ................................................................ 20

*Heliotrope General, Inc. v. Ford Motor Co.*,
    189 F.3d 971 ............................................................................................. 7

*Juliana v. U.S.*,
    947 F.3d 1159 (9th Cir. 2020) .................................................................. 9

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS

*Kennedy v. Bremerton Sch. Dist.*,
  142 S.Ct. 2407 (2022)...................................................................................18

*Lee v. Weisman*,
  505 U.S. 577 (1992)......................................................................................15

*Lemon v. Kurtzman*,
  403 U.S. 602 (1971)......................................................................................18

*Lujan v. Defendants of Wildlife*,
  504 U.S. 555 (1992)........................................................................................8

*Lynch v. Donnelly*,
  465 U.S. 668 (1984)......................................................................................15

*Masterpiece Cakeshop Ltd. v. Colo. Civ. Rights Comm'n*,
  138 S.Ct. 1719 (2018)..............................................................................15, 19

*McGowan v. Maryland*,
  366 U.S. 420, 442 (1961)..............................................................................17

*Nat'l Park Hosp. Ass'n v. Dep't of Interior*,
  538 U.S. 803 (2003)......................................................................................10

*Our Lady of Guadalupe Sch.*,
  140 S.Ct. 2049 (2020)..............................................................................14, 15

*Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*,
  461 U.S. 190 (1983)......................................................................................22

*Protectmarriage.com-Yes on 8 v. Bowen*,
  752 F.3d 827 (9th Cir. 2014) .......................................................................10

*Reynolds v. Talberg*,
  2020 WL 6375396 (W.D. Mich. Oct. 30, 2020)...........................................22

*RUI One Corp. v. City of Berkeley*,
  371 F.3d 1137 (9th Cir. 2004) .....................................................................20

*Sabra v. Maricopa County CCD*,
  44 F. 4th 867 (9th Cir. 2022) ..........................................................................7

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS

*Sanford v. MemberWorks, Inc.*,
  625 F.3d 550 (9th Cir. 2010) ...................................................................19

*Schwarz v. United States*,
  234 F.3d 428 (9th Cir. 2000) .....................................................................7

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016)....................................................................................7

*Steel Co. v. Citizens for a Better Environment*,
  523 U.S. 83 (1998)......................................................................................8

*Steffel v. Thompson*,
  415 U.S. 452 (1974)..................................................................................22

*Texas v. United States*,
  523 U.S. 296 (1998)....................................................................................8

*Thomas v. Anchorage Equal Rights Comm'n*,
  220 F.3d 1134 (9th Cir. 2011) .................................................................10

*Tingley v. Ferguson*,
  47 F.4th 1055 (9th Cir. 2022) ..................................................................11

*TransUnion LLC v. Ramirez*,
  141 S.Ct. 2190 (2021)................................................................................7

*U.S. v. Doremus*,
  888 F.2d 630 (9th Cir. 1989) ...................................................................20

*United States v. Wyatt*,
  408 F.3d 1257 (9th Cir. 2005) .................................................................21

*Valley Forge Christian Coll. v. Am. United for Sep. of Church and State, Inc.*,
  454 U.S. 464, 488 (1982)...........................................................................9

*Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*,
  455 U.S. 489 (1982)..................................................................................20

*Wayte v. U.S.*,
  470 U.S. 598 (1985)..................................................................................20

Statutes

Cal. Education Code § 66606.2 ...................................................................12
Cal. Education Code § 66607 ....................................................................12

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

For decades, California State University's systemwide policies have prohibited discrimination based on race and ethnicity in university programs, activities, and employment.  Last year, after students and faculty raised concerns about caste discrimination, CSU clarified that caste discrimination is a form of race or ethnicity discrimination, and is thus barred throughout the CSU system.

Plaintiffs, two Hindu professors at CSU, claim the new policy "link[s] the Hindu religion with a caste system and caste discrimination," and thus "singles out their religious beliefs for ridicule."  FAC ¶ 20.  Banning caste discrimination, in their view, is an act of discrimination against Hindus.  In so arguing, plaintiffs misconstrue CSU's Policy and misunderstand the constitutional principles under which they sue.

In reality, CSU's Nondiscrimination Policy is unambiguously neutral toward religion.  It makes no mention of Hinduism, nor of any other religion.  Rather, it bars caste discrimination ***by*** any person, regardless of the religion, and it bars caste discrimination ***against*** any person, regardless of their religion.  Likewise, it makes no mention of geography.  Rather, it bars discrimination based on the often-discussed caste systems found in India, Nepal, Sri Lanka, Bangladesh, and Pakistan, but so too does it bar discrimination based on other caste systems – including systems originating in Japan, Africa, the Middle East, and beyond.

The Policy's neutrality toward religion disposes of the bulk of plaintiffs' complaint.  But even if the Policy had expressly or impliedly drawn a connection between Hinduism and caste (it did not), plaintiffs would still fail to state a constitutional violation.  The Ninth Circuit and multiple district courts have found that state actions noting a connection between caste and Hinduism do not impair religious practices (and thus do not violate the Free Exercise clause), and do not demonstrate hostility toward Hinduism (and thus do not violate the Establishment

1

clause).

Plaintiffs' remaining causes of action likewise fail.  The Equal Protection Clause claim is not viable because plaintiffs cannot allege that it was discriminatory in purpose, an essential element of such a claim.  And plaintiffs' vagueness challenge likewise fails, because the term "caste" is understandable to people of ordinary intelligence.

All told, however, this Court need not wade into these constitutional waters – plaintiffs lack standing, and this action is not yet ripe for adjudication.  Specifically, plaintiffs have not alleged that they have suffered or will imminently suffer a concrete injury in fact.  Nor have plaintiffs alleged that the Policy has been enforced against them, or that enforcement has been threatened.  Rather, their purported fear of future enforcement is wholly speculative.  Moreover, prudence dictates that novel constitutional issues should not be decided in the abstract.  The question should be deferred until an actual controversy arises.

For these reasons, defendant requests judgment on the pleadings.

## II.   FACTUAL BACKGROUND

### A.   What Is Caste Discrimination and Why Does It Matter?

#### 1.   Caste discrimination is a recognized form of discrimination.

"Caste, in its simplest definition, encompasses all hereditary systems and derived cultures that constrain the fullest development, acceptance, and recognition of equal rights for each and every individual."  Laurence Simon, WHY A JOURNAL ON CASTE?, CASTE: A GLOBAL JOURNAL ON SOCIAL EXCLUSION, Vol. 1, Issue 1 p. i (Feb. 2020).[1]

The existence of caste discrimination has received legal recognition – both abroad and in the United States.  The Indian Constitution has barred caste discrimination since 1959, and the Indian Prevention of Atrocities Act of 1989

---

[1] *See* RJN Exh. 30(i).

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS

targeted ongoing mistreatment of Dalits.  *See* CONSTITUTION OF INDIA, Article 15(1), 15(2)[2]; India Act No. 33 of 1989.[3]   However, as the Third Circuit has recognized, "Dalits face discrimination and violence in India, especially in rural areas, despite legal protection and affirmative action programs."  *See D.W. v. Raufer*, 839 F. App'x 723, 724 (3d Cir. 2020).

### 2.   Caste systems are not limited to India or South Asia.

While the caste systems in India and South Asia[4] are widely-discussed, they are certainly not the only caste systems in the world.  Caste is a global issue impacting hundreds of millions of people world-wide.

A resolution passed by a United Nations Subcommission declared that discrimination based on "descent," including "caste," "has historically been a feature of societies in different regions of the world and has affected a significant proportion overall of the world's population."  Comm. on the Elimination of Racial Discrimination on Its Sixty-First Session, Gen. Recommendation No. 29 (Descent), UNITED NATIONS SUB-COMMISSION ON HUMAN RIGHTS (2002).[5]   Likewise, United States and United Nations treaty monitoring bodies, including the Department of State, have noted the existence of caste systems throughout much of Africa and Japan.[6]

### 3.   Caste systems are not coextensive with religion.

---

[2] *See* RJN Exh. 28.

[3] *See* RJN Exh. 29.

[4] *See* RJN Exhs. 11-12, 14, 16, 20, 22, 26.

[5] *See* RJN Exh. 27 ("'Descent' includes discrimination against members of communities based on forms of social stratification such as caste and analogous systems of inherited status which nullify or impair their equal enjoyment of human rights.").

[6] *See* RJN Exhs. 13, 15, 18, 24-26.

"Caste" is not coextensive with Hinduism or with any other religion.  As a United Nations report puts it:

> At present, the term "caste" has broadened in meaning, transcending religious affiliation.  Caste and caste-like systems may be based on either a religious or a secular background and can be found within diverse religious and/or ethnic groups in all geographical regions, including within diaspora communities.

Rep. of the Special Rapporteur on Minority Issues, ¶ III(C)(31), UNITED NATIONS SPECIAL RAPPORTEUR ON MINORITY ISSUES, U.N. Doc. A/HRC/31/56, Document E, (Jan. 28, 2016) (hereinafter "U.N. RAPPORTEUR ON MINORITY ISSUES.").[7]

Even within particular caste systems, caste status does not correspond with religion, nor vice versa.  For example, within the Indian caste system, "one can be a Shudra or a Dalit and be of many different religious backgrounds—among other things, Hindu, Jain, Sikh, Christian, Muslim, Buddhist."  G. Krishnamurthi and C. Krsihnaswai, TITLE VII AND CASTE DISCRIMINATION, 134 Harv. L. Rev. Forum 456, 478 (June 20, 2021); *see also Discrimination on the basis of caste*, S.B. 403, 2023 Leg., Reg. Sess. (Cal. 2023) ("S.B. 403") § 1(b) ("Caste discrimination is present across South Asia and . . . is found in all communities of religious practice.").

### 4. Caste discrimination exists within the United States.

Caste-based discrimination exists within the United States, too.

> The caste system migrated with the South Asian diaspora to other regions, including Africa (Mauritius, South Africa), Europe (United Kingdom of Great Britain and Northern Ireland), the Americas (United States of America, Canada and Suriname), the Middle East (Bahrain, Kuwait and United Arab Emirates), Malaysia, Australia and the Pacific (Fiji).

U.N. RAPPORTEUR ON MINORITY ISSUES ¶ III(B)(27).

As the issue of caste has been increasingly visible in the United States, there is a growing recognition across U.S.-based institutions and government entities that

---

[7] *See* RJN Exh. 26.

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS

caste discrimination warrants regulatory attention.  Brandeis University, Brown University, Colby College, and the University of California, Davis recently added caste to their non-discrimination policies.[8]  Harvard University added protections against caste discrimination in their graduate student union collective bargaining agreement.[9]  The city of Seattle, too, recently passed a law specifically barring caste discrimination.  *See* Seattle, Wash., Ordinance 126,767 (Feb. 23, 2023); SEATTLE, WASH., MUNICIPAL CODE § 3.110.260 (2023).[10]  The California Legislature, too, is considering a bill that would specifically ban caste discrimination in employment and education statewide.  *See* S.B. 403.[11]  The Bill recently passed the California Senate by a vote of 34–1, and as of this writing, it is before the California Assembly.[12]

At CSU, student groups and faculty groups passed resolutions advocating for the addition of "caste" to CSU's non-discrimination policy.  Specifically, the Cal State Student Association, representing the 487,000 students of the CSU system, called for the addition of caste to CSU's policy.  FAC Exh. E (ECF No. 1-1, pp.117–20).  And the California Faculty Association, the union representing all faculty at CSU, did the same, with the endorsement of 16 of its Committees, Councils, and Caucuses.  FAC Exh. D (ECF No. 1-1, pp.111–15).

### B.     CSU's Policy Bars *All* Discrimination Based on Caste.

Prior to January 1, 2022, CSU's non-discrimination policy identified 15 protected categories including race and ethnicity.  On January 1, 2022, CSU's new

---

[8] *See* RJN Exhs. 2-4, 6.

[9] *See* RJN Exh. 5.

[10] *See* RJN Exhs. 9-10.

[11] *See* RJN Exh. 7.

[12] *See* RJN Exh. 8.

Nondiscrimination Policy became effective.[13]  The new Policy clarified that caste is included within race and ethnicity.

> The CSU prohibits the following conduct, as defined in Article VII. Discrimination based on any Protected Status: i.e., Age, Disability (physical and mental), Gender (or sex, including sex stereotyping), Gender Identity (including transgender), Gender Expression, Genetic Information, Marital Status, Medical Condition, Nationality, **Race or Ethnicity (including** color**, caste,** or ancestry), Religion (or religious creed), Sexual Orientation, and Veteran or Military Status.

Nondiscrimination Policy § 2 (emphasis supplied) (available at RJN Exh. 1).  "**Race or Ethnicity includes** ancestry, color, **caste**, ethnic group identification, and ethnic background."  Nondiscrimination Policy § 20 (emphasis supplied).

There is no mention of Hinduism anywhere in the Policy.  Nor is there any mention of particular countries or geographies, such as India or South Asia.  Nor is there any mention of Dalits, Brahmins, or any other particular caste.  Rather, the policy prohibits all forms of caste discrimination – regardless of the race, religion, or national origin of the victim, and regardless of the race, religion, or national origin of the perpetrator.

**C.  CSU's Policy Has Not Yet Been Enforced.**

Plaintiffs have not been fired or otherwise disciplined under the Policy.  They have not been investigated.  No complaint has been raised against them.  They do not allege that such a complaint has been threatened or contemplated.  Nor do they allege that *any* faculty members have been disciplined, investigated, or subject to complaints or threatened complaints under the Policy.  Rather, plaintiffs claim only that they fear they may be disciplined at some future time.  FAC ¶¶ 79, 92, 102, 132.

---

[13] *See* RJN, Exh. 1.  Plaintiffs' complaint cites an Interim Policy (FAC ¶ 1 and ECF No. 1-1, Exh. A), but that policy is now final and effective, and its text is unchanged.

## III.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(c), "[j]udgment on the pleadings is properly granted when [, accepting all factual allegations in the complaint as true,] there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009).

Courts are not limited to the allegations in the pleadings. Rather, a court may "consider facts that are contained in materials of which the court may take judicial notice." *Heliotrope General, Inc. v. Ford Motor Co.*, 189 F.3d 971, 981 n. 18 (9th Cir. 1999). Conversely, "a court need not assume the truth of conclusory allegations or of unwarranted inferences." *Schwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000).

## IV.    JUDGMENT ON THE PLEADINGS IS WARRANTED

### A.    Plaintiffs' Claims Are Not Justiciable.

#### 1.    Plaintiffs lack standing because they allege no injury in fact.

"The Article III standing inquiry serves a single purpose: to maintain the limited role of courts by ensuring they protected against only concrete, non-speculative injuries." *Sabra v. Maricopa County CCD*, 44 F. 4th 867, 879 (9th Cir. 2022). Accordingly, plaintiffs must allege an "injury in fact" that is "concrete and particularized" and "actual or imminent." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016). A fear of future harm will not suffice unless plaintiffs demonstrate a sufficient likelihood that the harm will materialize; speculation about possible harm is not enough. *See also TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2211–12 (2021).

Here, plaintiffs allege two types of injury. First, they fear the policy may be enforced against them in the future. FAC ¶ 79. Second, they claim the addition of the word "caste" singled them out for stereotyping. FAC ¶¶ 13. As pleaded, neither claimed "injury" is sufficient.

a.   ***Fear of future injury is not enough.***

There are three reasons plaintiffs' fear of future injury does not confer standing.  <u>*First*</u>, a plaintiff cannot satisfy Article III standing when the claimed harm depends on "contingent future events that may not occur as anticipated, or indeed may not occur at all."  *Texas v. United States*, 523 U.S. 296, 300 (1998).  Here, plaintiffs do not allege that they have been subject to complaints; that they have been threatened with complaints; or even that complaints against them have been contemplated.  Their claimed fear of future injury falls short.

<u>*Second*</u>, plaintiffs have a causation problem.  Under *Lujan*, a plaintiff will satisfy the requirement of standing only if their claimed injury is "traceable" to the challenged action.  *Lujan v. Defendants of Wildlife*, 504 U.S. 555, 559–60 (1992).  But plaintiffs acknowledge that the term "caste" was merely a clarification of what the Policy had prohibited all along.

> CSU does not need to include the pejorative and demeaning term "caste" to protect persons of Indian/South Asian descent or those who identify with, or are perceived to be, practitioners of the Hindu religion since **its policy already precludes discrimination specifically based on ethnicity and religion.**

FAC ¶ 11 (emphasis supplied).  If adding the word "caste" was unnecessary and duplicative—because the Policy was already sufficient to bar the same conduct—then plaintiffs cannot claim they were injured by the addition of the word.

<u>*Third*</u>, and relatedly, if the word "caste" is redundant and mere surplusage, then the relief sought—*i.e.*, an order enjoining use of the word "caste" in the Policy (*see* FAC – Prayer for Relief ¶ (a))—will not redress plaintiffs' injuries.  As a practical matter, excising the word "caste" from the Policy would be an idle act – members of the CSU community could still raise complaints of caste discrimination, and CSU could still enforce its long-standing prohibitions on race, ethnicity and national origin discrimination.  That, too, bars the entire action.  *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 107 (1998) (relief that does not redress an

8

injury "cannot bootstrap a plaintiff into federal court; that is the very essence of the redressability requirement."); *see also Juliana v. U.S.*, 947 F.3d 1159, 1170 (9th Cir. 2020) (injury fails redressability requirement if it "is not substantially likely to mitigate the plaintiffs' asserted concrete injuries.").

### b.   *Stigma is not enough without personal harm.*

Plaintiffs appear to claim the Policy imposes a stigmatic injury, too.  *See* FAC ¶ 57 (policy "singles out Plaintiffs . . . with inaccurate stereotypes – that they adhere to a 'caste system' characterized as a racist and inhumane system of discrimination and violence against others.").  This allegation is insufficient for two reasons.

*First*, it is not a plausible reading of the Policy.  The Policy does not single out plaintiffs (or anyone else).  Rather, it bars caste discrimination by anyone, against anyone.  By way of analogy, CSU's policy barring discrimination based on sexual orientation does not single out or stigmatize heterosexual persons, nor does it suggest that heterosexual persons must necessarily engage in discrimination or homophobia.  CSU's policy barring discrimination based on sex does not single out or stigmatize men, nor does it suggest that they hold sexist, misogynistic, or patriarchal views.  Likewise, a prohibition on caste discrimination does not suggest or imply that plaintiffs (or anyone else) hold certain beliefs or that they've done anything wrong.

*Second*, even if plaintiffs had plausibly alleged some level of stigma, "abstract stigmatic injury" is not sufficient to confer standing.  *Allen v. Wright*, 568 U.S. 737, 755–56 (1984).  *See also Catholic League for Religious & Civ. Rights v. City & Cnty. of San Francisco*, 624 F.3d 1043, 1052 (9th Cir. 2010) (en banc) ("exclusion or denigration" can confer standing, but a mere "psychological consequence" based on disagreement with government policies will not).  Plaintiffs must allege distinct and palpable injury to themselves that is likely to be redressed by a favorable decision. *Valley Forge Christian Coll. v. Am. United for Sep. of Church and State, Inc.*, 454 U.S. 464, 488 (1982) (enforcement of establishment clause does not

9

require or demand special exception from standing requirements of injury and redressability). Here, they do not allege any actual, personal, exclusion or denigration; rather, plaintiffs rest on allegations that the policy is inherently stigmatizing.  That is not enough, and plaintiffs lack standing to sue.

### 2.    Plaintiffs' claims are not ripe.

"The ripeness doctrine seeks to identify those matters that are premature for judicial review because the injury at issue is speculative, or may never occur." *Protectmarriage.com-Yes on 8 v. Bowen*, 752 F.3d 827, 838 (9th Cir. 2014).  Here, plaintiffs' alleged injury is based on speculation that the policy may be enforced against them at some future point.  That is not enough under Article III.  *See Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134 (9th Cir. 2011) (lack of ripeness is a jurisdictional bar).

Even if plaintiffs' allegations satisfied Article III, prudence dictates that the Policy should be assessed based on its real-world application to specific instances of caste discrimination at CSU.  *Ass'n of Irritated Residents v. EPA*, 10 F.4th 937, 944 (9th Cir. 2021) (ripeness doctrine extends to "prudential reasons for refusing to exercise jurisdiction.") (quoting *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003)).  Plaintiffs' arguments for the expansion of constitutional law and the constitutionality of prohibitions on caste discrimination should be decided only if and when a real controversy arises; not in the abstract and not in a factual vacuum.  *Thomas*, 220 F.3d at 1141–42.  This is especially true given that plaintiffs would not suffer any hardship if review were delayed – plaintiffs have not been subject to any discipline, complaints, or even threatened complaints, and prudence dictates that at a minimum, review should be deferred.  *Id.* at 1142.

### B.    Judgment is Warranted on Plaintiffs' Free Exercise Cause of Action (2nd).

Plaintiffs claim defendant violated the Free Exercise Clause by "defining the contours and practices of the Hindu religion by impermissibly (and erroneously)

10

concluding that inherent to the teachings and practices of Hinduism is a 'caste system' characterized as a racist and inhumane system of discrimination and violence against others." FAC ¶ 75. The contention mischaracterizes the Policy and misunderstands the First Amendment.

### 1. The Policy is neutral and applies to all forms of caste discrimination.

The Free Exercise Clause "does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability." *Tingley v. Ferguson*, 47 F.4th 1055 (9th Cir. 2022), quoting *Employment Division v. Smith*, 494 U.S. 872, 879 (1990). Here, the Policy is neutral in all respects. Its text is studiously neutral and makes no mention of religion. *Compare Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 533 (1993) ("A law lacks facial neutrality if it refers to a religious practice without a secular meaning discernable from the language or context."). Nor is the object of the Policy to restrict practices because of their religious motivation. Rather, the clear and express objective of the Policy is to prevent discrimination based on caste – by anyone, against anyone, and regardless of the motivation. *Compare Ibid.* (law is not neutral "if the object of a law is to infringe upon or restrict practices because of religious motivation.").

Recognizing that CSU's policy is neutral toward religion, plaintiffs attempt to attribute to CSU statements and positions of others. Specifically, plaintiffs cite language from a lawsuit filed by the California Department of Fair Employment and Housing ("DFEH"),[14] and allege that "the State of California, under which CSU operates, takes the position that "caste" is inextricably intertwined with the Hindu religion and India/South Asia." FAC ¶ 3.[15] Plaintiffs further contend that

---

[14] The Department has since been renamed, and is now called the California Civil Rights Department.

[15] Notably, plaintiffs' contention that the DFEH takes the position that the term

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS

statements connecting caste with Hinduism and South Asia by a student

organization (Cal. State Student Association ("CSSA")) and a faculty union

(California Faculty Association ("CFA")) can be attributed to and bind CSU.  *See*

FAC ¶ 38, 39, 57, 76.

Plaintiffs' reliance on these statements is misplaced.  The statements they

attribute to the "State of California" were in fact made by one of the state's 200+

agencies, *i.e.*, the DFEH.  The DFEH did not speak for the Chancellor of CSU who

is the sole defendant in this case.  CSU is a distinct and independent state entity.  By

statute, CSU is "entirely independent of all political and sectarian influence and kept

free therefrom in the . . . administration of its affairs."  Cal. Education Code §

66607.  Indeed, the Legislature, by statute, is to show deference to CSU's

management of its affairs.  *See* Cal. Educ. Code § 66606.2 (requiring legislation to

be compatible with the mission and functions of the CSU, due to the "unique

mission and functions" of CSU).

Likewise, the CFA (a faculty organization) and CSSA (a student

organization) do not speak for the Chancellor.  While CSU takes their views

seriously, and was rightfully concerned about the issues they raised, the

Nondiscrimination Policy must be interpreted based on what it actually says, not on

---

"caste" singles out Hinduism and India/South Asia does not appear to be supported
by plaintiffs' own allegations.  The DFEH's lawsuit against Cisco does reference the
caste-system in India and its relationship to Hinduism (ECF 1-1, Exh. C ¶ 1.), but
that is hardly surprising given that the case challenges caste discrimination against a
Dalit Indian.  *Id.* ("John Doe is Dalit Indian, a population once known as the
"Untouchables," who are the most disadvantaged people under India's centuries-old
caste system.").  Notably, the DFEH's complaint takes the position that California's
Fair Employment and Housing Act ("FEHA") prohibits *all* caste discrimination, not
just caste discrimination related to Hinduism, India, and/or South Asia.  *See id.* ¶ 62
("The FEHA prohibits harassment based on the employee's protected characteristics
including, but not limit to, their caste, which includes religion, ancestry, national
origin/ethnicity, and race/color.").

the basis of statements and viewpoints expressed by these and other interested persons and entities.  And the Policy, as noted above, is unquestionably neutral to both religion and geography.  It prohibits caste discrimination by anyone and against anyone, nothing less and nothing more.

**2.     The Policy does not burden plaintiffs' exercise of religion.**

"To state a claim under the Free Exercise Clause, a plaintiff must show that a government practice substantially burdens ***a religious practice*** . . . ."  *Sabra v. Maricopa Cnty. Community College Dist.*, 44 F.4th 867 (9th Cir. 2022) (emphasis supplied).  When a plaintiff fails to identify specific religious conduct that was impaired, dismissal is appropriate.  *See American Family Ass'n Inc. v. City & Cnty. of S.F.*, 277 F.3d 1114, 1123–24 (9th Cir. 2002).  Here, plaintiffs' Free Exercise claim fails at the threshold, because plaintiffs do not claim the Policy burdens their ability to practice their religion, and they certainly do not identify any "specific religious conduct" that was impaired or that will be impaired.

At most, plaintiffs appear to find the prohibition on caste discrimination offensive.  *See* FAC ¶¶ 18–20.  But the Ninth Circuit, in a recent and closely analogous case, reaffirmed that mere offensiveness is not enough.  In *Calif. Parents for the Equalization of Educational Materials v. Torlakson*, 973 F.3d 1010 (9th Cir. 2020), a Hindu advocacy organization challenged state curricular guidance that, among other things, described the caste system as a "social and cultural structure **as well as a religious belief**."  *Id.* at 1014 (emphasis supplied).  The Ninth Circuit held, 3–0, that the fact that plaintiffs were offended by this characterization did not result in a Free Exercise violation.  Rather, plaintiffs needed to show a tangible burden on their exercise of religion:

> Appellants' allegations suggest at most that portions of the Standards and Framework contain material Appellants find offensive to their religious beliefs. . . . Offensive content that does not penalize, interfere with, or otherwise burden religious exercise does not violate Free Exercise Rights.

1   *Id.* at 1020;  *see also Grove v. Mead Sch. Dist. No. 354*, 753 F.2d 1528, 1533 (9th

2   Cir. 1985) (plaintiffs must identify "coercive effect that operates against the

3   litigant's practice of his or her religion.").

4          In fact, plaintiffs' own allegations in this case affirmatively demonstrate that

5   the Policy will *not* burden their religious exercise.  Specifically, plaintiffs disavow

6   caste discrimination as *inconsistent* with their religious beliefs.  *See* FAC ¶ 18

7   ("Hindu religion's core principles [include] equal regard for all humans . . . which is

8   directly contrary to a discriminatory caste system."); FAC ¶ 51 ("Plaintiffs here do

9   not believe in nor engage in caste discrimination at all.  Rather, they abhor it . . .").

10  There is no conflict, then, between CSU's prohibition on caste discrimination and

11  plaintiffs' abhorrence of all forms of discrimination – indeed the Policy and

12  plaintiffs' views are complementary.  There is no burden on plaintiffs' religious

13  practice, and there is no Free Exercise violation.

14              **3.     The Policy does not interfere with the autonomy of Hindu**

15                       **institutions.**

16         Plaintiffs further argue that the Policy impermissibly "defines the contours

17  and practices of the Hindu religion."  *See* FAC ¶ 74.  As plaintiffs would have it,

18  this violates the Free Exercise clause, because religious institutions have the right

19  "to decide for themselves, free from state interference, matters of church

20  government as well as those of faith and doctrine."  *See* FAC ¶ 75, quoting *Our*

21  *Lady of Guadalupe Sch.*, 140 S.Ct. 2049, 2060 (2020).

22         The argument fails for two reasons.  <u>*First*</u>, it is wrong on the facts – the Policy

23  does not define Hinduism, and does not even mention it.  <u>*Second*</u>, even if the Policy

24  had opined that Hinduism and caste are inextricably connected (it did not), plaintiffs

25  fail to allege that the Policy interfered with the autonomy of any Hindu institution.

26         Plaintiffs' cited case, *Our Lady of Guadalupe*, thus has no bearing.  There, the

27  Court interpreted the "ministerial exception" to the employment discrimination

28  laws, under which "courts are bound to stay out of employment disputes involving

14

those holding certain important positions with churches and other religious institutions" *Id.* at 2061.  It held that the exception applied to teachers at a private religious school, because such teachers were "entrusted most directly with the responsibility of educating their students in the faith."  *Id.* at 2066.  The Court further explained:

> This does not mean that religious institutions enjoy a general immunity from secular laws, but it does protect their autonomy with respect to internal management decisions that are essential to the institution's central mission.  And a component of this autonomy is the selection of the individuals who play certain key roles.

*Id.* at 2060.  The Policy at issue here does not infringe on the autonomy or internal decision-making of Hindu institutions; rather, it bars discrimination, nothing more.

### C.   Judgment for Defendant is Warranted on Plaintiffs' Establishment Clause Causes of Action (3rd and 4th).

#### 1.   There is no violation of the U.S. Constitution.

##### a.   *The Policy is neutral toward religion, not hostile to it.*

Government conduct violates the Establishment Clause when it favors one religion over another, involves coercion, or expresses hostility towards any religion. *Lee v. Weisman*, 505 U.S. 577, 591–92 (1992); *Lynch v. Donnelly*, 465 U.S. 668, 673 (1984) (constitution "forbids hostility towards any religions").  Unconstitutional hostility is apparent when government conduct "passes judgment upon or presupposes the illegitimacy of religious beliefs and practices[,]" *Masterpiece Cakeshop Ltd. v. Colo. Civ. Rights Comm'n*, 138 S.Ct. 1719, 1731 (2018) (internal citation omitted).  Here, the Policy is neutral toward religion, not hostile to it.  It bars caste discrimination by individuals regardless of their religion and protects individuals from caste discrimination regardless of their religion, too.

And even if the Policy had expressly or implicitly drawn a connection between caste and Hinduism (and it did not), that still would not violate the Establishment Clause.  The Ninth Circuit's recent *Torlakson* opinion is again

---

15

instructive.  There, the plaintiffs claimed that California's curricular guidance materials described the caste system as a "social and cultural structure as well as a religious belief."  *Id.* at 1014.  But the Ninth Circuit, 3-0, found no Establishment Clause violation:

> We do not doubt the sincerity of Appellants' challenge to the Standards and Framework. The courts are called upon to view the passages objectively and from the perspective of the reasonable person.  As the district court noted, an "objective, reasonable observer would find much of the challenged material entirely unobjectionable." But even if isolated passages could be read as implying some hostility toward religion—which they do not—they would not violate the Establishment clause unless that were the "principal or primary effect."

*Torlakson*, 973 F.3d at 1022.

District court decisions addressing the association of caste with Hinduism are in accord.  *See Calif. Parents for Equalization of Educational Materials v. Noonan*, 600 F. Supp. 2d 1088, 1103, 1120 (E.D. Cal. 2009) (textbooks associating "oppressive caste system" with Hinduism did not violate Constitution – conveying "negative aspects of Hinduism does not mean the primary effect of the textbook is to inhibit religion."); *Calif. Parents for Equalization of Educational Materials v. Torlakson*, 370 F. Supp. 3d 1057, 1071–72 (N.D. Cal. 2019) ("even if there is some evidence by which a reasonable person could infer a disapproval or Hindu religious beliefs—an excessive discussion of caste, for example . . . — that is not enough to conclude that the <u>primary</u> message of the Standards and Framework is disparagement.").  All told, even if the Policy had specifically tied caste discrimination to Hinduism (it did not), that would not be sufficient – any reasonable observer would understand that the overarching purpose of the Policy is to eliminate discrimination, not to vilify Hinduism.

### b.   *Laws that have a secular purpose are permissible, even if they have consequences for religion.*

In evaluating a claim under the Establishment Clause, courts must first

16

determine "whether the challenged practice is religious in nature." *Ervins v. Sun Prairie Area Sch. Dist.*, 609 F. Supp. 3d 709, 725 (W.D. Wis. July 1, 2022). If a practice is not religious, then the Establishment Clause does not apply. *Id.* Moreover, the fact that a practice has some level of overlap with a religious practice does not mean that it is immune from regulation.

> [T]he 'Establishment' Clause does not ban federal or state regulation of conduct whose reason or effect merely happens to coincide or harmonize with the tenets of some or all religions. In many instances, the Congress or state legislatures conclude that the general welfare of society, wholly apart from any religious considerations, demands such regulation. Thus, for temporal purposes, murder is illegal. And the fact that this agrees with the dictates of the Judaeo-Christian religions while it may disagree with others does not invalidate the regulation. So too with the questions of adultery and polygamy.

*McGowan v. Maryland*, 366 U.S. 420, 442 (1961).

A Ninth Circuit case is particularly instructive. At issue in *Catholic League for Religious & Civil Rights v. City & Cnty. of San Francisco*, 567 F.3d 595 (9th Cir. 2009) was a resolution by the County urging a Catholic Cardinal to "withdraw his discriminatory and defamatory directive that Catholic Charities . . . stop placing children in need of adoption with homosexual households." The Catholic League argued that the County's resolution had attacked "Catholic religious beliefs" (*id.* at 600), but the County countered by arguing that its purposes was to "champion needy children, gays, lesbians, and same-sex couples within its jurisdiction." *Id.* at 602. The Ninth Circuit held that the overlap between the conduct criticized and Catholic doctrine did not result in an Establishment Clause violation:

> [C]ertain secular beliefs, views, and positions coincide with religious beliefs, views, and positions. In such cases, government speech or action with respect to a secular issue is not considered endorsement of religion simply because the government's views are consistent with religious tenets. That is, the same belief can have both religious and secular dimensions; the government is not stripped of its secular purpose simply because the same concept can be construed as religious.

*Id.* at 603.

Here, the Policy barring caste discrimination serves an obvious secular purpose – ensuring equal access to educational and employment opportunities at CSU regardless of race or ethnicity, including caste.  Even assuming the Policy had incidental effects on those who practice Hinduism, *Catholic League* teaches that such incidental effects are not actionable under the Establishment Clause.

### c.   *History and tradition favor neutral policies prohibiting discrimination.*

For decades, Establishment Clause cases were analyzed under *Lemon v. Kurtzman*, 403 U.S. 602 (1971).  Last term, however, the Supreme Court announced that the *Lemon* test had been abandoned and replaced with the standard set out in *Town of Greece v. Galloway*.  *See Kennedy v. Bremerton Sch. Dist.*, 142 S.Ct. 2407, 2425-32 (2022).  In turn, *Town of Greece* requires courts to interpret the Establishment Clause by "reference to historical practices and understandings." *Kennedy,* 142 S.Ct. at 2428.

Here, plaintiffs cannot meet their burden of identifying historical practices and understandings that would restrict a public university from adopting neutral rules to restrict discrimination.  Indeed, it is well-established that neutral anti-discrimination laws are constitutionally sound, ***especially*** in the context of education.  "An unbroken line of cases following *Brown v. Board of Education* establishes beyond doubt this Court's view that racial discrimination in education violates a most fundamental national public policy, as well as rights of individuals." *See Bob Jones Univ. v. United States*, 461 U.S. 574, 592-95 (1983);  *see also Cooper v. Aaron*, 358 U.S. 1, 19 (1958) ("The right of a student not to be segregated on racial grounds in school . . . is indeed so fundamental and pervasive that it is embraced in the concept of due process of law.").

Moreover, there is a tradition of upholding neutral anti-discrimination laws over religious objections.  In *Bob Jones University*, for example, the Court assessed

18

whether the I.R.S. could revoke the tax-exempt status of a university and a primary school based on discriminatory admissions and discipline policies.  At the university, "[t]he sponsors . . . genuinely believe[d] that the Bible forbids interracial dating and marriage."  461 U.S. at 580.  The school generally admitted only Caucasians, based on sincerely held religious beliefs that mixing of races violated "God's command."  *Id.* at 583, n. 6. The Supreme Court held that revocation of the schools' tax-exempt status did not violate the First Amendment: "[T]he Government has a fundamental, overriding interest in eradicating racial discrimination in education . . . That governmental interest substantially outweighs whatever burden denial of tax benefits placed on petitioners' exercise of their religious beliefs." *Id.* at 604.

Plaintiffs cannot plausibly contend that there is a history and tradition of striking down neutral policies that bar discrimination in education.  To the contrary, such policies have been a defining feature of American education since the Civil Rights era, and have received the unqualified endorsement of the Supreme Court.

### 2. The California Establishment Clause claim likewise fails.

If the Court finds no violation of the federal Establishment Clause, there can be no violation of the California Establishment clause.  *E. Bay Asian Loc. Dev. Corp. v. State of California*, 24 Cal. 4th 693, 718–19 (2000).  At a minimum, this Court should decline supplemental jurisdiction.  *See Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 561 (9th Cir. 2010).

### D. Judgment for Defendant is Warranted on Plaintiffs' Equal Protection Causes of Action (5th and 6th).

"[I]n order for a state action to trigger equal protection review at all, that action must treat similarly situated persons disparately." *Barnes-Wallace v. City of San Diego*, 704 F.3d 1067, 1084 (9th Cir. 2012).  Here, the Policy treats all members of the CSU community equally.  It bars all discrimination based on caste, regardless of the religion or national origin of the victim, and regardless of the

religion or national origin of the perpetrator.  The claim thus fails at the threshold.

Plaintiffs also default on their burden of plausibly alleging intentional or purposeful discrimination.  Intent or purpose is an essential element of an equal protection claim.  *See Hartmann v. Cal. Dep't of Corrections & Rehab,* 707 F.3d 1114, 1123 (9th Cir. 2013); *see also Wayte v. U.S.*, 470 U.S. 598, 610 (1985) ("'Discriminatory purpose' . . . implies that the decisionmaker selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group.").  Here, there are no allegations that plausibly suggest that defendant targeted plaintiffs for adverse treatment because of their religion or national origin.

The California claim fails for the same reasons.  *Cal. Grocers Ass'n v. City of Long Beach*, 521 F.Supp.3d. 902, 912–13 (C.D. Cal. 2021) ("[t]he equal protection analysis under the California Constitution is substantially similar to analysis under the federal Equal Protection Clause."), quoting *RUI One Corp. v. City of Berkeley*, 371 F.3d 1137, 1154 (9th Cir. 2004)).  And even if the California claim could survive on the merits, this Court could and should decline to exercise supplemental jurisdiction.

**E.    Judgment for Defendant is Warranted on Plaintiffs' "Void for Vagueness" Causes of Action (7th and 8th).**

An enactment is void for vagueness only "if it fails to give adequate notice to people of ordinary intelligence concerning the conduct it proscribes, or if it invites arbitrary and discriminatory enforcement."  *U.S. v. Doremus*, 888 F.2d 630, 634 (9th Cir. 1989), *cert. denied*, 498 U.S. 1046 (1991).  For an enactment to be intolerably vague on its face, it must be impermissibly vague in ***all*** of its applications.  *See Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc*., 455 U.S. 489, 495 (1982).  Here, plaintiffs' vagueness challenge fails for at least two reasons.

/ / /

/ / /

### 1. The term "caste" is understandable to people of ordinary intelligence.

"[C]ondemned to the use of words, we can never expect mathematical certainty from our language." *Grayned v. City of Rockford,* 408 U.S. 104, 109–12 (1972). "Consequently, no more than a *reasonable* degree of certainty can be demanded." *Boyce Motor Lines v. U.S.*, 342 U.S. 337, 340 (1952) (emphasis added).

The term "caste" is not unconstitutionally vague. Rather, people of ordinary intelligence are likely to understand the term. Moreover, if an employee or student were to unfamiliar with the term caste, that would be easy enough to cure. They would need only reach for a dictionary (or more, likely, consult Google or other online resources) to find quick and comprehensive information. *Consider United States v. Wyatt*, 408 F.3d 1257, 1261 (9th Cir. 2005) (resolving ambiguity in allegedly vague terms by consulting dictionary). This Court should decline Plaintiffs' request to "embark on a quest for ambiguity . . ." where none exists. *Every Nation Campus Ministries at San Diego State Univ. v. Achtenberg*, 2006 WL 8455445, at *5 (S.D. Cal. May 2, 2006) (rejecting claim that the term "sexual orientation" in CSU policy was unconstitutionally vague).

### 2. CSU's Policy provides fair notice of the prohibited conduct.

Plaintiffs note the Policy does not provide a definition of "caste." But due process does not require that all terms be defined, especially outside the criminal context. *Hoffman Estates*, 455 U.S. 489, 498–99 (Supreme Court has "greater tolerance of enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe"). For example, Title VII does not define "race" and the EEOC has not issued regulations defining the term, *EEOC v. Catastrophic Mgmt. Solutions*, 852 F.3d 1018, 1026 (11th Cir. 2016), even though the term "race" is ambiguous. *See* Charanya Krishnaswami & Guha Krishnamurthi, *Title VII and Caste Discrimination*, 134 Harv. L. Rev. F. 456, 473 & n. 93 (June 20, 2021) ("What exactly 'race is, and how 'races' are properly defined,

is an almost impenetrably difficult question.").  Other protected categories, too, leave room for discussion and debate — consider "ancestry," "ethnicity," "gender expression," "sexual orientation," and "sex."

A recent Ninth Circuit decision is instructive.  In *Tingley v. Ferguson*, the Ninth Circuit considered a challenge to a statute banning licensed health care providers from practicing conversion therapy on children.  47 F.4th 1055, 1063 (9th Cir. 2022).  The statute defined conversion therapy as "a regime that seeks to change an individual's sexual orientation or gender identity . . . ."  The plaintiff challenged the terms "sexual orientation" and "gender identity" as "vague terms without consistent definitions." *Id*. at 1065, 1089.  The Ninth Circuit disagreed, finding that their common meanings were clear enough to defeat a vagueness challenge.  *Id*. at 1089–90;  *see also Reynolds v. Talberg*, 2020 WL 6375396, at *9 (W.D. Mich. Oct. 30, 2020) (terms "transgender" and "gender expression" are not overly vague).

More than ever, "caste" is part of the national discussion,[16] and it is a term that reasonable members of the CSU community can understand.  Plaintiffs' vagueness challenge fails.

### F.  Judgment in Defendant's Favor is Warranted On Plaintiffs' Cause of Action for Declaratory Relief (1st Cause of Action).

The cause of action for declaratory judgment is derivative of plaintiffs' other claims.  *See* FAC ¶ 65.  Accordingly, it fails with the underlying claims, for the reasons explained above.  So too does it fail because plaintiffs cannot show a likelihood of injury "of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Steffel v. Thompson*, 415 U.S. 452, 460 (1974); *Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 201 (1983) (threatened injury must be "certainly impending").  Plaintiff identifies no impending injury, and declaratory relief would not be appropriate.

---

[16] *See* RJN Exh. 30 (a)-(x).

1   **V.      CONCLUSION**

2          Defendant respectfully requests judgment on the pleadings.

3

4   Dated:  May 15, 2023                QUARLES & BRADY LLP

5

6                                       By:  _____

7                                       RICHARD A. PAUL
                                        JEFFREY P. MICHALOWSKI
8                                       MATTHEW W. BURRIS
                                        ADRIELLI FERRER
9                                       Attorneys for Chancellor Jolene Koester

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS

1    CERTIFICATION OF WORD COUNT COMPLIANCE

2    The undersigned, counsel of record for Defendant Chancellor Koester certifies

3    that this brief contains 6,890 words, which complies with the word limit of L.R.

4    11-6.1.

5

6    Dated:  May 15, 2023                QUARLES & BRADY LLP

7

8                                        By: _____

9                                            RICHARD A. PAUL

10                                           JEFFREY P. MICHALOWSKI

                                             MATTHEW W. BURRIS

11                                           ADRIELLI FERRER

                                             Attorneys for Chancellor Jolene Koester

12

13

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS