# Exhibit 1

RJN Exhibit 1

Status ( Active )  PolicyStat ID ( 12891658 )



| | |
|---|---|
| Origination | 1/1/2022 |
| Effective | 1/1/2023 |
| Last Revised | 1/22/2023 |
| Next Review | 1/21/2025 |

Owner  Andy Alvarez: Assoc Dir, SW Emp & Plcy Admin

Area  Human Resources

Codes  EO 1095, EO 1096, EO 1097

# CSU Policy Prohibiting Discrimination, Harassment, Sexual Misconduct, Sexual Exploitation, Dating Violence, Domestic Violence, Stalking, and Retaliation (Nondiscrimination Policy)

## Article I. Statement of Values

The California State University (CSU or University) is committed to maintaining an inclusive and equitable community that values diversity and fosters mutual respect. We embrace our community differences in Age, Disability (physical and mental), Gender (or sex), Gender Identity (including nonbinary and transgender), Gender Expression, Genetic Information, Marital Status, Medical Condition, Nationality, Race or Ethnicity (including color, caste, or ancestry), Religion (or religious creed), Sexual Orientation, Veteran or Military Status. All Students and Employees have the right to participate fully in CSU programs, activities, and employment free from Discrimination, Harassment, Sexual Misconduct, Sexual Exploitation, Dating Violence, Domestic Violence, Stalking and Retaliation.

## Article II. Prohibited Conduct Covered Under this Policy

The CSU prohibits the following conduct, as defined in Article VII.

    A.  Discrimination based on any Protected Status: i.e., Age, Disability (physical and mental), Gender (or sex, including sex stereotyping), Gender Identity (including transgender), Gender Expression, Genetic Information, Marital Status, Medical Condition, Nationality, Race or Ethnicity (including color, caste, or ancestry), Religion (or religious creed), Sexual Orientation,

CSU Policy Prohibiting Discrimination, Harassment, Sexual Misconduct, Sexual Exploitation, Dating Violence, Domestic Violence, Stalking, and Retaliation (Nondiscrimination Policy). Retrieved 4/28/2023. Official copy at http://calstate.policystat.com/policy/12891658/. Copyright © 2023 The California State University

and Veteran or Military Status.

B.   Harassment based on any Protected Status.

C.   Sexual Harassment, including hostile environment and *quid pro quo* ("this for that").

D.   Dating Violence, Domestic Violence, Sexual Exploitation and Stalking.

E.   Sexual Misconduct.

F.   Prohibited Consensual Relationships.

G.   Retaliation for exercising rights under this Nondiscrimination Policy, opposing conduct that a person believes in good faith is Discrimination or Harassment because of a Protected Status, or for participating, in any manner, in any related investigation or proceeding.

# Article III. Policy Implementation

This Nondiscrimination Policy is established in compliance with:

- Title VI and Title VII of the Civil Rights Act of 1964;
- Title IX of the Education Amendments of 1972, Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance (34 C.F.R. 106.);
- The California Equity in Higher Education Act;
- The Violence Against Women Reauthorization Act of 2013 (which amends the Jeanne Clery Disclosure of Campus Security and Campus Crimes Statistics Act, commonly known as the Clery Act) (VAWA) under its Campus Sexual Violence Elimination Act provision (Campus SaVE Act);
- Section 504 of the Rehabilitation Act of 1973;
- Title II of the Americans with Disabilities Act of 1990;
- The Age Discrimination Act of 1975; and
- Other applicable state and federal laws which prohibit Discrimination, Harassment, Sexual Misconduct, Sexual Exploitation, Dating Violence, Domestic Violence, Stalking, and Retaliation.

# Article IV. Academic Freedom and Freedom of Speech

Freedom of expression is a cornerstone of a democratic society and is essential to the educational process. Universities have a special obligation not only to tolerate, but also to encourage and support, the free expression of ideas, values, and opinions, even when unpopular or controversial. At the same time, the exercising of freedom of expression and assembly must comply with all applicable federal, state, and local laws and CSU policy. Speech activity is not protected by the First Amendment to the U.S. Constitution or by this Nondiscrimination Policy when it includes terrorist threats or the promotion of actual or imminent physical violence or bodily harm. Freedom of expression is not an absolute right. It coexists with other rights and the need for public order and safety.

Not every act that may be offensive or insulting constitutes Discrimination or Harassment, as defined by law and this Nondiscrimination Policy. At the same time, all members of the campus community should

recognize that the manner in which they choose to express themselves has consequences and that freedom of expression includes a responsibility to acknowledge and respect the right of others to express differing opinions. Conduct that violates this Nondiscrimination Policy, including statements that constitute Discrimination, Harassment, Sexual Harassment, Retaliation or Stalking, is not protected by academic freedom or freedom of expression.

# Article V. Duty to Report

Individuals who believe that they have experienced Discrimination, Harassment, Sexual Misconduct, Sexual Harassment, Sexual Exploitation, Dating Violence, Domestic Violence, Stalking, or Retaliation are strongly encouraged to talk to someone about what happened – so they can secure the support they need, and so the campus may respond appropriately.

To help individuals make an informed decision about who they would like to share information with, the information below explains which CSU employees have a duty to report information they learn and which can keep such information confidential.

## A. Employees Who Have a Duty to Report

Except as provided below, any Employee who knows or has reason to know of incidents that may violate this Nondiscrimination Policy has a duty to promptly report to the Title IX Coordinator/Discrimination, Harassment, Retaliation ("DHR") Administrator, who are the campus officials designated to receive these reports. These Employees are known as Responsible Employees and are required to disclose all information available, including the names of the Parties involved, even where the person has requested anonymity.

## B. Employees Who Do Not Have a Duty to Report

Except as required by law (see below for exceptions), the following Employees generally do **not** have a duty to report to the Title IX Coordinator/DHR Administrator:

1.  Physicians; psychotherapists; professional licensed counselors; licensed clinical social workers, and clergy who work on or off campus, acting solely in those roles or capacities as part of their employment, in the provision of medical or mental health treatment or counseling (and those who act under their supervision, including all individuals who work or volunteer in these centers and offices).

2.  Sexual assault and domestic violence counselors and advocates who work or volunteer on or off campus in sexual assault centers, victim advocacy offices, women's centers, and health centers and who are acting solely in that role (including those who act in that role under their supervision, along with non-professional counselors or advocates who work or volunteer in sexual assault centers, victim advocacy offices, women's centers, gender equity centers, or health centers) in the provision of counseling or advocacy services.

3.  A CSU union representative is not required to report a possible violation of this Nondiscrimination Policy if the information is provided to the union representative, acting in that role, in a confidential setting by a union member seeking advice about a possible violation or representation in a matter within the scope of representation. However, CSU union

representatives are strongly encouraged to report the information to the Title IX Coordinator/ DHR Administrator.

**EXCEPTIONS:** Under California law, any health practitioner employed in a health facility, clinic, physician's office, or local or state public health department or clinic is required to make a report to local law enforcement if he or she provides medical services for a physical condition to a person who he or she knows or reasonably suspects is suffering from: (1) a wound or physical injury inflicted by a firearm; or (2) any wound or other physical injury where the injury is the result of assaultive or abusive conduct (including Rape, Sexual Assault, and Dating and Domestic Violence).[1] This exception does not apply to sexual assault and domestic violence counselors and advocates. Health care practitioners should explain this limited exception, if applicable.

Additionally, under California law, all professionals described above (physicians, psychotherapists, professional counselors, clergy, and sexual assault and domestic violence counselors and advocates) are mandatory child abuse and neglect reporters and are required to report incidents involving victims under 18 years of age to local law enforcement.[2] These professionals will explain this limited exception, if applicable.

Finally, some or all of these professionals may also have reporting obligations under California law to: (1) local law enforcement in cases involving threats of immediate or imminent harm to self or others where disclosure of the information is necessary to prevent the threatened danger;[3] or (2) to the court if compelled by court order or subpoena in a criminal proceeding related to Sexual Misconduct, Dating or Domestic Violence, or Stalking.[4] If applicable, these professionals will explain this limited exception.

# C. Other Matters Related to the Duty to Report

Residential Advisors, and other Employees who are also Students, have a duty to report knowledge of misconduct when they learn about such information while they are performing their duties of employment for the institution.

Where matters involving Discrimination, Harassment, Sexual Misconduct, Sexual Exploitation, Dating Violence, Domestic Violence, Stalking or Retaliation are reported to a campus Ombuds, the Ombuds must report such incidents to the Title IX Coordinator/DHR Administrator.[5]

University Police, the Title IX Coordinator/DHR Administrator, campus-employed physicians, professional counselors, sexual assault and domestic violence counselors and advocates, and certain other Employees are required to explain to persons reporting Discrimination, Harassment, Sexual Misconduct, Sexual Exploitation, Dating Violence, Domestic Violence, Stalking, or Retaliation their rights and options with respect to confidentiality, their ability to report to a Responsible Employee, as well as information regarding the specific reporting resources.

In accordance with Article V.A, employees of the University Police Department have a duty to report to the Title IX Coordinator or DHR Administrator any time they know or have reason to know of incidents that may violate this Nondiscrimination Policy, so that the Title IX Coordinator or DHR Administrator can carry out their duties under the law and under this Nondiscrimination Policy. At a minimum, the information to be reported includes all the information authorized to be disclosed under the law in response to records requests, but without requiring a formal request.[6] Such information includes but is

not limited to the time, substance, and location of all complaints or requests for assistance received by University Police and the time and nature of the response thereto, including, to the extent the information regarding crimes alleged or committed or any other incident investigated is recorded, the time, date, and location of occurrence, the time and date of the report, the name and age of the victim, the factual circumstances surrounding the crime or incident, the identity of the alleged perpetrator, and a general description of any injuries, property, or weapons involved.[7]

For certain sex offenses[8] the victim has the right to affirmatively request from University Police, after being informed of their options, that the victim's identity remain confidential.[9] However, even if the victim requests confidentiality of identity, the University Police should specifically ask the victim if the victim's name can be provided to the Title IX Office so that the Title IX Coordinator can contact the victim to discuss supportive measures that can be offered. And in all cases, even when the victim requests confidentiality, the identity of the alleged perpetrator (if known) must be reported to the Title IX Coordinator.

University Police are strongly encouraged to have regular meetings with the Title IX Coordinator to discuss strategies to ensure that victims are fully apprised of their rights and options under the law and under this Nondiscrimination Policy.

The campus will be unable to investigate a particular incident or pursue disciplinary action if an individual chooses to: (1) speak only to a physician, professional counselor, clergy member, sexual assault counselor, domestic violence counselor or advocate; and, (2) maintain complete confidentiality. Even so, these individuals will receive assistance in obtaining other necessary protection and support, such as victim advocacy, disability, medical/health or mental health services, and information regarding their right to make a Complaint to the campus and a separate Complaint with local or University Police.

# Article VI. Applicable Complaint Procedures

The following describes the appropriate procedures for investigating or adjudicating Complaints that fall under this Nondiscrimination Policy:

A. **Complaints against Employees, former Employees, and/or applicants for employment**
Complaint of Discrimination, Harassment, Sexual Misconduct, Sexual Exploitation, Dating Violence, Domestic Violence, Stalking, or Retaliation **against an Employee, former Employee, or an applicant for employment** should be made using the *Procedures for Complaints of Discrimination, Harassment, Sexual Misconduct, Sexual Exploitation, Dating Violence, Domestic Violence, Stalking, and Retaliation Made Against an Employee or Third-Party*.

B. **Complaints against Students**
A Complaint of Discrimination, Harassment, Sexual Misconduct, Sexual Exploitation, Dating Violence, Domestic Violence, Stalking, or Retaliation **against a Student** should be made using the *Procedures for Complaints of Discrimination, Harassment, Sexual Misconduct, Sexual Exploitation, Dating Violence, Domestic Violence, Stalking, and Retaliation Made Against a Student*.

C. **Complaints against Student-Employees**
A Complaint of Discrimination, Harassment, Sexual Misconduct, Sexual Exploitation, Dating Violence, Domestic Violence, Stalking, or Retaliation **against a Student-Employee** where the

alleged violation arose out of the person's status as an Employee and not their status as a Student should be made using the *Procedures for Complaints of Discrimination, Harassment, Sexual Misconduct, Sexual Exploitation, Dating Violence, Domestic Violence, Stalking, and Retaliation Made Against an Employee or Third-Party.*

D. **Complaints against Third Parties**
A Complaint of Discrimination, Harassment, Sexual Misconduct, Sexual Exploitation, Dating Violence, Domestic Violence, Stalking, or Retaliation **against a Third Party** should be made using the *Procedures for Complaints of Discrimination, Harassment, Sexual Misconduct, Sexual Exploitation, Dating Violence, Domestic Violence, Stalking, and Retaliation Made Against an Employee or Third-Party.*

E. **Complaints against a President**
**Complaints against a President** should be made to the Chancellor's Office (CO) using the Procedures for Complaints of Discrimination, Harassment, Sexual Misconduct, Sexual Exploitation, Dating Violence, Domestic Violence, Stalking, and Retaliation Made Against an Employee or Third-Party. However, Complaints against a president shall be processed by the campus if the president's role in the alleged incident was limited to a decision on a recommendation made by another administrator, and the president had no other substantial involvement in the matter.

F. **Complaints against a Chancellor's Office Employee or a Title IX Coordinator/DHR Administrator**
For **Complaints against CO employees or a campus Title IX Coordinator/DHR Administrator**, the responsibilities identified in the Procedures for Complaints of Discrimination, Harassment, Sexual Misconduct, and Retaliation Made Against an Employee or Third-Party as those of the President are the responsibilities of the Chancellor.
Complaints that involve allegations against the Chancellor or a member of the Board of Trustees shall be referred to the chair or vice chair of the Board and the CO Title IX Coordinator/DHR Administrator for processing and investigation.
Complaints against a Chancellor's Office employee, or a campus Title IX Coordinator/Discrimination, Harassment, and Retaliation Administrator ("DHR Administrator") will be made to the Chancellor's Office at eo-wbappeals@calstate.edu. In that event, the chancellor assumes all responsibilities identified as those of the campus president.
Complaints against a campus president will also be made to the Chancellor's Office, but only if it is alleged that the president directly engaged in conduct that violates the Nondiscrimination Policy. Any other Complaints against a president (for example, that the president had no substantial involvement other than to rely on or approve a recommendation made by another administrator) will be made to and addressed by the campus.
Complaints against the chancellor or a member of the Board of Trustees will be referred to the chair or vice chair of the Board via the Board of Trustees' Secretariat at trusteesecretariat@calstate.edu, but only if it is alleged that the chancellor or a member of the Board of Trustees directly engaged in conduct that violates the Nondiscrimination Policy. Any other Complaints against the chancellor or a member of the Board (for example, that the chancellor or member of the Board of Trustees had no substantial involvement other than to rely on or approve a recommendation made by another administrator) will be made to and addressed by the Chancellor's Office at eo-wbappeals@calstate.edu.

# Article VII. Policy Definitions
## A. Prohibited Conduct Defined

This Nondiscrimination Policy prohibits Discrimination, Harassment, Sexual Misconduct, Sexual Exploitation, Dating Violence, Domestic Violence, Stalking, and Retaliation as described below. Capitalized terms used in the policy are described in Article VII. B. The definitions of Prohibited Conduct below should be used for alleged misconduct that occurs on or after January 1, 2022. The definitions that should be used for alleged misconduct that occurred prior to January 1, 2022, are those in the policy in place at the time of the alleged misconduct.

1. ***Discrimination***
   **Discrimination** is (an) **Adverse Action(s)** against a Complainant **because of** their Protected Status.

   a. **Adverse Action** means an action engaged in by the Respondent that has a substantial and material adverse effect on the Complainant's ability to participate in a university program, activity, or employment. Minor or trivial actions or conduct not reasonably likely to do more than anger or upset a Complainant does not constitute an Adverse Action.
   An adverse employment action is any conduct or employment action that is reasonably likely to impair an employee's job performance or prospects for advancement or promotion.

   b. If Adverse Action is taken **because of** a Complainant's Protected Status, that means that the Complainant's Protected Status is a substantial motivating reason (but not necessarily the only reason) for the Adverse Action.

   c. An allegation that an Employee is receiving unequal pay because of their Protected Status (for example, under the California Equal Pay Act) constitutes a Discrimination Complaint under this Nondiscrimination Policy.

2. ***Harassment***
   **Harassment** means unwelcome verbal, nonverbal or physical conduct engaged in **because of** an individual Complainant's Protected Status.
   If a Complainant is harassed **because of** their Protected Status, that means that the Complainant's Protected Status is a substantial motivating reason (but not necessarily the only reason) for the conduct.
   Harassment may occur when:

   a. Submitting to, or rejecting, the verbal, nonverbal or physical conduct is explicitly or implicitly a basis for:

      I. Decisions that adversely affect or threaten employment, or which are being presented as a term or condition of the Complainant's employment; or

      II. Decisions that affect or threaten the Complainant's academic status or progress, or access to benefits and services, honors, programs, or activities available at or through the university.

**OR**

b. The conduct is sufficiently severe or pervasive so that its effect, whether intended or not, could be considered by a reasonable person under similar circumstances and with similar identities, and is in fact considered by the Complainant as creating an intimidating, hostile or offensive work or educational environment that denies or substantially limits an individual's ability to participate in or benefit from employment and/or educational, services, activities, or other privileges provided by the CSU.

Harassment includes, but is not limited to, verbal harassment (e.g., epithets, derogatory comments, or slurs), physical harassment (e.g., assault, impeding or blocking movement, or any physical interference with normal work or movement), and visual forms of harassment (e.g., derogatory posters, cartoons, drawings, symbols, or gestures.). Single, isolated incidents will typically be insufficient to rise to the level of harassment.

3. ***Sexual Misconduct***
All sexual activity between members of the CSU community must be based on **Affirmative Consent**. Engaging in any sexual activity without first obtaining Affirmative Consent to the specific activity is Sexual Misconduct, whether or not the conduct violates any civil or criminal law.

- Sexual activity includes, but is not limited to:
  - kissing,
  - touching intimate body parts
  - fondling,
  - intercourse,
  - penetration, no matter how slight, of the vagina or anus with any part or object,
  - oral copulation of a sex organ by another person.

- Sexual Misconduct includes, but is not limited to, the following conduct:
  - an attempt, coupled with the ability, to commit a violent injury on the person of another because of that person's Gender or Sex,
  - the intentional touching of another person's intimate body parts without Affirmative Consent,
  - intentionally causing a person to touch the intimate body parts of another without Affirmative Consent,
  - using a person's own intimate body part to intentionally touch another person's body without Affirmative Consent,
  - any unwelcome physical sexual acts, such as unwelcome sexual touching,
  - using physical force, violence, threat, or intimidation to engage in sexual activity,
  - ignoring the objections of the other person to engage in sexual activity,

- causing the other person's incapacitation through the use of drugs or alcohol to engage in sexual activity,
- taking advantage of the other person's incapacitation to engage in sexual activity.

• Intimate body part means the sexual organ, anus, groin, buttocks, or breasts of any person.

• Sexual activity between a Minor (a person younger than 18 years old) and a person who is at least 18 and two years older than the Minor always constitutes Sexual Misconduct, even if there is Affirmative Consent to all sexual activity. The existence of Affirmative Consent and/or the type of sexual activity may be relevant to the determination of an appropriate Sanction.

• Persons of all Genders, Gender Identities, Gender Expressions, and Sexual Orientations can be victims of these forms of Sexual Misconduct. Sexual Misconduct can be committed by an individual known to the victim including a person the Complainant may have just met, i.e., at a party, introduced through a friend, or on a social networking website.

• **Affirmative Consent**
Affirmative Consent must be voluntary, and given without coercion, force, threats, or intimidation.
It is the responsibility of each person involved in the sexual activity to ensure Affirmative Consent has been obtained from the other participant(s) prior to engaging in the sexual activity.
Affirmative Consent means an agreement to engage in sexual activity that is:

- Informed,
- Affirmative,
- Conscious,
- Voluntary, and
- Mutual.
- Lack of protest or resistance does not mean there is Affirmative Consent.
- Silence does not mean there is Affirmative Consent.
- The existence of a dating or social relationship between those involved, or the fact of past sexual activities between them, should never by itself be assumed to be an indicator of Affirmative Consent.
- A request for someone to use a condom or birth control does not, in and of itself, mean there is Affirmative Consent.
- Affirmative Consent can be withdrawn or revoked. Consent must be ongoing throughout a sexual activity and can be revoked at any time, including after sexual activity begins. Once consent is withdrawn or revoked, the sexual activity must stop immediately. Consent to one form of sexual activity (or one sexual act) does not constitute consent to other forms of sexual activity. Consent given to sexual activity on one occasion

does not constitute consent on another occasion.

- **Incapacitation**
  Affirmative Consent cannot be given by a person who is incapacitated. A person is unable to consent when asleep, unconscious, or incapacitated due to the influence of drugs, alcohol, or medication so that the person could not understand the fact, nature, or extent of the sexual activity. A person is incapacitated if the person lacks the physical and/or mental ability to make informed, rational decisions. A person with a medical or mental disability may also lack the capacity to give consent. Whether an intoxicated person (as a result of using alcohol or other drugs) is incapacitated depends on the extent to which the alcohol or other drugs impact the person's decision-making ability, awareness of consequences, and ability to make informed judgments. A person's own intoxication or incapacitation from drugs or alcohol does not diminish that person's responsibility to obtain Affirmative Consent before engaging in sexual activity.
  Sexual activity with a minor (a person under 18 years old) is not consensual, because a minor is considered incapable of giving consent due to age.
  It shall not be a valid excuse that a person affirmatively consented to the sexual activity if the Respondent knew or reasonably should have known that the person was unable to consent to the sexual activity under any of the following circumstances:
  - The person was asleep or unconscious
  - The person was incapacitated due to the influence of drugs, alcohol, or medication, so that the person could not understand the fact, nature, or extent of the sexual activity
  - The person could not understand the fact, nature, or extent of the sexual activity, or was unable to communicate, due to a mental or physical condition

- It shall not be a valid excuse that the Respondent believed that the person consented to the sexual activity under either of the following circumstances:
  - The Respondent's belief in Affirmative Consent arose from the intoxication or recklessness of the Respondent;
  - The Respondent did not take reasonable steps, in the circumstances known to the Respondent at the time, to ascertain whether the person affirmatively consented.

4. *Sexual Harassment*
   **Sexual Harassment** means unwelcome verbal, nonverbal or physical conduct of a sexual nature that includes, but is not limited to, sexual advances, requests for sexual favors, offering employment benefits or giving preferential treatment in exchange for sexual favors, or indecent exposure, and any other conduct of a sexual nature where:

   a. Submission to, or rejection of, the conduct is explicitly or implicitly used as the basis for any decision affecting a Complainant's academic status or progress, or access to benefits and services, honors, programs, or activities available at or through the university; or

CSU Policy Prohibiting Discrimination, Harassment, Sexual Misconduct, Sexual Exploitation, Dating Violence, Domestic Violence, Stalking, and Retaliation (Nondiscrimination Policy). Retrieved 4/28/2023. Official copy at http://calstate.policystat.com/policy/12891658/. Copyright © 2023 The California State University

27

RJN Exhibit 1

    b.  Submission to, or rejection of, the conduct by the Complainant is explicitly or implicitly used as the basis for any decision affecting a term or condition of the Complainant's employment, or an employment decision; or

    c.  The conduct is sufficiently severe, persistent, or pervasive that its effect, whether or not intended, could be considered by a reasonable person in the shoes of the Complainant, and is in fact considered by the Complainant, as limiting their ability to participate in or benefit from the services, activities or opportunities offered by the university; or

    d.  The conduct is sufficiently severe, persistent, or pervasive that its effect, whether or not intended, could be considered by a reasonable person in the shoes of the Complainant, and is in fact considered by the Complainant, as creating an intimidating, hostile or offensive environment.

Sexual Harassment could include being forced to engage in unwanted sexual contact as a condition of membership in a student organization or in exchange for a raise or promotion; being subjected to video exploitation or a campaign of sexually explicit graffiti; or frequently being exposed to unwanted images of a sexual nature in a work environment, or in a classroom where the images are unrelated to the coursework.

Claiming that the conduct was not motivated by sexual desire is not a defense to a complaint of Sexual Harassment.

Sexual and/or romantic relationships between members of the campus community may begin as consensual, and may develop into situations that lead to Discrimination, Harassment, Retaliation, Sexual Misconduct, Dating or Domestic Violence, or Stalking subject to this Nondiscrimination Policy.

5.  ***Sexual Exploitation***

**Sexual Exploitation** means a person taking sexual advantage of another person for the benefit of anyone other than that person without that person's consent, including, but not limited to, any of the following acts:

    a.  The prostituting of another person.

    b.  The trafficking of another person, defined as the inducement of a person to perform a commercial sex act, or labor of services, through force, fraud, or coercion.

    c.  The recording of images, including video or photograph, or audio of another person's sexual activity or intimate parts, without that person's consent.

    d.  The distribution of images, including video or photographs, or audio of another person's sexual activity or intimate parts, if the individual distributing the images or audio knows or should have known that the person depicted in the images or audio did not consent to the disclosure.

    e.  The viewing of another person's sexual activity or intimate parts, in a place where that other person would have a reasonable expectation of privacy, without that person's consent, for the purpose of arousing or gratifying sexual desire.

6.  ***Dating Violence and Domestic Violence***

**Dating Violence** means physical violence or threat of physical violence committed by a

person—

    a. who is or has been in a social relationship of a romantic or intimate nature with the Complainant; **and**

    b. where the existence of such a relationship shall be determined based on a consideration of the following factors:
    I. The length of the relationship.
    II. The type of relationship.
    III. The frequency of interaction between the persons involved in the relationship.

    **Domestic Violence** means physical violence or threat of physical violence committed by a current or former spouse or intimate partner of the Complainant, by a person with whom the Complainant shares a child in common, by a person who is cohabitating with or has cohabited with the Complainant as a spouse or intimate partner, or by a person similarly situated to a spouse of the Complainant.

    **Physical violence** means physical conduct that intentionally or recklessly threatens the health and safety of the recipient of the behavior, including assault.

7. *Stalking*
**Stalking** means engaging in a Course of Conduct directed at a specific person that would cause a reasonable person to fear for the safety of self or others' safety or to suffer Substantial Emotional Distress. For purposes of this definition:

    • **Course of Conduct** means two or more acts, including but not limited to, acts in which one party directly, indirectly, or through third parties, by any action, method, device, or means, follows, monitors, observes, surveils, threatens, or communicates to or about the other party, or interferes with the other party's property.

    • **Substantial Emotional Distress** means significant mental suffering or anguish that may but does not necessarily require medical or other professional treatment or counseling.

8. *Prohibited Consensual Relationships*
A Prohibited **Consensual Relationship** is a consensual sexual or romantic relationship between an Employee and any Student or Employee over whom they exercise direct or otherwise significant academic, administrative, supervisory, evaluative, counseling, or extracurricular authority.

9. *Retaliation*
**Retaliation** means that a substantial motivating reason for an Adverse Action taken against a person was because the person has or is believed to have:

    a. Exercised their rights under this Nondiscrimination Policy,

    b. Reported or opposed conduct which was reasonably and in good faith believed to be in violation of this Nondiscrimination Policy,

    c. Assisted or participated in an investigation/proceeding under this Nondiscrimination Policy, regardless of whether the Complaint was substantiated,

    d. Assisted someone in reporting or opposing a violation of this Nondiscrimination Policy or assisted someone in reporting or opposing Retaliation under this

Nondiscrimination Policy.

**Adverse Action** means an action engaged in by the Respondent that has a substantial and material adverse effect on the Complainant's ability to participate in a university program, activity, or employment. Minor or trivial actions or conduct not reasonably likely to do more than anger or upset a Complainant does not constitute an Adverse Action.

Retaliation may occur whether or not there is a power or authority differential between the individuals involved.

# B. Definitions of Capitalized Terms

The following definitions of capitalized terms apply to this Nondiscrimination Policy, the Procedures for Complaints of Discrimination, Harassment, Sexual Misconduct, Sexual Exploitation, Dating Violence, Domestic Violence, Stalking, and Retaliation Made Against an Employee or Third-Party, and the Procedures for Complaints of Discrimination, Harassment, Sexual Misconduct, Sexual Exploitation, Dating Violence, Domestic Violence, Stalking, and Retaliation Made Against a Student:

1. **Advisor:** The Complainant and the Respondent may each elect to be accompanied by an Advisor to any meeting or interview regarding the allegations. The Advisor may be anyone, including a union representative from the Complainant's or Respondent's collective bargaining unit, an attorney, or, in the case of the Complainant, a Sexual Assault Victim's Advocate. The Advisor may not answer questions regarding the subject matter of the investigation for the Complainant or the Respondent. However, the Advisor may observe and consult with the Complainant or Respondent.

2. **Age,** with respect to employment discrimination, refers to the chronological age of any individual who has reached their 40th birthday.  Age based stereotype refers to generalized opinions about matters including the qualifications, job performance, health, work habits, and productivity of individuals over forty.
   With respect to discrimination in non-employment programs and activities, Age means how old a person is, or the number of years from the date of a person's birth.
   **Age** is a Protected Status.

3. **California State University (CSU)** or **University** means the 23 campus system of the California State University, including the CO.

4. **Campus** means any of the 23 campuses of the CSU or the CO.

5. **Complainant** means an individual who is eligible to file a Complaint or to report a violation of this Nondiscrimination Policy. It also includes any person who is reported to have **experienced** a violation of this Nondiscrimination Policyin cases where some other person has made a report on that person's behalf. A Complainant may also be referred to as a Party to the Complaint.

6. **Complaint** means a report that is received by the Title IX Coordinator/DHR Administrator alleging Discrimination, Harassment, Sexual Misconduct, Sexual Exploitation, Dating Violence, Domestic Violence, Stalking, or Retaliation, against the CSU, an Employee, a Student, or a Third Party. The Title IX Coordinator/DHR Administrator will respond to the Complaint in accordance with the Procedures accompanying this Nondiscrimination Policy.

7. **DHR (Discrimination, Harassment, and Retaliation) Administrator** means the Management Personnel Plan (MPP) Employee at each campus who is designated to administer this Nondiscrimination Policy and coordinate compliance with the laws prohibiting Discrimination, Harassment and Retaliation. The DHR Administrator may delegate tasks to one or more designees, provided that any designee shall be an MPP Employee or an external consultant, and the DHR Administrator retains overall responsibility and authority.

8. **Disability** means:

    a. Having a physical or mental condition that limits a major life activity. "Limits" means making the achievement of a major life activity difficult. "Limits" is determined without regard to mitigating measures such as medications, assistive devices, prosthetics, or reasonable accommodations, unless the mitigating measure itself limits a major life activity. A "major life activity" is broadly construed and includes physical, mental, and social activities (such as walking, talking, seeing, hearing) and working; or

    b. Having a known history of a qualifying impairment; or

    c. Being regarded or treated as having or having had a qualifying impairment; or

    d. Being regarded or treated as having or having had such an impairment that has no presently disabling effects but may become a qualifying impairment in the future.

    Disability includes HIV and AIDS. Disability is a Protected Status.

9. **Employee** means a person legally holding a position in the CSU. This term includes full-time, part-time, permanent, tenured, probationary, temporary, intermittent, casual, and per-diem positions. This term does not include auxiliary or foundation Employees or other Third Parties.

10. **Gender** means sex, and includes Gender Identity, Gender Expression, and Sex Stereotyping. Sex includes, but is not limited to pregnancy, childbirth, breastfeeding or any related medical conditions.
    **Gender Identity** means a person's identification as female, male, nonbinary, or another gender different from the person's sex assigned at birth.
    **Nonbinary** is a general term for people whose gender identities fall outside of the binary conception of male or female. Nonbinary people may or may not identify as transgender.
    **Transgender** is a general term that refers to a person whose gender identity differs from their sex assigned at birth. A transgender person may or may not medically transition and may identify as male, female, or nonbinary.
    **Gender Expression** means a person's gender-related appearance or behavior whether or not stereotypically associated with the person's assigned sex at birth.
    **Sex Stereotype** means an assumption about a person's appearance or behavior or about an individual's ability or inability to perform certain kinds of work based on a myth, social expectation, or generalization about the individual's sex.
    Gender is a Protected Status.

11. **Genetic Information** means:

    a. The person's genetic tests.

    b. The genetic tests of the person's family members.

    c. The manifestation of a disease or disorder in the person's family members.

d. Any request for, or receipt of genetic services, or participation in clinical research that includes genetic services, by a person or any person's family member.

Genetic Information does not include information about the sex or age of any person.

**Genetic Information** is a Protected Status.

12. **Investigator** means the person tasked by a campus with investigating a Complaint. The Investigator will not be within the administrative control or authority of any Complainant or Respondent in a matter they are investigating. The Investigator may be the DHR Administrator, the Title IX Coordinator, or their designee, provided that any designee shall be an MPP Employee or an external consultant.

13. **Marital Status** means an individual's state of marriage, non-marriage, divorce or dissolution, separation, widowhood, annulment, or other marital state, including domestic partnership. **Marital Status** is a Protected Status.

14. **Medical Condition** means either of the following:

    a. Any health impairment related to or associated with a diagnosis of cancer or a record or history of cancer; or

    b. Genetic characteristics. For purposes of this section, "genetic characteristics" means either of the following:

        i. Any scientifically or medically identifiable gene or chromosome, or combination or alteration thereof, that is known to be a cause of a disease or disorder in a person or offspring, or that is determined to be associated with a statistically increased risk of development of a disease or disorder, and that is presently not associated with any symptoms of any disease or disorder; or

        ii. Inherited characteristics that may derive from the individual or family member, that are known to be a cause of a disease or disorder in a person or offspring, or that are determined to be associated with a statistically increased risk of development of a disease or disorder, and that are presently not associated with any symptoms of any disease or disorder.

    **Medical Condition** is a Protected Status.

15. **Management Personnel Plan (MPP) Employee** means an employee who has been designated as a "management" or "supervisory" employee under the provisions of the Higher Education Employer-Employee Relations Act.

16. **Nationality** includes citizenship, country of origin, and national origin. It also includes language use restrictions and holding or presenting a driver's license issued under section 12801.9 of the Vehicle Code.
**Nationality** is a Protected Status.

17. **Parties** to a Complaint are the Complainant(s) and the Respondent(s).

18. **Preponderance of the Evidence** means the greater weight of the evidence; i.e., that the evidence on one side outweighs, preponderates over, or is more than, the evidence on the other

side.

19. **Protected Status** includes Age, Disability (physical or mental), Gender (or sex), Genetic Information, Gender Identity (including transgender), Gender Expression, Marital Status, Medical Condition, Nationality, Race or Ethnicity (including color, caste, or ancestry), Religion or Religious Creed, Sexual Orientation, and Veteran or Military Status.

20. **Race or Ethnicity** includes ancestry, color, caste, ethnic group identification, and ethnic background.
    **Race or Ethnicity** is a Protected Status.

21. **Religion** or **Religious Creed** includes all aspects of religious belief, observance, and practice, including religious dress and grooming practices, and includes agnosticism and atheism. Religious dress and grooming practices, such as wearing religious clothing, head or face covering, jewelry, and artifacts, are part of a Complainant's religious observance or belief.
    **Religion** or **Religious Creed** is a Protected Status.

22. **Remedies** are individualized services offered as appropriate, as reasonably available, and without fee or charge to the Complainant at the conclusion of the investigation, and where applicable, hearing process where the Respondent has been found responsible.
    Remedies may include counseling, extensions of deadlines or other course or work-related adjustments, modifications of work or class schedules, campus escorts, restrictions on contact between the parties, changes in work or housing locations, leaves of absence, increased security and monitoring of certain areas of the campus, and other similar measures. The Title IX Coordinator/DHR Administrator is responsible for determining the reasonableness of the requested Remedy and coordinating the effective implementation of Remedies.

23. **Respondent** means the CSU, a CSU Employee, a Student, or a Third Party who is alleged to have violated this Nondiscrimination Policy.

24. **Sexual Assault Victim's Advocate** refers to Employees or third-party professionals designated to support Complainants reporting Sexual Harassment, Sexual Misconduct, Sexual Exploitation, Dating Violence, Domestic Violence, or Stalking. They must be certified and have received specialized training to provide options and assistance, including but not limited to the provision of information about available options in the Complaint, law enforcement, legal, and medical processes, and with emotional and decision-making support. Sexual Assault Victim's Advocates may serve as the Complainant's Support Advisor and assist in seeking services. They are committed to maintaining the highest possible level of confidentiality permissible under state and federal law in their communications with the persons they assist.

25. **Sexual Orientation** means a person's identity in relation to the gender or genders to which they are sexually or romantically attracted and includes but is not limited to heterosexuality, gay, lesbian, bisexuality, and queer.
    **Sexual Orientation** is a Protected Status.

26. **Student** means an applicant for admission to the CSU, an admitted CSU Student, an enrolled CSU Student, a CSU extended education Student, a CSU Student between academic terms, a CSU graduate awaiting conferral of a degree, a CSU student currently serving a suspension or interim suspension, and a CSU Student who withdraws from the university while a disciplinary matter (including investigation) is pending.

27. **Supportive Measures** are individualized services offered as appropriate, as reasonably available, and without fee or charge to the Complainant or Respondent regardless of whether a

Formal Complaint is filed. Supportive Measures are designed to restore or preserve equal access to CSU education programs or activities, or the workplace without unreasonably burdening the other Party, including to protect the safety of all Parties or the educational or work environment.

Supportive Measures may include counseling, extensions of deadlines or other course or work-related adjustments, modifications of work or class schedules, campus escorts, mutual restrictions on contact between the parties, changes in work or housing locations, leaves of absence, increased security and monitoring of certain areas of the campus, and other similar measures.

The Title IX Coordinator/DHR Coordinator is responsible for coordinating the effective implementation of Supportive Measures. Supportive Measures will remain confidential except when it is not possible to maintain confidentiality in order to provide the Supportive Measures.

28. **Support Person** means a person who provides emotional support to a Party and may accompany the Party to all hearings under Track 2 of the *Procedures for Complaints of Discrimination, Harassment, Sexual Misconduct, Sexual Exploitation, Dating Violence, Domestic Violence, Stalking, and Retaliation Made Against a Student*.

29. **Third-Party** means a person other than an Employee or a Student. Examples include employees of auxiliary organizations, unpaid interns, volunteers, independent contractors, vendors, and their employees, and visitors.

30. **Title IX** means Title IX of the Education Amendments of 1972.

31. **Title IX Coordinator** means the campus MPP Employee appointed by the campus president to coordinate compliance with Title IX; VAWA/Campus SaVE Act; and other related state and federal laws prohibiting Discrimination, Harassment and Retaliation based on Gender or sex, including Sex Discrimination, Sexual Harassment, Sexual Misconduct, Dating and Domestic Violence and Stalking.

32. **VAWA** means the Violence Against Women Reauthorization Act of 2013 (which amends the Jeanne Clery Disclosure of Campus Crimes Statistics Act, commonly known as the Clery Act) (20 U.S.C. 1092(f)), under its Campus Sexual Violence Elimination Act provision (Campus SaVE Act).

33. **Veteran or Military Status** means service in the uniformed services.
    **Veteran or Military Status** may be a Protected Status.

34. **Working Days** are defined as Monday through Friday, excluding all official holidays or campus closures at the campus where the Complaint originated or at the CO where an Appeal is reviewed.

# C. Track 1: Federal Mandated Hearing Process Prohibited Conduct Defined

The following definitions of prohibited conduct apply to cases that are determined by the campus Title IX Coordinator as meeting the requirements to proceed under Track 1 of the procedures accompanying this Nondiscrimination Policy.

1. **Sexual Harassment** means conduct on the basis of Sex that satisfies one or more of the following:

a. An Employee conditioning the provision of an aid, benefit, or service of the University on an individual's participation in unwelcome sexual conduct;

b. Unwelcome conduct determined based on the reasonable person standard to be so severe, pervasive, **and** objectively offensive that it effectively denies a person equal access to an Education Program or Activity.

c. **Sexual Assault** includes the following:

   I. **Rape** is the penetration, or attempted penetration, no matter how slight, of the vagina or anus with any body part or object, or oral penetration by a sex organ of another person, without the Affirmative Consent of the Complainant. Rape also includes the attempted penetration, no matter how slight, of the vagina or anus with any body part or object, or oral penetration by a sex organ of another person, without the Affirmative Consent of the Complainant, with the present ability and the intent to commit Rape.

   II. **Fondling** is the touching of the private body parts of another person for the purpose of sexual gratification, without the Affirmative Consent of the victim, including instances where the Complainant is incapable of giving Affirmative Consent because of their age or because of their temporary or permanent mental incapacity.

   III. **Incest** is sexual intercourse between persons who are related to each other within the degrees wherein marriage is prohibited by law.

   IV. **Statutory Rape** is sexual intercourse with a person who is under the age of 18 years, the California statutory age of consent.

   The definition of Affirmative Consent is that under Article VII.A.3 above.

d. **Dating Violence** means physical violence or threat of physical violence committed by a person:

   I. who is or has been in a social relationship of a romantic or intimate nature with the Complainant; **and**

   II. where the existence of such a relationship shall be determined based on a consideration of the following factors:

      i. The length of the relationship.

      ii. The type of relationship.

      iii. The frequency of interaction between the persons involved in the relationship.

e. **Domestic Violence** means physical violence or threat of physical violence committed by a current or former spouse or intimate partner of the Complainant, by a person with whom the Complainant shares a child in common, by a person who is cohabitating with or has cohabitated with the Complainant as a spouse or intimate partner, or by a person similarly situated to a spouse of the Complainant.

f. **Stalking** means engaging in a course of conduct directed at a specific person that

would cause a reasonable person to:

    I.   fear for their safety or the safety of others; or

    II.   suffer substantial emotional distress.

# Procedures for Complaints of Discrimination, Harassment, Sexual Misconduct, Sexual Exploitation, Dating Violence, Domestic Violence, Stalking, and Retaliation Made Against a Student

## Article I. Procedure Scope and Applicability

## A. Scope

The procedures below are used for Complaints that a Student is alleged to have engaged in Discrimination, Harassment, Sexual Misconduct, Sexual Exploitation, Dating or Domestic Violence, Stalking, or Retaliation, in violation of the ***CSU Policy Prohibiting Discrimination, Harassment, Sexual Misconduct, Sexual Exploitation, Dating Violence, Domestic Violence, Stalking, and Retaliation*** ("the Nondiscrimination Policy"). These Procedures are effective January 1, 2022, and apply to all Complaints received on or after that date.

The campus will investigate or otherwise respond to reports of alleged misconduct **committed by a Student** in accordance with these procedures if the alleged misconduct violates the Nondiscrimination Policy and:

1. occurred on campus; **or**

2. involved or impacted a campus program or activity (including campus employment); **or**

3. affected a Student's or Employee's ability to participate in a program, activity, or employment; **AND**

4. The alleged misconduct was **committed by** a person who at the time of the alleged misconduct was a Student.

Depending on the circumstances, the campus response may or may not include a formal investigation.[10]

These procedures are only used to address conduct that may violate the Nondiscrimination Policy. Alleged misconduct by Students that does not fall under the Nondiscrimination Policy is addressed under Executive Order 1098 ***Student Conduct Procedures***.

The campus will respond in a timely and appropriate manner to all Complaints and will take appropriate action to prevent continuation of and correct Nondiscrimination Policy violations.

Students who are found to have violated the Nondiscrimination Policy will be subject to discipline in

accordance with state and federal requirements, student conduct rules, and other CSU policies.

## B. Applicability of Provisions to Sex Discrimination and Other Forms of Discrimination

There are certain provisions of these procedures (Article III.B.iii. a., Article IV.B, and Article VI.E) that apply only to certain sex discrimination Complaints (Sexual Misconduct, Sexual Exploitation, Dating Violence, Domestic Violence, and Stalking) and do not apply to Discrimination, Harassment, and Retaliation (DHR) Complaints. Those provisions include the note "(Applies only to Complaints of sex discrimination)".

## C. Complaints Involving a Respondent Who Is Both a Student and an Employee

For Complaints against a Student who is also a CSU Employee, where the alleged conduct arose out of the **Respondent's status as a Student** and not as an Employee, these procedures apply.

A Complaint against a Student-Employee where the alleged conduct arose out of the **Respondent's status as an Employee** and not their status as a Student, should be made using the Procedures for Complaints of Discrimination, Harassment, Sexual Misconduct, Sexual Exploitation, Dating Violence, Domestic Violence, Stalking, and Retaliation Made Against an Employee or Third-Party.

Capitalized terms in these Procedures are defined in Article VII.B of the Nondiscrimination Policy.

# Article II. The Track System

There are three possible sets of procedures ("tracks") for formal resolution of Complaints against a Student (Track 1, Track 2, Track 3) as required by federal and state law. Which procedure applies to any given Complaint will depend on a variety of factors described below. Questions about which procedures apply to any specific case should be directed to the campus Title IX Coordinator and/or the Discrimination, Harassment, and Retaliation Administrator ("DHR Administrator").

## A. Track 1: Federal Mandated Hearing Process

**Track 1** applies when the alleged conduct:

    a. Meets the definition of Sexual Harassment as defined in Article VII.C of the Nondiscrimination Policy; **and**

    b. Occurred in the United States; **and**

    c. Occurred in an education program or activity at the university, as defined in **Track 1**

*[NOTE: Articles IV through XI are not applicable to complaints under Track 1. Please reference the above link for the applicable Track 1 Procedures.]*

## B. Track 2: State Mandated Hearing Process

**Track 2** applies when:

    a. The Complaint is against a Student; **and**

    b. The Complaint is one of Sexual Misconduct, Dating Violence, or Domestic Violence; **and**

    c. The credibility of one (or both) of the Complainant and the Respondent ("the Parties") , or any witness is central to the determination as to whether the Student violated the Nondiscrimination Policy; **and**

    d. The Student is facing a severe disciplinary sanction (expulsion or suspension) if found to be in violation of the Nondiscrimination Policy.

## C. Track 3: Non-Hearing Process

**Track 3** applies to all other Complaints under these procedures that allege a Nondiscrimination Policy violation.

Prior to a Notice of Investigation being sent to the Complainant and the Respondent, the Title IX Coordinator/DHR Administrator will determine which Track applies.

Under **Track 1 or 2**, the campus will conduct an investigation, and the Complaint will proceed to a hearing unless otherwise resolved. An Investigator will first interview the Complainant, the Respondent, and any witnesses, and gather any documentary evidence. The hearing will occur once an investigation has finished. During the hearing, a hearing officer listens to the witnesses, including the Complainant and the Respondent, and analyzes the evidence, before deciding whether or not the Respondent violated the Nondiscrimination Policy.

Under **Track 3**, an Investigator interviews the Complainant, the Respondent, and any witnesses, gathers any documentary evidence, analyzes the evidence, **and** decides whether or not the Respondent violated the Nondiscrimination Policy. There is no hearing in **Track 3** cases.

# Article III. Making a Report
## A. How to Report

The campus Title IX Coordinator is the designated administrator to receive reports of Sex Discrimination, Sexual Harassment, Sexual Misconduct, Sexual Exploitation, Dating Violence, Domestic Violence, Stalking, and associated Retaliation. The campus Title IX Coordinator's contact information can be found on the Systemwide website.

The campus DHR Administrator is the designated administrator to receive reports of all other misconduct prohibited by the Nondiscrimination Policy. The campus DHR Administrator's contact information can be found on the Systemwide website.

Complaints that include allegations falling under both areas may be reported to either the Title IX Coordinator or the DHR Administrator who will work together to coordinate and determine who will oversee the Complaint process.

# B. General Principles

i. **Individuals Who May Make a Report**
Any person may report an alleged violation of the Nondiscrimination Policy.

ii. **Timeframe for Making a Report**
Reports may be made at any time, and individuals are encouraged to report an alleged violation of the Nondiscrimination Policy regardless of how much time has passed. The campus' ability to interview witnesses and otherwise investigate and take action, however, may be limited by various factors, such as the passage of time. In all cases, the Title IX Coordinator/DHR Administrator is available to discuss Supportive Measures with the Complainant at any time, regardless of how much time has passed since the incident.

iii. **Addressing Concerns About Reporting**
The campus' primary concern is the safety of the campus community. Any person who reports an alleged violation of the Nondiscrimination Policy should discuss any such concerns with the Title IX Coordinator/DHR Administrator.

    a. ***Student Concerns about Reporting Sexual Misconduct, Sexual Exploitation, Dating Violence, Domestic Violence, or Stalking (Applies only to Complaints of sex discrimination)***
Any Student who participates as a Complainant or witness in a Complaint process (including investigation or hearing) relating to Sexual Misconduct, Sexual Exploitation, Dating Violence, Domestic Violence, or Stalking that fall under these procedures will not be subject to discipline for related violations of the Standards for Student Conduct at or near the time of the incident, *unless* the campus determines that the violation was egregious, including, but not limited to, an action that places the health or safety of any other person at risk or involves plagiarism, cheating, or academic dishonesty. The campus may, however, take other appropriate action including having an educational discussion with the Student.

    b. ***Concerns about Retaliation for Reporting.***
The Nondiscrimination Policy prohibits Retaliation. If a Student or Employee is reluctant to report because they fear retaliation, they should discuss their concerns with the Title IX Coordinator/DHR Administrator as soon as possible.

iv. **Delivery Methods for Campus Communication with Parties**
Communication with the Parties regarding a Complaint, an investigation, or hearing will be sent to their designated CSU campus email address, unless the Party has specifically requested in writing to the Title IX Coordinator/DHR Administrator, Investigator, or hearing coordinator that communication be sent to a different email address. Communication with Parties who are neither Students nor Employees will be sent to an email address that they designate.
Any communications relating to the outcome of an investigation or hearing, including any changes to the outcome or when the outcome becomes final, will be provided in writing simultaneously to the Complainant and the Respondent.

v. **Reasonable Timeframes**
Unless a timeframe is specifically stated, all procedures outlined in these procedures will be carried out in a reasonable timeframe or manner. Reasonableness will mean that under the

given set of circumstances, processes will be carried out in a fair and rational manner.

# Article IV. Campus Procedure for Responding to a Report

Regardless of whether a Complaint has been made, when the campus becomes aware of possible Discrimination, Harassment, Sexual Misconduct, Sexual Exploitation, Dating Violence, Domestic Violence, Stalking, or Retaliation, the Title IX Coordinator/DHR Administrator will investigate, or otherwise address the matter.

## A. Outreach to Complainant

After receiving a report, the Title IX Coordinator/DHR Administrator will assess the report and provide outreach to the possible Complainant named in the report. This outreach will include the following:

a. A statement that the campus has received a report of Discrimination, Harassment, Sexual Misconduct, Sexual Exploitation, Dating Violence, Domestic Violence, Stalking, or Retaliation.

b. A description of the role of the Title IX Coordinator/DHR Administrator.

c. Information regarding counseling and other support resources.

d. A statement regarding the importance of preserving evidence.

e. A statement that the Complainant may, but is not required to, report to law. enforcement any allegations that could constitute criminal behavior.

f. A request for the Complainant to meet with the Title IX Coordinator/DHR Administrator, or other designated employee, to discuss the Complainant's options and next steps.

g. A statement that the Complainant can be accompanied by an Advisor of their choice during any meeting relating to the report and any subsequent Complaint process.

h. Information regarding potential Supportive Measures, where applicable.

i. A brief summary of the investigation procedures.

j. An explanation of how the campus responds to reports of Nondiscrimination Policy violations and a description of potential disciplinary consequences.

k. A statement that retaliation for making a Complaint or participating in a Complaint process is prohibited by the Nondiscrimination Policy.

## B. Written Information Regarding Rights and Options for Complainants Reporting Sexual Misconduct, Sexual Exploitation, Dating Violence, Domestic Violence, or Stalking (Applies only to Complaints of sex discrimination)

Along with the information provided in the outreach communication, the Title IX Coordinator will provide

Complainants alleging Sexual Misconduct, Sexual Exploitation Dating Violence, Domestic Violence or Stalking, with the information in Attachment D - Rights and Options for Victims of Sexual Misconduct/ Sexual Assault, Sexual Exploitation, Dating And Domestic Violence, And Stalking

# C. Initial Assessment

i. **Intake Meeting for Complainants**
The Title IX Coordinator/DHR Administrator will conduct an intake meeting with any Complainant who responds to outreach communication, or otherwise makes a report of a potential Nondiscrimination Policy violation to discuss the Complainant's options, explain the process, and provide information about Supportive Measures.

ii. **Advisors**
The Complainant and Respondent may choose to be accompanied by an Advisor of their choice during meetings or any stage of the Complaint process.
The Parties also have the right to consult with an attorney, at their own expense, or a union representative at any stage of the process if they wish to do so. An attorney or union representative may serve as a Party's chosen Advisor.
The unavailability of a specific Advisor will not unduly interfere with prompt scheduling.

iii. **Confidentiality Requests and Requests Not to Investigate**

a. *Confidentiality Requests*
Confidentiality of reports, Complaints, and associated processes will be provided whenever possible. To protect the campus community and to facilitate investigations and/or Supportive Measures, when necessary, certain information may be shared on a "need-to-know" basis. Therefore, a campus cannot guarantee confidentiality.

b. *Requests Not to Investigate*
When a Complainant requests that no investigation occur, the Title IX Coordinator/ DHR Administrator will balance the request against the campus' duty to provide a safe and non-discriminatory environment for all members of the campus community. Relevant factors include whether:

a. There are multiple or prior reports of misconduct against the Respondent.

b. The Respondent poses an imminent threat to the campus community, which may include violence, threats of violence, use of a weapon, physical restraints, or engaged in battery.

c. There is a power imbalance between the Complainant and Respondent.

d. The Complainant reasonably believes that they will be less safe if their name is disclosed or an investigation is conducted.

e. The Title IX Coordinator/DHR Administrator anticipates that it will be possible to conduct a thorough investigation and obtain relevant evidence without the Complainant's cooperation.

If the Complainant is an **Employee**, the campus will also consider its obligation to maintain a safe work environment in determining whether an investigation is necessary.

c. ***Communication and Safety Considerations***

Where the Title IX Coordinator/DHR Administrator declines a request for confidentiality or a request not to proceed with an investigation, the Complainant will be informed *in advance of* the Title IX Coordinator/DHR Administrator disclosing the Complainant's identity and details of the Complaint or report to the Respondent, or initiating an investigation. The Title IX Coordinator/DHR Administrator will work with campus partners to take steps to arrange reasonable safety measures for the Complainant if appropriate. The Title IX Coordinator/DHR Administrator will honor a Complainant's request that the Respondent be informed that the Complainant had asked the campus not to investigate or seek discipline.

iv. **Supportive Measures**

The Title IX Coordinator/DHR Administrator will describe and offer Supportive Measures to Complainants during the initial assessment (even if the Complaint is ultimately not investigated), and to Respondents during the initial meeting.

If a request for confidentiality or no investigation is granted, the Title IX Coordinator/DHR Administrator will nevertheless take reasonable steps to limit the effects of the alleged Discrimination, Harassment, Sexual Misconduct, Sexual Exploitation, Dating Violence, Domestic Violence, Stalking, or Retaliation, and prevent its recurrence without initiating formal action against the Respondent or revealing the identity of the Complainant. Examples include increased temporary monitoring, supervision, or security at locations or activities where the alleged misconduct occurred; providing additional training and education materials for students and employees; or conducting climate surveys.

The Title IX Coordinator/DHR Administrator is responsible for coordinating the effective implementation of Supportive Measures if requested and available.

Reasonable steps will be taken to provide for the safety of a Complainant while keeping the Complainant's identity confidential as appropriate and if possible. These steps may include changing living arrangements or course schedules, assignments, or tests. The Complainant will be notified that the steps the campus will take may be limited by the request for confidentiality.

v. **No-Contact Directives**

No-contact directives may be issued as a Supportive Measure, Remedy, or in connection with an Informal Resolution Agreement with or without an investigation. When reasonably requested by a Complainant or otherwise determined to be warranted (to protect health and safety or to preserve the integrity of the investigation), the campus will issue an interim no-contact directive prohibiting the Respondent from contacting the Complainant while the investigation is pending (unilateral no-contact directive). No-contact directives that are not part of an Informal Resolution Agreement must meet the following requirements:

• No-contact directives that limit an individual's movement on campus may only be issued where the conduct alleged is egregious or where an objective threat of physical harm exists.

• A mutual no-contact directive (against both Parties) may only be issued prior to an investigation outcome. Mutual no-contact directives will not be issued automatically. The Title IX Coordinator/DHR Administrator must consider, based on the circumstances of each case, whether a mutual no-contact directive is necessary or justifiable to protect the Respondent's safety or well-being, or to address concerns about interference with an investigation.

- If there is a finding that the Nondiscrimination Policy has been violated and a mutual no-contact directive is already in effect, absent extenuating circumstances, the no-contact directive will promptly be converted to a unilateral no-contact directive (against only the Respondent).

- Any no-contact directive (whether mutual or unilateral) will be delivered to both Parties and will be accompanied by a written explanation of the terms of the directive and the consequences for violating the no-contact directive. A no-contact directive is intended to be temporary and should be periodically assessed to confirm the continued need for, and appropriateness of, its specific terms (conditions), including whether it should be mutual (against both parties), or unilateral (only against the Respondent). Violations of no-contact directives will be addressed by the campus Student Conduct Administrator in the same manner as any violation of the Student Conduct Code. If the alleged violation of the no-contact directive is itself a violation of the Nondiscrimination Policy, the matter will be referred to the Title IX Coordinator/DHR Administrator.

vi. **Criminal Complaints and Concurrent Investigations**
Complainants will be informed during the intake meeting of their right to make a criminal complaint with university police or other appropriate law enforcement. The Title IX Coordinator/DHR Administrator will offer to assist the Complainant and will assure them that filing a criminal complaint will not unreasonably delay the campus investigation.
A campus will ordinarily not wait until the conclusion of a criminal investigation to begin its own investigation. Although it may be necessary to temporarily delay the campus investigation while law enforcement is gathering evidence, once notified that law enforcement has completed the fact gathering portion of their investigation, the campus will promptly resume and complete its own investigation.
Individuals who first report to university police will be encouraged to also make a Complaint with the Title IX Coordinator/DHR Administrator.

vii. **Interim Suspension**
An interim suspension may be considered for a Student Respondent, where there is reasonable cause to believe that interim suspension of that Student is necessary to protect the personal safety of persons within the campus community or campus property, and to ensure the maintenance of order during an investigation. Such interim suspensions will be implemented in accordance with the procedures under Executive Order 1098 *Student Conduct Procedures* and will only remain in effect during the Complaint process until determined to be no longer necessary. In determining whether an interim suspension is necessary, the Title IX Coordinator/DHR Administrator will coordinate with the student conduct administrator to ensure appropriate on-going assessment and implementation occurs.

viii. **Transcript Notations**
If a Respondent withdraws, transfers, or disenrolls from the campus pending an investigation or disciplinary proceeding concerning a violation of the Nondiscrimination Policy, transcript notations may be appropriate and will be addressed under Executive Order 1098 *Student Conduct Procedures*.

# D. Complaints

The Title IX Coordinator/DHR Administrator will determine whether to open an investigation after making

CSU Policy Prohibiting Discrimination, Harassment, Sexual Misconduct, Sexual Exploitation, Dating Violence, Domestic Violence, Stalking, and Retaliation (Nondiscrimination Policy). Retrieved 4/28/2023. Official copy at http://calstate.policystat.com/policy/12891658/. Copyright © 2023 The California State University.

43

RJN Exhibit 1

a preliminary inquiry into the allegations. An investigation may not be warranted where the reported information is insufficient. These determinations will be documented in writing by the Title IX Coordinator/DHR Administrator and maintained in accordance with systemwide records retention policies.

i. **Complaint Accepted for Investigation**
Within **10 Working Days** of the date of an intake meeting or receipt of a request for investigation from the Complainant (whichever is later), or making a determination that an investigation is necessary without a request from or participation by the Complainant, the Title IX Coordinator/DHR Administrator will send a notice of investigation to the Complainant and Respondent.

ii. **Complaint Not Accepted for Investigation**
If the Title IX Coordinator/DHR Administrator determines that the Complaint fails to allege a violation of the Nondiscrimination Policy, the Title IX Coordinator/DHR Administrator will, within **10 Working Days** of the date of the intake or receipt of a written request for investigation (whichever is later), notify the Complainant in writing that the Complaint will not be investigated without further information. The Title IX Coordinator/DHR Administrator will refer the Complaint to another campus office if appropriate and will notify the Complainant of any referral. The Title IX Coordinator/DHR Administrator will retain a record of the Complaint, the written determination and any referrals made to another campus office.

iii. **Investigation Where a Student Complainant Does Not Participate**
A **Student** Complainant will not be required to participate in an investigation if they do not wish to do so. In cases where the Complainant does not want to pursue an investigation, the Title IX Coordinator/DHR Administrator should inform the Complainant that the ability to take corrective action may be limited.
If a Student Complainant chooses not to participate from the outset (after the Title IX Coordinator/DHR Administrator receives a report), the Title IX Coordinator/DHR Administrator will evaluate whether it will be possible to move forward without their participation, including whether the non-participation will impact the campus' ability to conduct a meaningful investigation. Based on this assessment, the Title IX Coordinator/DHR Administrator has discretion to initiate an investigation without the Complainant's participation. The Title IX Coordinator/DHR Administrator will document the basis for the decision to initiate or to not initiate the investigation.
When the Title IX Coordinator/DHR Administrator decides to proceed with an investigation without a Student Complainant's participation, the Title IX Coordinator/DHR Administrator will make the Complaint on behalf of the campus. The Title IX Coordinator/DHR Administrator will not serve as the Complainant and will remain neutral in applying the Nondiscrimination Policy and these Procedures. The Student Complainant will be provided the same notices and updates as the Respondent throughout the investigation, and where applicable, hearing process(es), unless they decline in writing to receive such communications.

# E. Notice of Investigation

At the onset of the investigation, the Title IX Coordinator/DHR Administrator will simultaneously provide both Parties a notice of investigation. The notice of investigation will include the following:

• A summary of the Complaint allegations (e.g., "who," "what," "when," and "where").

- A copy of, or internet link to, these procedures and the Nondiscrimination Policy, as well as a summary of the alleged Nondiscrimination Policy violations.

- A description of the investigation and resolution procedure (including the right to hearing, where applicable, and appeal).

- The estimated timeline for completion of the investigation.

- A description of the university's Policy against Retaliation.

- Information about the Parties' right to an Advisor, including the right to consult with an attorney, at their own expense, or a union representative, at any stage of the process and the right to a Support Person at a hearing (under Track 2).

- Information regarding counseling and other support resources.

- A statement that the Complainant and Respondent will have equal opportunities to identify relevant witnesses and evidence in connection with the investigation and at any hearing, including the ability to:

    A.  submit documentary information to the Investigator;

    B.  submit a list of potential witnesses to the Investigator; or

    C.  request that the Investigator attempt to collect additional relevant evidence.

- A statement that any evidence available, but not disclosed during the investigation might not be considered in any findings made, including at any hearing, and likely will not be considered for purposes of appeal.

- A statement that the Complainant and Respondent will be provided with periodic status updates in accordance with the timelines established in this procedure.

- A statement regarding the possible range of disciplinary outcomes.[11]
  If new but related allegations are raised during the investigation that are materially different from those described in the notice of investigation, the Title IX Coordinator/DHR Administrator will issue a revised Notice of Investigation along with a corresponding revised timeline for completion, if appropriate, to the Parties.

# Article V. Discretionary Dismissal

## A. Discretionary Dismissal

At any time after a Complaint has been accepted for investigation, it is within the discretion of the Title IX Coordinator/DHR Administrator to dismiss a Complaint, or any part of a Complaint, if:

1.  the Complainant notifies the Title IX Coordinator/DHR Administrator in writing that they would like to withdraw the Complaint or any part of it: **or**

2.  if the specific circumstances prevent the campus from gathering evidence necessary to reach a determination as to the Complaint or part of the Complaint.

## B. Notice Requirement

The Title IX Coordinator/DHR Administrator will send to the Parties, at the same time, written notice of a discretionary dismissal, the reason(s) for the dismissal, and the right to appeal the dismissal. The notice

will also inform the Parties if the Complaint will be referred to another campus office for resolution.

# C. Appeal after Discretionary Dismissal

Either Party may appeal a dismissal of a Complaint or any part of the Complaint. The appeal must be submitted within **10 Working Days** from the date of the notice of dismissal. The appeal will be in writing and will be based only on one or more of the following grounds:

1. Procedural errors that resulted in the incorrect dismissal of the Complaint

2. New evidence exists that was not reasonably available at the time of the dismissal and that would affect the decision to dismiss the Complaint

3. The decision to dismiss the Complaint was objectively unreasonable or arbitrary

4. The Title IX Coordinator/DHR Administrator (or designee) who dismissed the Complaint, demonstrated a conflict of interest or bias for or against a Party in this case or Complainants or Respondents in general that affected the outcome of the matter

Appeals will be submitted to the Chancellor's Office and will be addressed to:

Equal Opportunity and Whistleblower Compliance Unit
Systemwide Human Resources
Office of the Chancellor
401 Golden Shore
Long Beach, California 90802
eo-wbappeals@calstate.edu

Any person who is unable to submit an appeal or a response to an appeal electronically, should contact the campus Title IX Coordinator/DHR Administrator for assistance.

When an appeal is submitted, the Chancellor's Office will notify the other Party and the campus Title IX Coordinator/DHR Administrator in writing. The non-appealing Party may submit a written statement in support of or challenging the dismissal no later than **5 Working Days** after the notice of appeal. Within **10 Working Days** of the Chancellor's Office receipt of the appeal, the Chancellor's Office will notify the Parties (via email and at the same time) of its decision.

The Chancellor's Office will not consider evidence that was not introduced during the campus review unless the new evidence was not reasonably available at the time of the review.

The Chancellor's Office has discretion to extend the timelines for the discretionary dismissal appeal process for good cause or for any reasons deemed to be legitimate by the Chancellor's Office. This includes the time for filing an appeal and the time for the Chancellor's Office to respond to the appeal. The Chancellor's Office will notify the Parties and the Title IX Coordinator/DHR Administrator of any extensions of time granted pertaining to any portion of the appeal process.

The Chancellor's Office appeal response is final and concludes the discretionary dismissal process under these procedures.

# Article VI. Informal Resolution

The CSU recognizes some Parties may desire resolution of their matter through an Informal Resolution process ("Informal Resolution"), instead of through the formal resolution process. Accordingly, Parties may mutually agree, with the agreement of the Title IX Coordinator/DHR Administrator, to resolve a Complaint through an Informal Resolution process, instead of undergoing the formal resolution process. The Informal Resolution process is entirely voluntary and will not occur unless both Parties agree in writing to participate in an Informal Resolution process.

The Title IX Coordinator/DHR Administrator will oversee the Informal Resolution process, conduct an initial and on-going assessment as to whether the Informal Resolution process should continue, and make the final determination on all Informal Resolutions facilitated by the Title IX Coordinator/DHR Administrator or designee regarding whether the terms agreed to by the Parties are appropriate in light of all of the circumstances of the Complaint. In some circumstances, depending on the nature and/or severity of the allegations, an Informal Resolution may not be appropriate, and the Title IX Coordinator/DHR Administrator will not approve an Informal Resolution. Prior to approving an Informal Resolution, the Title IX Coordinator/DHR Administrator will consult with the student conduct administrator.

## A. Notice of Agreement to Engage in Informal Resolution

Prior to engaging in an informal resolution process, the campus will obtain the Parties' voluntary, written consent. Parties who choose to participate in the voluntary Informal Resolution process will be sent a notice of agreement to engage in Informal Resolution. The notice will include the following:

- An explanation that at any time prior to agreeing to a resolution, any Party has the right to withdraw from the Informal Resolution process and resume the investigation process.
- The Parties' right to consult with an Advisor.
- Any resolution must be in writing and signed by both Parties and the Title IX Coordinator/DHR Administrator.
- Once the Informal Resolution process is finalized, neither Party is permitted to file another Complaint arising from the same allegations.

## B. Timeframe

The Informal Resolution process may take place at any time before a determination of responsibility is made, but no later than **60 Working Days** after both Parties provide voluntary, written consent to participate in the Informal Resolution process, unless the Parties and the Title IX Coordinator/DHR Administrator agree to an extension.

## C. Effect of Informal Resolution Agreement

Any agreed-upon Remedies and disciplinary sanctions agreed to in an Informal Resolution have the same effect as Remedies given and sanctions imposed following an investigation or hearing.

# D. Written Agreement – Not Subject to Appeal

The terms of any Informal Resolution must be in writing and signed by the Parties and the Title IX Coordinator/DHR Administrator. Use of electronic signatures is permitted. A signed agreement to an Informal Resolution is final and is not appealable by either Party.

# E. Mediation Between the Parties (Applies only to Complaints of sex discrimination)

Mediation between the Parties cannot be used, even on a voluntary basis, to resolve Sexual Misconduct, Sexual Exploitation, Dating Violence, Domestic Violence, or Stalking Complaints.

# Article VII. Investigations

## A. General Principles

i. **Purpose of the Investigation and Adjudication Process**
The investigation and adjudication of Complaints under these procedures is not intended to be an adversarial process between the Complainant, the Respondent, and witnesses. Rather, it is a process and opportunity for the campus to educate students and provide an environment free from discrimination and comply with its obligations under law.

ii. **Cooperation in an Investigation**
All Employees, and Students who are not Parties to the Complaint, are required to cooperate with the investigation and other processes set forth in these procedures, including but not limited to, attending meetings and interviews, and being forthright and honest during the process.

iii. **Standard and Burden of Proof**
The Preponderance of the Evidence based on the facts available at the time of the decision is the standard for demonstrating facts and reaching conclusions in an investigation and hearing that uses these procedures.
The burden of gathering evidence sufficient to reach a determination regarding responsibility rests on the campus and not on the Parties. The Complainant does not have the burden to prove, nor does the Respondent have the burden to disprove, the underlying allegation or allegations of misconduct.

iv. **Role of the Title IX Coordinator/DHR Administrator in the Investigation Process**
The Title IX Coordinator/DHR Administrator will either investigate the Complaint or assign this task to an Investigator. If assigned to an Investigator, the Title IX Coordinator/DHR Administrator will supervise and oversee the investigation, including reviewing all investigation draft reports before they are final to ensure that the investigation complies with these procedures.

v. **Neutrality of Process**
The Title IX Coordinator/DHR Administrator will make reasonable efforts to ensure that anyone involved in conducting investigations, finding facts, and making disciplinary decisions in a matter will be impartial, neutral, and free from actual conflicts of interest. A conflict of interest

exists if a person has a personal relationship with one of the Parties or witnesses, has a reporting employment relationship with a Party, or has demonstrated actual bias towards a Party or witness or towards Complainants or Respondents in general. Any party who seeks to disqualify the Title IX Coordinator or DHR Administrator due to bias or a conflict of interest will direct their request to the Chancellor's Office Appeals Unit at eo-wbappeals@calstate.edu. Requests for disqualification must be supported by evidence that the bias or conflict of interest prevents the Title IX Coordinator/DHR Administrator from fairly performing their duties. Mere belief or opinion does not constitute evidence.

vi. **Investigation Where a Respondent Does Not Participate**
The Respondent will not be found to have violated the Nondiscrimination Policy solely because the Respondent did not participate in the investigation or hearing process. Nor will the Respondent be found not to have violated the Nondiscrimination Policy solely because a Complainant or other witness did not participate in the investigation or hearing process.

vii. **Timeframe, Extensions, and Status Updates**
The Title IX Coordinator/DHR Administrator or designee will send the Final Investigation Report to the Parties within **100 Working Days** from the date that the Notice of Investigation is provided to the Parties. Extensions may be granted for good cause as determined by the Title IX Coordinator/DHR Administrator.
The Parties will receive written notice from the Title IX Coordinator/DHR Administrator or designee if an extension is necessary and why. The notice will indicate if the extension alters the timeframes for the major stages of the Complaint process.
At the request of either Party, the Title IX Coordinator/DHR Administrator or designee will provide status updates regarding investigation, hearing, and appeal timeframes to both Parties.

viii. **Reasonable Accommodations**
Any person with a Disability who seeks reasonable accommodations to participate in the Complaint submission or investigation process will be referred to the appropriate campus administrator (for Students, the services for students with disabilities administrator, and for Employees the appropriate human resources administrator) who may consult with the Title IX Coordinator/DHR Administrator to determine the reasonableness of a requested accommodation.

ix. **Consolidation**
Where Parties assert Complaints against each other, and they arise out of the same events or circumstances, the Title IX Coordinator/DHR Administrator may consolidate the Complaints into one.

x. **Acceptance of Responsibility**
The Respondent may, at any time during the investigation or hearing process, prior to an Investigator or hearing officer issuing their determination, choose to accept responsibility for the alleged conduct prohibited under the Nondiscrimination Policy.
Before a Respondent accepts responsibility for the alleged misconduct, the Title IX Coordinator/DHR Administrator or designee will discuss with the Respondent that the matter will be referred to the campus president or designee for a decision regarding an appropriate sanction, and that the acceptance of responsibility could – but will not necessarily – be regarded as a mitigating factor that results in less severe sanctions.
Acceptance of responsibility will only be recognized if the Respondent accepts responsibility

by signing a written document prepared by the Title IX Coordinator/DHR Administrator that describes the range of disciplinary sanctions that the president or designee will consider in reaching a decision about discipline/sanctions.

If the Respondent has accepted responsibility in writing, the Title IX/DHR office will issue a brief written summary of the allegations and a statement that the Respondent has accepted responsibility. The written summary will be sent to both the Complainant and the Respondent. Within **5 Working Days** of receiving the Investigator's written summary, each Party may submit to the Title IX Coordinator/DHR Administrator an impact statement or other statement regarding discipline that is **no more than 2000 words** in length. The document is an opportunity for each Party to suggest disciplinary outcomes and to provide information that they believe is important for the president or designee to consider when reaching a sanction decision. The student conduct administrator and/or Title IX Coordinator/DHR Administrator may also submit a written statement regarding aggravating and mitigating factors (that is, factors that would warrant a more severe or less severe sanction), including whether the Respondent was previously found to have violated the Standards for Student Conduct or the Nondiscrimination Policy. These written statements will be provided to the president or designee who will decide an appropriate sanction.

The parties may appeal the sanction only on the grounds that the sanction(s) imposed was objectively unreasonable, or arbitrary based on the conduct for which the Respondent accepted responsibility. The appeal process will otherwise be in accordance with Article XI. Where there is an acceptance of responsibility regarding some but not all of the alleged conduct, the investigation and hearing process will continue to conclusion, unless otherwise resolved through Informal Resolution.

# B. Respondent Initial Meeting

In the notice of investigation, the Title IX Coordinator/DHR Administrator will schedule an initial meeting with the Respondent. At this meeting, the Title IX Coordinator/DHR Administrator will explain the allegations against the Respondent, as well as the investigation process, and the Respondent's rights during the process. The Title IX Coordinator/DHR Administrator will also explain that during the investigation, the Respondent and the Complainant will have the opportunity to present evidence, identify witnesses, and review evidence.

# C. Gathering Evidence

i. **Opportunity to Submit Evidence and Identify Witnesses**
   During the investigation, the Investigator will take reasonable steps to gather all relevant evidence from the Parties, other witnesses, or other sources. The Investigator will document the steps taken to gather evidence, even when those efforts are not successful.

ii. **Bases for Declining a Request to Gather Evidence**
   The Investigator will gather evidence and ask questions proposed by the Parties, except as follows.

   1. The Investigator determines that the questions are repetitive, irrelevant, or harassing.

   2. The request seeks information that can be reasonably and adequately obtained by the requesting Party from other independent or publicly available sources.

3. The burden of obtaining the information is likely to substantially outweigh the benefit that the evidence bears on a disputed issue.

4. The requested information can be reasonably obtained through other means less likely to intrude on a person's privacy.

5. The Investigator will not consider the prior or subsequent sexual history of a Complainant or Respondent, except:

   a. Where the prior or subsequent sexual history between the Complainant and anyone other than the Respondent is directly relevant to prove that physical injuries alleged to have been inflicted by the Respondent were inflicted by another individual.

   b. Where the evidence is relevant to how the Parties communicated consent in prior or subsequent consensual sexual relations.

   c. Where the Investigator allows consideration of evidence about a dating relationship or prior or subsequent consensual sexual relations between the Complainant and the Respondent, the fact that the Complainant and Respondent engaged in other consensual sexual relations with one another is never sufficient, by itself, to establish that the conduct in question was consensual.

   Before allowing the consideration of any evidence of sexual history of the Complainant or the Respondent under this section, the Investigator will provide a written explanation to the Parties as to why consideration of the evidence is permissible under this section.

iii. **Medical/Treatment Records**
The Investigator will not use a Party's medical or treatment records that are made or maintained by a physician, psychiatrist, psychologist, or other recognized professional unless the campus obtains that Party's voluntary, written consent to do so.

# D. Preliminary Investigation Report and Review of Evidence

Before finalizing the investigation, the Investigator will share with the Complainant and Respondent a preliminary investigation report, along with all relevant evidence gathered. The preliminary investigation report will: (a) describe the allegations; (b) identify the material facts – undisputed and disputed – with explanations as to why any material fact is disputed; and (c) describe the evidence presented and considered.

The preliminary investigation report will list any evidence offered by the Parties or any other witnesses that the Investigator concluded are not relevant. This evidence will be available for review upon request.

i. **Access to Preliminary Investigation Report**
The Investigator, in consultation with the Title IX Coordinator/DHR Administrator, will use discretion in determining how to provide the Parties with secure access to the preliminary investigation report.

ii. **Review of Evidence**
Each Party will be given a reasonable opportunity to respond to the preliminary investigation report and any attached evidence and ask questions. Each Party may:

1. Meet again with the Investigator.

2. Respond to the evidence in writing.

3. Request that the Investigator ask specific questions to the other Party and other witnesses.

4. Identify additional witnesses.

5. Request that the Investigator gather additional evidence.

The opportunity to review and respond to the preliminary investigation report is known as the "review of evidence" process.

iii. **Conclusion of Review of Evidence**
The Investigator will share with the Parties the answers to questions posed during the review of evidence and additional relevant evidence gathered. This will be shared with all Parties, who may then respond to any new evidence and ask questions.
The Investigator determines when it is appropriate to conclude the review of evidence process.

# E. Final Investigation Report

i. **Track 1 Final Investigation Report (Hearing Required)**
The requirements for a **Track 1** final investigation report are described in the Track 1 procedures [hyperlink].

ii. **Track 2 Final Investigation Report (Hearing Required)**
The final investigation report will include all of the information included in the preliminary investigation report as well as additional relevant evidence received during the review of evidence. Any relevant evidence provided by the Parties or witnesses, or otherwise gathered by the Investigator, will be attached to the final investigation report, or made available for review by the Parties. Evidence offered by the Parties or any other witnesses that the Investigator concluded is not relevant will be noted but not included in the final investigation report and should be available at the time of the hearing such that it can be provided to the hearing officer if requested.

iii. **Track 3 Final Investigation Report (Hearing Not Required)**
In matters where a hearing is not required, a final investigation report will be provided to the Parties along with a notice of investigation outcome. The final investigation report will include a summary of the allegations, the investigation process, the Preponderance of the Evidence standard, a detailed description of the evidence considered, analysis of the evidence including relevant credibility evaluations, and appropriate findings. Relevant exhibits and documents will be attached to the written report.
The notice of investigation outcome will attach the final investigation report and include the following:

• A summary of the allegations and the investigative process.

• That the Preponderance of the Evidence standard was employed.

- A summary of the findings of fact.

- A determination as to whether the Nondiscrimination Policy was violated, and if so, any Remedies to be afforded to the Complainant.

- Notice of Parties' right to appeal under these procedures.

The notice may be delivered to the Parties electronically. If the notice includes a determination that the Nondiscrimination Policy was violated, the Title IX Coordinator/DHR Administrator will notify the campus student conduct administrator of the investigation outcome and provide a copy of the final investigation report.
The Title IX Coordinator/DHR Administrator or other campus administrator will simultaneously notify the Parties, in writing, of any discipline imposed.

# Article VIII. Pre-Hearing Processes for Cases in which a Hearing is Required (Track 2)

## A. Roles and Scheduling

i. **Role of the Hearing Coordinator**
The hearing coordinator (either the Student Conduct Administrator, Title IX Coordinator, or other appropriate Administrator) will be responsible for coordinating the hearing process. The hearing coordinator will act as liaison between the Parties and the hearing officer on procedural matters and may not be the Investigator assigned to the matter. The hearing coordinator may appropriately delegate administrative tasks.

ii. **Notice of Hearing**
Parties will be given written notice of the **date, time, location, and purpose of the hearing** as well as the **identity of the hearing officer**. Communications will be deemed received on the date sent. The Parties will be sent a notice of the hearing at least **20 Working Days** before the hearing.

iii. **Objections to the Hearing Officer**
Objections to an appointed hearing officer will be made in writing to the hearing coordinator no later than **5 Working Days** after notice of hearing has been sent to the Parties.
The objection may only be based on an actual conflict of interest. An actual conflict of interest exists if the hearing officer has a personal relationship with one of the Parties or witnesses or has demonstrated actual bias towards a Party or witness. The fact that a hearing officer has previously served as a hearing officer in a university proceeding is not a conflict of interest. The hearing coordinator will determine if there is a conflict of interest. In that event, the Parties will be notified in writing of the name of the new hearing officer. The date for the hearing may need to be rescheduled. Any objection to the new hearing officer will be made in accordance with this section.

## B. Pre-Hearing Timelines

i. **Submission of Proposed Witness List**
No later than **15 Working Days** before the hearing, each Party will provide to the hearing

53
RJN Exhibit 1

coordinator a proposed witness list that includes the names of, and current contact information for, that Party's proposed witnesses as well as an explanation of the relevance of each proposed witness' testimony. The hearing officer may also identify witnesses from the Final Investigation Report.

ii. **Requests for Consolidation**
Where there is more than one Respondent or Complainant in connection with a single occurrence or related multiple occurrences, the hearing officer and the Parties may agree to a single hearing. A Party may request consolidation with other cases, or the Title IX Coordinator, may initiate the consolidation (subject to FERPA and other applicable privacy laws). Request for consolidation will be made no later than **15 Working Days** before the hearing. The hearing officer makes consolidation decisions.

iii. **Information Regarding Advisors and Support Persons**
Parties must provide the name of, and contact information for, the Party's Advisor and Support Person (if any) to the hearing coordinator **15 Working Days** before the hearing.

iv. **Notification to Witnesses**
No later than **10 Working Days** before the hearing, the hearing coordinator will:

  • Share a final witness list with the Parties.

  • Notify each witness of the date, time, and location of the hearing.

    Witnesses will be instructed to attend the hearing and to promptly direct any questions or concerns about their attendance at the hearing to the hearing coordinator.
    No later than **5 Working Days** before the hearing, the Parties will submit to the hearing coordinator any objections to, or questions about, the witness list.

v. **Submission of Proposed Questions**
No later than **5 Working Days** prior to the hearing, the Parties will submit a list of proposed questions to the hearing coordinator.

vi. **Additional Requests**
Generally, hearings will be held using videoconferencing with participants in separate locations, unless a Party objects to being out of the physical presence of the hearing officer. Any objections will be made in writing no later than **3 Working Days** before the hearing. No later than **1 Working Day** before the hearing, the hearing officer will resolve all pending requests regarding participation at the hearing. The hearing coordinator will give prompt notice to the Parties (and witnesses) as appropriate.

# Article IX. Hearing Process for Track 2

## A. General Principles

i. **Audio Recording of Hearing**
The campus will make an official audio recording of the hearing. The recording is campus property. No other recording of the hearing is permitted. The audio recording will be retained by the campus in accordance with the campus records retention policy. Parties may request to review the recording.

CSU Policy Prohibiting Discrimination, Harassment, Sexual Misconduct, Sexual Exploitation, Dating Violence, Domestic Violence, Stalking, and Retaliation (Nondiscrimination Policy). Retrieved 4/28/2023. Official copy at http://calstate.policystat.com/policy/12891658/. Copyright © 2023 The California State University

54
RJN Exhibit 1

ii. **Hearing Attendees and Participants**
The following individuals are permitted to attend the hearing:

    a.  The Parties

    b.  The hearing officer

    c.  Witnesses while they are testifying

    d.  The Title IX Coordinator

    e.  The hearing coordinator

    f.  The student conduct administrator

    g.  One Advisor per Party

    h.  One Support Person per Party

    A CSU administrator, university police or security officer, or other individual(s) approved by the hearing officer or hearing coordinator as necessary for technological support, language assistance or other reasonable accommodation may be present but will not participate in the hearing.

iii. **Witness Participation**
The campus will direct Employee witnesses to attend the hearing. Any Employees, including those in bargaining units, who fail to comply with the directive may be subject to discipline under the applicable provisions of their collective bargaining agreement or other university policy. The campus will arrange for Employee witnesses to be available to attend where the witnesses are timely identified to the hearing coordinator.
The campus will direct Student witnesses to attend the hearing where the witnesses are timely identified to the hearing coordinator. Students who fail to comply may be subject to discipline depending on the circumstances. The campus will accommodate Student witnesses, including arranging for them to be excused from class attendance where necessary.

iv. **Role of Advisors and Support Persons**
The Parties may each be accompanied at the hearing by one Advisor and one Support Person. An Advisor and Support Person may observe and consult with the Parties. However, during the hearing, the Advisor and Support Person will not make the opening statement or speak regarding the substance or the process of the hearing. Parties may make a request to the hearing officer for a break to speak with their Advisor or Support Person.

v. **Party Failure to Appear**
If either Party fails to appear at the hearing without good cause, the hearing will nevertheless proceed. Whether good cause exists is determined by the hearing officer.
The Respondent will not be found to have violated the Nondiscrimination Policy solely because the Respondent or other witness failed to appear at the hearing. Nor will the Respondent be found **not** to have violated the Nondiscrimination Policy solely because a Complainant or other witness failed to appear at the hearing.

vi. **Participant Conduct**
Abusive or otherwise disorderly behavior that causes a material disruption will not be tolerated. The hearing officer may excuse from the hearing anyone (including either Party or their Advisor or Support Person) whose behavior causes a material disruption. The hearing

CSU Policy Prohibiting Discrimination, Harassment, Sexual Misconduct, Sexual Exploitation, Dating Violence, Domestic Violence, Stalking, and Retaliation (Nondiscrimination Policy). Retrieved 4/28/2023. Official copy at http://calstate.policystat.com/policy/12891658/. Copyright © 2023 The California State University.

officer, at their discretion, may postpone the hearing when a participant has been excused. The hearing officer will consider the equity of postponement as to both Parties.

vii. **New Evidence**

Absent good cause, the Parties may not introduce evidence, including witness testimony, at the hearing that the Party did not identify during the investigation and that was available at the time of the investigation. The hearing officer has discretion to accept or exclude new evidence offered at the hearing.

# B. Opening Statements

Each Party will be given an opportunity to make an opening statement that will last no longer than 10 minutes. The Parties will not make closing statements.

An opening statement is intended to give the Parties the opportunity to share their perspective regarding the facts and discuss the core disputes in the investigation. It should focus on the facts of the matter and not be argumentative.

# C. Questioning

i. **Questions Generally**

All questions will be asked by the hearing officer. The hearing officer may ask questions of the Complainant, Respondent, Investigator, any campus official (e.g., Title IX Coordinator or Student Conduct Administrator), and any witness.

Parties will have the opportunity to submit written questions to the hearing officer in advance of the hearing, as described above.

The Parties may also submit written follow-up questions to the hearing officer during the hearing, at appropriate times designated by the hearing officer.

The hearing officer will ask the questions proposed by the Parties except for questions that:

1. Seek information about the Complainant's sexual history with anyone other than the Respondent (unless such evidence about the Complainant's sexual behavior is offered to prove that someone other than the Respondent committed the alleged misconduct).

2. Seek information about the Respondent's sexual history with anyone other than the Complainant, unless such information is used to prove motive or pattern of conduct.

3. Seek information that is unreasonably duplicative of evidence in the hearing officer's possession.

4. The hearing officer determines are not relevant to material disputed issues, are argumentative or harassing or unduly intrude on a witness' privacy.

   All information that responsible persons are accustomed to rely upon in the conduct of serious affairs is considered.

ii. **Hearsay**

Hearsay may be considered but will only be given the weight appropriate under all of the circumstances, with due consideration given to the importance of credibility assessment. Absent extenuating circumstances, the hearing officer will not rely on prior statements made

by the Parties or witnesses during the investigation whose credibility is central to the determination unless those Parties or witnesses make themselves available for questioning by the hearing officer.

iii. **Questions, Concerns, and Objections to Questions Posed**
At the hearing, each Party will have an opportunity to ask questions, submit concerns, or note an objection to questions posed. All such questions, concerns, or objections will be submitted in writing to the hearing officer. The hearing officer is not required to respond to an objection, other than to include it in the record.

iv. **Hearing Officer Discretion to Rephrase or Decline Questions**
The hearing officer has the authority and duty to decline or rephrase any question that the hearing officer deems to be repetitive, irrelevant, or harassing. Formal rules of evidence applied in courtroom proceedings (e.g., California Evidence Code) do not apply in the hearing. However, the hearing officer may take guidance from the formal rules of evidence.

# Article X. Hearing Officer's Report for Track 2

After the hearing, the hearing officer will make written findings of facts and conclusions about whether the Respondent violated the Nondiscrimination Policy. The Title IX Coordinator will review the hearing officer's report to ensure compliance with the Nondiscrimination Policy.

## A. Contents of Hearing Officer's Report

The hearing officer's report will attach the investigation report and will include:

1. The factual allegations and alleged Nondiscrimination Policy violations.

2. The Preponderance of the Evidence standard.

3. Any material evidence identified by the Parties or witnesses that the hearing officer determined was not relevant (or duplicative) and the reason why the evidence was not considered to be relevant.

4. A list of all questions submitted by the Parties at the hearing, and if any questions were not asked, why.

5. A summary of the procedural issues raised by the Parties before or during the hearing.

6. The factual findings and the evidence on which the factual findings are based.

7. The evidence considered including an analysis of the credibility of the Parties and witnesses, when credibility assessments are required to resolve factual disputes.

8. A determination of whether the Nondiscrimination Policy was violated and an analysis of the basis for that determination.

## B. Forwarding of the Hearing Officer's Report

The hearing coordinator will forward the hearing officer's report promptly to the Parties, the Title IX Coordinator, and the student conduct administrator, usually within **15 Working Days** of the close of the hearing.

## C. Hearing Outcome – No Violation Found

If no violation is found, the hearing coordinator will notify the Parties of their appeal rights. The campus president (or designee) will also be notified.

## D. Hearing Outcome – Violation Found

i. **Statements from Parties, Title IX Coordinator and Student Conduct Administrator**
If a violation is found, the Parties may submit to the hearing coordinator an impact statement or other statement regarding discipline. The statement may not be more than 2000 words in length and will be submitted no later than **5 Working Days** after the hearing officer's report is sent to the Parties.
The statement is an opportunity for the Parties to suggest disciplinary outcomes and to provide information that they believe is important for the hearing officer to consider.
The student conduct administrator and the Title IX Coordinator may also submit a written statement regarding aggravating and mitigating factors no later than **5 Working Days** after the hearing officer's report is sent to the Parties.

ii. **Recommendation as to Disciplinary Sanctions**
Within **5 Working Days** after receiving and considering the statements described above, the hearing officer will submit the hearing officer's report to the president (or designee), including recommended sanctions (as defined in Executive Order 1098 *Student Conduct Procedures*) if a Respondent has been determined to have violated the Nondiscrimination Policy.

iii. **Final Decision and Notification**

   a. *Timeframe*
   Within **10 Working Days** of receipt of the hearing officer's report, the president (or designee) will review the Investigation Report and the hearing officer's report and issue a decision concerning the appropriate sanction.

   b. *Adoption of Sanctions*
   The president may impose the recommended sanctions, adopt a different sanction or sanctions, or reject sanctions altogether. If the president adopts a sanction other than what is recommended by the hearing officer, the president must set forth the reasons in the Decision Letter.

   c. *Notification of Final Decision*
   The decision letter will include:

   - The outcome of the hearing, including any sanction imposed, and the name of the Respondent(s).

   - A copy of the hearing officer's Report.

   - Notice of the Complainant's and Respondent's right to appeal.

   The president will also send the decision letter to the Title IX Coordinator so that they may determine whether any additional Remedies (or other supportive measure) will be afforded or undertaken in order to maintain a safe and nondiscriminatory campus environment.
   The president will simultaneously send the decision letter electronically to

the Respondent and Complainant. The decision will also be sent to the student conduct administrator and the hearing officer.

The copy of the decision letter issued to the Complainant will be redacted as to findings regarding conduct that does not constitute a "crime of violence," Sexual Misconduct, Dating Violence, Domestic Violence, or Stalking (34 C.F.R. § 99.31 et seq.).

Unless the campus and Parties are notified that an appeal has been filed, the president's (or designee's) sanction decision becomes final **11 Working Days** after the date of the decision letter.

# Article XI. Appeal Review – Chancellor's Office – Tracks 2 and 3

## A. Filing an Appeal to the Chancellor's Office

Only the non-prevailing Party may appeal under bases a-c below. A written appeal may be submitted to the Chancellor's Office **no later than 10 Working Days** after the date of the notice of investigation outcome/final decision. All arguments and/or evidence supporting the appeal must be submitted by the deadline to file the appeal. Evidence/arguments submitted after the appeal submission deadline will not be considered by the Chancellor's Office. A **written appeal may not exceed 3,500 words, excluding exhibits**. Appeals will be submitted to:

Equal Opportunity and Whistleblower Compliance Unit
Systemwide Human Resources
Office of the Chancellor
401 Golden Shore
Long Beach, California 90802
*eo-wbappeals@calstate.edu*

**Electronic submission to the email address listed above is the preferred method of submitting appeals.**

## B. Bases for Appeal

An appeal will be based only on one or more of the appeal issues listed below:

a. There was no reasonable basis for the findings or conclusions that resulted in the investigation or hearing outcome.

b. Procedural errors occurred that would have likely changed the outcome of the investigation or hearing.

c. New evidence that was not reasonably available at the time of the investigation or hearing and would have likely affected the investigation outcome or hearing officer's decision about whether the Respondent violated the Nondiscrimination Policy.

d. The sanction(s) imposed was objectively unreasonable, or arbitrary based on substantiated conduct (for Track 2 cases only).[12]

# C. Issues and Evidence on Appeal

The issues and evidence raised on appeal will be limited to those raised and identified during the investigation or hearing, unless new evidence that was not reasonably available at the time of the investigation or hearing and that could change the investigation or hearing outcome becomes available after the campus investigation or hearing was completed and is submitted by the appealing Party. The Chancellor's Office may conduct an interview, at the Chancellor's Office discretion, with the appealing Party to clarify the written appeal.

# D. Appeal Review

i. **Acknowledgement of Appeal**
The Chancellor's Office will provide prompt written acknowledgement of the receipt of the appeal to the appealing Party, and will provide written notification of the appeal, including a copy of the appeal, to the non-appealing Party and the campus Title IX Coordinator/DHR Administrator. The notice will include the right of the non-appealing Party and the campus to provide a response to the appeal **within 10 Working Days** of the date of the notice. **The appeal response will be limited to 3,500 words, excluding exhibits.** Any response to the appeal received by the Chancellor's Office will be provided to the appealing Party for informational purposes only.

ii. **Reasonable Accommodation**
The Chancellor's Office will provide reasonable accommodation(s) to any Party or witness in the appeal process with a qualified Disability upon request by the person needing the accommodation. A reasonable accommodation may include an extension of time under these procedures. The timeframe for the Chancellor's Office Appeal Response will automatically be adjusted for the time needed, if any, to provide reasonable accommodation(s).

iii. **Scope of Chancellor's Office Review**
The Chancellor's Office will not conduct a new investigation; however, the Chancellor's Office may make reasonable inquiries to determine if the new evidence could have affected the investigation or hearing determination. On appeal, the Chancellor's Office does not reweigh the evidence, re-decide conflicts in the evidence, or revisit determinations made by the Investigator or hearing officer about the credibility or reliability of witnesses and the Parties.

iv. **Chancellor's Office Appeal Response**
The Chancellor's Office appeal response will include a summary of the issues raised on appeal, a summary of the evidence considered, the Preponderance of the Evidence standard, and the determination(s) reached regarding the issue(s) identified within the written appeal. A copy of the final Chancellor's Office appeal response will be forwarded to the Complainant, the Respondent, and the Title IX Coordinator/DHR Administrator.

v. **Reopening a Campus Investigation or Hearing**
If the Chancellor's Office review determines that an issue raised on appeal would have affected the investigation outcome or hearing outcome, the investigation or hearing will be remanded back to the campus and the investigation or hearing reopened at the campus level. The Chancellor's Office will return the matter to the campus and will specify in writing the timeline by which a reopened investigation or hearing must be completed. The Chancellor's Office will notify the Parties of the reopening of the investigation or hearing and the timeline for

completion of the reopened investigation or hearing. The campus will complete the reopened investigation or hearing and provide the Chancellor's Office with an amended final investigation report/final decision. The campus will also provide the Parties with amended notices of investigation outcome/final decision, and such notices will provide the non-prevailing Party the opportunity to appeal. Upon receipt of the amended final investigation report/final decision, if the outcome remains unchanged, the Chancellor's Office will contact the original appealing Party to determine whether that Party wishes to continue with the appeal. If the outcome is reversed by the campus , the non-prevailing Party will be given an opportunity to appeal.

vi. **Reversal by Chancellor's Office**
If the Chancellor's Office determines that no reasonable fact finder (Investigator or hearing officer) could have made the findings as determined by the Investigator or hearing officer, the Chancellor's Office may vacate and reverse the investigation or hearing outcome, but only with respect to whether the Nondiscrimination Policy was violated (and not with respect to factual findings). If the Chancellor's Office vacates and reverses the investigation or hearing outcome, it will notify the Parties simultaneously in writing, as well as the Title IX Coordinator/DHR Administrator. Following a reversal of an investigation or hearing outcome by the Chancellor's Office, the Chancellor's Office decision is final and is not subject to further appeal. In the event that the final outcome has been reversed by the Chancellor's Office and a sanction will be imposed by the campus, both Parties have a right to appeal the sanction only. If a sanction is found to be objectively unreasonable, or arbitrary based on substantiated conduct, the matter will be sent back to the campus for reconsideration of the sanction.

vii. **Timeline for Chancellor's Office Response to Appeal**
The Chancellor's Office will respond to the appealing Party no later than 30 Working Days after receipt of the written appeal, unless the timeline has been extended pursuant to Article XI.D.viii, below.

viii. **Timelines and Extensions**
The Chancellor's Office has discretion to extend the timelines for the appeal process for good cause or for any reasons deemed to be legitimate by the Chancellor's Office. This includes the time for filing an appeal, the time for a reopened investigation or hearing to be completed, and the time for the Chancellor's Office to respond to the appeal. The Chancellor's Office will notify the Parties and the Title IX Coordinator/DHR Administrator of any extensions of time granted pertaining to any portion of the appeal process.

# Procedures for Complaints of Discrimination, Harassment, Sexual Misconduct, Sexual Exploitation, Dating Violence, Domestic Violence, Stalking, and Retaliation Made Against an Employee or Third-Party

## Article I. Procedure Scope and Applicability

### A. Scope

The procedures below are used for Complaints that an Employee or Third-Party (including a former Employee, or an applicant for employment) is alleged to have engaged in Discrimination, Harassment, Sexual Misconduct, Sexual Exploitation, Dating Violence, Domestic Violence, Stalking, or Retaliation in violation of the *CSU Policy Prohibiting Discrimination, Harassment, Sexual Misconduct, Sexual Exploitation, Dating Violence, Domestic Violence, Stalking, and Retaliation* ("the Nondiscrimination Policy"). These Procedures are effective January 1, 2022, and apply to all Complaints received on or after that date.

The campus will investigate or otherwise respond to reports of alleged misconduct **committed by an Employee or Third-Party** in accordance with these procedures if the alleged misconduct violates the Nondiscrimination Policy and:

1. occurred on campus; **or**
2. involved or impacted a campus program or activity (including campus employment); **or**
3. affected a Student's or Employee's ability to participate in a program, activity, or employment; **AND**
4. The alleged misconduct was **committed against** a person who at the time of the alleged misconduct was a Student, *or* the alleged misconduct was **committed by or against** an Employee.

Depending on the circumstances, the campus response may or may not include a formal investigation.

These procedures are only used to address conduct that may violate the Nondiscrimination Policy. Alleged misconduct by Employees or Third-Parties that does not fall under the Nondiscrimination Policy should be directed to the appropriate administrator in Human Resources or Faculty Affairs.

The campus will respond in a timely and appropriate manner to all Complaints and will take appropriate action to prevent continuation of and correct Nondiscrimination Policy violations.

Employees who are found to have violated the Nondiscrimination Policy will be subject to discipline that is appropriate for the violation and in accordance with state and federal requirements and other CSU policies.

## B. Applicability of Provisions to Sex Discrimination and Other Forms of Discrimination

There are certain provisions of these procedures (Article III.B.iii. a., Article IV.B, and Article VI.E) that apply only to certain sex discrimination Complaints (Sexual Misconduct, Sexual Exploitation, Dating Violence, Domestic Violence, and Stalking) and do not apply to Discrimination, Harassment, and Retaliation (DHR) Complaints. Those provisions include the note "(Applies only to Complaints of sex discrimination)".

## C. Complaints Involving a Respondent Who Is Both a Student and an Employee

For Complaints against a Student who is also a CSU Employee, where the alleged conduct arose out of the **Respondent's status as an Employee** and not as a Student, these procedures apply. A Complaint against a Student-Employee where the alleged conduct arose out of the **Respondent's status as a Student** and not their status as an Employee, should be made using the *Procedures for Complaints of Discrimination, Harassment, Sexual Misconduct, Sexual Exploitation, Dating Violence, Domestic Violence, Stalking, and Retaliation Made Against a Student*.

## D. Complaints against a President, a Chancellor's Office Employee, or a Title IX Coordinator/DHR Administrator

Complaints against a Chancellor's Office employee, or a campus Title IX Coordinator/ Discrimination, Harassment, and Retaliation Administrator ("DHR Administrator") will be made to the Chancellor's Office at eo-wbappeals@calstate.edu. In that event, the chancellor assumes all responsibilities identified in these procedures as those of the campus president..

Complaints against a campus president will also be made to the Chancellor's Office, but only if it is alleged that the president directly engaged in conduct that violates the Nondiscrimination Policy. Any other Complaints against a president (for example, that the president had no substantial involvement other than to rely on or approve a recommendation made by another administrator) will be made to and addressed by the campus.

Complaints against the chancellor or a member of the Board of Trustees will be referred to the chair or vice chair of the Board via the Board of Trustees' Secretariat at trusteesecretariat@calstate.edu., but only if it is alleged that the chancellor or a member of the Board of Trustees directly engaged in conduct that violates the Nondiscrimination Policy. Any other Complaints against the chancellor or a member of the Board (for example, that the chancellor or member of the Board of Trustees had no substantial involvement other than to rely on or approve a recommendation made by another administrator) will be made to and addressed by the Chancellor's Office at eo-wbappeals@calstate.edu.

Capitalized terms in these Procedures are defined in Article VII.B of the Nondiscrimination Policy.

# Article II. The Track System

There are **two** sets of procedures ("Tracks") for formal resolution of Complaints against an Employee or a Third-Party (Track 1 or Track 3) as required by federal and state law. Which procedure applies to any given Complaint will depend on a variety of factors described below. Questions about which procedures apply to any specific case should be directed to the campus Title IX Coordinator and/or the DHR Administrator.

The remaining track, Track 2: State Mandated Hearing Process, is **not** applicable to Complaints against Employees or Third-Parties, as it applies only to certain Complaints against Students.

## A.   Track 1: Federal Mandated Hearing Process

**Track 1** applies when the alleged conduct:

    a.  Meets the definition of Sexual Harassment as defined in Article VII.C of the Nondiscrimination Policy; **and**

    b.  Occurred in the United States; **and**

    c.  Occurred in an education program or activity at the university, as defined in **Track 1**.

Under **Track 1**, the campus will conduct an investigation, and the Complaint will proceed to a hearing unless otherwise resolved. An Investigator will first interview the Complainant, the Respondent, and any witnesses, and gather any documentary evidence. The hearing will occur once an investigation has finished. During the hearing, a hearing officer listens to the witnesses, including the Complainant and the Respondent, and analyzes the evidence, before deciding whether or not the Respondent violated the Nondiscrimination Policy.

*[NOTE: Articles IV through VIII are not applicable to complaints under Track 1. Please reference the above link for the applicable Track 1 Procedures.]*

## B. Track 3: Non-Hearing Process

**Track 3** applies to all other Complaints under these procedures that allege a Nondiscrimination Policy violation.

Under **Track 3,** an Investigator interviews the Complainant, the Respondent, and any witnesses, gathers any documentary evidence, analyzes the evidence, **and** decides whether or not the Respondent violated the Nondiscrimination Policy. There is no hearing in **Track 3** cases.

Prior to a Notice of Investigation being sent to the Complainant and the Respondent, the Title IX Coordinator/DHR Administrator will determine which Track applies.

# Article III. Making a Report

## A. How to Report

The campus Title IX Coordinator is the designated administrator to receive reports of Sex Discrimination, Sexual Harassment, Sexual Misconduct, Sexual Exploitation, Dating Violence, Domestic Violence, Stalking, and associated Retaliation. The campus Title IX Coordinator's contact information can be found on the Systemwide website.

The campus DHR Administrator is the designated administrator to receive reports of all other misconduct prohibited by the Nondiscrimination Policy. The campus DHR Administrator's contact information can be found on the Systemwide website.

Complaints that include allegations falling under both areas may be reported to either the Title IX Coordinator or the DHR Administrator who will work together to coordinate and determine who will oversee the Complaint process.

## B. General Principles

i. *Individuals Who May Make a Report*
Any person may report an alleged violation of the Nondiscrimination Policy.

ii. *Timeframe for Making a Report*
Reports may be made at any time, and individuals are encouraged to report an alleged violation of the Nondiscrimination Policy regardless of how much time has passed. The campus' ability to interview witnesses and otherwise investigate and take action, however, may be limited by various factors, such as the passage of time. In all cases, the Title IX Coordinator/DHR Administrator is available to discuss Supportive Measures with the Complainant at any time, regardless of how much time has passed since the incident.

iii. *Addressing Concerns About Reporting*
The campus' primary concern is the safety of the campus community. Any person who reports an alleged violation of the Nondiscrimination Policy should discuss any such concerns with the Title IX Coordinator/DHR Administrator.

   a. *Student Concerns about Reporting Sexual Misconduct, Sexual Exploitation, Dating Violence, Domestic Violence or Stalking (Applies only to Complaints of sex discrimination)*
   Any Student who participates as a Complainant or witness in a Complaint process (including investigation or hearing) relating to Sexual Misconduct, Sexual Exploitation, Dating Violence, Domestic Violence, or Stalking that fall under these procedures will not be subject to discipline for related violations of the Standards for Student Conduct at or near the time of the incident, *unless* the campus determines that the violation was egregious, including, but not limited to, an action that places the health or safety of any other person at risk or involves plagiarism, cheating, or academic dishonesty. The campus may, however, take other appropriate action including having an educational discussion with the Student.

   b. *Concerns about Retaliation for Reporting*
   The Nondiscrimination Policy prohibits Retaliation. If a Student or Employee is

reluctant to report because they fear retaliation, they should discuss their concerns with the Title IX Coordinator/DHR Administrator as soon as possible.

iv. *Delivery Methods for Campus Communication with Parties*
Communication with the Complainant and the Respondent ("the Parties") regarding a Complaint or an investigation will be sent to their designated CSU campus email address, unless the Party has specifically requested in writing to the Title IX Coordinator/DHR Administrator or Investigator that communication be sent to a different email address. Communication with Parties who are neither Students nor Employees will be sent to an email address they designate.
Any communications relating to the outcome of an investigation or hearing, including any changes to the outcome or when the outcome becomes final, will be provided in writing simultaneously to the Complainant and the Respondent.

v. *Reasonable Timeframes*
Unless a timeframe is specifically stated, all procedures outlined in these procedures will be carried out in a reasonable timeframe or manner. Reasonableness will mean that under the given set of circumstances, processes will be carried out in a fair and rational manner.

vi. *Complaints Against Sworn University Police Officers*
Complaints and the investigation and resolution of Complaints against Respondents who are sworn university police officers shall be governed by the Nondiscrimination Policy, the applicable collective bargaining agreement, and the Public Safety Officers Procedural Bill of Rights Act (POBR). The campus Title IX Coordinator/DHR Administrator shall work with the campus Chief of Police, or designee, to investigate Complaints against sworn university police officers. Consultation with the Office of General Counsel is appropriate and recommended.

vii. *Complaints Regarding the Reasonableness of Disability-Related Accommodations*
Complaints made by a Student about a decision regarding the reasonableness of academic adjustments and/or accommodations to a campus' educational program related to a qualified Disability should be directed to the appropriate campus administrator responsible for services to students with disabilities according to campus process.
Likewise, Complaints made by Employees about the reasonableness of workplace accommodations will be directed to the appropriate campus administrator in human resources (or other department responsible for Employee accommodation requests), according to campus process.
Complaints by Students or Employees alleging Discrimination, Harassment or Retaliation arising out of their Disability (including, for example, a complaint alleging that an Employee has discriminated against, or harassed, the Complainant *because of* their Disability) will be addressed under these procedures. Complaints by Students or Employees alleging failure by an Employee to implement an approved academic adjustment or employment accommodation will also be addressed under these procedures.

# Article IV. Campus Procedure for Responding to a Report

Regardless of whether a Complaint has been made, when the campus becomes aware of possible Discrimination, Harassment, Sexual Misconduct, Sexual Exploitation, Dating Violence, Domestic Violence, Stalking, or Retaliation, the Title IX Coordinator/DHR Administrator will investigate, or otherwise

CSU Policy Prohibiting Discrimination, Harassment, Sexual Misconduct, Sexual Exploitation, Dating Violence, Domestic Violence, Stalking, and Retaliation (Nondiscrimination Policy). Retrieved 4/28/2023. Official copy at http://calstate.policystat.com/policy/12891658/. Copyright © 2023 The California State University.

66
RJN Exhibit 1

address the matter.

# A. Outreach to Complainant

After receiving a report, the Title IX Coordinator/DHR Administrator will assess the report and provide outreach to the possible Complainant named in the report. This outreach will include the following:

  a. A statement that the campus has received a report of Discrimination, Harassment, Sexual Misconduct, Sexual Exploitation, Dating Violence, Domestic Violence, Stalking, or Retaliation.

  b. A description of the role of the Title IX Coordinator/DHR Administrator.

  c. Information regarding counseling and other support resources.

  d. A statement regarding the importance of preserving evidence.

  e. A statement that the Complainant may, but is not required to, report to law enforcement any allegations that could constitute criminal behavior.

  f. A request for the Complainant to meet with the Title IX Coordinator/DHR Administrator, or other designated employee, to discuss the Complainant's options and next steps.

  g. A statement that the Complainant can be accompanied by an Advisor of their choice during any meeting relating to the report and any subsequent Complaint process.

  h. Information regarding potential Supportive Measures, where applicable.

  i. A summary of the investigation procedures.

  j. An explanation of how the campus responds to reports of Nondiscrimination Policy violations and a description of potential disciplinary consequences.

  k. A statement that retaliation for making a Complaint or participating in a Complaint process is prohibited by the Nondiscrimination Policy.

# B. Written Information Regarding Rights and Options for Complainants Reporting Sexual Misconduct, Sexual Exploitation, Dating Violence, Domestic Violence or Stalking (Applies only to Complaints of sex discrimination)

Along with the information provided in the outreach communication, the Title IX Coordinator will provide Complainants alleging Sexual Misconduct, Sexual Exploitation, Dating Violence, Domestic Violence, or Stalking, with the information in Attachment D - Rights and Options for Victims of Sexual Misconduct/Sexual Assault, Sexual Exploitation, Dating And Domestic Violence, And Stalking - Rights and Options.

# C. Initial Assessment

  i. *Intake Meeting for Complainants*
     The Title IX Coordinator/DHR Administrator will conduct an intake meeting with any

Complainant who responds to outreach communication or otherwise makes a report of a potential Nondiscrimination Policy violation to discuss the Complainant's options, explain the process, and provide information about Supportive Measures.

ii. *Advisors*

The Complainant and Respondent may choose to be accompanied by an Advisor of their choice during meetings or any stage of the Complaint process.

The Parties also have the right to consult with an attorney, at their own expense, or a union representative at any stage of the process if they wish to do so. An attorney or union representative may serve as a Party's chosen Advisor.

The unavailability of a specific Advisor will not unduly interfere with prompt scheduling.

iii. *Confidentiality Requests and Requests Not to Investigate*

    a. *Confidentiality Requests*

    Confidentiality of reports, Complaints, and associated processes will be provided whenever possible. To protect the campus community and to facilitate investigations and/or Supportive Measures, when necessary, certain information may be shared on a "need-to-know" basis. Therefore, a campus cannot guarantee confidentiality.

    b. *Requests Not to Investigate*

    When a Complainant requests that no investigation occur, the Title IX Coordinator/ DHR Administrator will balance the request against the campus' duty to provide a safe and non-discriminatory environment for all members of the campus community. Relevant factors include whether:

      • There are multiple or prior reports of misconduct against the Respondent.

      • The Respondent poses an imminent threat to the campus community, which may include violence, threats of violence, use of a weapon, physical restraints, or engaged in battery.

      • There is a power imbalance between the Complainant and Respondent.

      • The Complainant reasonably believes that they will be less safe if their name is disclosed or an investigation is conducted.

      • The Title IX Coordinator/DHR Administrator anticipates that it will be possible to conduct a thorough investigation and obtain relevant evidence without the Complainant's cooperation.

      If the Complainant is an **Employee**, the campus will also consider its obligation to maintain a safe work environment in determining whether an investigation is necessary.

    c. *Communication and Safety Considerations*

    Where the Title IX Coordinator/DHR Administrator declines a request for confidentiality or a request not to proceed with an investigation, the Complainant will be informed **in advance of** the Title IX Coordinator/DHR Administrator disclosing the Complainant's identity and details of the Complaint or report to the Respondent, or initiating an investigation. The Title IX Coordinator/DHR Administrator will work with campus partners to take steps to arrange reasonable safety measures for the

CSU Policy Prohibiting Discrimination, Harassment, Sexual Misconduct, Sexual Exploitation, Dating Violence, Domestic Violence, Stalking, and Retaliation (Nondiscrimination Policy). Retrieved 4/28/2023. Official copy at http://calstate.policystat.com/policy/12891658/. Copyright © 2023 The California State University.

68

RJN Exhibit 1

Complainant, if appropriate. The Title IX Coordinator/DHR Administrator will honor a Complainant's request that the Respondent be informed that the Complainant had asked the campus not to investigate or seek discipline.

iv.  *Supportive Measures*

The Title IX Coordinator/DHR Administrator will describe and offer Supportive Measures to Complainants during the initial assessment (even if the Complaint is ultimately not investigated), and to Respondents during the initial meeting.

If a request for confidentiality or no investigation is granted, the Title IX Coordinator/DHR Administrator will nevertheless take reasonable steps to limit the effects of the alleged Discrimination, Harassment, Sexual Misconduct, Sexual Exploitation, Dating Violence, Domestic Violence, Stalking or Retaliation, and prevent its recurrence without initiating formal action against the Respondent or revealing the identity of the Complainant. Examples include increased temporary monitoring, supervision, or security at locations or activities where the alleged misconduct occurred; providing additional training and education materials for students and employees; or conducting climate surveys.

The Title IX Coordinator/DHR Administrator is responsible for coordinating the effective implementation of Supportive Measures if requested and available.

Reasonable steps will be taken to provide for the safety of a Complainant while keeping the Complainant's identity confidential as appropriate and if possible. These steps may include changing living arrangements or course schedules, assignments, or tests. The Complainant will be notified that the steps the campus will take may be limited by the request for confidentiality.

v.  *No-Contact Directives*

No-contact directives may be issued as a Supportive Measure, Remedy or in connection with an Informal Resolution Agreement with or without an investigation. When reasonably requested by a Complainant or otherwise determined to be warranted (to protect health and safety or to preserve the integrity of the investigation), the campus will issue an interim no-contact directive prohibiting the Respondent from contacting the Complainant while the investigation is pending (unilateral no-contact directive). No-contact directives that are not part of an Informal Resolution Agreement must meet the following requirements:

- No-contact directives that limit an individual's movement on campus may only be issued where the conduct alleged is egregious or where an objective threat of physical harm exists.

- A mutual no-contact directive (against both Parties) may only be issued prior to an investigation outcome. Mutual no-contact directives will not be issued automatically. The Title IX Coordinator/DHR Administrator must consider, based on the circumstances of each case, whether a mutual no-contact directive is necessary or justifiable to protect the Respondent's safety or well-being, or to address concerns about interference with an investigation.

- If there is a finding that the Nondiscrimination Policy has been violated and a mutual no-contact directive is already in effect, absent extenuating circumstances, the no-contact directive will promptly be converted to a unilateral no-contact directive (against only the Respondent).

- Any no-contact directive (whether mutual or unilateral) will be delivered to both Parties and will be accompanied by a written explanation of the terms of the

directive and the consequences for violating the no-contact directive. A no-contact directive is intended to be temporary and should be periodically assessed to confirm the continued need for, and appropriateness of, its specific terms (conditions), including whether it should be mutual (against both parties) or unilateral (only against the Respondent). Violations of no-contact directives will be addressed by the campus human resources or faculty affairs (Employees), or by campus student conduct administrators (Students) in the same manner as a violation of the Standards of Student Conduct. If the alleged violation of the no-contact directive is itself a violation of the Nondiscrimination Policy, the matter will be referred to the Title IX Coordinator/DHR Administrator.

vi.  *Criminal Complaints and Concurrent Investigations*
Complainants will be informed during the intake meeting of their right to make a criminal complaint with university police or other appropriate law enforcement. The Title IX Coordinator/DHR Administrator will offer to assist the Complainant and will assure them that filing a criminal complaint will not unreasonably delay the campus investigation.
A campus will ordinarily not wait until the conclusion of a criminal investigation to begin its own investigation. Although it may be necessary to temporarily delay the campus investigation while law enforcement is gathering evidence, once notified that law enforcement has completed the fact gathering portion of their investigation, the campus will promptly resume and complete its own investigation.
Individuals who first report to university police will be encouraged to also make a Complaint with the Title IX Coordinator/DHR Administrator.

vii.  *Administrative Leave*
A campus may place an Employee Respondent on administrative leave (sometimes referred to as temporary suspension) while the Complaint process is pending in accordance with applicable collective bargaining agreements and CSU policies.

viii.  *Interim Suspension*
An interim suspension may be considered for an Employee Respondent who is also a Student, where there is reasonable cause to believe that interim suspension of that Student is necessary to protect the personal safety of persons within the campus community or campus property, and to ensure the maintenance of order during an investigation. Such interim suspensions will be implemented in accordance with the procedures under Executive Order 1098 *Student Conduct Procedures* and will only remain in effect during the Complaint process until determined to be no longer necessary. In determining whether an interim suspension is necessary, the Title IX Coordinator/DHR Administrator will coordinate with the student conduct administrator to ensure appropriate on-going assessment and implementation occurs.

# D. Complaints

The Title IX Coordinator/DHR Administrator will determine whether to open an investigation after making a preliminary inquiry into the allegations. An investigation may not be warranted where the reported information is insufficient. These determinations will be documented in writing by the Title IX Coordinator/DHR Administrator and maintained in accordance with systemwide records retention policies.

i.  *Complaint Accepted for Investigation*

Within **10 Working Days** of the date of an intake meeting or receipt of a request for investigation from the Complainant (whichever is later), or making a determination that an investigation is necessary without a request from or participation by the Complainant, the Title IX Coordinator/DHR Administrator will send a notice of investigation to the Complainant and Respondent.

ii. *Complaint Not Accepted for Investigation*
If the Title IX Coordinator/DHR Administrator determines that the Complaint fails to allege a violation of the Nondiscrimination Policy, the Title IX Coordinator/DHR Administrator will, within **10 Working Days** of the date of the intake or receipt of a written request for investigation (whichever is later), notify the Complainant in writing that the Complaint will not be investigated without further information. The Title IX Coordinator/DHR Administrator will refer the Complaint to another campus office if appropriate and will notify the Complainant of any referral. The Title IX Coordinator/DHR Administrator will retain a record of the Complaint, the written determination and any referrals made to another campus office.

iii. *Investigation Where a Student Complainant Does Not Participate*
A **Student** Complainant will not be required to participate in an investigation if they do not wish to do so. In cases where the Complainant does not want to pursue an investigation, the Title IX Coordinator/DHR Administrator should inform the Complainant that the ability to take corrective action may be limited.
If a Student Complainant chooses not to participate from the outset (after the Title IX Coordinator/DHR Administrator receives a report), the Title IX Coordinator/DHR Administrator will evaluate whether it will be possible to move forward without their participation, including whether the non-participation will impact the campus' ability to conduct a meaningful investigation. Based on this assessment, the Title IX Coordinator/DHR Administrator has discretion to initiate an investigation without the Complainant's participation. The Title IX Coordinator/DHR Administrator will document the basis for the decision to initiate or to not initiate the investigation.
When the Title IX Coordinator/DHR Administrator decides to proceed with an investigation without a Student Complainant's participation, the Title IX Coordinator/DHR Administrator will make the Complaint on behalf of the campus. The Title IX Coordinator/DHR Administrator will not serve as the Complainant and will remain neutral in applying the Nondiscrimination Policy and these Procedures. The Student Complainant will be provided the same notices and updates as the Respondent throughout the investigation, and where applicable, hearing process(es), unless they decline in writing to receive such communications.

iv. *Student Grade Appeals*
Grade appeals that allege a violation of the Nondiscrimination Policy proceed under the campus procedures per Executive Order 1037 ***CSU Grading, Repetition of Courses, Academic Renewal, and Appeals Policy*** (or any superseding policy) ***and*** under these procedures as follows: The Student will promptly request a grade appeal and note that the grade appeal procedure should be paused until such time as the campus investigation and any appeal process under these procedures have concluded. The determination whether a violation occurred under the Nondiscrimination Policy will be provided to the campus grade appeal committee, and the committee will be bound by the determination when the grade appeal process resumes under Executive Order 1037.

v. Notice of Investigation

CSU Policy Prohibiting Discrimination, Harassment, Sexual Misconduct, Sexual Exploitation, Dating Violence, Domestic Violence, Stalking, and Retaliation (Nondiscrimination Policy). Retrieved 4/28/2023. Official copy at http://calstate.policystat.com/policy/12891658/. Copyright © 2023 The California State University.

71

RJN Exhibit 1

# E. Notice of Investigation

At the onset of the investigation, the Title IX Coordinator/DHR Administrator will simultaneously provide both Parties a notice of investigation. The notice of investigation will include the following:

- A summary of the Complaint allegations (e.g., "who," "what," "when," and "where").

- A copy of, or internet link to, these procedures and the Nondiscrimination Policy, as well as a summary of the alleged Nondiscrimination Policy violations.

- A description of the investigation and resolution procedure (including the right to appeal).

- The estimated timeline for completion of the investigation.

- A description of the university's Policy against Retaliation.

- Information about the Parties' right to an Advisor, including the right to consult with an attorney, at their own expense, or a union representative, at any stage of the process.

- Information regarding counseling and other support resources.

- A statement that the Complainant and Respondent will have equal opportunities to identify relevant witnesses and evidence in connection with the investigation, including the ability to:

    A. submit documentary information to the Investigator;

    B. submit a list of potential witnesses to the Investigator; or

    C. request that the Investigator attempt to collect additional relevant evidence.

- A statement that any evidence available, but not disclosed during the investigation might not be considered in any findings made and likely will not be considered for purposes of appeal.

- A statement that the Complainant and Respondent will be provided with periodic status updates in accordance with the timelines established in this procedure.

- A statement regarding the possible range of disciplinary outcomes.[13]

If new but related allegations are raised during the investigation that are materially different from those described in the notice of investigation, the Title IX Coordinator/DHR Administrator will issue a revised notice of investigation along with a corresponding revised timeline for completion, if appropriate, to the Parties.

# Article V. Discretionary Dismissal

## A. Discretionary Dismissal

At any time after a Complaint has been accepted for investigation, it is within the discretion of the Title IX Coordinator/DHR Administrator to dismiss a Complaint, or any part of a Complaint, if:

1. the Complainant notifies the Title IX Coordinator/DHR Administrator in writing that they would like to withdraw the Complaint or any part of it: **or**

2. if the specific circumstances prevent the campus from gathering evidence necessary to reach a determination as to the Complaint or part of the Complaint.

# B. Notice Requirement

The Title IX Coordinator/DHR Administrator will send to the Parties, at the same time, written notice of a discretionary dismissal, the reason(s) for the dismissal, and the right to appeal the dismissal. The notice will also inform the Parties if the Complaint will be referred to another campus office for resolution.

# C. Appeal after Discretionary Dismissal

Either Party may appeal a dismissal of a Complaint or any part of the Complaint. The appeal must be submitted within **10 Working Days** from the date of the notice of dismissal. The appeal will be in writing and will be based only on one or more of the following grounds:

1. Procedural errors that resulted in the incorrect dismissal of the Complaint.
2. New evidence exists that was not reasonably available at the time of the dismissal and that would affect the decision to dismiss the Complaint.
3. The decision to dismiss the Complaint was objectively unreasonable or arbitrary.
4. The Title IX Coordinator/DHR Administrator (or designee) who dismissed the Complaint demonstrated a conflict of interest or bias for or against a Party in this case or Complainants or Respondents in general that affected the outcome of the matter.

Appeals will be submitted to the Chancellor's Office and will be addressed to:

Equal Opportunity and Whistleblower Compliance Unit
Systemwide Human Resources
Office of the Chancellor
401 Golden Shore
Long Beach, California 90802
eo-wbappeals@calstate.edu

Any person who is unable to submit an appeal or a response to an appeal electronically, should contact the campus Title IX Coordinator/DHR Administrator for assistance.

When an appeal is submitted, the Chancellor's Office will notify the other Party and the campus Title IX Coordinator/DHR Administrator in writing. The non-appealing Party may submit a written statement in support of or challenging the dismissal no later than **5 Working Days** after the notice of appeal. Within **10 Working Days** of the Chancellor's Office receipt of the appeal, the Chancellor's Office will notify the Parties (via email and at the same time) of its decision.

The Chancellor's Office will not consider evidence that was not introduced during the campus review unless the new evidence was not reasonably available at the time of the review.

The Chancellor's Office has discretion to extend the timelines for the discretionary dismissal appeal process for good cause or for any reasons deemed to be legitimate by the Chancellor's Office. This includes the time for filing an appeal and the time for the Chancellor's Office to respond to the appeal. The Chancellor's Office will notify the Parties and the Title IX Coordinator/DHR Administrator of any extensions of time granted pertaining to any portion of the appeal process.

The Chancellor's Office appeal response is final and concludes the discretionary dismissal process under these procedures.

# Article VI. Informal Resolution

The CSU recognizes some Parties may desire resolution of their matter through an Informal Resolution process ("Informal Resolution"), instead of through the formal resolution process. Accordingly, Parties may mutually agree, with the agreement of the Title IX Coordinator/DHR Administrator, to resolve a Complaint through an Informal Resolution process, instead of undergoing the formal resolution process. The Informal Resolution process is entirely voluntary and will not occur unless both Parties agree in writing to participate in an Informal Resolution process.

The Title IX Coordinator/DHR Administrator will oversee the Informal Resolution process, conduct an initial and on-going assessment as to whether the Informal Resolution process should continue, and make the final determination on all Informal Resolutions facilitated by the Title IX Coordinator/DHR Administrator or designee regarding whether the terms agreed to by the Parties are appropriate in light of all of the circumstances of the Complaint. In some circumstances, depending on the nature and/or severity of the allegations, an Informal Resolution may not be not appropriate, and the Title IX Coordinator/DHR Administrator will not approve an Informal Resolution. Prior to approving an Informal Resolution, the Title IX Coordinator/DHR Administrator will consult with the appropriate administrator in human resources or faculty affairs.

## A. Notice of Agreement to Engage in Informal Resolution

Prior to engaging in an informal resolution process, the campus will obtain the Parties' voluntary, written consent. Parties who choose to participate in the voluntary Informal Resolution process will be sent a notice of agreement to engage in Informal Resolution. The notice will include the following:

- An explanation that at any time prior to agreeing to a resolution, any Party has the right to withdraw from the Informal Resolution process and resume the investigation process.

- The Parties' right to consult with an Advisor.

- Any resolution must be in writing and signed by both Parties and the Title IX Coordinator/DHR Administrator.

- Once the Informal Resolution process is finalized, neither Party is permitted to file another Complaint arising from the same allegations.

## B. Timeframe

The Informal Resolution process may take place at any time before a determination of responsibility is made, but no later than **60 Working Days** after both Parties provide voluntary, written consent to participate in the Informal Resolution process, unless the Parties and the Title IX Coordinator/DHR Administrator agree to an extension.

## C. Effect of Informal Resolution Agreement

Any agreed-upon Remedies and disciplinary sanctions agreed to in an Informal Resolution have the same effect as Remedies given and sanctions imposed following an investigation, consistent with collective bargaining agreements.

## D. Written Agreement – Not Subject to Appeal

The terms of any Informal Resolution must be in writing and signed by the Parties and the Title IX Coordinator/DHR Administrator. Use of electronic signatures is permitted. A signed agreement to an Informal Resolution is final and is not appealable by either Party.

## E. Mediation Between the Parties (Applies only to Complaints of sex discrimination)

Mediation between the Parties cannot be used, even on a voluntary basis, to resolve Sexual Misconduct, Sexual Exploitation, Dating Violence, Domestic Violence, or Stalking Complaints.

# Article VII. Investigations

## A. General Principles

i. *Purpose of the Investigation and Adjudication Process*
The investigation and adjudication of Complaints under these procedures is not intended to be an adversarial process between the Complainant, the Respondent, and witnesses. Rather, it is a process and opportunity for the campus to provide an environment free from discrimination and comply with its obligations under law.

ii. *Cooperation in an Investigation*
All Employees and Students who are not Parties to the Complaint are required to cooperate with the investigation and other processes set forth in these procedures, including but not limited to, attending meetings and interviews, and being forthright and honest during the process.

iii. *Standard and Burden of Proof*
The Preponderance of the Evidence based on the facts available at the time of the decision is the standard for demonstrating facts and reaching conclusions in an investigation that uses these procedures.
The burden of gathering evidence sufficient to reach a determination regarding responsibility rests on the campus and not on the Parties. The Complainant does not have the burden to prove, nor does the Respondent have the burden to disprove, the underlying allegation or allegations of misconduct.

iv. *Role of the Title IX Coordinator/DHR Administrator in the Investigation Process*
The Title IX Coordinator/DHR Administrator will either investigate the Complaint or assign this task to another Investigator. If assigned to an Investigator, the Title IX Coordinator/DHR Administrator will supervise and oversee the investigation, including reviewing all investigation

draft reports before they are final to ensure that the investigation complies with these procedures.

v. *Neutrality of Process*
The Title IX Coordinator/DHR Administrator will make reasonable efforts to ensure that anyone involved in conducting investigations, finding facts, and making disciplinary decisions in a matter will be impartial, neutral, and free from actual conflicts of interest. A conflict of interest exists if a person has a personal relationship with one of the Parties or witnesses, has a reporting employment relationship with a Party, or has demonstrated actual bias towards a Party or witness or towards Complainants or Respondents in general. Any party who seeks to disqualify the Title IX Coordinator or DHR Administrator due to bias or a conflict of interest will direct their request to the Chancellor's Office Appeals Unit at eo-wbappeals@calstate.edu. Requests for disqualification must be supported by evidence that the bias or conflict of interest prevents the Title IX Coordinator/DHR Administrator from fairly performing their duties. Mere belief or opinion does not constitute evidence.

vi. *Timeframe, Extensions, and Status Updates*
The Title IX Coordinator/DHR Administrator or designee will send the Final Investigation Report to the Parties within **100 Working Days** from the date that the Notice of Investigation is provided to the Parties. Extensions may be granted for good cause as determined by the Title IX Coordinator/DHR Administrator.
The Parties will receive written notice from the Title IX Coordinator/DHR Administrator or designee if an extension is necessary and why. The notice will indicate if the extension alters the timeframes for the major stages of the Complaint process.
At the request of either Party, the Title IX Coordinator/DHR Administrator or designee will provide status updates regarding investigation and appeal timeframes to both Parties.

vii. *Reasonable Accommodations*
Any person with a Disability who seeks reasonable accommodations to participate in the Complaint submission or investigation process will be referred to the appropriate campus administrator (for Students, the services for students with disabilities administrator, and for Employees the appropriate human resources administrator) who may consult with the Title IX Coordinator/DHR Administrator to determine the reasonableness of a requested accommodation.

viii. *Consolidation*
Where Parties assert Complaints against each other, and they arise out of the same events or circumstances, the Title IX Coordinator/DHR Administrator may consolidate the Complaints into one.

ix. *Acceptance of Responsibility*
The Respondent may, at any time during the investigation process, prior to an Investigator issuing their determination, choose to accept responsibility for the alleged conduct prohibited under the Nondiscrimination Policy.
Before a Respondent accepts responsibility for the alleged misconduct, the Title IX Coordinator/DHR Administrator or designee will discuss with the Respondent that the matter will be referred to the campus president or designee for a decision regarding an appropriate discipline, that the acceptance of responsibility could – but will not necessarily – be regarded as a mitigating factor that results in less severe discipline.
Acceptance of responsibility will only be recognized if the Respondent accepts responsibility

CSU Policy Prohibiting Discrimination, Harassment, Sexual Misconduct, Sexual Exploitation, Dating Violence, Domestic Violence, Stalking, and Retaliation (Nondiscrimination Policy). Retrieved 4/28/2023. Official copy at http://calstate.policystat.com/policy/12891658/. Copyright © 2023 The California State University

by signing a written document prepared by the Title IX Coordinator/DHR Administrator that describes the range of discipline that the president or designee will consider in reaching a decision about discipline.

If the Respondent has accepted responsibility in writing, the Title IX/DHR office will issue a brief written summary of the allegations and a statement that the Respondent has accepted responsibility. The written summary will be sent to both the Complainant and the Respondent. Within **5 Working Days** of receiving the Investigator's written summary, each Party may submit to the Title IX Coordinator/DHR Administrator an impact statement or other statement regarding discipline that is **no more than 2000 words** in length. The document is an opportunity for each Party to suggest disciplinary outcomes and to provide information that they believe is important for the president or designee to consider when reaching a decision regarding discipline. The Title IX Coordinator/DHR Administrator and appropriate human resources/faculty affairs administrator may also submit a written statement regarding aggravating and mitigating factors (that is, factors that would warrant more severe or less severe discipline), including whether the Respondent was previously found to have violated the Nondiscrimination Policy and/or other CSU policies. These written statements will be provided to the president or designee who will decide appropriate discipline.

Where there is an acceptance of responsibility regarding some but not all of the alleged conduct, the investigation process will continue to conclusion, unless otherwise resolved through Informal Resolution.

# B. Respondent Initial Meeting

In the notice of investigation, the Title IX Coordinator/DHR Administrator will schedule an initial meeting with the Respondent. At this meeting, the Title IX Coordinator/DHR Administrator will explain the allegations against the Respondent, as well as the investigation process, and the Respondent's rights during the process. The Title IX Coordinator/DHR Administrator will also explain that during the investigation, the Respondent and the Complainant will have the opportunity to present evidence, identify witnesses, and review evidence.

# C. Gathering Evidence

i. *Opportunity to Submit Evidence and Identify Witnesses*
During the investigation, the Investigator will take reasonable steps to gather all relevant evidence from the Parties, other witnesses, or other sources. The Investigator will document the steps taken to gather evidence, even when those efforts are not successful.

ii. *Bases for Declining a Request to Gather Evidence*
The Investigator will gather evidence and ask questions proposed by the Parties, except as follows:

1. The Investigator determines that the questions are repetitive, irrelevant, or harassing.

2. The request seeks information that can be reasonably and adequately obtained by the requesting Party from other independent or publicly available sources.

3. The burden of obtaining the information is likely to substantially outweigh the benefit that the evidence bears on a disputed issue.

4. The requested information can be reasonably obtained through other means less

likely to intrude on a person's privacy.

5. The Investigator will not consider the prior or subsequent sexual history of a Complainant or Respondent, except:

   a. Where the prior or subsequent sexual history between the Complainant and anyone other than the Respondent is directly relevant to prove that physical injuries alleged to have been inflicted by the Respondent were inflicted by another individual.

   b. Where the evidence is relevant to how the Parties communicated consent in prior or subsequent consensual sexual relations.

   c. Where the Investigator allows consideration of evidence about a dating relationship or prior or subsequent consensual sexual relations between the Complainant and the Respondent, the fact that the Complainant and Respondent engaged in other consensual sexual relations with one another is never sufficient, by itself, to establish that the conduct in question was consensual.

   Before allowing the consideration of any evidence of sexual history of the Complainant or the Respondent under this section, the Investigator will provide a written explanation to the Parties as to why consideration of the evidence is permissible under this section.

iii. *Medical/Treatment Records*
The Investigator will not use a Party's medical or treatment records that are made or maintained by a physician, psychiatrist, psychologist, or other recognized professional unless the campus obtains that Party's voluntary, written consent to do so.

# D. Preliminary Investigation Report and Review of Evidence

Before finalizing the investigation, the Investigator will share with the Complainant and Respondent a preliminary investigation report, along with all relevant evidence gathered. The preliminary investigation report will: (a) describe the allegations; (b) identify the material facts – undisputed and disputed – with explanations as to why any material fact is disputed; and (c) describe the evidence presented and considered.

The preliminary investigation report will list any evidence offered by the Parties or any other witnesses that the Investigator concluded are not relevant. This evidence will be available for review upon request.

i. *Access to Preliminary Investigation Report*
The Investigator, in consultation with the Title IX Coordinator/DHR Administrator, will use discretion in determining how to provide the Parties with secure access to the preliminary investigation report.

ii. *Review of Evidence*
Each Party will be given a reasonable opportunity to respond to the preliminary investigation report and any attached evidence and ask questions. Each Party may:

a.  meet again with the Investigator

b.  respond to the evidence in writing

c.  request that the Investigator ask specific questions to the other Party and other witnesses

d.  identify additional witnesses

e.  request that the Investigator gather additional evidence

The opportunity to review and respond to the preliminary investigation report is known as the "review of evidence" process.

iii. *Conclusion of Review of Evidence*
The Investigator will share with the Parties the answers to questions posed during the review of evidence and additional relevant evidence gathered. This will be shared with all Parties, who may then respond to any new evidence and ask questions.
The Investigator determines when it is appropriate to conclude the review of evidence process.

# E. Final Investigation Report

i.  *Track 1 Final Investigation Report (Hearing Required)*
The requirements for a Track 1 final investigation report are described in the **Track 1 procedures**.

ii. *Track 3 Final Investigation Report (Hearing **NOT** Required)*
In matters where a hearing is not required, a final investigation report will be provided to the Parties along with a notice of investigation outcome. The final investigation report will include a summary of the allegations, the investigation process, the Preponderance of the Evidence standard, a detailed description of the evidence considered, analysis of the evidence including relevant credibility evaluations, and appropriate findings. Relevant exhibits and documents will be attached to the written report.
The notice of investigation outcome will attach the final investigation report and include the following:

•  A summary of the allegations and the investigative process.

•  That the Preponderance of the Evidence standard was employed.

•  A summary of the findings of fact.

•  A determination as to whether the Nondiscrimination Policy was violated, and if so, any Remedies to be afforded to the Complainant.

•  Notice of Parties' right to appeal under these procedures.

The notice may be delivered to the Parties electronically. If the notice includes a determination that the Nondiscrimination Policy was violated, the Title IX Coordinator/DHR Administrator will notify the appropriate campus administrator of the investigation outcome and provide a copy of the final investigation report. Employees disciplined by the university may be entitled to additional processes as required by law and/or collective bargaining agreements, including in some cases the right to a hearing before an independent arbitrator or a state agency where the

CSU Policy Prohibiting Discrimination, Harassment, Sexual Misconduct, Sexual Exploitation, Dating Violence, Domestic Violence, Stalking, and Retaliation (Nondiscrimination Policy). Retrieved 4/28/2023. Official copy at http://calstate.policystat.com/policy/12891658/. Copyright © 2023 The California State University

79

RJN Exhibit 1

employee may contest the discipline.

# Article VIII. Appeal Review – Chancellor's Office - Track 3

## A. Filing an Appeal to the Chancellor's Office

Only the non-prevailing Party may appeal. A written appeal may be submitted to the Chancellor's Office **no later than 10 Working Days** after the date of the notice of investigation outcome. All arguments and/or evidence supporting the appeal must be submitted by the deadline to file the appeal. Evidence/arguments submitted after the appeal submission deadline will not be considered by the Chancellor's Office. A **written appeal may not exceed 3,500 words, excluding exhibits**. Appeals will be submitted to:

Equal Opportunity and Whistleblower Compliance Unit
Systemwide Human Resources
Office of the Chancellor
401 Golden Shore
Long Beach, California 90802
eo-wbappeals@calstate.edu

**Electronic submission to the email address listed above is the preferred method of submitting appeals.**

## B. Bases for Appeal

An appeal will be based only on one or more of the appeal issues listed below:

a. There was no reasonable basis for the findings or conclusions that resulted in the investigation outcome.

b. Procedural errors occurred that would have likely changed the outcome of the investigation.

c. New evidence that was not reasonably available at the time of the investigation and would have likely affected the investigation outcome about whether the Respondent violated the Nondiscrimination Policy.

## C. Issues and Evidence on Appeal

The issues and evidence raised on appeal will be limited to those raised and identified during the investigation, unless new evidence that was not reasonably available at the time of the investigation and that could change the investigation outcome becomes available after the campus investigation was completed and is submitted by the appealing Party. The Chancellor's Office may conduct an interview, at the Chancellor's Office discretion, with the appealing Party to clarify the written appeal.

## D. Appeal Review

i. *Acknowledgement of Appeal*
The Chancellor's Office will provide prompt written acknowledgement of the receipt of the

appeal to the appealing Party, and will provide written notification of the appeal, including a copy of the appeal, to the non-appealing Party and the campus Title IX Coordinator/DHR Administrator. The notice will include the right of the non-appealing Party and the campus to provide a response to the appeal **within 10 Working Days** of the date of the notice. **The appeal response shall be limited to 3,500 words, excluding exhibits.** Any response to the appeal received by the Chancellor's Office will be provided to the appealing Party for informational purposes only.

ii. *Reasonable Accommodation*
The Chancellor's Office will provide reasonable accommodation(s) to any Party or witness in the appeal process with a qualified Disability upon request by the person needing the accommodation. A reasonable accommodation may include an extension of time under these procedures. The timeframe for the Chancellor's Office Appeal Response will automatically be adjusted for the time needed, if any, to provide reasonable accommodation(s).

iii. *Scope of Chancellor's Office Review*
The Chancellor's Office will not conduct a new investigation; however, the Chancellor's Office may make reasonable inquiries to determine if new evidence could have affected the investigation determination. On appeal, the Chancellor's Office does not reweigh the evidence, re-decide conflicts in the evidence, or revisit determinations made by the Investigator about the credibility or reliability of witnesses and the Parties.

iv. *Chancellor's Office Appeal Response*
The Chancellor's Office appeal response shall include a summary of the issues raised on appeal, a summary of the evidence considered, the Preponderance of the Evidence standard, and the determination(s) reached regarding the issue(s) identified within the written appeal. A copy of the final Chancellor's Office appeal response will be forwarded to the Complainant, the Respondent, and the Title IX Coordinator/DHR Administrator.

v. *Reopening a Campus Investigation*
If the Chancellor's Office review determines that an issue raised on appeal would have affected the investigation outcome, the investigation will be remanded back to the campus and the investigation reopened at the campus level. The Chancellor's Office will return the matter to the campus and will specify in writing the timeline by which a reopened investigation must be completed. The Chancellor's Office will notify the Parties of the reopening of the investigation and the timeline for completion of the reopened investigation. The campus will complete the reopened investigation and provide the Chancellor's Office with an amended final investigation report. The campus will also provide the Parties with amended notices of investigation outcome, and such notices will provide the non-prevailing Party the opportunity to appeal. Upon receipt of the amended final investigation report, if the outcome remains unchanged, the Chancellor's Office will contact the original appealing Party to determine whether that Party wishes to continue with the appeal. If the outcome is reversed by the campus, the non-prevailing Party will be given an opportunity to appeal.

vi. *Reversal by Chancellor's Office*
If the Chancellor's Office determines that no reasonable fact finder (Investigator) could have made the findings as determined by the Investigator, the Chancellor's Office may vacate and reverse the investigation outcome, but only with respect to whether the Nondiscrimination Policy was violated (and not with respect to factual findings). If the Chancellor's Office vacates and reverses the investigation outcome, it will notify the Parties simultaneously in writing, as

well as the Title IX Coordinator/DHR Administrator. Following a reversal on the investigation outcome by the Chancellor's Office, the Chancellor's Office decision is final and is not subject to further appeal.

vii. *Timeline for Chancellor's Office Response to Appeal*
The Chancellor's Office will respond to the appealing Party no later than **30 Working Days** after receipt of the written appeal, unless the timeline has been extended pursuant to Article VIII. D. viii, below.

viii. *Timelines and Extensions*
The Chancellor's Office has discretion to extend the timelines for the appeal process for good cause or for any reasons deemed to be legitimate by the Chancellor's Office. This includes the time for filing an appeal, the time for a reopened investigation to be completed, and the time for the Chancellor's Office to respond to the appeal. The Chancellor's Office will notify the Parties and the Title IX Coordinator/DHR Administrator of any extensions of time granted pertaining to any portion of the appeal process.

# Track 1: Federal Mandated Hearing Process

**Track 1: Federal Mandated Hearing Process supersedes the investigation and resolution process under Track 2: State Mandated Hearing Process and Track 3: Non-Hearing Process for cases that are defined by the Title IX Federal Regulations as sexual harassment in an education program or activity against a person (including, but not limited to students and employees) in the United States.**

In 2020, through Secretary of Education Betsy DeVos, the United States Department of Education, Office for Civil Rights (OCR) issued and amended federal regulations (Federal Regulations) implementing the sex discrimination law known as "Title IX," which is part of the Education Amendments of 1972. The Federal Regulations are titled *Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance* (34 C.F.R. 106). The Federal Regulations were published in the Federal Register on May 19, 2020. As of their effective date, August 14, 2020, the Federal Regulations have the full force of law and all U.S. higher education institutions that receive federal funds, including the CSU, must comply with the Federal Regulations.

## Article I. Scope of Track 1

**Track 1** is applicable to cases that are defined by the Federal Regulations as Sexual Harassment in an Education Program or Activity against a person (including Students and Employees of the CSU) in the United States.

The Title IX Coordinator and the DHR Administrator, will assess allegations of non-Track 1 prohibited conduct set forth in the same Complaint that arise out of the same facts and/or incidents that may also be investigated and resolved (including sanctions and discipline) in accordance with Track 1 or other CSU policies or procedures.

## Article II. Definitions

Track 1 prohibited conduct is defined under Article VII.C of the CSU Policy Prohibiting Discrimination, Harassment, Sexual Misconduct, Sexual Exploitation, Dating Violence, Domestic Violence, Stalking, and

Retaliation ("the Nondiscrimination Policy"). Capitalized terms are defined in Track 1 and in Article VII.B of the Nondiscrimination Policy. In implementing this process, the definitions in Track 1 apply where they differ from those listed in Article VII.B of the Nondiscrimination Policy. For purposes of Track 1 specifically, the following definitions apply:

A. **Bias and Conflict of Interest** means that whether bias exists against Complainants or Respondents generally or against individual Complainants or Respondents, requires examination of the particular facts of a situation. In determining whether bias exists, the following should be considered:

   1. an objective (whether a reasonable person would believe bias exists), common sense approach to evaluating whether a particular person serving in a Title IX role is biased;

   2. an evaluation that does not apply generalizations that might unreasonably conclude that bias exists (for example, assuming that a declaration that one is a feminist, or survivor, means that they are biased against men, or that a male is incapable of being sensitive to women, or that prior work as a victim advocate, or as a defense attorney, renders the person biased for or against Complainants or Respondents); and

   3. whether the bias will impede the impartiality of the person being evaluated.

B. **Complainant**[14] means an individual who is alleged to have been subjected to conduct that could constitute Sexual Harassment as defined under Article VII.C of the Nondiscrimination Policy.

C. **Directly Related** means anything that is not incidental to a matter at issue.

D. **Education Program or Activity** includes all the operations of the CSU as well as locations, events, or circumstances over which the CSU exercised substantial control over the Respondent (Student, Employee, or Third Party) **and** the context in which the Sexual Harassment occurs. Education Program or Activity also includes any building owned or controlled by the CSU or a student organization that is officially recognized by the CSU.

E. **Formal Complaint** means a document or electronic submission filed by a Complainant that contains the Complainant's physical or digital signature[15] or a document signed by the Title IX Coordinator[16] alleging Sexual Harassment against a Respondent and requesting an investigation of the allegation of Sexual Harassment. At the time that the Formal Complaint is filed, a Complainant must be participating in or attempting to participate in an Education Program or Activity of the CSU.

F. **Relevant** means having significant and demonstrable bearing on the matter at hand.

G. **Remedies** are individualized services offered as appropriate, as reasonably available, and without fee or charge to the Complainant at the conclusion of the Formal Complaint process where the Respondent has been found responsible.
Remedies may include counseling, extensions of deadlines or other course-related adjustments, modifications of work or class schedules, campus escorts, restrictions on contact between the parties, changes in work or housing locations, leaves of absence, increased security and monitoring of certain areas of the campus, and other similar measures. The Title IX Coordinator is responsible for coordinating the effective implementation of Remedies.

H. **Respondent** means an individual who has been alleged to be a perpetrator of conduct that could constitute Sexual Harassment as defined under Article VII.C of the Nondiscrimination Policy.

I. **Simultaneously** means at approximately the same time.

J. **Supportive Measures** are individualized services offered as appropriate, as reasonably available, and without fee or charge to the Complainant or Respondent regardless of whether a Formal Complaint is filed. Supportive Measures are designed to restore or preserve equal access to CSU Education Programs or Activities without unreasonably burdening the other Party, including to protect the safety of all Parties or the educational environment. Supportive Measures may include counseling, extensions of deadlines or other course-related adjustments, modifications of work or class schedules, campus escorts, mutual restrictions on contact between the parties, changes in work or housing locations, leaves of absence, increased security and monitoring of certain areas of the campus, and other similar measures. The Title IX Coordinator is responsible for coordinating the effective implementation of Supportive Measures. Supportive Measures will remain confidential except when it is not possible to maintain confidentiality in order to provide the Supportive Measures.

# Article III. Response to Report of Sexual Harassment

A. **Response to a Report of Sexual Harassment**
After receiving a report of Sexual Harassment, the Title IX Coordinator will contact the Complainant promptly to discuss the availability of Supportive Measures. This outreach to the Complainant will include the following:

1. A statement that the campus has received a report of Sexual Harassment as defined under Article VII.C of the Nondiscrimination Policy.

2. A description of the role of the Title IX Coordinator.

3. Information regarding counseling and other support resources.

4. A statement regarding the importance of preserving evidence.

5. A statement that the Complainant may, but is not required to, report to law enforcement any allegations that could constitute criminal behavior.

6. A request for the Complainant to meet with the Title IX Coordinator, or other designated employee, to discuss the Complainant's options and next steps.

7. A statement that the Complainant can be accompanied by an Advisor of their choice during any meeting relating to the report and any subsequent Complaint process.

8. Information regarding potential Supportive Measures, where applicable.

9. A brief summary of the investigation procedures.

10. An explanation of how the campus responds to reports of Nondiscrimination Policy violations and a description of potential disciplinary consequences.

11. A statement that retaliation for making a Complaint or participating in a Complaint process is prohibited by the Nondiscrimination Policy.

B. **Written Information Regarding Rights and Options for Complainants Reporting Sexual Assault, Dating Violence, Domestic Violence, or Stalking** Along with the information provided

in the outreach communication, the Title IX Coordinator will provide Complainants alleging Sexual Assault, Dating Violence, Domestic Violence or Stalking, with the information in Attachment D - Rights and Options for Victims of Sexual Misconduct/Sexual Assault, Sexual Exploitation, Dating And Domestic Violence, And Stalking.

C. **Response to a Formal Complaint** In response to a Formal Complaint, the process described in this Track will be followed. In the absence of a Formal Complaint, the Title IX Coordinator will provide appropriate Supportive Measures as described above. A Formal Complaint must be investigated even if the Complainant does not know the Respondent's identity.
The Title IX Coordinator will conduct an intake meeting with any Complainant who responds to outreach communication, or otherwise makes a report of a potential Nondiscrimination Policy violation to discuss the Complainant's options, explain the process, and provide information about Supportive Measures. During the discussion, the Title IX Coordinator will consider the Complainant's wishes with respect to Supportive Measures, inform the Complainant of the availability of Supportive Measures with or without the filing of a Formal Complaint, and explain the process for filing a Formal Complaint.

D. **Reasonable Accommodations** Any person with a Disability who seeks reasonable accommodations to participate in the Formal Complaint submission or investigation process will be referred to the appropriate campus administrator (for Students, the services for students with disabilities administrator, and for Employees the appropriate human resources administrator) who may consult with the Title IX Coordinator to determine the reasonableness of a requested accommodation.

E. **Neutrality of Process** The Title IX Coordinator will make reasonable efforts to ensure that anyone involved in conducting investigations, finding facts, and making disciplinary decisions in a matter will be impartial, neutral, and free from actual Conflicts of Interest. A Conflict of Interest exists if a person has a personal relationship with one of the Parties or witnesses, has a reporting employment relationship with a Party, or has demonstrated actual bias towards a Party or witness or towards Complainants or Respondents in general. Any party who seeks to disqualify the Title IX Coordinator due to bias or a Conflict of Interest will direct their request to the Chancellor's Office Appeals Unit at eo-wbappeals@calstate.edu. Requests for disqualification shall be supported by evidence that the Bias or Conflict of Interest prevents the Title IX Coordinator from fairly performing their duties. Mere belief or opinion does not constitute evidence.

F. **Emergency Removal** A Student Respondent may be removed from an Education Program or Activity on an emergency basis before an investigation concludes or where no investigation or hearing is pending. Prior to the removal, an individualized safety and risk analysis will be conducted.
The removal is referred to as an "Emergency Removal," and has the effects of an Interim Suspension, as set forth in CSU Executive Order 1098, Article VI, including that during the period of the Emergency Removal, the Student may not, without prior written permission from the Campus president or designee, enter any campus of the California State University other than to attend a hearing.
As with Interim Suspensions, as set forth in CSU Executive Order 1098, Article VI, the president or vice president designee, in consultation with the Title IX Coordinator, will determine whether there is an immediate threat to the physical health or safety of any Student or other individual arising from the allegations of Sexual Harassment to warrant Emergency Removal. An assessment that the Respondent poses a threat of obstructing the Sexual Harassment

investigation or destroying Relevant evidence does not justify Emergency Removal.

Where a determination is made that justifies Emergency Removal, the Respondent will be provided with notice and given an opportunity to challenge the decision immediately following the removal, in accordance with the procedures set forth in CSU Executive Order 1098, Article VI, including the right to a hearing within **10 Working Days** of a request by the Respondent for such a hearing, to determine if there is an immediate threat to the physical health or safety of a Student or other individual arising from the allegations of Sexual Harassment. The hearing will be conducted under CSU Executive Order 1098, Article III.D, and not this Track as it to relates to hearings.

If it is determined that the alleged conduct does not arise from the Sexual Harassment allegation/s, the campus may address a Student Respondent's alleged conduct under the Student Conduct Code.

G. **Administrative Leave (Temporary Suspension)** A campus may place a non-student Employee on Administrative Leave (sometimes referred to as Temporary Suspension) in accordance with applicable Collective Bargaining Agreements or CSU policies while the Formal Complaint process is pending.

# Article IV. Dismissal/Referral of a Formal Complaint

When the Title IX Coordinator receives a Formal Complaint, or where new information or events arise, the Title IX Coordinator will assess whether the Formal Complaint meets the requirements of the Federal Regulations to move forward under the process in this Track. A determination that allegations in a Formal Complaint do not meet the requirements of the Federal Regulations will result in a dismissal of the allegations in the Formal Complaint that do not meet the requirements and, in some cases, a referral of the allegations to another process as the campus may have an obligation to address the matter under other laws and policies. The Federal Regulations require two types of dismissals: mandatory and discretionary.

A. **Mandatory Dismissal/Referral**
The Title IX Coordinator will determine whether allegations in a Formal Complaint must be dismissed for purposes of the Federal Regulations.

If a Formal Complaint is dismissed it may still be referred, if appropriate, to be addressed under the processes in Track 2 or Track 3 of the Procedures for Complaints of Discrimination, Harassment, Sexual Misconduct, Sexual Exploitation, Dating Violence, Domestic Violence, Stalking, and Retaliation Made Against a Student, the Track 3 Procedures for Complaints of Discrimination, Harassment, Sexual Misconduct, Sexual Exploitation, Dating Violence, Domestic Violence, Stalking, and Retaliation Made Against an Employee or Third-Party, Executive Order 1098, or other applicable policies.

Under the Federal Regulations, a Formal Complaint will be dismissed as to any conduct alleged that:

1. Would not meet the definition of Sexual Harassment as defined under Article VII.C of the Nondiscrimination Policy even if proved.

2. Did not occur in an Education Program or Activity.

3. Did not occur in the United States.

B. **Discretionary Dismissal**

At any time during the process, it is within the discretion of the Title IX Coordinator to dismiss a Formal Complaint, or any conduct alleged within a Formal Complaint, where:

1. A Complainant notifies the Title IX Coordinator in writing that the Complainant would like to withdraw the Formal Complaint or any part of it;

2. The Respondent is no longer a Student or Employee; or

3. If the specific circumstances prevent the campus from gathering evidence sufficient to reach a determination as to the Formal Complaint or allegations therein.

C. **Notice Requirement**
Written notice of a mandatory or discretionary dismissal and reason(s) for the dismissal will be sent Simultaneously to the Parties when a Title IX Coordinator dismisses a Formal Complaint. The notice will inform the Parties of their right to appeal the dismissal, whether the matter will be referred to another process, and the process for submitting an appeal. This notice may be accompanied by a notice of allegations, as described in Article VI. below, where a notice of allegations has not already been provided.

D. **Appeal after Mandatory or Discretionary Dismissal**
Either Party may appeal from a dismissal of a Formal Complaint or any part of the Complaint. The appeal must be filed within **10 Working Days** from the date of the notice of dismissal. The appeal will be in writing and will be based only on one or more of the following grounds:

1. A procedural irregularity occurred that affected the dismissal of the Formal Complaint.

2. New evidence that was not reasonably available at the time the dismissal decision was made that could affect the decision to dismiss the Formal Complaint.

3. The Title IX Coordinator (or designee) who dismissed the Formal Complaint, had a Conflict of Interest or Bias for or against the Complainant or Respondent in this case or Complainants or Respondents in general that affected the outcome of the matter.

Appeals will be filed with the Chancellor's Office (CO) and will be addressed to:

Systemwide Title IX Unit
Systemwide Human Resources
Office of the Chancellor
TIX-Dismissal-Appeals@calstate.edu

If a Party is unable to file an appeal or a response to an appeal electronically, they should contact the campus Title IX Office for assistance.

When an appeal is submitted, the other Party as well as the campus Title IX Coordinator will be notified in writing. In response to the appeal, the other Party will be given **5 Working Days** from their receipt of notice of the appeal to submit a written statement in support of or challenging the dismissal. Within **10 Working Days** of the CO's receipt of the appeal, the Parties will Simultaneously receive (via email) a written decision with explanation.

The CO review will not involve a new assessment of the dismissal/referral or consideration of evidence that was not introduced during the campus review, unless the new evidence was not reasonably available at the time of the campus review.

If the CO review determines that the dismissal/referral should be reviewed to cure any defects, the matter will be remanded back to the campus to reassess within a timeframe specified by the CO. The Parties will be informed Simultaneously of the review and the timeframe. Once the review is complete the campus will provide the Parties and the CO with either a notice of dismissal/referral or notice of allegations, depending on the outcome, that reflects any changes to the determination. The notice will inform the Parties of their right to appeal, and the CO will contact the appealing Party to determine whether that Party wishes to continue with the appeal.

The CO appeal response is final and concludes the dismissal/referral process under Track 1. If there is a mandatory dismissal of a Formal Complaint, it does not preclude the campus from later identifying a relevant policy or policies that address the alleged conduct, notifying the Parties of the policy or policies, and moving forward under the procedures of those policies.

# Article V. Consolidation of Formal Complaints

Where Parties assert Formal Complaints against each other, and they arise out of the same events or circumstances, the Title IX Coordinator may consolidate the Formal Complaints into one.

# Article VI. Notice of Allegations

When the Title IX Coordinator receives a Formal Complaint, the Title IX Coordinator will Simultaneously provide both Parties a written notice of allegations.

The notice of allegations will be provided to both Parties regardless of whether the Formal Complaint must be dismissed under Article IV. If a Formal Complaint is dismissed at this stage of the process, the notice of allegations will also include the notice of dismissal and appeal rights.

The notice of allegations will include:

A. A copy of, or web link to, the relevant procedures, including this Track.

B. The identities of the Parties involved in the incident, if known.

C. A summary of the Formal Complaint (e.g., "who," "what," "when," and "where").

D. Reference to the specific definition of Sexual Harassment under Article VII.C of the Nondiscrimination Policy that is implicated in the Formal Complaint.

E. A statement that the Respondent is presumed not responsible for the alleged conduct and that a determination regarding responsibility is made at the conclusion of the Formal Complaint process.

F. A description of the Formal Complaint process (including the right to hearing and appeal).

G. Information about the Parties' right to an Advisor (as defined below), and that an Advisor may be, but is not required to be, an attorney.

H. A statement that if a Party has an Advisor (as defined below), a copy of evidence and a subsequent final investigation report will be Simultaneously sent to both the Party and their Advisor unless the Party notifies the Investigator or Title IX Coordinator in writing that they do not wish this information to be sent to their Advisor.

I.  A statement that reads as follows: "A Complainant shall proceed with a Formal Complaint in good faith and a Complainant who knowingly and intentionally files a false Formal Complaint or any individual who is determined to have provided false statements or information during the investigation/appeal review shall be subject to discipline in accordance with the Student Conduct Code, applicable collective bargaining agreements, CSU policies, or legal requirements (e.g., Education Code Section 89530 et seq.). Likewise, the Respondent and witnesses are required to cooperate with the investigation including being forthright and honest during the process. The mere fact that two individuals have different recollections, and one is later found to be more credible does not make the other person's statement false. Disciplinary action against an individual for knowingly filing a false Formal Complaint or for providing a knowingly false statement will not be deemed to be Retaliation".

J.  An explanation that the Complainant and Respondent will have equal opportunities to present Relevant witnesses and inculpatory and exculpatory evidence in connection with the investigation and at any hearing.

K.  A statement that the Parties may identify specific documents and information that they believe are Relevant and request that the Investigator attempt to collect such documents and other information that are not reasonably accessible to the requesting Party.

L.  The estimated timeline for completion of the investigation.

M.  A statement that upon request, the Complainant and Respondent will be advised of the status of the investigation.

N.  A description of the University's policy against Retaliation, as defined under Article VII.A of the Nondiscrimination Policy.

If new allegations are raised during the investigation that were not included in the notice of allegations, a revised notice of allegations will be issued Simultaneously to the Parties.

If the notice of allegations also serves as notice of a Respondent's expected attendance at an interview, it will include details of the **date**, **time**, **location**, **participants**, and **purpose of that interview**. The notice of allegations must be provided to a Respondent at least **5 Working Days** prior to the interview.

If a Respondent requests to meet sooner than **5 Working Days** after receipt of the notice of allegations, they should verbally confirm at the start of the meeting that they are aware that they were provided notice of at least **5 Working Days** and this confirmation should be documented by the Title IX Coordinator or Investigator.

# Article VII. Informal Resolution

At any time prior to the issuance of the Hearing Officer's Report, if the Title IX Coordinator or either Party believes that it may be possible to resolve the Formal Complaint in a prompt, fair, and reasonable manner without a hearing, the Parties may consider an Informal Resolution that does not involve a full investigation and adjudication, subject to the following:

A.  Informal Resolution under Track 1 may **only** be offered where a Formal Complaint has been filed.

B.  The campus cannot offer or facilitate Informal Resolution under Track 1 to resolve allegations that an Employee sexually harassed a Student.

C. The campus must obtain the Parties' voluntary, written consent before starting the Informal Resolution process.

Once the Title IX Coordinator determines that Informal Resolution is appropriate, the Parties should Simultaneously be provided written notice regarding Informal Resolution that includes the following:

A. The allegations of Sexual Harassment, as defined under Article VII.C of the Nondiscrimination Policy.

B. The requirements of the Informal Resolution process including that once the Informal Resolution process is finalized neither Party is permitted to file another Formal Complaint arising from the same allegations.

C. An explanation that at any time prior to agreeing to a resolution, any Party has the right to withdraw from the Informal Resolution process and resume the Formal Complaint process.

D. An explanation of any consequences resulting from participating in the Informal Resolution process, including the records that will be maintained or could be shared.

E. The Parties' right to consult with an Advisor, if any.

The Title IX Coordinator will oversee the Informal Resolution process and make the final determination on all Informal Resolutions facilitated by the Title IX Coordinator or designee regarding whether the terms agreed to by the Parties are appropriate in light of all of the circumstances of the Formal Complaint.

The Informal Resolution process will be completed prior to any determination of responsibility being made, but no later than **60 Working Days** after both Parties provide voluntary, written consent to participate in the Informal Resolution process.

The campus may not require the Parties to participate in an Informal Resolution process under Track 1, nor may a Party be required to waive their right to the investigation and adjudication of a Formal Complaint as a condition of enrollment or employment, or continuing enrollment or employment.

The terms of any Informal Resolution must be put in writing and signed by the Parties, and the Title IX Coordinator. Prior to signing the Informal Resolution, the Title IX Coordinator will consult with the student conduct administrator and/or other appropriate campus administrator responsible for the implementation of the terms. Use of electronic signatures is permitted.

Any agreed-upon Remedies and disciplinary sanctions will have the force and effect of sanctions imposed following a hearing.

The resolution will be final and not appealable by either Party.

# Article VIII. Investigation of a Formal Complaint

The Title IX Coordinator will either promptly investigate the Formal Complaint or assign this task to another Investigator. If assigned to another Investigator, the Title IX Coordinator will monitor, supervise, and oversee all such delegated tasks, including reviewing all investigation draft reports before they are final to ensure that the investigation is sufficient, appropriate, impartial, and in compliance with this Track.

A. **Gathering of Evidence**

The burden of proof and the burden of gathering evidence sufficient to reach a determination regarding responsibility rests on the campus and not on the Parties. The investigator will take reasonable steps to gather all relevant evidence from the Parties, other witnesses, or other sources. The investigator will document the steps taken to gather evidence, even when those efforts are not successful.

Parties should be aware that **all** evidence Directly Related to the investigation will be provided to the other Party, subject to the exceptions described below.

The campus cannot access, consider, disclose, or otherwise use a Party's records that are made or maintained by a physician, psychiatrist, psychologist, or other recognized professional or paraprofessional acting in the professional's or paraprofessional's capacity, or assisting in that capacity, and which are made and maintained in connection with the provision of treatment to the Party, unless the campus obtains that Party's voluntary, written consent to do so for a Formal Complaint process under this Track[17].

The campus will not restrict the ability of either Party to discuss the allegations under investigation or to gather and present Relevant evidence (for example, contacting a potential witness).

B. **Advisors**

The Complainant and the Respondent may each elect to be accompanied by an Advisor to any meeting, interview, or proceeding regarding the allegations that are the subject of a Formal Complaint. The advisor may be anyone, including a union representative from the Complainant's or Respondent's collective bargaining unit, an attorney, or, in the case of the Complainant, a Sexual Assault Victim's Advocate.

The Advisor may not answer questions regarding the subject matter of the investigation for the Complainant or the Respondent or speak on behalf of a Complainant or Respondent. However, the Advisor may observe and consult with the Complainant or Respondent.

*Hearing Advisors*

The Complainant and Respondent must have a hearing advisor at the hearing. A hearing advisor will be responsible for asking the other Party and any witnesses all Relevant questions and follow-up questions, including those that challenge credibility, during the hearing. During a hearing, Parties may not ask questions of the other Party or any witnesses. Questioning at the live hearing will be conducted directly, orally, and in real time by the Party's hearing advisor of choice or a hearing advisor provided by the campus if the Party does not have a hearing advisor.

The hearing advisor may be the same person as the advisor. A Party may have both an Advisor and a hearing advisor present at a hearing. If a Party does not have a hearing advisor to perform questioning during the hearing, the campus shall provide the Party with a hearing advisor for this purpose.

*Advisors Generally*

The Title IX Coordinator or Investigator will explain to the Complainant and Respondent that they may request that their advisor, if any, be copied on communications during the Formal Complaint process. Any such request will be in writing to the Title IX Coordinator or Investigator and should include the Advisor's name and contact information.

The Title IX Coordinator or Investigator will also explain that Advisors **will** receive a copy of the evidence and Final Investigation Report, unless the Party specifically directs in writing that this information should not be sent to their Advisor.

Although reasonable efforts will be made to accommodate hearing advisors and Advisors,

undue delays affecting the complaint resolution timeline will not be permitted. Disruptive, abusive, or disrespectful behavior also will not be tolerated. At the discretion of the investigator or Title IX Coordinator during meetings or interviews and of the hearing officer during hearings, a hearing advisor or Advisor who engages in disruptive, abusive, or disrespectful behavior will not be permitted to participate. If a hearing advisor is excused during a hearing, the campus will either provide a Party with another hearing advisor or allow the Party to obtain another hearing advisor. It is within the hearing officer's discretion to proceed with or postpone the hearing in order to address the situation.

C. **Notice of Meetings, Interviews and Hearings**
Parties will be provided written notice of the **date**, **time**, **location**, **names of participants**, and **purpose** of all meetings and investigative interviews at which their participation is expected. This written notice should be provided with at least **3 Working Days** for the Party to prepare to participate in the meeting or interview. This requirement will not apply where a Party themselves requests to meet with the Title IX Coordinator or Investigator or as addressed in Article VI of this Track.

If a Party requests to meet with the Title IX Coordinator sooner than **3 Working Days** after receipt of written notice of an investigative interview or meeting, they should verbally confirm at the start of the interview or meeting that they are aware that they were provided notice of at least **3 Working Days** and this confirmation should be documented by the Title IX Coordinator or Investigator.

D. **Review of Evidence**
Before issuing a final investigation report, the investigator will send to the Complainant and Respondent, and their respective advisors, [18] if any, **all** evidence (including evidence upon which the campus does not intend to rely) obtained as part of the investigation that is Directly Related to the allegations raised in the Formal Complaint (preliminary investigation report). This includes inculpatory or exculpatory evidence whether obtained from a Party or other source, redacted if required by law.

The requirement to provide all Directly Related evidence does not include illegally obtained evidence (e.g., conversations recorded without the consent of the participants). Neither the preliminary nor final investigation report will include information protected by a legally recognized privilege, the Complainant's sexual history, or a Party's treatment records if the Party has not given voluntary, written consent to the disclosure of those treatment records. The preliminary investigation report will: (a) describe the allegations; (b) identify the material facts—undisputed and disputed—with explanations as to why any material fact is disputed; and (c) describe the evidence presented and considered. Where not contained within the preliminary investigation report itself, evidence should be attached to the preliminary investigation report as exhibits.

The preliminary investigation report and any exhibits must be sent in electronic format (which may include use of a file sharing platform that restricts the Parties and any advisors from downloading or copying the evidence) **or** hard copy. The Investigator may use discretion in determining how to send the preliminary investigation report to the Parties and their advisors, if any, in light of the particular circumstances and any Party or witness privacy concerns. This process is collectively referred to as the "review of evidence."

Each Party will be given a minimum of **10 Working Days** for the initial review of evidence to respond to the list of disputed facts and evidence and submit additional questions for the other Party and witnesses. This timeframe may be extended at the discretion of the Title IX Coordinator (either on their own or in response to a Party's request). The extension must be

92
RJN Exhibit 1

made available to both Parties, who must be notified as such. During the review of evidence, each Party may:

1. Meet again with the investigator to further discuss the allegations.

2. Identify additional disputed facts.

3. Respond to the evidence in writing.

4. Request that the investigator ask additional specific questions to the other Party and other witnesses.

5. Identify additional relevant witnesses.

6. Request that the investigator gather additional evidence.
   The investigator will share with the Parties the answers to questions posed during the review of evidence. If additional disputed material facts are identified or evidence is gathered, it will be included in the preliminary investigation report (or in a separate addendum) and shared with all Parties, who will be given a reasonable opportunity to respond to the new evidence and submit additional questions to the other Party and other witnesses about the new evidence only. The investigator determines when it is appropriate to conclude the review of evidence.

E. **Final Investigation Report**
After the review of evidence phase is concluded, the Parties will receive a final investigation report that will summarize all **Relevant** evidence (inculpatory and exculpatory), including additional Relevant evidence received during the review of evidence. Any Relevant documentary or other tangible evidence provided by the Parties or witnesses, or otherwise gathered by the Investigator will be attached to the final investigation report as exhibits.
As part of an Informal Resolution, at the request of both Parties, campuses will provide a written preliminary assessment of the evidence by the Title IX Coordinator. Neither the fact nor the substance of the assessment will be shared with the hearing officer or considered Relevant at the hearing.
The final investigation report shall be sent to the Parties and their respective advisors, if any, in electronic format (which may include use of a file sharing platform that restricts the Parties and any Advisors from downloading or copying the evidence) **or** hard copy. The Parties and their advisors will be provided **10 Working Days** to review and provide a written response to the final investigation report. Campuses will inform Parties not to include any reference to the preliminary assessment and that any such references will be redacted.
The written response will be attached to the final investigation report and provided to the hearing officer, if appropriate, and the Parties. Any references to a preliminary assessment, assuming one was requested, will be redacted from this written response. No documentation should be provided to the hearing officer if an Informal Resolution is reached.

F. **Timeframe for Completion of Investigation**
Absent a determination of good cause made by the investigator or Title IX Coordinator (of which the Parties will receive written notice): (i) the investigation should be concluded within **100 Working Days** from the date that the notice of allegations is provided to the Parties; and (ii) the final investigation report should be completed and provided to the Parties within **10 Working Days** after the review of evidence has concluded. Extensions may be granted for good cause as determined by the Title IX Coordinator. The Parties will receive written notice from the Title IX Coordinator or designee if an extension is necessary and why. The notice will

indicate if the extension alters the timeframes for the major stages of the Formal Complaint process.

Within **10 Working Days** after the Parties have been provided the final investigation report, the Parties will be informed of the timelines that will apply to the pre-hearing and hearing processes described in Article IX below. The Parties will be required to provide the name and contact information for their hearing advisor within **5 Working Days** after notice of the hearing timeline.

# Article IX. Hearing

1. A hearing coordinator, (either the student conduct administrator, Title IX Coordinator, or other appropriate administrator) will be responsible for coordinating the hearing process. The hearing coordinator's duties will include: scheduling the hearing; notifying witnesses of the hearing; ensuring that the hearing officer is provided with appropriate materials including a copy of the report and any exhibits; coordinating videoconferencing (if necessary); and securing a location for the hearing. The hearing coordinator will also act as liaison between the Parties and the hearing officer on procedural matters.

2. The Parties will be given written notice of the **date**, **time, location, participants, and purpose of the hearing**, as well as the **identity of the hearing officer.** Notification of the hearing will be sent to the designated CSU campus email address, unless the recipient has specifically requested in writing to the hearing coordinator that notice be given to a different email address. Communications from the hearing coordinator will be deemed received on the date sent. The hearing will not be set sooner than **20 Working Days** after the date of notice of hearing.

3. Timelines:
   **Objection to Hearing Officer**
   Any objections to an appointed hearing officer must be made in writing to the hearing Coordinator within **5 Working Days** after notice of the identity of the hearing officer has been communicated to the Parties.

   The objection may only be based on an actual Conflict of Interest. A Conflict of Interest exists if the hearing officer has a personal relationship with one of the Parties or witnesses or has demonstrated actual bias towards a Party or witness.

   The fact that a hearing officer has previously served as a hearing officer in a campus proceedings will not constitute a Conflict of Interest. The hearing coordinator will determine if a Conflict of Interest exists. In that event, the Parties will be notified in writing of the name of the new hearing officer. The date for the hearing may need to be rescheduled. Any objection to the new hearing officer will be made in accordance with this section.

   **Pre-Hearing Process**
   No later than **15 Working Days** before the hearing, each Party may:
   a. Provide to the hearing coordinator a proposed witness list that includes the names of, and current contact information for, that Party's proposed witnesses as well as an explanation of the relevance of each proposed witness's testimony and the disputed issue to which the witness's testimony relates. The hearing officer may also identify witnesses from the final investigation report.

CSU Policy Prohibiting Discrimination, Harassment, Sexual Misconduct, Sexual Exploitation, Dating Violence, Domestic Violence, Stalking, and Retaliation (Nondiscrimination Policy). Retrieved 4/28/2023. Official copy at http://calstate.policystat.com/policy/12891658/. Copyright © 2023 The California State University

94
RJN Exhibit 1

No later than **10 Working Days** before the hearing, the hearing coordinator will:
a. Share a final witness list with the Parties;
b. Notify each witness of the date, time, and location of the hearing. Witnesses will be directed to attend the hearing and to promptly direct any questions or concerns about their attendance at the hearing to the hearing coordinator.

No later than **5 Working Days** prior to the hearing, the Parties may submit a list of proposed questions to the hearing coordinator. The questions will be provided to the hearing officer. Parties are strongly encouraged to provide questions in advance of the hearing in order to streamline the hearing process and provide the hearing officer an opportunity to resolve relevancy concerns prior to the hearing. The proposed questions will not be shared with the other Party.

The hearing officer will make all determinations regarding pre-hearing matters, including which witnesses have Relevant testimony and will participate and which questions, if submitted, are Relevant and will promptly notify the hearing coordinator who, in turn, will promptly notify the Parties.

The hearing is closed to all persons except the Parties; the Parties' respective hearing advisors; one Advisor for each Party; appropriate witnesses while they are testifying; the student conduct administrator or human resources officer; Title IX Coordinator; Title IX Investigator; hearing officer; hearing coordinator; and any person necessary to create a formal record of the proceeding (including a technological support, videographer, or similar role.) A CSU administrator may also be present but will not participate in the hearing. Campus police or a security officer may also be present if deemed appropriate or necessary by the appropriate campus administrator, hearing coordinator, or hearing officer.

4. The campus will direct witnesses who are CSU Employees to attend the hearing. Any Employees, including those in bargaining units, who fail to comply with any such directive may be subject to discipline under the applicable provisions of their collective bargaining agreement or other CSU policy. The campus will take reasonable steps to arrange for Employee witnesses to be available to attend, provided that such Employee witnesses are timely identified to the hearing coordinator in accordance with this Track.

5. The campus will direct Student witnesses to attend the hearing, provided that such Student witnesses are timely identified to the hearing coordinator in accordance with this Track. Students who fail to comply may be subject to discipline, depending on the circumstances. The campus will take reasonable steps to accommodate Student witnesses including arranging for them to be excused from class attendance, if necessary.

6. The campus will make all evidence provided during the investigation, including during review of evidence available at any hearing to give each Party and the hearing officer the opportunity to refer to such evidence during the hearing. This includes evidence upon which the campus does not intend to rely in reaching a determination regarding the Respondent's responsibility.

**Hearing Process**

7. Live hearings will be conducted using videoconferencing technology unless circumstances are such that videoconferencing would not be appropriate. Neither Party will be required to be

physically present in the same room as the hearing officer, each other, or witnesses. The campus will utilize technology that ensures that Parties will be able to Simultaneously see and hear all of the proceedings and testimony.

8. The hearing will begin with an overview of the hearing process given by the hearing officer, after which the Parties will be given an opportunity to ask questions about the hearing process. Each Party will be given an opportunity to make an opening statement that may not last longer than 10 minutes. Only the Parties themselves will be permitted to make opening statements. The hearing advisor and any advisor are not permitted to make the opening statement. The advisor may not speak during the hearing. Closing arguments will not be made.

9. Each Party is required to have a hearing advisor for purposes of questioning the other Party and witnesses during the hearing. If a Party does not have a hearing advisor prior to the hearing or at the start of the hearing, one will be provided to that Party for the purposes of asking the other Party and any witnesses all Relevant questions and follow-up questions, including those questions challenging credibility. If a Party's hearing advisor does not appear or is excused for conduct that causes a material disruption, a hearing advisor will be provided. In either case, the hearing officer has discretion to proceed with or postpone the hearing.

**Questioning**
Generally, the hearing officer will start the questioning of witnesses and Parties. The Investigator or the Title IX Coordinator (if not the Investigator) will be the first witness and will describe the Formal Complaint, investigation process, and summarize the evidence. Hearing advisors will be permitted to ask Relevant questions once the hearing officer has concluded their questioning of the other Party and each witness.

10. The hearing officer may ask questions of any Party or witness who participates in the hearing.

   a. The Complainant and Respondent may be present (physically or virtually) at all times during the hearing.

   b. Parties themselves may not directly ask questions of each other and witnesses.

   c. Each Party's hearing advisor is permitted to ask all Relevant questions of the other Party, the Investigator, and any witnesses, and is also permitted to ask follow-up questions, including those questions challenging credibility. A Party may not be directly questioned by their own hearing advisor. The hearing officer controls the hearing and determines whether a question is Relevant.

   d. A question is not considered Relevant if it relates to the Complainant's sexual predisposition or prior sexual behavior, unless such question about the Complainant's prior sexual behavior is offered to prove that someone other than the Respondent committed the conduct alleged by the Complainant, or if the question concerns specific incidents of the Complainant's prior sexual behavior with respect to the Respondent and is asked to prove consent.

   e. Even if a question relates to a Relevant subject or issue, the hearing officer may determine that the Party or witness being asked the question is not required to answer if the question is repetitive or duplicative of prior questions.

   f. The hearing officer has the discretion to request information from the Parties or hearing advisors regarding questions prior to making a determination about the relevancy of the question. Neither the Parties nor hearing advisors may assert

objections to questions.

g.  Immediately after each question is asked by the hearing advisor, and before the question is answered, the hearing officer will indicate whether the question is Relevant, and if it is not, provide an explanation as to why the question is excluded as not Relevant. A Complainant, Respondent, or witness will only answer questions posed by a hearing advisor that the hearing officer determines are Relevant.

h.  In addition to the relevance requirement, all questions must be asked in a respectful, non-abusive manner. The hearing officer determines whether a question satisfies this requirement and may require that the hearing advisor rephrase a relevant question or repeat the question in a respectful manner when the hearing officer determines that the question was asked in a disrespectful or abusive manner.

i.  Abusive or otherwise disorderly behavior that causes a material disruption will not be tolerated. The hearing officer may excuse from the hearing anyone (including either Party or their hearing advisor) whose behavior causes a material disruption. Should a hearing advisor be removed from a proceeding, the campus will provide a hearing advisor. The hearing officer, in their discretion, may postpone the hearing. In making a determination whether to postpone the hearing, the hearing officer will consider the equity of postponement as to both Parties.

11.  Formal rules of evidence applied in courtroom proceedings (e.g., California Evidence Code) do not apply in the hearing. All Relevant information is considered.

12.  Hearsay may be considered but will only be given the weight appropriate under all of the circumstances, with due consideration given to the importance of credibility assessment. Absent extenuating circumstances, the hearing officer will not rely on prior statements made by the Parties or witnesses during the investigation whose credibility is central to the determination unless those Parties or witnesses make themselves available for examination by the hearing officer.

**Other Procedural Matters**

13.  The hearing officer will not, prior to preparing the hearing officer's report (described below), have substantive communications about the facts of the case with either Party or the investigator unless in the presence of both Parties and a campus official (e.g., hearing coordinator, Title IX Coordinator, or student conduct administrator).

14.  The campus will make or arrange for an official audio recording of the hearing. The recording is campus property. No other recording of the hearing is permitted. The audio recording will be retained by the hearing coordinator or designee in accordance with the campus records/ information retention and disposition schedule. Parties may request to inspect and review the recording.

15.  Absent good cause, the Parties may not introduce evidence, including witness testimony, at the hearing that the Party did not identify during the investigation and that was available at the time of the investigation. The hearing officer has discretion to accept or exclude new evidence offered at the hearing.

16.  If either Party fails to appear at the hearing without good cause the hearing will nevertheless proceed. Whether good cause exists is determined by the hearing officer. If a Party fails to appear at the hearing, the rearing advisor for the non-appearing Party will question the other

Party.

17. The hearing officer controls the hearing, is responsible for maintaining order during the hearing, and makes whatever rulings are necessary to ensure a fair hearing. The hearing officer's decisions in this regard are final.

# Article X. Determination Regarding Responsibility

After the hearing, the hearing officer will make written findings of fact and conclusions about whether the Respondent violated the Nondiscrimination Policy with respect to the definition of Sexual Harassment under Article VII.C of the Nondiscrimination Policy (hearing officer's report).

The standard of proof the hearing officer will use is whether each allegation is substantiated by a Preponderance of the Evidence. The Title IX Coordinator will review the hearing officer's report to ensure procedural compliance with this Track.

The hearing coordinator will Simultaneously send the hearing officer's report promptly to the Parties, the Title IX Coordinator, and the appropriate campus administrator, usually within **15 Working Days** of the close of the hearing.

The hearing officer's report must include:

1. Identification of the allegations potentially constituting Sexual Harassment as defined under in Article VII.C of the Nondiscrimination Policy – this should include the factual allegations and the corresponding alleged Nondiscrimination Policy violations.

2. The Preponderance of the Evidence standard.

3. A description of the procedural steps taken from the receipt of the Formal Complaint through the determination incorporated by reference to the Final Investigation Report, including any notifications to the Parties, interviews with Parties and witnesses, site visits, methods used to gather other evidence, and hearings held.

4. The factual findings and the evidence on which the factual findings are based.

5. A statement of, and rationale for, the result as to each allegation, including a determination regarding responsibility.

6. An explanation as to how the determination concerning the relative credibility or lack of credibility of the Parties or witnesses was reached.

7. Conclusions regarding the application of the policy violations defined under Article VII.C of the Nondiscrimination Policy to the facts, including a determination of whether the Nondiscrimination Policy was violated and an analysis of the basis for that determination.

8. A summary of the procedural issues raised by the Parties during the pre-hearing or hearing processes.

9. A list of all questions proposed by the Parties at the hearing, and if any questions were not asked, why.

10. A statement as to whether Remedies designed to restore or preserve equal access to the campus's education program or activity will be provided by the campus to the Complainant.

If no violation of the Nondiscrimination Policy is found, the president (or designee) will be notified along

98
RJN Exhibit 1

with the Parties. The notification will include the outcome of the hearing, a copy of the hearing officer's report (redacted as appropriate or as otherwise required by law) and notice of the Complainant's and Respondent's right to appeal to the Chancellor's Office.

If a violation of the Nondiscrimination Policy is found, within **5 Working Days** of receiving such finding the Parties may submit to the hearing coordinator an impact statement or other statement regarding discipline that is no more than 2000 words in length. The document is an opportunity for the Parties to suggest disciplinary outcomes and to provide information that they believe is important for the hearing officer to consider. The student conduct administrator and/or appropriate campus administrator responsible for discipline and Title IX Coordinator may also submit a written statement regarding aggravating and mitigating factors that provides a recommendation regarding the disciplinary outcome, including information regarding prior disciplinary outcomes for similar conduct and whether the Respondent was previously found to have violated university policy.

Discipline means any disciplinary action taken to correct a violation of the Nondiscrimination Policy, as follows:

1. Discipline for Employees includes, but is not limited to, suspension, demotion, and termination of employment.

2. Discipline for Students includes, but is not limited to, probation, suspension and expulsion and other Sanctions as defined in Article V, Executive Order 1098.

Within **5 Working Days** after receiving and considering any impact or other statements submitted by the Parties and other statements described above, the hearing officer will submit the hearing officer's report to the president (or designee). The hearing officer's report will be amended to include a statement of, and rationale for, any recommended disciplinary sanctions to be imposed on the Respondent ("final hearing officer's report"). The final hearing officer's report will attach the final investigation report.

In cases where the hearing officer has found a violation of the Nondiscrimination Policy, the president (or designee) will review the final investigation report and the final hearing officer's report and issue a decision ("decision letter") concerning the appropriate sanction or discipline within **10 Working Days** of receipt of the final hearing officer's report.

The president (or designee) may impose the recommended sanctions or discipline, adopt a different sanction or discipline or sanctions or discipline, or reject sanctions or disciplines altogether. If the president (or designee) adopts a sanction or discipline other than what is recommended by the hearing officer, the president (or designee) must set forth the reasons in the decision letter.

The president (or designee) will Simultaneously send the decision letter electronically to the Respondent and Complainant at the campus-assigned or other primary email address linked to their campus accounts.[19] The decision letter will also be sent to the student conduct administrator or other appropriate campus administrator responsible for Employee discipline and the hearing officer.

The decision letter will include:

1. The outcome of the hearing, including any sanction imposed, and the name of the Respondent(s).

2. Information regarding the procedures and permissible bases for the Complainant and Respondent to appeal to the Chancellor's Office.

3. If a finding of responsibility is made against the Respondent, a statement as to whether Remedies will be provided to the Complainant that are designed to restore or preserve equal access to the campus's education program or activity. The specifics of any such Remedies may be discussed separately between the Complainant and the Title IX Coordinator and need not be included in the decision letter.

4. A copy of the final hearing officer's report will be attached to the decision letter, redacted as appropriate or as otherwise required by law.

The president will also send the decision letter to the Title IX Coordinator so that they may determine whether any additional Remedies (or other supportive measure) will be provided or undertaken in order to maintain a safe and nondiscriminatory campus environment.

The determination regarding responsibility and any sanctions become final either on the date that the Chancellor's Office provides the Parties with the written determination of the result of the appeal, if an appeal is filed, or if an appeal is not filed, the date on which an appeal would no longer be considered timely (**11 Working Days** after the date of the decision letter).

The Title IX Coordinator is responsible for effective implementation of any Remedies.

# Article XI. Appeals

## *Filing an Appeal to the Chancellor's Office*

A written appeal may be submitted to the Chancellor's Office **no later than 10 Working Days** after the date of the decision letter. All arguments and/or evidence supporting the appeal must be submitted by the deadline to file the appeal. Evidence/arguments submitted after the appeal submission deadline will not be considered by the Chancellor's Office. A **written appeal may not exceed 3,500 words, excluding exhibits**. Appeals will be submitted to:

Equal Opportunity and Whistleblower Compliance Unit
Systemwide Human Resources
Office of the Chancellor
401 Golden Shore
Long Beach, California 90802
*eo-wbappeals@calstate.edu*

**Electronic submission to the email address listed above is the preferred method of submitting appeals.**

## *Bases for Appeal*

An appeal will be based only on one or more of the appeal issues listed below:

a. There was no reasonable basis for the findings or conclusions that resulted in the investigation or hearing outcome.

b. Procedural errors occurred that would have likely changed the outcome of the hearing.

c.  New evidence that was not reasonably available at the time of the hearing and would have likely affected the hearing officer's decision about whether the Respondent violated the Nondiscrimination Policy.

d.  The Title IX Coordinator, Investigator, or hearing officer had a Conflict of Interest or Bias for or against Complainants or Respondents generally or the individual Complainant or Respondent that affected the outcome of the matter.

e.  The sanction(s) imposed was objectively unreasonable, or arbitrary based on substantiated conduct.

## Issues and Evidence on Appeal

The issues and evidence raised on appeal will be limited to those raised and identified during the hearing, unless new evidence that was not reasonably available at the time of the hearing and that could change the hearing outcome becomes available after the campus hearing was completed and is submitted by the appealing Party. The Chancellor's Office may conduct an interview, at the Chancellor's Office discretion, with the appealing Party to clarify the written appeal.

## Appeal Review

i.  **Acknowledgement of Appeal**
    The Chancellor's Office will provide prompt written acknowledgement of the receipt of the appeal to the appealing Party, and will provide written notification of the appeal, including a copy of the appeal, to the non-appealing Party and the campus Title IX Coordinator/DHR Administrator. The notice will include the right of the non-appealing Party and the campus to provide a response to the appeal **within 10 Working Days** of the date of the notice. **The appeal response will be limited to 3,500 words, excluding exhibits.** Any response to the appeal received by the Chancellor's Office will be provided to the appealing Party for informational purposes only.

ii. **Reasonable Accommodation**
    The Chancellor's Office will provide reasonable accommodation(s) to any Party or witness in the appeal process with a qualified Disability upon request by the person needing the accommodation. A reasonable accommodation may include an extension of time under these procedures. The timeframe for the Chancellor's Office appeal response will automatically be adjusted for the time needed, if any, to provide reasonable accommodation(s).

iii. **Scope of Chancellor's Office Review**
    The Chancellor's Office will not conduct a new investigation or hearing; however, the Chancellor's Office may make reasonable inquiries to determine if the new evidence could have affected the hearing determination. On appeal, the Chancellor's Office does not reweigh the evidence, re-decide conflicts in the evidence, or revisit determinations made by the hearing officer about the credibility or reliability of witnesses and the Parties.

iv. **Chancellor's Office Appeal Response**
    The Chancellor's Office appeal response will include a summary of the issues raised on appeal, a summary of the evidence considered, the Preponderance of the Evidence standard, and the determination(s) reached regarding the issue(s) identified within the written appeal. A copy of the final Chancellor's Office appeal response will be forwarded to the Complainant, the Respondent, and the Title IX Coordinator.

v. **Reopening a Campus Investigation or Hearing**

If the Chancellor's Office review determines that an issue raised on appeal would have affected the hearing outcome, the hearing will be remanded back to the campus and the hearing reopened at the campus level. The Chancellor's Office will return the matter to the campus and will specify in writing the timeline by which a reopened hearing must be completed. The Chancellor's Office will notify the Parties of the reopening of the hearing and the timeline for completion of the reopened hearing. The campus will complete the reopened hearing and provide the Chancellor's Office with an amended hearing officer's report. The campus will also provide the Parties with amended notices of hearing outcome, and such notices will provide the opportunity to appeal. Upon receipt of the amended hearing officer's report, if the outcome remains unchanged, the Chancellor's Office will contact the original appealing Party to determine whether that Party wishes to continue with the appeal. If the outcome is reversed by the hearing officer, the Parties will be given an opportunity to appeal.

vi. **Reversal by Chancellor's Office**

If the Chancellor's Office determines that no reasonable fact finder (hearing officer) could have made the findings as determined by the hearing officer, the Chancellor's Office may vacate and reverse the hearing outcome, but only with respect to whether the Nondiscrimination Policy was violated (and not with respect to factual findings). If the Chancellor's Office vacates and reverses the outcome, it will notify the Parties Simultaneously in writing, as well as the Title IX Coordinator. Following a reversal of a hearing outcome by the Chancellor's Office, the Chancellor's Office decision is final and is not subject to further appeal. In the event that the final outcome has been reversed by the Chancellor's Office and a sanction will be imposed by the campus, both Parties have a right to appeal the sanction only. If a sanction is found to be objectively unreasonable, or arbitrary based on substantiated conduct, the matter will be sent back to the campus for reconsideration of the sanction.

vii. **Timeline for Chancellor's Office Response to Appeal**

The Chancellor's Office will respond to the appealing Party no later than 30 Working Days after receipt of the written appeal, unless the timeline has been extended pursuant to Article XI.D.viii, below.

viii. **Timelines and Extensions**

The Chancellor's Office has discretion to extend the timelines for the appeal process for good cause or for any reasons deemed to be legitimate by the Chancellor's Office. This includes the time for filing an appeal, the time for a hearing to be completed, and the time for the Chancellor's Office to respond to the appeal. The Chancellor's Office will notify the Parties and the Title IX Coordinator of any extensions of time granted pertaining to any portion of the appeal process.

# Article XII. Retaliation

Retaliation, including intimidation, coercion, or discrimination against any individual for the purpose of interfering with an individual exercising any rights under this Track, for reporting or filing a Formal Complaint of Sexual Harassment (as defined under Article VII. C of the Nondiscrimination Policy), or for participating or refusing to participate in any manner in any policy-related investigation or proceeding, including a hearing, is prohibited.

The exercise of rights protected under the First Amendment does not constitute retaliation prohibited

under this Article.

Complaints of Retaliation that arise from this Track may be filed with the Title IX Coordinator in accordance with the procedures set out in the Procedures for Complaints of Discrimination, Harassment, Sexual Misconduct, Sexual Exploitation, Dating Violence, Domestic Violence, Stalking, and Retaliation Made Against a Student **or** the Procedures for Complaints of Discrimination, Harassment, Sexual Misconduct, Sexual Exploitation, Dating Violence, Domestic Violence, Stalking, and Retaliation Made Against an Employee or Third-Party.

Individuals should not be deterred from reporting any incidents of Sexual Harassment or participating in an investigation as a Complainant or witness out of a concern that they might be disciplined for related violations of drug, alcohol, or other university policies. The campus' primary concern is the safety of the campus community; therefore, a person who participates in investigations or proceedings involving Sexual Harassment shall not be subject to discipline for related violations of the Student Conduct Code at or near the time of the incident unless the campus determines the conduct places the health and safety of another person at risk or is otherwise egregious. The campus may, however, have an educational discussion with the person or pursue other educational Remedies regarding alcohol or other drugs.

The campus will keep confidential (except as may be permitted by the FERPA statute or FERPA regulations, or as required by law, or to carry out the purposes of this Track, including the conduct of any investigation, hearing, or judicial proceeding arising thereunder) the identity of:

a.  Any Individual who has made a report or Formal Complaint of sex discrimination, including any individual who has made a report or filed a Formal Complaint of Sexual Harassment, as defined under Article VII.C of the Nondiscrimination Policy.

b.  Any Complainant.

c.  Any Individual who has been reported to be the perpetrator of sex discrimination.

d.  Any Respondent.

e.  Any Witness.

# Article XIII. Recordkeeping

A.  **Records relating to the Investigation and Hearing Process**
    The campus shall maintain records of the following for a period of seven years (from the date of a record's creation), or the timeframe in accordance with the campus records/information retention and disposition schedule, whichever is later:

    1.  Each Sexual Harassment investigation including any determination regarding responsibility (this includes records created in relation to Formal Complaints that are dismissed).

    2.  Any audio or audiovisual recording or transcript pertaining to the Formal Complaint process.

    3.  Any disciplinary sanctions imposed on the Respondent.

    4.  Any Remedies provided to the Complainant designed to restore or preserve equal

access to the campus's education program or activity.

5. Any appeal and the result therefrom (including appeals pertaining to mandatory and discretionary dismissal of Formal Complaints).

6. Any Informal Resolution and the result therefrom.

7. All materials used to train Title IX Coordinators, investigators, hearing officers, and any person who facilitates an Informal Resolution process. The campus shall make these training materials publicly available on its website.

B. **Records relating to Supportive Measures**
The campus must create, and maintain the following for a period of seven years or the timeframe in accordance with the campus records/information retention and disposition schedule, whichever is later:

1. Records of any actions, including any Supportive Measures, taken in response to a report or Formal Complaint of Sexual Harassment, as defined under Article VII. C of the Nondiscrimination Policy;

2. In each instance, the campus must document the basis for its conclusion that its response was not deliberately indifferent, and document that it has taken measures designed to restore or preserve equal access to the campus's Education Program or Activity; and

3. if the campus does not provide a Complainant with Supportive Measures, the campus must document the reasons why such a response was not clearly unreasonable in light of the known circumstances.

# Authority

This policy is issued pursuant to Section II of the Standing Orders of the Board of Trustees of the California State University, and as further delegated by the Standing Delegations of Administrative Authority.

# Endnotes

1. Assaultive or abusive conduct is defined to include a list of 24 criminal offenses, including Sexual Battery, incest, Rape, spousal Rape, abuse of a spouse or cohabitant, and any attempt to commit these crimes. See Cal. Penal Code §§ 11160-11163.2.

2. See Cal. Penal Code §§ 11164-11174.3; see also CSU Executive Order 1083 or any superseding executive order.

3. See Cal. Evid. Code § 1024.

4. See Cal. Evid. Code § 1035.4.

5. If campus management designees identified in CSU Clery policy determine that the Respondent poses a discernible serious or ongoing threat to the campus community, a timely warning will be issued in accordance with the Clery Act. Any such warning will not include any information that identifies the victim.

6. See Government Code 7923.615.

7.  See Government Code 7923.615.

8.  See Penal Code Sections 220, 261, 261.5, 262, 264, 264.1, 265, 266, 266a, 266b, 266c, 266e, 266f, 266j, 267, 269, 273a, 273d, 273.5, 285, 286, 288, 288a, 288.2, 288.3, 288.4, 288.5, 288.7, 289, 422.6, 422.7, 422.75, 646.9, or 647.6.

9.  If campus management designees identified in CSU Clery policy determine that the Respondent poses a discernible serious or ongoing threat to the campus community, a timely warning will be issued in accordance with the Clery Act. Any such warning will not include any information that identifies the victim.

10. Students are also separately subject to discipline in connection with any "conduct that threatens the safety or security of the campus community, or substantially disrupts the functions or operation of the University […] regardless of whether it occurs on or off campus." (5 Cal. Code Regs. § 41301 (d).).

11. Possible sanctions against Students for a finding of a violation of the Nondiscrimination Policy are found in Executive Order 1098 Student Conduct Procedures.

12. A sanction appeal is available for Track 3 cases under Executive 1098 *Student Conduct Procedures*.

13. Possible sanctions against Employees for a finding of a violation of the Nondiscrimination Policy include written and/or verbal counseling, remedial training, reprimand, suspension, demotion and/or dismissal/termination.

14. Track 1 incorporates the requirements of the U.S. Department of Education's Federal Regulations and generally tracks language used in the regulations. However, in keeping with the most current best practices, Track 1 has substituted other terms for "victim" where possible.

15. A Formal Complaint may exist even without a signature where something otherwise indicates that the complainant is the person filing the formal complaint. An e-mail from the Complainant would be sufficient.

16. By signing the Formal Complaint, the Title IX Coordinator does not become a party to the investigation or demonstrate bias.

17. If a Party is not an "eligible student," as defined in 34 CFR 99.3 ("'Eligible' student means a student who has reached 18 years of age or is attending an institution of postsecondary education"), then the University must obtain the voluntary, written consent of a "parent," as defined in 34 CFR 99.3 ("'Parent' means a parent of a student and includes a natural parent, a guardian, or an individual acting as a parent in the absence of a parent or a guardian").

18. Unless the Party informs the Investigator or Title IX Coordinator in writing that they do not wish for this information to be sent to their Support Advisor.

19. The copy of the decision letter issued to the Complainant will be redacted as to findings regarding conduct that does not constitute a "crime of violence," Sexual Misconduct, Dating Violence, Domestic Violence, or Stalking (34 C.F.R. § 99.31 et seq.).

## All Revision Dates

1/22/2023, 12/24/2021

## Attachments

[Attachment A - Additional Information on Implementing the Legal Requirements Prohibiting Sex Discrimination](#)

[Attachment B - Campus Title IX Coordinators Role and Responsibilities](#)

[Attachment C - Confidential Sexual Assault Victim Advocates](#)

[Attachment D - Rights and Options for Victims of Sexual Misconduct, Sexual Assault, Sexual Exploitation, Dating and Domestic Violence, and Stalking](#)

[Attachment E - Myths and Facts About Sexual Misconduct](#)

[Attachment F - Complaint Form](#)

[Attachment G - Systemwide Prevention Policy](#)

[Superseded Policy (EO 1045) Dated 01-27-2010](#)

[Superseded Policy (EO 1072) Dated 04-06-2012](#)

[Superseded Policy (EO 1074) Dated 04-06-2012](#)

[Superseded Policy (EO 1089) Dated 10-23-2013](#)

[Superseded Policy (EO 1095,1096,1097) Dated 01-01-2022](#)

[Superseded Policy (EO 1095) Dated 06-03-2014](#)

[Superseded Policy (EO 1095) Dated 06-23-2015](#)

[Superseded Policy (EO 1096 Revised) Dated 03-29-2019](#)

[Superseded Policy (EO 1096 Revised) Dated 06-23-2015](#)

[Superseded Policy (EO 1096 Revised) Dated 08-14-2020](#)

[Superseded Policy (EO 1096 Revised) Dated 08-24-2021](#)

[Superseded Policy (EO 1096 Revised) Dated 10-05-2016](#)

[Superseded Policy (EO 1096) Dated 06-03-2014](#)

[Superseded Policy (EO 1097 Revised) Dated 03-29-2019](#)

[Superseded Policy (EO 1097 Revised) Dated 06-23-2015](#)

[Superseded Policy (EO 1097 Revised) Dated 08-14-2020](#)

[Superseded Policy (EO 1097 Revised) Dated 08-24-2021](#)



Superseded Policy (EO 1097 Revised) Dated 10-05-2016

Superseded Policy (EO 1097) Dated 06-03-2014

Superseded Policy (EO 340) Dated 04-21-1981

Superseded Policy (EO 345) Dated 05-29-1981

Superseded Policy (EO 419) Dated 07-01-1983

Superseded Policy (EO 675) Dated 01-21-1998

Superseded Policy (EO 774) Dated 05-17-2001

Superseded Policy (EO 883) Dated 10-31-2003

Superseded Policy (EO 927) Dated 01-06-2005

Superseded Policy (EO 928) Dated 01-16-2005

Superseded Policy (EO 993) Dated 10-23-2006

## Approval Signatures

| Step Description | Approver | Date |
| --- | --- | --- |
| VC | Leora Freedman: Acting VC for Human Resources | 1/22/2023 |
| Area Manager/Owner | Andy Alvarez: Assoc Dir, SW Emp & Plcy Admin | 12/28/2022 |