# Exhibit 7

AMENDED IN SENATE APRIL 17, 2023

AMENDED IN SENATE MARCH 22, 2023

# SENATE BILL                                No. 403

### Introduced by Senator Wahab
*(Coauthor: Assembly Member Bains)*

February 9, 2023

An act to amend Section 51 of the Civil Code, to amend Sections 200 and 210.2 of, and to add Section 210.4 to, the Education Code, and to amend Sections 11135, 12920, 12921, 12926, 12930, 12931, 12940, 12944, 12955, 12955.8, 12956.1, 12956.2, and 12993 of the Government Code, relating to discrimination.

LEGISLATIVE COUNSEL'S DIGEST

SB 403, as amended, Wahab. Discrimination on the basis of caste.

Existing law, the Unruh Civil Rights Act, provides that all persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, sexual orientation, citizenship, primary language, or immigration status are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

This bill would additionally provide that all persons within the jurisdiction of the state are so entitled regardless of their caste, as defined.

Existing law states the policy of the State of California to afford all persons in public schools, regardless of their disability, gender, gender identity, gender expression, nationality, race or ethnicity, religion, sexual orientation, or specified other characteristics, equal rights and opportunities in the educational institutions of the state, and states that

97

**SB 403**                     — 2 —

the purpose of related existing law is to prohibit acts that are contrary to that policy and to provide remedies therefor.

This bill would additionally include caste, as defined, as a protected characteristic in that policy statement.

Existing law prohibits discrimination in any program or activity that is conducted, operated, or administered by the state, or by any state agency, that is funded directly by the state, or that receives any financial assistance from the state, based upon specified personal characteristics.

This bill would also prohibit discrimination based upon caste, as defined.

Existing law, the California Fair Employment and Housing Act (FEHA), establishes the Civil Rights Department to enforce civil rights laws with respect to housing and employment, as prescribed. The FEHA declares the public policy of the state that it is necessary to protect and safeguard the right of all persons to seek, obtain, and hold employment without discrimination on account of race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, genetic information, marital status, sex, gender, gender identity, gender expression, age, sexual orientation, reproductive health decisionmaking, or military and veteran status. The FEHA recognizes and declares to be a civil right the opportunity to seek, obtain, and hold employment without discrimination because of a specified characteristic. The FEHA makes certain discriminatory employment practices based on those characteristics unlawful.

This bill would revise FEHA to prohibit prescribed discriminatory employment practices on account of caste.

The FEHA further declares the practice of discrimination because of race, caste, color, religion, sex, gender, gender identity, gender expression, sexual orientation, marital status, national origin, ancestry, familial status, source of income, disability, veteran or military status, or genetic information in housing accommodations to be against public policy. The FEHA recognizes and declares to be a civil right the opportunity to seek, obtain, and hold housing without discrimination because of a specified characteristic. The FEHA makes certain discriminatory housing practices based on those characteristics unlawful, including to discriminate through public or private land use practices, decisions, and authorizations because of a specified characteristic, including the existence of a restrictive covenant, regardless of whether accompanied by a statement that the restrictive covenant is repealed or void. The FEHA authorizes a person who holds an ownership interest

of record in property that they believe is the subject of an unlawfully restrictive covenant, as specified, to record a Restrictive Covenant Modification, which is required to include a copy of the original document with the illegal language stricken.

This bill would revise these FEHA housing provisions to include protection for discrimination because of caste.

This bill would make additional similar changes relating to the duties and powers of the department and the construction of the FEHA and would define "caste" for purposes of the FEHA.

Vote:  majority.  Appropriation:  no. Fiscal committee:  yes. State-mandated local program:  no.

*The people of the State of California do enact as follows:*

1    SECTION 1.   The Legislature finds and declares all of the
2  following:
3    (a) ~~Caste is a system of social stratification where each position~~
4  ~~is characterized by hereditary status, endogamy, and social~~
5  ~~exclusion.~~ *"Caste" refers to an individual's perceived position in*
6  *a system of social stratification on the basis of inherited status. A*
7  *system of social stratification on the basis of inherited status may*
8  *be characterized by factors that may include, but are not limited*
9  *to, inability or restricted ability to alter inherited status; socially*
10  *enforced restrictions on marriage, private and public segregation,*
11  *and discrimination; and social exclusion on the basis of perceived*
12  *status.*
13    (b) Caste discrimination is present across South Asia and the
14  South Asian ~~diaspora and is found in all~~ *diaspora, as well as*
15  *around the world. While caste systems are strongly associated*
16  *with South Asia, similar systems exist in regions including, but not*
17  *limited to, South America, Asia, and Africa. Caste discrimination*
18  *is also found across* communities of religious practice.
19    ~~(c) California caste-oppressed individuals who originate from~~
20  ~~South Asia, including India, Nepal, Sri Lanka, Bangladesh, and~~
21  ~~Pakistan, are known by the self-chosen identity of "Dalits," which~~
22  ~~means "those who have been broken but are resilient." Others who~~
23  ~~are caste-oppressed indigenous people are named "Adivasis" or~~
24  ~~their tribal names.~~
25    ~~(d) Caste systems similarly known to discriminate based on~~
26  ~~descent are found around the world. While caste is strongly~~

SB 403                          — 4 —

1  ~~associated with South Asia, similar systems exist in South America,~~
2  ~~Japan, parts of Africa, and elsewhere.~~
3  ~~(e)~~
4  *(c)* Caste discrimination at ~~work, school, and places of worship~~
5  *work and school* continues to exist in California.
6  ~~(f)~~
7  *(d)* Caste discrimination manifests as workplace discrimination,
8  housing discrimination, gender-based violence, and other physical
9  and psychological forms of violence.
10  ~~(g)~~
11  *(e)* Caste discrimination occurs across industries, including
12  technology, construction, ~~restaurants,~~ *restaurant,* and domestic
13  work. In these sectors, caste discrimination has included
14  harassment, bias, wage theft, and even human trafficking.
15  ~~(h)~~
16  *(f)* Caste is today inextricably intertwined with existing legal
17  protections in state and federal civil rights laws such that
18  discrimination based on one's caste is effectively discrimination
19  based on the intersection of other protected identities. However,
20  because of the grave discrimination caste-oppressed Californians
21  face, these existing protections must be made explicit.
22  ~~(i)~~
23  *(g)* The amendments in this act ~~do not constitute a change in,~~
24  ~~but are declaratory of, existing law. It is not the intent of the~~
25  ~~Legislature in amending the sections in this act to affect the~~
26  ~~protected status of any other classification, whether or not~~
27  ~~expressed in Section 51 of the Civil Code, Section 200 of the~~
28  ~~Education Code, or Section 11135 or 12920 of the Government~~
29  ~~Code.~~ *are declarative of and clarify existing law. This act shall*
30  *not be construed to mean that caste discrimination is not already*
31  *prohibited under existing law, including by protections for religion,*
32  *ancestry, national origin, ethnicity, race, color, or any other*
33  *protected characteristic under existing law.*
34  ~~(j)~~
35  *(h)* The State of California is committed to recognizing the
36  dignity of all its residents, students, workers, and visitors. This
37  recognition includes the right to reside, work, and travel without
38  suffering prejudice or discrimination.
39  SEC. 2.  Section 51 of the Civil Code is amended to read:

220
RJN Exhibit 7

1    51.  (a)  This section shall be known, and may be cited, as the
2    Unruh Civil Rights Act.
3        (b)  All persons within the jurisdiction of this state are free and
4    equal, and no matter what their sex, race, caste, color, religion,
5    ancestry, national origin, disability, medical condition, genetic
6    information, marital status, sexual orientation, citizenship, primary
7    language, or immigration status are entitled to the full and equal
8    accommodations, advantages, facilities, privileges, or services in
9    all business establishments of every kind whatsoever.
10      (c)  This section shall not be construed to confer any right or
11   privilege on a person that is conditioned or limited by law or that
12   is applicable alike to persons of every sex, color, race, caste,
13   religion, ancestry, national origin, disability, medical condition,
14   marital status, sexual orientation, citizenship, primary language,
15   or immigration status, or to persons regardless of their genetic
16   information.
17      (d)  Nothing in this section shall be construed to require any
18   construction, alteration, repair, structural or otherwise, or
19   modification of any sort whatsoever, beyond that construction,
20   alteration, repair, or modification that is otherwise required by
21   other provisions of law, to any new or existing establishment,
22   facility, building, improvement, or any other structure, nor shall
23   anything in this section be construed to augment, restrict, or alter
24   in any way the authority of the State Architect to require
25   construction, alteration, repair, or modifications that the State
26   Architect otherwise possesses pursuant to other laws.
27      (e)  For purposes of this section:
28      (1)  "Disability" means any mental or physical disability as
29   defined in Sections 12926 and 12926.1 of the Government Code.
30      (2) (A)  "Genetic information" means, with respect to any
31   individual, information about any of the following:
32      (i)  The individual's genetic tests.
33      (ii)  The genetic tests of family members of the individual.
34      (iii)  The manifestation of a disease or disorder in family
35   members of the individual.
36      (B)  "Genetic information" includes any request for, or receipt
37   of, genetic services, or participation in clinical research that
38   includes genetic services, by an individual or any family member
39   of the individual.

97

1    (C)  "Genetic information" does not include information about
2    the sex or age of any individual.
3    (3)  "Medical condition" has the same meaning as defined in
4    subdivision (i) of Section 12926 of the Government Code.
5    (4)  "Religion" includes all aspects of religious belief,
6    observance, and practice.
7    (5)  "Sex" includes, but is not limited to, pregnancy, childbirth,
8    or medical conditions related to pregnancy or childbirth. "Sex"
9    also includes, but is not limited to, a person's gender. "Gender"
10   means sex, and includes a person's gender identity and gender
11   expression. "Gender expression" means a person's gender-related
12   appearance and behavior whether or not stereotypically associated
13   with the person's assigned sex at birth.
14   (6)  "Sex, race, caste, color, religion, ancestry, national origin,
15   disability, medical condition, genetic information, marital status,
16   sexual orientation, citizenship, primary language, or immigration
17   status" includes a perception that the person has any particular
18   characteristic or characteristics within the listed categories or that
19   the person is associated with a person who has, or is perceived to
20   have, any particular characteristic or characteristics within the
21   listed categories.
22   (7)  "Sexual orientation" has the same meaning as defined in
23   subdivision (s) of Section 12926 of the Government Code.
24   (8)  "Caste" ~~is a system of social stratification where each~~
25   ~~position is characterized by hereditary status, endogamy, social~~
26   ~~barriers, and social exclusion.~~ *means an individual's perceived*
27   *position in a system of social stratification on the basis of inherited*
28   *status. "A system of social stratification on the basis of inherited*
29   *status" may be characterized by factors that may include, but are*
30   *not limited to, inability or restricted ability to alter inherited status;*
31   *socially enforced restrictions on marriage, private and public*
32   *segregation, and discrimination; and social exclusion on the basis*
33   *of perceived status.*
34   (f)  A violation of the right of any individual under the federal
35   Americans with Disabilities Act of 1990 (Public Law 101-336)
36   shall also constitute a violation of this section.
37   (g)  Verification of immigration status and any discrimination
38   based upon verified immigration status, where required by federal
39   law, shall not constitute a violation of this section.

97

1    (h) Nothing in this section shall be construed to require the
2  provision of services or documents in a language other than
3  English, beyond that which is otherwise required by other
4  provisions of federal, state, or local law, including Section 1632.
5    SEC. 3.   Section 200 of the Education Code is amended to read:
6    200.   It is the policy of the State of California to afford all
7  persons in public schools, regardless of their disability, caste,
8  gender, gender identity, gender expression, nationality, race or
9  ethnicity, religion, sexual orientation, or any other characteristic
10  that is contained in the definition of hate crimes set forth in Section
11  422.55 of the Penal Code, including immigration status, equal
12  rights, and opportunities in the educational institutions of the state.
13  The purpose of this chapter is to prohibit acts that are contrary to
14  that policy and to provide remedies therefor.
15    SEC. 4.   Section 210.2 of the Education Code is amended to
16  read:
17    210.2.   "Disability, caste, gender, gender identity, gender
18  expression, nationality, race or ethnicity, religion, sexual
19  orientation, or any other characteristic that is contained in the
20  definition of hate crimes set forth in Section 422.55 of the Penal
21  Code" includes a perception that the person has any of those
22  characteristics or that the person is associated with a person who
23  has, or is perceived to have, any of those characteristics.
24    SEC. 5.   Section 210.4 is added to the Education Code, to read:
25    210.4.   "Caste" ~~is a system of social stratification where each~~
26  ~~position is characterized by hereditary status, endogamy, social~~
27  ~~barriers, and social exclusion.~~ *means an individual's perceived*
28  *position in a system of social stratification on the basis of inherited*
29  *status. "A system of social stratification on the basis of*
30  *inherited status" may be characterized by factors that may include, but are*
31  *not limited to, inability or restricted ability to alter inherited status;*
32  *socially enforced restrictions on marriage, private and public*
33  *segregation, and discrimination; and social exclusion on the basis*
34  *of perceived status.*
35    SEC. 6.   Section 11135 of the Government Code is amended
36  to read:
37    11135.   (a) No person in the State of California shall, on the
38  basis of sex, race, caste, color, religion, ancestry, national origin,
39  ethnic group identification, age, mental disability, physical
40  disability, medical condition, genetic information, marital status,

1    or sexual orientation, be unlawfully denied full and equal access
2    to the benefits of, or be unlawfully subjected to discrimination
3    under, any program or activity that is conducted, operated, or
4    administered by the state or by any state agency, is funded directly
5    by the state, or receives any financial assistance from the state.
6    Notwithstanding Section 11000, this section applies to the
7    California State University.
8        (b)  With respect to discrimination on the basis of disability,
9    programs and activities subject to subdivision (a) shall meet the
10    protections and prohibitions contained in Section 202 of the federal
11    Americans with Disabilities Act of 1990 (42 U.S.C. Sec. 12132),
12    and the federal rules and regulations adopted in implementation
13    thereof, except that if the laws of this state prescribe stronger
14    protections and prohibitions, the programs and activities subject
15    to subdivision (a) shall be subject to the stronger protections and
16    prohibitions.
17        (c)  The protected bases referenced in this section have the same
18    meanings as those terms are defined in Section 12926.
19        (d)  The protected bases used in this section include a perception
20    that a person has any of those characteristics or that the person is
21    associated with a person who has, or is perceived to have, any of
22    those characteristics.
23        SEC. 7.  Section 12920 of the Government Code is amended
24    to read:
25        12920.  It is hereby declared as the public policy of this state
26    that it is necessary to protect and safeguard the right and
27    opportunity of all persons to seek, obtain, and hold employment
28    without discrimination or abridgment on account of race, caste,
29    religious creed, color, national origin, ancestry, physical disability,
30    mental disability, medical condition, genetic information, marital
31    status, sex, gender, gender identity, gender expression, age, sexual
32    orientation, reproductive health decisionmaking, or military and
33    veteran status.
34        It is recognized that the practice of denying employment
35    opportunity and discriminating in the terms of employment for
36    these reasons foments domestic strife and unrest, deprives the state
37    of the fullest utilization of its capacities for development and
38    advancement, and substantially and adversely affects the interests
39    of employees, employers, and the public in general.

1  Further, the practice of discrimination because of race, caste,
2  color, religion, sex, gender, gender identity, gender expression,
3  sexual orientation, marital status, national origin, ancestry, familial
4  status, source of income, disability, veteran or military status, or
5  genetic information in housing accommodations is declared to be
6  against public policy.
7  It is the purpose of this part to provide effective remedies that
8  will eliminate these discriminatory practices.
9  This part shall be deemed an exercise of the police power of the
10 state for the protection of the welfare, health, and peace of the
11 people of this state.
12 SEC. 8.   Section 12921 of the Government Code is amended
13 to read:
14 12921.   (a) The opportunity to seek, obtain, and hold
15 employment without discrimination because of race, caste, religious
16 creed, color, national origin, ancestry, physical disability, mental
17 disability, medical condition, genetic information, marital status,
18 sex, gender, gender identity, gender expression, age, sexual
19 orientation, reproductive health decisionmaking, or veteran or
20 military status is hereby recognized as and declared to be a civil
21 right.
22 (b) The opportunity to seek, obtain, and hold housing without
23 discrimination because of race, caste, color, religion, sex, gender,
24 gender identity, gender expression, sexual orientation, marital
25 status, national origin, ancestry, familial status, source of income,
26 disability, veteran or military status, genetic information, or any
27 other basis prohibited by Section 51 of the Civil Code is hereby
28 recognized as and declared to be a civil right.
29 SEC. 9.   Section 12926 of the Government Code is amended
30 to read:
31 12926.   As used in this part in connection with unlawful
32 practices, unless a different meaning clearly appears from the
33 context:
34 (a) "Affirmative relief" or "prospective relief" includes the
35 authority to order reinstatement of an employee, awards of backpay,
36 reimbursement of out-of-pocket expenses, hiring, transfers,
37 reassignments, grants of tenure, promotions, cease and desist
38 orders, posting of notices, training of personnel, testing, expunging
39 of records, reporting of records, and any other similar relief that
40 is intended to correct unlawful practices under this part.

97

RJN Exhibit 7

**SB 403**                                    — 10 —

1    (b)  "Age" refers to the chronological age of any individual who
2  has reached a 40th birthday.
3    (c)  Except as provided by Section 12926.05, "employee" does
4  not include any individual employed by that person's parent,
5  spouse, or child or any individual employed under a special license
6  in a nonprofit sheltered workshop or rehabilitation facility.
7    (d)  "Employer" includes any person regularly employing five
8  or more persons, or any person acting as an agent of an employer,
9  directly or indirectly, the state or any political or civil subdivision
10  of the state, and cities, except as follows:
11  "Employer" does not include a religious association or
12  corporation not organized for private profit.
13    (e)  "Employment agency" includes any person undertaking for
14  compensation to procure employees or opportunities to work.
15    (f)  "Essential functions" means the fundamental job duties of
16  the employment position the individual with a disability holds or
17  desires. "Essential functions" does not include the marginal
18  functions of the position.
19    (1)  A job function may be considered essential for any of several
20  reasons, including, but not limited to, any one or more of the
21  following:
22    (A)  The function may be essential because the reason the
23  position exists is to perform that function.
24    (B)  The function may be essential because of the limited number
25  of employees available among whom the performance of that job
26  function can be distributed.
27    (C)  The function may be highly specialized, so that the
28  incumbent in the position is hired based on expertise or the ability
29  to perform a particular function.
30    (2)  Evidence of whether a particular function is essential
31  includes, but is not limited to, the following:
32    (A)  The employer's judgment as to which functions are essential.
33    (B)  Written job descriptions prepared before advertising or
34  interviewing applicants for the job.
35    (C)  The amount of time spent on the job performing the function.
36    (D)  The consequences of not requiring the incumbent to perform
37  the function.
38    (E)  The terms of a collective bargaining agreement.
39    (F)  The work experiences of past incumbents in the job.
40    (G)  The current work experience of incumbents in similar jobs.

97

1    (g) (1) "Genetic information" means, with respect to any
2  individual, information about any of the following:
3    (A) The individual's genetic tests.
4    (B) The genetic tests of family members of the individual.
5    (C) The manifestation of a disease or disorder in family members
6  of the individual.
7    (2) "Genetic information" includes any request for, or receipt
8  of, genetic services, or participation in clinical research that
9  includes genetic services, by an individual or any family member
10  of the individual.
11    (3) "Genetic information" does not include information about
12  the sex or age of any individual.
13    (h) "Labor organization" includes any organization that exists
14  and is constituted for the purpose, in whole or in part, of collective
15  bargaining or of dealing with employers concerning grievances,
16  terms or conditions of employment, or of other mutual aid or
17  protection.
18    (i) "Medical condition" means either of the following:
19    (1) Any health impairment related to or associated with a
20  diagnosis of cancer or a record or history of cancer.
21    (2) Genetic characteristics. For purposes of this section, "genetic
22  characteristics" means either of the following:
23    (A) Any scientifically or medically identifiable gene or
24  chromosome, or combination or alteration thereof, that is known
25  to be a cause of a disease or disorder in a person or that person's
26  offspring, or that is determined to be associated with a statistically
27  increased risk of development of a disease or disorder, and that is
28  presently not associated with any symptoms of any disease or
29  disorder.
30    (B) Inherited characteristics that may derive from the individual
31  or family member, that are known to be a cause of a disease or
32  disorder in a person or that person's offspring, or that are
33  determined to be associated with a statistically increased risk of
34  development of a disease or disorder, and that are presently not
35  associated with any symptoms of any disease or disorder.
36    (j) "Mental disability" includes, but is not limited to, all of the
37  following:
38    (1) Having any mental or psychological disorder or condition,
39  such as intellectual disability, organic brain syndrome, emotional

97

**SB 403**                    — 12 —

1  or mental illness, or specific learning disabilities, that limits a
2  major life activity. For purposes of this section:
3      (A)  "Limits" shall be determined without regard to mitigating
4  measures, such as medications, assistive devices, or reasonable
5  accommodations, unless the mitigating measure itself limits a
6  major life activity.
7      (B)  A mental or psychological disorder or condition limits a
8  major life activity if it makes the achievement of the major life
9  activity difficult.
10     (C)  "Major life activities" shall be broadly construed and shall
11  include physical, mental, and social activities and working.
12     (2)  Any other mental or psychological disorder or condition not
13  described in paragraph (1) that requires special education or related
14  services.
15     (3)  Having a record or history of a mental or psychological
16  disorder or condition described in paragraph (1) or (2), which is
17  known to the employer or other entity covered by this part.
18     (4)  Being regarded or treated by the employer or other entity
19  covered by this part as having, or having had, any mental condition
20  that makes achievement of a major life activity difficult.
21     (5)  Being regarded or treated by the employer or other entity
22  covered by this part as having, or having had, a mental or
23  psychological disorder or condition that has no present disabling
24  effect, but that may become a mental disability as described in
25  paragraph (1) or (2).
26     "Mental disability" does not include sexual behavior disorders,
27  compulsive gambling, kleptomania, pyromania, or psychoactive
28  substance use disorders resulting from the current unlawful use of
29  controlled substances or other drugs.
30     (k)  "Veteran or military status" means a member or veteran of
31  the United States Armed Forces, United States Armed Forces
32  Reserve, the United States National Guard, and the California
33  National Guard.
34     (*l*)  "On the bases enumerated in this part" means or refers to
35  discrimination on the basis of one or more of the following: race,
36  caste, religious creed, color, national origin, ancestry, physical
37  disability, mental disability, medical condition, genetic information,
38  marital status, sex, age, sexual orientation, reproductive health
39  decisionmaking, or veteran or military status.

97

RJN Exhibit 7

— 13 —                         **SB 403**

1    (m) "Physical disability" includes, but is not limited to, all of
2  the following:
3    (1) Having any physiological disease, disorder, condition,
4  cosmetic disfigurement, or anatomical loss that does both of the
5  following:
6    (A) Affects one or more of the following body systems:
7  neurological, immunological, musculoskeletal, special sense
8  organs, respiratory, including speech organs, cardiovascular,
9  reproductive, digestive, genitourinary, hemic and lymphatic, skin,
10  and endocrine.
11    (B) Limits a major life activity. For purposes of this section:
12    (i) "Limits" shall be determined without regard to mitigating
13  measures such as medications, assistive devices, prosthetics, or
14  reasonable accommodations, unless the mitigating measure itself
15  limits a major life activity.
16    (ii) A physiological disease, disorder, condition, cosmetic
17  disfigurement, or anatomical loss limits a major life activity if it
18  makes the achievement of the major life activity difficult.
19    (iii) "Major life activities" shall be broadly construed and
20  includes physical, mental, and social activities and working.
21    (2) Any other health impairment not described in paragraph (1)
22  that requires special education or related services.
23    (3) Having a record or history of a disease, disorder, condition,
24  cosmetic disfigurement, anatomical loss, or health impairment
25  described in paragraph (1) or (2), which is known to the employer
26  or other entity covered by this part.
27    (4) Being regarded or treated by the employer or other entity
28  covered by this part as having, or having had, any physical
29  condition that makes achievement of a major life activity difficult.
30    (5) Being regarded or treated by the employer or other entity
31  covered by this part as having, or having had, a disease, disorder,
32  condition, cosmetic disfigurement, anatomical loss, or health
33  impairment that has no present disabling effect but may become
34  a physical disability as described in paragraph (1) or (2).
35    (6) "Physical disability" does not include sexual behavior
36  disorders, compulsive gambling, kleptomania, pyromania, or
37  psychoactive substance use disorders resulting from the current
38  unlawful use of controlled substances or other drugs.
39    (n) Notwithstanding subdivisions (j) and (m), if the definition
40  of "disability" used in the federal Americans with Disabilities Act

97

1 of 1990 (Public Law 101-336) would result in broader protection
2 of the civil rights of individuals with a mental disability or physical
3 disability, as defined in subdivision (j) or (m), or would include
4 any medical condition not included within those definitions, then
5 that broader protection or coverage shall be deemed incorporated
6 by reference into, and shall prevail over conflicting provisions of,
7 the definitions in subdivisions (j) and (m).
8 (o) "Race, caste, religious creed, color, national origin, ancestry,
9 physical disability, mental disability, medical condition, genetic
10 information, marital status, sex, age, sexual orientation,
11 reproductive health decisionmaking, or veteran or military status"
12 includes a perception that the person has any of those
13 characteristics or that the person is associated with a person who
14 has, or is perceived to have, any of those characteristics.
15 (p) "Reasonable accommodation" may include either of the
16 following:
17 (1) Making existing facilities used by employees readily
18 accessible to, and usable by, individuals with disabilities.
19 (2) Job restructuring, part-time or modified work schedules,
20 reassignment to a vacant position, acquisition or modification of
21 equipment or devices, adjustment or modifications of examinations,
22 training materials or policies, the provision of qualified readers or
23 interpreters, and other similar accommodations for individuals
24 with disabilities.
25 (q) "Religious creed," "religion," "religious observance,"
26 "religious belief," and "creed" include all aspects of religious
27 belief, observance, and practice, including religious dress and
28 grooming practices. "Religious dress practice" shall be construed
29 broadly to include the wearing or carrying of religious clothing,
30 head or face coverings, jewelry, artifacts, and any other item that
31 is part of an individual observing a religious creed. "Religious
32 grooming practice" shall be construed broadly to include all forms
33 of head, facial, and body hair that are part of an individual
34 observing a religious creed.
35 (r) (1) "Sex" includes, but is not limited to, the following:
36 (A) Pregnancy or medical conditions related to pregnancy.
37 (B) Childbirth or medical conditions related to childbirth.
38 (C) Breastfeeding or medical conditions related to breastfeeding.
39 (2) "Sex" also includes, but is not limited to, a person's gender.
40 "Gender" means sex, and includes a person's gender identity and

97

1 gender expression. "Gender expression" means a person's
2 gender-related appearance and behavior whether or not
3 stereotypically associated with the person's assigned sex at birth.
4   (s) "Sexual orientation" means heterosexuality, homosexuality,
5 and bisexuality.
6   (t) "Supervisor" means any individual having the authority, in
7 the interest of the employer, to hire, transfer, suspend, lay off,
8 recall, promote, discharge, assign, reward, or discipline other
9 employees, or the responsibility to direct them, or to adjust their
10 grievances, or effectively to recommend that action, if, in
11 connection with the foregoing, the exercise of that authority is not
12 of a merely routine or clerical nature, but requires the use of
13 independent judgment.
14   (u) "Undue hardship" means an action requiring significant
15 difficulty or expense, when considered in light of the following
16 factors:
17   (1) The nature and cost of the accommodation needed.
18   (2) The overall financial resources of the facilities involved in
19 the provision of the reasonable accommodations, the number of
20 persons employed at the facility, and the effect on expenses and
21 resources or the impact otherwise of these accommodations upon
22 the operation of the facility.
23   (3) The overall financial resources of the covered entity, the
24 overall size of the business of a covered entity with respect to the
25 number of employees, and the number, type, and location of its
26 facilities.
27   (4) The type of operations, including the composition, structure,
28 and functions of the workforce of the entity.
29   (5) The geographic separateness or administrative or fiscal
30 relationship of the facility or facilities.
31   (v) "National origin" discrimination includes, but is not limited
32 to, discrimination on the basis of possessing a driver's license or
33 identification card granted under Section 12801.9 of the Vehicle
34 Code.
35   (w) "Race" is inclusive of traits historically associated with
36 race, including, but not limited to, hair texture and protective
37 hairstyles.
38   (x) "Protective hairstyles" includes, but is not limited to, such
39 hairstyles as braids, locks, and twists.

97

RJN Exhibit 7

1   (y)  "Reproductive health decisionmaking" includes, but is not
2   limited to, a decision to use or access a particular drug, device,
3   product, or medical service for reproductive health. This
4   subdivision and other provisions in this part relating to
5   "reproductive health decisionmaking" shall not be construed to
6   mean that subdivision (r) of this section and other provisions in
7   this part related to "sex" do not include reproductive health
8   decisionmaking.
9   (z)  "Caste" ~~is a system of social stratification where each~~
10  ~~position is characterized by hereditary status, endogamy, social~~
11  ~~barriers, and social exclusion.~~ *means an individual's perceived*
12  *position in a system of social stratification on the basis of inherited*
13  *status. "A system of social stratification on the basis of inherited*
14  *status" may be characterized by factors that may include, but are*
15  *not limited to, inability or restricted ability to alter inherited status;*
16  *socially enforced restrictions on marriage, private and public*
17  *segregation, and discrimination; and social exclusion on the basis*
18  *of perceived status.*
19  SEC. 10.   Section 12930 of the Government Code is amended
20  to read:
21  12930.   The department shall have the following functions,
22  duties, and powers:
23  (a)  To establish and maintain a principal office and any other
24  offices within the state as are necessary to carry out the purposes
25  of this part.
26  (b)  To meet and function at any place within the state.
27  (c)  To appoint attorneys, investigators, conciliators, mediators,
28  and other employees as it may deem necessary, fix their
29  compensation within the limitations provided by law, and prescribe
30  their duties.
31  (d)  To obtain upon request and utilize the services of all
32  governmental departments and agencies and, in addition, with
33  respect to housing discrimination, of conciliation councils.
34  (e)  To adopt, promulgate, amend, and rescind suitable procedural
35  rules and regulations to carry out the investigation, prosecution,
36  and dispute resolution functions and duties of the department
37  pursuant to this part.
38  (f)  (1)  To receive, investigate, conciliate, mediate, and prosecute
39  complaints alleging practices made unlawful pursuant to Chapter
40  6 (commencing with Section 12940).

97

1    (2) To receive, investigate, conciliate, mediate, and prosecute
2    complaints alleging a violation of Section 51, 51.5, 51.7, 51.9, 54,
3    54.1, or 54.2 of the Civil Code. The remedies and procedures of
4    this part shall be independent of any other remedy or procedure
5    that might apply.
6    (3) To receive, investigate, conciliate, mediate, and prosecute
7    complaints alleging, and to bring civil actions pursuant to Section
8    52.5 of the Civil Code for, a violation of Section 236.1 of the Penal
9    Code. Damages awarded in any action brought by the department
10    pursuant to Section 52.5 of the Civil Code shall be awarded to the
11    person harmed by the violation of Section 236.1 of the Penal Code.
12    Costs and attorney's fees awarded in any action brought by the
13    department pursuant to Section 52.5 of the Civil Code shall be
14    awarded to the department. The remedies and procedures of this
15    part shall be independent of any other remedy or procedure that
16    might apply.
17    (4) To receive, investigate, conciliate, mediate, and prosecute
18    complaints alleging practices made unlawful pursuant to Article
19    9.5 (commencing with Section 11135) of Chapter 1 of Part 1,
20    except for complaints relating to educational equity brought under
21    Chapter 2 (commencing with Section 200) of Part 1 of Division 1
22    of Title 1 of the Education Code and investigated pursuant to the
23    procedures set forth in Subchapter 5.1 of Title 5 of the California
24    Code of Regulations, and not otherwise within the jurisdiction of
25    the department.
26    (5) To receive, investigate, conciliate, mediate, and prosecute
27    complaints alleging practices made unlawful pursuant to Section
28    1197.5 of the Labor Code. The department shall, in coordination
29    with the Division of Labor Standards Enforcement within the
30    Department of Industrial Relations, adopt procedures to ensure
31    that the departments coordinate activities to enforce Section 1197.5
32    of the Labor Code.
33    (A) Nothing in this part prevents the director or the director's
34    authorized representative, in that person's discretion, from making,
35    signing, and filing a complaint pursuant to Section 12960 or 12961
36    alleging practices made unlawful under Section 11135.
37    (B) Remedies available to the department in conciliating,
38    mediating, and prosecuting complaints alleging these practices are
39    the same as those available to the department in conciliating,

1  mediating, and prosecuting complaints alleging violations of Article
2  1 (commencing with Section 12940) of Chapter 6.
3    (g)  In connection with any matter under investigation or in
4  question before the department pursuant to a complaint filed under
5  Section 12960, 12961, or 12980:
6    (1)  To issue subpoenas to require the attendance and testimony
7  of witnesses and the production of books, records, documents, and
8  physical materials.
9    (2)  To administer oaths, examine witnesses under oath and take
10  evidence, and take depositions and affidavits.
11    (3)  To issue written interrogatories.
12    (4)  To request the production for inspection and copying of
13  books, records, documents, and physical materials.
14    (5)  To petition the superior courts to compel the appearance
15  and testimony of witnesses, the production of books, records,
16  documents, and physical materials, and the answering of
17  interrogatories.
18    (h)  To bring civil actions pursuant to Section 12965 or 12981
19  of this code, or Title VII of the Civil Rights Act of 1964 (Public
20  Law 88-352; 42 U.S.C. Sec. 2000 et seq.), as amended, the federal
21  Americans with Disabilities Act of 1990 (Public Law 101-336; 42
22  U.S.C. 12101, et seq.), as amended, or the federal Fair Housing
23  Act (42 U.S.C. Sec. 3601 et seq.), and to prosecute those civil
24  actions before state and federal trial courts.
25    (i)  To issue those publications and those results of investigations
26  and research as in its judgment will tend to promote goodwill and
27  minimize or eliminate discrimination in employment on the bases
28  enumerated in this part and discrimination in housing because of
29  race, caste, religious creed, color, sex, gender, gender identity,
30  gender expression, marital status, national origin, ancestry, familial
31  status, disability, veteran or military status, genetic information,
32  or sexual orientation.
33    (j)  To investigate, approve, certify, decertify, monitor, and
34  enforce nondiscrimination programs proposed by a contractor to
35  be engaged in pursuant to Section 12990.
36    (k)  To render annually to the Governor and to the Legislature
37  a written report of its activities and of its recommendations.
38    (*l*)  To conduct mediations at any time after a complaint is filed
39  pursuant to Section 12960, 12961, or 12980. The department may
40  end mediation at any time.

1    (m)  The following shall apply with respect to any accusation
2  pending before the former Fair Employment and Housing
3  Commission on or after January 1, 2013:
4    (1)  If an accusation issued under former Section 12965 includes
5  a prayer either for damages for emotional injuries as a component
6  of actual damages, or for administrative fines, or both, or if an
7  accusation is amended for the purpose of adding a prayer either
8  for damages for emotional injuries as a component of actual
9  damages, or for administrative fines, or both, with the consent of
10  the party accused of engaging in unlawful practices, the department
11  may withdraw an accusation and bring a civil action in superior
12  court.
13    (2)  If an accusation was issued under former Section 12981,
14  with the consent of the aggrieved party filing the complaint, an
15  aggrieved person on whose behalf a complaint is filed, or the party
16  accused of engaging in unlawful practices, the department may
17  withdraw the accusation and bring a civil action in superior court.
18    (3)  Where removal to court is not feasible, the department shall
19  retain the services of the Office of Administrative Hearings to
20  adjudicate the administrative action pursuant to Sections 11370.3
21  and 11502.
22    (n)  On a challenge, pursuant to Section 1094.5 of the Code of
23  Civil Procedure, to a decision of the former Fair Employment and
24  Housing Commission pending on or after January 1, 2013, the
25  director or the director's designee shall consult with the Attorney
26  General regarding the defense of that writ petition.
27    (o)  By performing the functions and duties and exercising the
28  powers set forth in this part, the department represents the interests
29  of the state and effectuates the declared public policy of the state
30  to protect and safeguard the rights and opportunities of all persons
31  from unlawful discrimination and other violations of this part. This
32  subdivision is declarative of existing law as stated in Department
33  of Fair Employment and Housing v. Cathy's Creations, Inc. (2020)
34  54 Cal.App.5th 404, 410.
35    SEC. 11.  Section 12931 of the Government Code is amended
36  to read:
37    12931.  The department may also provide assistance to
38  communities and persons therein in resolving disputes,
39  disagreements, or difficulties relating to discriminatory practices
40  based on race, caste, religious creed, color, national origin,

97

RJN Exhibit 7

1  ancestry, physical disability, mental disability, veteran or military
2  status, medical condition, genetic information, marital status, sex,
3  gender, gender identity, gender expression, familial status, age,
4  reproductive health decisionmaking, or sexual orientation that
5  impair the rights of persons in those communities under the
6  Constitution or laws of the United States or of this state. The
7  services of the department may be made available in cases of these
8  disputes, disagreements, or difficulties only when, in its judgment,
9  peaceful relations among the persons of the community involved
10  are threatened thereby. The department's services are to be made
11  available only upon the request of an appropriate state or local
12  public body, or upon the request of any person directly affected
13  by the dispute, disagreement, or difficulty.
14     The assistance of the department pursuant to this section shall
15  be limited to endeavors at investigation, conference, conciliation,
16  and persuasion.
17     SEC. 12.   Section 12940 of the Government Code is amended
18  to read:
19     12940.   It is an unlawful employment practice, unless based
20  upon a bona fide occupational qualification, or, except where based
21  upon applicable security regulations established by the United
22  States or the State of California:
23     (a)   For an employer, because of the race, caste, religious creed,
24  color, national origin, ancestry, physical disability, mental
25  disability, reproductive health decisionmaking, medical condition,
26  genetic information, marital status, sex, gender, gender identity,
27  gender expression, age, sexual orientation, or veteran or military
28  status of any person, to refuse to hire or employ the person or to
29  refuse to select the person for a training program leading to
30  employment, or to bar or to discharge the person from employment
31  or from a training program leading to employment, or to
32  discriminate against the person in compensation or in terms,
33  conditions, or privileges of employment.
34     (1)   This part does not prohibit an employer from refusing to
35  hire or discharging an employee with a physical or mental
36  disability, or subject an employer to any legal liability resulting
37  from the refusal to employ or the discharge of an employee with
38  a physical or mental disability, if the employee, because of a
39  physical or mental disability, is unable to perform the employee's
40  essential duties even with reasonable accommodations, or cannot

97

**SB 403**

1   perform those duties in a manner that would not endanger the
2   employee's health or safety or the health or safety of others even
3   with reasonable accommodations.
4       (2)  This part does not prohibit an employer from refusing to
5   hire or discharging an employee who, because of the employee's
6   medical condition, is unable to perform the employee's essential
7   duties even with reasonable accommodations, or cannot perform
8   those duties in a manner that would not endanger the employee's
9   health or safety or the health or safety of others even with
10  reasonable accommodations. Nothing in this part shall subject an
11  employer to any legal liability resulting from the refusal to employ
12  or the discharge of an employee who, because of the employee's
13  medical condition, is unable to perform the employee's essential
14  duties, or cannot perform those duties in a manner that would not
15  endanger the employee's health or safety or the health or safety
16  of others even with reasonable accommodations.
17      (3)  Nothing in this part relating to discrimination on account of
18  marital status shall do either of the following:
19      (A)  Affect the right of an employer to reasonably regulate, for
20  reasons of supervision, safety, security, or morale, the working of
21  spouses in the same department, division, or facility, consistent
22  with the rules and regulations adopted by the council.
23      (B)  Prohibit bona fide health plans from providing additional
24  or greater benefits to employees with dependents than to those
25  employees without or with fewer dependents.
26      (4)  Nothing in this part relating to discrimination on account of
27  sex shall affect the right of an employer to use veteran status as a
28  factor in employee selection or to give special consideration to
29  Vietnam-era veterans.
30      (5)  (A)  This part does not prohibit an employer from refusing
31  to employ an individual because of the individual's age if the law
32  compels or provides for that refusal. Promotions within the existing
33  staff, hiring or promotion on the basis of experience and training,
34  rehiring on the basis of seniority and prior service with the
35  employer, or hiring under an established recruiting program from
36  high schools, colleges, universities, or trade schools do not, in and
37  of themselves, constitute unlawful employment practices.
38      (B)  The provisions of this part relating to discrimination on the
39  basis of age do not prohibit an employer from providing health
40  benefits or health care reimbursement plans to retired persons that

97

1    are altered, reduced, or eliminated when the person becomes
2    eligible for Medicare health benefits. This subparagraph applies
3    to all retiree health benefit plans and contractual provisions or
4    practices concerning retiree health benefits and health care
5    reimbursement plans in effect on or after January 1, 2011.
6      (b)  For a labor organization, because of the race, caste, religious
7    creed, color, national origin, ancestry, physical disability, mental
8    disability, medical condition, genetic information, marital status,
9    sex, gender, gender identity, gender expression, age, sexual
10   orientation, reproductive health decisionmaking, or veteran or
11   military status of any person, to exclude, expel, or restrict from its
12   membership the person, or to provide only second-class or
13   segregated membership or to discriminate against any person
14   because of the race, caste, religious creed, color, national origin,
15   ancestry, physical disability, mental disability, medical condition,
16   genetic information, marital status, sex, gender, gender identity,
17   gender expression, age, sexual orientation, reproductive health
18   decisionmaking, or veteran or military status of the person in the
19   election of officers of the labor organization or in the selection of
20   the labor organization's staff or to discriminate in any way against
21   any of its members or against any employer or against any person
22   employed by an employer.
23     (c)  For any person to discriminate against any person in the
24   selection, termination, training, or other terms or treatment of that
25   person in any apprenticeship training program, any other training
26   program leading to employment, an unpaid internship, or another
27   limited duration program to provide unpaid work experience for
28   that person because of the race, caste, religious creed, color,
29   national origin, ancestry, physical disability, mental disability,
30   medical condition, genetic information, marital status, sex, gender,
31   gender identity, gender expression, age, sexual orientation,
32   reproductive health decisionmaking, or veteran or military status
33   of the person discriminated against.
34     (d)  For any employer or employment agency to print or circulate
35   or cause to be printed or circulated any publication, or to make
36   any ~~nonjob-related~~ *non-job-related* inquiry of an employee or
37   applicant, either verbal or through use of an application form, that
38   expresses, directly or indirectly, any limitation, specification, or
39   discrimination as to race, caste, religious creed, color, national
40   origin, ancestry, physical disability, mental disability, medical

97

RJN Exhibit 7

1    condition, genetic information, marital status, sex, gender, gender
2    identity, gender expression, age, sexual orientation, reproductive
3    health decisionmaking, or veteran or military status, or any intent
4    to make any such limitation, specification, or discrimination. This
5    part does not prohibit an employer or employment agency from
6    inquiring into the age of an applicant, or from specifying age
7    limitations, if the law compels or provides for that action.
8       (e) (1) Except as provided in paragraph (2) or (3), for any
9    employer or employment agency to require any medical or
10   psychological examination of an applicant, to make any medical
11   or psychological inquiry of an applicant, to make any inquiry
12   whether an applicant has a mental disability or physical disability
13   or medical condition, or to make any inquiry regarding the nature
14   or severity of a physical disability, mental disability, or medical
15   condition.
16      (2) Notwithstanding paragraph (1), an employer or employment
17   agency may inquire into the ability of an applicant to perform
18   job-related functions and may respond to an applicant's request
19   for reasonable accommodation.
20      (3) Notwithstanding paragraph (1), an employer or employment
21   agency may require a medical or psychological examination or
22   make a medical or psychological inquiry of a job applicant after
23   an employment offer has been made but prior to the
24   commencement of employment duties, provided that the
25   examination or inquiry is job related and consistent with business
26   necessity and that all entering employees in the same job
27   classification are subject to the same examination or inquiry.
28      (f) (1) Except as provided in paragraph (2), for any employer
29   or employment agency to require any medical or psychological
30   examination of an employee, to make any medical or psychological
31   inquiry of an employee, to make any inquiry whether an employee
32   has a mental disability, physical disability, or medical condition,
33   or to make any inquiry regarding the nature or severity of a physical
34   disability, mental disability, or medical condition.
35      (2) Notwithstanding paragraph (1), an employer or employment
36   agency may require any examinations or inquiries that it can show
37   to be job related and consistent with business necessity. An
38   employer or employment agency may conduct voluntary medical
39   examinations, including voluntary medical histories, which are

1   part of an employee health program available to employees at that
2   worksite.
3      (g)  For any employer, labor organization, or employment agency
4   to harass, discharge, expel, or otherwise discriminate against any
5   person because the person has made a report pursuant to Section
6   11161.8 of the Penal Code that prohibits retaliation against hospital
7   employees who report suspected patient abuse by health facilities
8   or community care facilities.
9      (h)  For any employer, labor organization, employment agency,
10  or person to discharge, expel, or otherwise discriminate against
11  any person because the person has opposed any practices forbidden
12  under this part or because the person has filed a complaint, testified,
13  or assisted in any proceeding under this part.
14     (i)  For any person to aid, abet, incite, compel, or coerce the
15  doing of any of the acts forbidden under this part, or to attempt to
16  do so.
17     (j)  (1)  For an employer, labor organization, employment agency,
18  apprenticeship training program or any training program leading
19  to employment, or any other person, because of race, caste,
20  religious creed, color, national origin, ancestry, physical disability,
21  mental disability, medical condition, genetic information, marital
22  status, sex, gender, gender identity, gender expression, age, sexual
23  orientation, reproductive health decisionmaking, or veteran or
24  military status, to harass an employee, an applicant, an unpaid
25  intern or volunteer, or a person providing services pursuant to a
26  contract. Harassment of an employee, an applicant, an unpaid
27  intern or volunteer, or a person providing services pursuant to a
28  contract by an employee, other than an agent or supervisor, shall
29  be unlawful if the entity, or its agents or supervisors, knows or
30  should have known of this conduct and fails to take immediate
31  and appropriate corrective action. An employer may also be
32  responsible for the acts of nonemployees, with respect to
33  harassment of employees, applicants, unpaid interns or volunteers,
34  or persons providing services pursuant to a contract in the
35  workplace, if the employer, or its agents or supervisors, knows or
36  should have known of the conduct and fails to take immediate and
37  appropriate corrective action. In reviewing cases involving the
38  acts of nonemployees, the extent of the employer's control and
39  any other legal responsibility that the employer may have with
40  respect to the conduct of those nonemployees shall be considered.

1   An entity shall take all reasonable steps to prevent harassment
2   from occurring. Loss of tangible job benefits shall not be necessary
3   in order to establish harassment.

4      (2)  The provisions of this subdivision are declaratory of existing
5   law, except for the new duties imposed on employers with regard
6   to harassment.

7      (3)  An employee of an entity subject to this subdivision is
8   personally liable for any harassment prohibited by this section that
9   is perpetrated by the employee, regardless of whether the employer
10  or covered entity knows or should have known of the conduct and
11  fails to take immediate and appropriate corrective action.

12     (4)  (A)  For purposes of this subdivision only, "employer" means
13  any person regularly employing one or more persons or regularly
14  receiving the services of one or more persons providing services
15  pursuant to a contract, or any person acting as an agent of an
16  employer, directly or indirectly, the state, or any political or civil
17  subdivision of the state, and cities. The definition of "employer"
18  in subdivision (d) of Section 12926 applies to all provisions of this
19  section other than this subdivision.

20     (B)  Notwithstanding subparagraph (A), for purposes of this
21  subdivision, "employer" does not include a religious association
22  or corporation not organized for private profit, except as provided
23  in Section 12926.2.

24     (C)  For purposes of this subdivision, "harassment" because of
25  sex includes sexual harassment, gender harassment, and harassment
26  based on pregnancy, childbirth, or related medical conditions.
27  Sexually harassing conduct need not be motivated by sexual desire.

28     (5)  For purposes of this subdivision, "a person providing services
29  pursuant to a contract" means a person who meets all of the
30  following criteria:

31     (A)  The person has the right to control the performance of the
32  contract for services and discretion as to the manner of
33  performance.

34     (B)  The person is customarily engaged in an independently
35  established business.

36     (C)  The person has control over the time and place the work is
37  performed, supplies the tools and instruments used in the work,
38  and performs work that requires a particular skill not ordinarily
39  used in the course of the employer's work.

97

**SB 403**                    — 26 —

1    (k) For an employer, labor organization, employment agency,
2  apprenticeship training program, or any training program leading
3  to employment, to fail to take all reasonable steps necessary to
4  prevent discrimination and harassment from occurring.
5    (*l*) (1) For an employer or other entity covered by this part to
6  refuse to hire or employ a person or to refuse to select a person
7  for a training program leading to employment or to bar or to
8  discharge a person from employment or from a training program
9  leading to employment, or to discriminate against a person in
10  compensation or in terms, conditions, or privileges of employment
11  because of a conflict between the person's religious belief or
12  observance and any employment requirement, unless the employer
13  or other entity covered by this part demonstrates that it has explored
14  any available reasonable alternative means of accommodating the
15  religious belief or observance, including the possibilities of
16  excusing the person from those duties that conflict with the
17  person's religious belief or observance or permitting those duties
18  to be performed at another time or by another person, but is unable
19  to reasonably accommodate the religious belief or observance
20  without undue hardship, as defined in subdivision (u) of Section
21  12926, on the conduct of the business of the employer or other
22  entity covered by this part. Religious belief or observance, as used
23  in this section, includes, but is not limited to, observance of a
24  Sabbath or other religious holy day or days, reasonable time
25  necessary for travel prior and subsequent to a religious observance,
26  and religious dress practice and religious grooming practice as
27  described in subdivision (q) of Section 12926. This subdivision
28  shall also apply to an apprenticeship training program, an unpaid
29  internship, and any other program to provide unpaid experience
30  for a person in the workplace or industry.
31    (2) An accommodation of an individual's religious dress practice
32  or religious grooming practice is not reasonable if the
33  accommodation requires segregation of the individual from other
34  employees or the public.
35    (3) An accommodation is not required under this subdivision
36  if it would result in a violation of this part or any other law
37  prohibiting discrimination or protecting civil rights, including
38  subdivision (b) of Section 51 of the Civil Code and Section 11135
39  of this code.

1    (4) For an employer or other entity covered by this part to, in
2    addition to the employee protections provided pursuant to
3    subdivision (h), retaliate or otherwise discriminate against a person
4    for requesting accommodation under this subdivision, regardless
5    of whether the request was granted.
6    (m) (1) For an employer or other entity covered by this part to
7    fail to make reasonable accommodation for the known physical
8    or mental disability of an applicant or employee. Nothing in this
9    subdivision or in paragraph (1) or (2) of subdivision (a) shall be
10   construed to require an accommodation that is demonstrated by
11   the employer or other covered entity to produce undue hardship,
12   as defined in subdivision (u) of Section 12926, to its operation.
13   (2) For an employer or other entity covered by this part to, in
14   addition to the employee protections provided pursuant to
15   subdivision (h), retaliate or otherwise discriminate against a person
16   for requesting accommodation under this subdivision, regardless
17   of whether the request was granted.
18   (n) For an employer or other entity covered by this part to fail
19   to engage in a timely, good faith, interactive process with the
20   employee or applicant to determine effective reasonable
21   accommodations, if any, in response to a request for reasonable
22   accommodation by an employee or applicant with a known physical
23   or mental disability or known medical condition.
24   (o) For an employer or other entity covered by this part, to
25   subject, directly or indirectly, any employee, applicant, or other
26   person to a test for the presence of a genetic characteristic.
27   (p) For an employer to require, as a condition of employment,
28   continued employment, or a benefit of employment, the disclosure
29   of information relating to an applicant's or employee's reproductive
30   health decisionmaking.
31   (q) Nothing in this section shall be interpreted as preventing the
32   ability of employers to identify members of the military or veterans
33   for purposes of awarding a veteran's preference as permitted by
34   law.
35   SEC. 13.   Section 12944 of the Government Code is amended
36   to read:
37   12944.   (a) It shall be unlawful for a licensing board to require
38   any examination or establish any other qualification for licensing
39   that has an adverse impact on any class by virtue of its race, caste,
40   ~~creed,~~ *religious creed,* color, national origin or ancestry, sex,

243
RJN Exhibit 7

1  gender, gender identity, gender expression, age, medical condition,
2  genetic information, physical disability, mental disability,
3  reproductive health decisionmaking, or sexual orientation, unless
4  the practice can be demonstrated to be job related.
5    Where the council, after hearing, determines that an examination
6  is unlawful under this subdivision, the licensing board may
7  continue to use and rely on the examination until such time as
8  judicial review by the superior court of the determination is
9  exhausted.
10    If an examination or other qualification for licensing is
11  determined to be unlawful under this section, that determination
12  shall not void, limit, repeal, or otherwise affect any right, privilege,
13  status, or responsibility previously conferred upon any person by
14  the examination or by a license issued in reliance on the
15  examination or qualification.
16    (b)  It shall be unlawful for a licensing board to fail or refuse to
17  make reasonable accommodation to an individual's mental or
18  physical disability or medical condition.
19    (c)  It shall be unlawful for any licensing board, unless
20  specifically acting in accordance with federal equal employment
21  opportunity guidelines or regulations approved by the council, to
22  print or circulate or cause to be printed or circulated any
23  publication, or to make any non-job-related inquiry, either verbal
24  or through use of an application form, which expresses, directly
25  or indirectly, any limitation, specification, or discrimination as to
26  race, caste, religious creed, color, national origin, ancestry, physical
27  disability, mental disability, medical condition, genetic information,
28  sex, gender, gender identity, gender expression, age, reproductive
29  health decisionmaking, or sexual orientation or any intent to make
30  any such limitation, specification, or discrimination. Nothing in
31  this subdivision shall prohibit any licensing board from making,
32  in connection with prospective licensure or certification, an inquiry
33  as to, or a request for information regarding, the physical fitness
34  of applicants if that inquiry or request for information is directly
35  related and pertinent to the license or the licensed position the
36  applicant is applying for. Nothing in this subdivision shall prohibit
37  any licensing board, in connection with prospective examinations,
38  licensure, or certification, from inviting individuals with physical
39  or mental disabilities to request reasonable accommodations or
40  from making inquiries related to reasonable accommodations.

RJN Exhibit 7

1   (d)  It is unlawful for a licensing board to discriminate against
2   any person because the person has filed a complaint, testified, or
3   assisted in any proceeding under this part.
4   (e)  It is unlawful for any licensing board to fail to keep records
5   of applications for licensing or certification for a period of two
6   years following the date of receipt of the applications.
7   (f)  As used in this section, "licensing board" means any state
8   board, agency, or authority in the Business, Consumer Services,
9   and Housing Agency that has the authority to grant licenses or
10   certificates which are prerequisites to employment eligibility or
11   professional status.
12   SEC. 14.  Section 12955 of the Government Code is amended
13   to read:
14   12955.  It shall be unlawful:
15   (a)  For the owner of any housing accommodation to discriminate
16   against or harass any person because of the race, caste, color,
17   religion, sex, gender, gender identity, gender expression, sexual
18   orientation, marital status, national origin, ancestry, familial status,
19   source of income, disability, veteran or military status, or genetic
20   information of that person.
21   (b)  For the owner of any housing accommodation to make or
22   to cause to be made any written or oral inquiry concerning the
23   race, caste, color, religion, sex, gender, gender identity, gender
24   expression, sexual orientation, marital status, national origin,
25   ancestry, familial status, disability, veteran or military status, or
26   genetic information of any person seeking to purchase, rent, or
27   lease any housing accommodation.
28   (c)  For any person to make, print, or publish, or cause to be
29   made, printed, or published any notice, statement, or advertisement,
30   with respect to the sale or rental of a housing accommodation that
31   indicates any preference, limitation, or discrimination based on
32   race, caste, color, religion, sex, gender, gender identity, gender
33   expression, sexual orientation, marital status, national origin,
34   ancestry, familial status, source of income, disability, veteran or
35   military status, or genetic information or an intention to make that
36   preference, limitation, or discrimination.
37   (d)  For any person subject to the provisions of Section 51 of
38   the Civil Code, as that section applies to housing accommodations,
39   to discriminate against any person on the basis of sex, gender,
40   gender identity, gender expression, sexual orientation, color, race,

**SB 403**                              — 30 —

1 caste, religion, ancestry, national origin, familial status, marital
2 status, disability, genetic information, source of income, veteran
3 or military status, or on any other basis prohibited by that section.
4 Selection preferences based on age, imposed in connection with
5 a federally approved housing program, do not constitute age
6 discrimination in housing.
7 　(e)  For any person, bank, mortgage company, or other financial
8 institution that provides financial assistance for the purchase,
9 refinance, organization, or construction of any housing
10 accommodation to discriminate against any person or group of
11 persons because of the race, caste, color, religion, sex, gender,
12 gender identity, gender expression, sexual orientation, marital
13 status, national origin, ancestry, familial status, source of income,
14 disability, veteran or military status, or genetic information in the
15 terms, conditions, or privileges relating to the obtaining or use of
16 that financial assistance.
17 　(f)  For any owner of housing accommodations to harass, evict,
18 or otherwise discriminate against any person in the sale or rental
19 of housing accommodations when the owner's dominant purpose
20 is retaliation against a person who has opposed practices unlawful
21 under this section, informed law enforcement agencies of practices
22 believed unlawful under this section, has testified or assisted in
23 any proceeding under this part, or has aided or encouraged a person
24 to exercise or enjoy the rights secured by this part. Nothing herein
25 is intended to cause or permit the delay of an unlawful detainer
26 action.
27 　(g)  For any person to aid, abet, incite, compel, or coerce the
28 doing of any of the acts or practices declared unlawful in this
29 section, or to attempt to do so.
30 　(h)  For any person, for profit, to induce any person to sell or
31 rent any dwelling by representations regarding the entry or
32 prospective entry into the neighborhood of a person or persons of
33 a particular race, caste, color, religion, sex, gender, gender identity,
34 gender expression, sexual orientation, marital status, ancestry,
35 disability, genetic information, source of income, familial status,
36 veteran or military status, or national origin.
37 　(i) (1)  For any person or other organization or entity whose
38 business involves real estate-related transactions to discriminate
39 against any person in making available a transaction, or in the
40 terms and conditions of a transaction, because of race, caste, color,

97

RJN Exhibit 7

1   religion, sex, gender, gender identity, gender expression, sexual
2   orientation, marital status, national origin, ancestry, source of
3   income, familial status, disability, veteran or military status, or
4   genetic information.
5       (2) For any person or other entity whose business includes
6   performing appraisals, as defined in subdivision (b) of Section
7   11302 of the Business and Professions Code, of residential real
8   property to discriminate against any person in making available
9   those services, or in the performance of those services, because of
10  race, caste, color, religion, sex, gender, gender identity, gender
11  expression, sexual orientation, familial status, source of income,
12  disability, genetic information, veteran or military status, or
13  national origin.
14      (j) To deny a person access to, or membership or participation
15  in, a multiple listing service, real estate brokerage organization,
16  or other service because of race, caste, color, religion, sex, gender,
17  gender identity, gender expression, sexual orientation, marital
18  status, ancestry, disability, genetic information, familial status,
19  source of income, veteran or military status, or national origin.
20      (k) To otherwise make unavailable or deny a dwelling based
21  on discrimination because of race, caste, color, religion, sex,
22  gender, gender identity, gender expression, sexual orientation,
23  familial status, source of income, disability, genetic information,
24  veteran or military status, or national origin.
25      (*l*) To discriminate through public or private land use practices,
26  decisions, and authorizations because of race, caste, color, religion,
27  sex, gender, gender identity, gender expression, sexual orientation,
28  familial status, marital status, disability, genetic information,
29  national origin, source of income, veteran or military status, or
30  ancestry. Discrimination includes, but is not limited to, restrictive
31  covenants, zoning laws, denials of use permits, and other actions
32  authorized under the Planning and Zoning Law (Title 7
33  (commencing with Section 65000)), that make housing
34  opportunities unavailable.
35      Discrimination under this subdivision also includes the existence
36  of a restrictive covenant, regardless of whether accompanied by a
37  statement that the restrictive covenant is repealed or void.
38      (m) As used in this section, "race, caste, color, religion, sex,
39  gender, gender identity, gender expression, sexual orientation,
40  marital status, national origin, ancestry, familial status, source of

**SB 403**                          — 32 —

1   income, disability, veteran or military status, or genetic
2   information," includes a perception that the person has any of those
3   characteristics or that the person is associated with a person who
4   has, or is perceived to have, any of those characteristics.
5       (n)  To use a financial or income standard in the rental of housing
6   that fails to account for the aggregate income of persons residing
7   together or proposing to reside together on the same basis as the
8   aggregate income of married persons residing together or proposing
9   to reside together.
10      (o)  In instances where there is a government rent subsidy, to
11  use a financial or income standard in assessing eligibility for the
12  rental of housing that is not based on the portion of the rent to be
13  paid by the tenant.
14      (p) (1) For the purposes of this section, "source of income"
15  means lawful, verifiable income paid directly to a tenant, or to a
16  representative of a tenant, or paid to a housing owner or landlord
17  on behalf of a tenant, including federal, state, or local public
18  assistance, and federal, state, or local housing subsidies, including,
19  but not limited to, federal housing assistance vouchers issued under
20  Section 8 of the United States Housing Act of 1937 (42 U.S.C.
21  Sec. 1437f). "Source of income" includes a federal Department of
22  Housing and Urban Development Veterans Affairs Supportive
23  Housing voucher. For the purposes of this section, a housing owner
24  or landlord is not considered a representative of a tenant unless
25  the source of income is a federal Department of Housing and Urban
26  Development Veterans Affairs Supportive Housing voucher.
27      (2)  For the purposes of this section, it shall not constitute
28  discrimination based on source of income to make a written or
29  oral inquiry concerning the level or source of income.
30      SEC. 15.   Section 12955.8 of the Government Code is amended
31  to read:
32      12955.8.   For purposes of this article, in connection with
33  unlawful practices:
34      (a)  Proof of an intentional violation of this article includes, but
35  is not limited to, an act or failure to act that is otherwise covered
36  by this part, that demonstrates an intent to discriminate in any
37  manner in violation of this part. A person intends to discriminate
38  if race, caste, color, religion, sex, gender, gender identity, gender
39  expression, sexual orientation, marital status, national origin,
40  ancestry, familial status, source of income, disability, veteran or

97

RJN Exhibit 7

1  military status, or genetic information is a motivating factor in
2  committing a discriminatory housing practice even though other
3  factors may have also motivated the practice. An intent to
4  discriminate may be established by direct or circumstantial
5  evidence.

6  (b) Proof of a violation causing a discriminatory effect is shown
7  if an act or failure to act that is otherwise covered by this part, and
8  that has the effect, regardless of intent, of unlawfully discriminating
9  on the basis of race, caste, color, religion, sex, gender, gender
10  identity, gender expression, sexual orientation, marital status,
11  national origin, ancestry, familial status, source of income,
12  disability, veteran or military status, or genetic information. A
13  business establishment whose action or inaction has an unintended
14  discriminatory effect shall not be considered to have committed
15  an unlawful housing practice in violation of this part if the business
16  establishment can establish that the action or inaction is necessary
17  to the operation of the business and effectively carries out the
18  significant business need it is alleged to serve. In cases that do not
19  involve a business establishment, the person whose action or
20  inaction has an unintended discriminatory effect shall not be
21  considered to have committed an unlawful housing practice in
22  violation of this part if the person can establish that the action or
23  inaction is necessary to achieve an important purpose sufficiently
24  compelling to override the discriminatory effect and effectively
25  carries out the purpose it is alleged to serve.

26  (1) Any determination of a violation pursuant to this subdivision
27  shall consider whether or not there are feasible alternatives that
28  would equally well or better accomplish the purpose advanced
29  with a less discriminatory effect.

30  (2) For purposes of this subdivision, the term "business
31  establishment" shall have the same meaning as in Section 51 of
32  the Civil Code.

33  SEC. 16.  Section 12956.1 of the Government Code is amended
34  to read:

35  12956.1.  (a)  As used in this section:

36  (1) "Association," "governing documents," and "declaration"
37  have the same meanings as set forth in Sections 4080, 4135, and
38  4150 or Sections 6528, 6546, and 6552 of the Civil Code.

39  (2) "Redaction" means the process of rerecording of a document
40  that originally contained unlawful restrictive language, and when

249

RJN Exhibit 7

1   presented to the county recorder for rerecording, no longer contains
2   the unlawful language or the unlawful language is masked so that
3   it is not readable or visible.
4       (3)  "Redacted" means the result of the rerecording of a document
5   that originally contained unlawful restrictive language, and when
6   presented to the county recorder for rerecording, no longer contains
7   the unlawful language or the unlawful language is masked so that
8   it is not readable or visible.
9       (b)  (1)  A county recorder, title company, escrow company, real
10  estate broker, real estate agent, or association that provides a copy
11  of a declaration, governing document, or deed to any person shall
12  place a cover page or stamp on the first page of the previously
13  recorded document or documents stating, in at least 14-point
14  boldface type, the following:
15
16      "If this document contains any restriction based on age, race,
17  caste, color, religion, sex, gender, gender identity, gender
18  expression, sexual orientation, familial status, marital status,
19  disability, veteran or military status, genetic information, national
20  origin, source of income as defined in subdivision (p) of Section
21  12955, or ancestry, that restriction violates state and federal fair
22  housing laws and is void, and may be removed pursuant to Section
23  12956.2 of the Government Code by submitting a "Restrictive
24  Covenant Modification" form, together with a copy of the attached
25  document with the unlawful provision redacted to the county
26  recorder's office. The "Restrictive Covenant Modification" form
27  can be obtained from the county recorder's office and may be
28  available on its internet website. The form may also be available
29  from the party that provided you with this document. Lawful
30  restrictions under state and federal law on the age of occupants in
31  senior housing or housing for older persons shall not be construed
32  as restrictions based on familial status."
33
34      (2)  The requirements of paragraph (1) shall not apply to
35  documents being submitted for recordation to a county recorder.
36      (3)  A title company, escrow company, or association that
37  delivers a copy of a declaration, governing document, or deed
38  directly to a person who holds an ownership interest of record in
39  property shall also provide a Restrictive Covenant Modification

RJN Exhibit 7

1   form with procedural information for appropriate processing along
2   with the document.
3     (c)  Any person who records a document for the express purpose
4   of adding a racially restrictive covenant is guilty of a misdemeanor.
5   The county recorder shall not incur any liability for recording the
6   document.  Notwithstanding  any  other  provision  of  law,  a
7   prosecution  for  a  violation  of  this  subdivision  shall  commence
8   within  three  years  after  the  discovery  of  the  recording  of  the
9   document.
10     SEC. 17.   Section 12956.2 of the Government Code is amended
11   to read:
12     12956.2.   (a) (1) A  person  who  holds  or  is  acquiring  an
13   ownership interest of record in property that the person believes
14   is the subject of an unlawfully restrictive covenant in violation of
15   subdivision (*l*) of Section 12955 may record a document titled
16   Restrictive Covenant Modification. A title company, escrow
17   company, county recorder, real estate broker, real estate agent, or
18   other person also may record the modification document provided
19   for in this section. The county recorder may waive the fee
20   prescribed for recording and indexing instruments pursuant to
21   Section 27361 in the case of a ~~restrictive covenant modification~~
22   *Restrictive Covenant Modification* document. The modification
23   document shall include a complete copy of the original document
24   containing the unlawfully restrictive language with the unlawfully
25   restrictive covenant language redacted.
26     (2)  Beginning July 1, 2022, if a title company, escrow company,
27   real estate broker, or real estate agent has actual knowledge that a
28   declaration, governing document, or deed that is being directly
29   delivered to a person who holds or is acquiring an ownership
30   interest in property includes a possible unlawfully restrictive
31   covenant, they shall notify the person who holds or is acquiring
32   the ownership interest in the property of the existence of that
33   covenant and their ability to have it removed through the restrictive
34   covenant modification process. There shall be no presumption that
35   a party providing a document has read the document or has actual
36   knowledge of its content.
37     (3)  Beginning July 1, 2022, if requested before the close of
38   escrow, the title company or escrow company directly involved
39   in the pending transaction shall assist in the preparation of a
40   Restrictive Covenant Modification pursuant to this section, but

97

251
RJN Exhibit 7

1  the title company or escrow company shall have no liability
2  associated with the recordation of a Restrictive Covenant
3  Modification that contains modifications not authorized by this
4  section on behalf of the requester.
5    (b) (1) Before recording the Restrictive Covenant Modification
6  document, the county recorder shall submit the modification
7  document and the original document to the county counsel who
8  shall determine whether the language in the original document
9  contains an unlawful restriction based on age, race, caste, color,
10  religion, sex, gender, gender identity, gender expression, sexual
11  orientation, familial status, marital status, disability, genetic
12  information, veteran or military status, national origin, source of
13  income as defined in subdivision (p) of Section 12955, or ancestry.
14  The county counsel shall return the documents and inform the
15  county recorder of its determination within a period of time
16  specified in paragraph (2). The county recorder shall refuse to
17  record the modification document if the county counsel or their
18  designee finds that the original document does not contain an
19  unlawful restriction as specified in this subdivision or the
20  modification document contains modifications not authorized by
21  this section.
22    (2) For documents recorded pursuant to subdivision (a), the
23  period of time shall be a reasonable period of time, not to exceed
24  three months, from the date the request for recordation is made,
25  unless extraordinary circumstances apply.
26    (c) If a person requests to record a modification document, that
27  person shall provide a return address in order for the county
28  recorder to notify this person of the action taken by the county
29  counsel on the respective property. The notice required pursuant
30  to this subdivision may be made on a postcard mailed by first-class
31  mail.
32    (d) The modification document shall be indexed in the same
33  manner as the original document being modified. It shall contain
34  a recording reference to the original document in the form of a
35  book and page or instrument number, and date of the recording.
36    (e) Subject to covenants, conditions, and restrictions that were
37  recorded after the recording of the original document that contains
38  the unlawfully restrictive language and subject to covenants,
39  conditions, and restrictions that will be recorded after the
40  Restrictive Covenant Modification, the restrictions in the

97

RJN Exhibit 7

1  Restrictive Covenant Modification, once recorded, are the only
2  restrictions having effect on the property. The effective date of the
3  terms and conditions of the modification document shall be the
4  same as the effective date of the original document.
5      (f)  A Restrictive Covenant Modification form shall be prepared
6  and accepted for submission and recordation in all counties in
7  substantially the following form:
8
9      RESTRICTIVE COVENANT MODIFICATION:
10     The following referenced document contains a restriction based
11  on age, race, caste, color, religion, sex, gender, gender identity,
12  gender expression, sexual orientation, familial status, marital status,
13  disability, veteran or military status, genetic information, national
14  origin, source of income as defined in subdivision (p) of Section
15  12955 of the Government Code, or ancestry, that violates state and
16  federal fair housing laws and is void. Pursuant to Section 12956.2
17  of the Government Code, this document is being recorded solely
18  for the purpose of redacting and eliminating that restrictive
19  covenant as shown on page(s) ___ of the document recorded on
20  _____(date) in book _____ and page _____ or instrument
21  number _____ of the official records of the County of
22  _____, State of California.
23     Attached hereto is a true, correct and complete copy of the
24  document referenced above, with the unlawful restrictive covenant
25  redacted.
26     This modification document shall be indexed in the same manner
27  as the original document being modified, pursuant to subdivision
28  (d) of Section 12956.2 of the Government Code.
29     The effective date of the terms and conditions of the modification
30  document shall be the same as the effective date of the original
31  document.
32     (Signature of submitting party)
33     _____  County Counsel, or their designee, pursuant to
34  paragraph (1) of subdivision (b) of Section 12956.2 of the
35  Government Code, hereby states that it has determined that the
36  original document referenced above contains an unlawful restriction
37  and this modification may be recorded.
38     Or
39     _____County Counsel, or their designee, pursuant to
40  paragraph (1) of subdivision (b) of Section 12956.2 of the

253
RJN Exhibit 7

1    Government Code, finds that the original document does not
2    contain an unlawful restriction, or the modification document
3    contains modifications not authorized, and this modification may
4    not be recorded.
5        County Counsel
6        By:
7        Date:
8
9        (g) The county recorder shall make available to the public
10   Restrictive Covenant Modification forms onsite in an appropriately
11   designated area, or online on the county recorder's internet website,
12   either of which shall be deemed to satisfy the requirement of
13   paragraphs (1) and (2) of subdivision (b) of Section 12956.1 to
14   provide a Restrictive Covenant Modification form if the procedural
15   information for appropriate processing is attached to the form.
16   Those forms shall permit multiple submissions on behalf of
17   different homes and for processing homes in batches with respect
18   to a modification document that affects multiple homes or lots.
19   The forms shall also permit the submission of a ~~restrictive covenant~~
20   ~~modification~~ *Restrictive Covenant Modification* form for a
21   homeowners' association or a common interest development to
22   modify covenants, conditions, and restrictions that will correct
23   unlawfully restrictive covenants for multiple dwellings within a
24   subdivision.
25       (h) If a person causes to be recorded a modified document
26   pursuant to this section that contains modifications not authorized
27   by this section, the county recorder shall not incur liability for
28   recording the document. The liability that may result from the
29   unauthorized recordation is the sole responsibility of the person
30   who caused the modified recordation as provided in subdivision
31   (a).
32       (i) (1) A ~~restrictive covenant modification~~ *Restrictive Covenant*
33   *Modification* that is approved by county counsel or their designee
34   and recorded pursuant to this section removes the illegal covenant
35   from all property affected by the original covenant regardless of
36   who submits the modification.
37       (2) This section does not affect the obligations of the governing
38   board of a common interest development as defined in Section
39   4100 or 6534 of the Civil Code if the board of directors of that
40   common interest development is subject to the requirements of

97

1   subdivision (b) of Section 4225 or of subdivision (b) of Section
2   6606 of the Civil Code.
3       (j)  For purposes of this section, "redaction" and "redacted" mean
4   the same as defined in Section 12956.1.
5       SEC. 18.   Section 12993 of the Government Code is amended
6   to read:
7       12993.   (a) The provisions of this part shall be construed
8   liberally for the accomplishment of the purposes of this part. This
9   part does not repeal any of the provisions of civil rights law or of
10  any other law of this state relating to discrimination because of
11  race, caste, religious creed, color, national origin, ancestry, physical
12  disability, mental disability, medical condition, genetic information,
13  marital status, sex, age, reproductive health decisionmaking, or
14  sexual orientation, unless those provisions provide less protection
15  to the enumerated classes of persons covered under this part.
16      (b) The provisions in this part relating to discrimination in
17  employment on account of sex or medical condition do not affect
18  the operation of the terms or conditions of any bona fide retirement,
19  pension, employee benefit, or insurance plan, provided the terms
20  or conditions are in accordance with customary and reasonable or
21  actuarially sound underwriting practices.
22      (c)  While it is the intention of the Legislature to occupy the field
23  of regulation of discrimination in employment and housing
24  encompassed by the provisions of this part, exclusive of all other
25  laws banning discrimination in employment and housing by any
26  city, city and county, county, or other political subdivision of the
27  state, this part does not limit or restrict the application of Section
28  51 of the Civil Code.

O

97