RICHARD A. PAUL (SBN 057976)
rich.paul@quarles.com
JEFFREY P. MICHALOWSKI (SBN 248073)
jeff.michalowski@quarles.com
MATTHEW W. BURRIS (SBN 325569)
matt.burris@quarles.com
ADRIELLI FERRER (SBN 348068)
adrielli.ferrer@quarles.com
**QUARLES & BRADY LLP**
101 West Broadway, Ninth Floor
San Diego, California 92101-8285
Telephone: 619-237-5200
Facsimile: 619-615-0700

Attorneys for Chancellor Koester

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| SUNIL KUMAR, Ph. D., PRAVEEN SINHA, Ph. D.,<br><br>Plaintiffs,<br><br>v.<br><br>DR. JOLENE KOESTER, in her official capacity as Chancellor of California State University,<br><br>Defendant. | Case No. 2:22-cv-07550-RGK-MAA<br><br>**DEFENDANT'S COMBINED REPLY IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS AND OPPOSITION TO CROSS-MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Date:         June 26, 2023<br>Time:        9:00 a.m.<br>Judge:       Hon. R. Gary Klausner<br>Trial Date: October 31, 2023 |

# TABLE OF CONTENTS

I. INTRODUCTION ..................................................................................................... 1

II. DEFENSE JUDGMENT IS WARRANTED ......................................................... 1

    A. Plaintiffs' Entire Action Fails at the Threshold. ....................................... 1

        1. Plaintiffs lack standing. ................................................................. 1

        2. Plaintiffs' claims are not ripe. ....................................................... 2

    B. Plaintiffs' Vagueness Challenge Fails. ...................................................... 3

    C. Plaintiffs' Equal Protection Claims Fail. .................................................. 5

    D. Plaintiffs' Establishment Clause Claims Fail. .......................................... 7

        1. The Policy is neutral and has a secular purpose. .......................... 7

        2. Plaintiffs ignore the *Bremerton* "history and tradition" test. ........ 8

    E. Plaintiffs' Free Exercise Challenge Fails. ................................................. 9

        1. The Policy does not impair religious conduct. ............................. 9

        2. The Policy is neutral toward religion. .......................................... 9

III. CONCLUSION ..................................................................................................... 10

# TABLE OF AUTHORITIES

**PAGE(S)**

<u>**CASES**</u>

*Ball v. Massanari*,
  254 F.3D 817 (9TH CIR. 2001)...................................................................................5

*Barnes-Wallace v. City Of San Diego*,
  704 F.3D 1067 (9TH CIR. 2012).................................................................................6

*Bostock v. Clayton County, Georgia*,
  140 S. CT. 1731 (2020) ..............................................................................................3

*Cal. Parents For Equalization Of Educ. Materials v. Noonan*,
  600 F.SUPP. 2D 1088 ................................................................................................8

*Cal. Parents For Equalization Of Educ. Materials v. Torlakson*,
  370 F. SUPP. 1057 (N.D. CAL. 2019) ......................................................................8

*Cal. Parents For Equalization Of Educ. Materials v. Torlakson*,
  973 F.3D 1010 (9TH CIR. 2020)................................................................................8

*Catholic League For Religious & Civ. Rights v. City & County Of San Francisco*,
  567 F.3D 595 (9TH CIR. 2009)..................................................................................8

*Church Of Lukumi Babalu Aye, Inc. v. City Of Hialeah*,
  508 U.S. 520 (1993)..................................................................................................10

*Doe v. City Of San Diego*,
  313 F. SUPP. 3D 1212 (S.D. CAL. 2018)..................................................................2

*EEOC v. Catastrophe Mgmt. Solutions*,
  852 F.3D 1018 (11TH CIR. 2016)..............................................................................3

*Erotic Service Provider Legal Educ. And Research Project v. Gascon*,
  880 F.3D 450 (9TH CIR. 2018)..................................................................................9

*Every Nation Campus Ministries At San Diego State Univ. v. Achtenberg*,
  2006 WL 8455445 (S.D. CAL. MAY 2, 2006).........................................................3

*Fisher v. Univ. Of Tex.*,
    570 U.S. 297 (2013) ................................................................................................. 6

*Heller v. Doe*,
    509 U.S. 312 (1993) ................................................................................................. 9

*Johnson v. Cal.*,
    543 U.S. 499 (2005) ................................................................................................. 5

*Kennedy v. Bremerton Sch. Dist.*,
    142 S. CT. 2407 (2022) ........................................................................................... 9

*Masterpiece Cakeshop Ltd. v. Colo. Civ. Rights Comm'n*,
    138 S. CT. 1719 (2018) ........................................................................................... 7

*McGowan v. Maryland*,
    366 U.S. 420, 422 (1961) ......................................................................................... 8

*Miss. Univ. For Women v. Hogan*,
    458 U.S. 718 (1982) ................................................................................................. 6

*Protectmarriage.com–Yes On 8 v. Bowen*,
    752 F.3D 827 (9TH CIR. 2014) ............................................................................... 2

*Real v. City Of Long Beach*,
    852 F.3D 929 (9TH CIR. 2017) ............................................................................... 2

*Sabra v. Maricopa County Cmty. Coll. Dist.*,
    44 F.4TH 867 (9TH CIR. 2022) .............................................................................. 9

*Seals V. McBee*,
    898 F.3D 589(5TH CIR. 2018) ................................................................................ 2

*Stormans, Inc. v. Selecky*,
    586 F.3D 1109 (9TH CIR. 2009) ............................................................................ 2

*Tennison v. Paulus*,
    144 F.3D 1285 (9TH CIR. 1988) ............................................................................ 2

*Tingley v. Ferguson*,
    47 F.4TH 1055 (9TH CIR. 2022) ........................................................................ 2,9

iii

# I. INTRODUCTION

It is beyond any serious dispute that CSU's Nondiscrimination Policy is neutral toward religion. It makes no mention of Hinduism or any other faith. Rather, it bars all forms of race and ethnicity discrimination, including discrimination based on caste. Moreover, Plaintiffs do not allege that the Policy has been enforced in a discriminatory manner, or that it has been enforced at all. In other words, Plaintiffs mount only a facial challenge to a facially neutral Policy.

This leaves Plaintiffs with only two lines of argument to challenge the Policy, and neither has merit. First, Plaintiffs claim "caste" is beyond the understanding of members of the CSU community. Even if the argument were plausible (it isn't), it would fall short of Plaintiffs' burden. Vagueness challenges will survive, especially outside the criminal context, only if the plaintiff demonstrates that a term is vague in *all* possible applications. Plaintiffs cannot meet that burden here. Second, Plaintiffs attempt to write anti-Hindu hostility into the Policy. They do not cite any statements by Defendant or by CSU, and instead rely on statements by others (*i.e.*, student groups and faculty groups), who did not author or adopt the Policy, and who are not parties to this dispute. That is not enough.

More fundamentally, though, Plaintiffs' Opposition ("Opp'n") makes clear that they are asking this Court for an advisory opinion regarding unripe claims brought by Plaintiffs who have not identified any actual or threatened injury. Prudence counsels in favor of deferring this inquiry until a genuine case or controversy arises.

# II. DEFENSE JUDGMENT IS WARRANTED

## A. Plaintiffs' Entire Action Fails at the Threshold.

### 1. Plaintiffs lack standing.

Absent from Plaintiffs' discussion of standing, Opp'n 5–7, is any contention that they have been injured by the Policy or that a future injury is imminent. Instead, Plaintiffs argue that in a facial challenge, they are relieved of any obligation

1

to allege an injury.

This ignores bedrock principles of constitutional law. The "irreducible constitutional minimum of standing . . . requires an injury in fact, caused by the defendant's conduct, that can be redressed by a favorable result." *Tingley v. Ferguson*, 47 F.4th 1055, 1066 (9th Cir. 2022). There is no exemption for facial challenges, nor for First Amendment challenges. Although Plaintiffs in certain First Amendment cases face a "somewhat relaxed" test for standing, they are still required to show *some* actual or imminent injury. *Seals v. McBee*, 898 F.3d 589, 591(5th Cir. 2018) (under "relaxed" test plaintiffs "still must show that they satisfy the core Article III requirements of injury, causation, and redressability"). Plaintiffs' own cases confirm this. In *Tennison* and *Doe*, the Court found standing, but only because there was an actual injury—*i.e.*, a chilling effect on speech. *Tennison v. Paulus*, 144 F.3d 1285, 1287 (9th Cir. 1988); *see also Doe v. City of San Diego*, 313 F. Supp. 3d 1212, 1218 (S.D. Cal. 2018). In *Real*, a zoning Ordinance caused actual injury by imposing actual restrictions on expressive activity (*i.e.*, tattooing). *See Real v. City of Long Beach*, 852 F.3d 929, 934 (9th Cir. 2017).

What, then, is the injury at issue here? In what manner does the Policy restrict Plaintiffs' expression, their practice of religion, or any other constitutional right? Plaintiffs' Opposition declines to say. And the only purported injuries identified in their Complaint—speculative fear of future injury, and abstract stigmatic injury—are insufficient as a matter of law. *See* Def.'s Mem. of P. & A. ("MPA") 6–8.

### 2.  Plaintiffs' claims are not ripe.

Plaintiffs' claims are also unripe, because their claimed injuries under the Policy "may never occur." *Protectmarriage.com–Yes on 8 v. Bowen*, 752 F.3d 827, 838 (9th Cir. 2014). Plaintiffs respond by claiming that, without review, they would need to undertake an "immediate and significant change in [the] conduct of their affairs . . . ." Opp'n 7 (quoting *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1126 (9th

Cir. 2009)).

In what ways, then, would the Policy require Plaintiffs to change the conduct of their affairs? Plaintiffs' Opposition does not say. And in their Complaint, Plaintiffs concede that the Policy will *not* restrict their conduct, their practices, nor their beliefs—they "abhor" all forms of discrimination, FAC ¶ 51, and have no desire to engage in conduct barred by the Policy. There is no injury here, nor is there any reasonable likelihood that a future injury will ever occur.

### B. Plaintiffs' Vagueness Challenge Fails.

Plaintiffs' vagueness challenge does not cite any authority finding the term "caste" or any comparable terms unconstitutionally vague. And it ignores authority finding that similar terms pass constitutional muster. Indeed, of the five original protected categories under Title VII—"race, color, religion, national origin, and sex"—none were defined terms, and the meaning of most (or all) of these terms is contested and open to debate. *See, e.g., EEOC v. Catastrophe Mgmt. Solutions*, 852 F.3d 1018, 1026 (11th Cir. 2016) ("In the 1960s, as today, 'race' was a complex concept that defied a single definition."). Indeed, the term "sex" has been interpreted and re-interpted for decades, including in recent years. *See Bostock v. Clayton County, Georgia*, 140 S. Ct. 1731, 1753 (2020). Still, no case has found any of these terms constitutionally infirm, and numerous cases have rejected vagueness challenges to similar terms, ***including in the context of CSU's anti-discrimination policies***. *See, e.g., Every Nation Campus Ministries at San Diego State Univ. v. Achtenberg*, 2006 WL 8455445 (S.D. Cal. May 2, 2006) (terms "sexual orientation" and "marital status" are not unconstitutionally vague).

All told, then, Plaintiffs' vagueness challenge rests not on substance or on authority, but instead on generalities and rhetorical flourishes. In particular, Plaintiffs' discussion of vagueness proceeds largely through hypothetical questions that are untethered from the facts of this case (in which no CSU member has complained or even threatened a complaint). These questions should be disregarded

3

as improper requests for an advisory opinion.  But in any event, the answers are readily discernible from the Policy, the legal background, and from common sense.

**"Who determines what caste is ascribed if, as with Plaintiffs here, they do not identify with any caste?"  (Opp'n 8:15–17.)**  Ordinarily, it will be up to the complainant to identify the basis for their complaint.  In this sense, the approach to complaints of caste discrimination would be no different than the approach to complaints of race, sexual orientation, or religion.  CSU will not need to "ascribe" any protected characteristic to the complainant; rather, the complainant will self-identify the relevant protected characteristic(s) as part of their complaint.  To the extent Plaintiffs claim the Policy will require investigators to ascribe a caste to the *accused*, that is even less convincing; the Policy bars discrimination by anyone, regardless of their caste, and regardless of whether they identify with a caste at all.

**"Is ['caste' under the Policy] based on geography, national origin, religion, social status, or something else entirely?  Does it apply to caste systems found in North American and Europe?"  (Opp'n 8:22–24.)**  Under the Policy, caste is defined as a subcategory of race or ethnicity.  All such caste discrimination is barred by the Policy, regardless of the national origin, ancestry, religion, geographical location, or social status.  If a complainant from North America or Europe claimed caste discrimination linked to race or ethnicity, the claim would be evaluated in the same way as a claim of caste discrimination based on race or ethnicity by an individual of South Asian or African descent.  The key inquiries would be—was the individual treated materially differently than others, and if so, on what basis?  If the difference was explained by one's perceived hereditary rank and was linked to race or ethnicity, then a finding of caste discrimination could be warranted.  If the difference was explained by race, without regard to hereditary social status, race discrimination would be the more appropriate finding.

**"How is someone to know whether they are engaged in caste discrimination?"  (Opp'n 9:11–12.)**  **"How will someone know if they are the**

**victim of caste discrimination?" (Opp'n 9:23–24.)** One will know they are engaged in the caste discrimination in the same way they would know they are engaged in discrimination based on any other protected category, such as race, religion, or sexual orientation. If someone treats someone materially differently based on their perceived hereditary rank and in a manner linked to race or ethnicity, they are engaged in caste discrimination under CSU's Policy. If someone believes they are being treated materially differently based on their caste and in a manner linked to race or ethnicity, they may be a victim of caste discrimination under CSU's Policy. They have a right to complain, and the investigator will then assess the cause of any claimed differential treatment.

There is nothing mysterious about the Policy, and it is readily understandable to CSU members of ordinary intelligence. The vagueness claim lacks merit.

### C. Plaintiffs' Equal Protection Claims Fail.

Plaintiffs are correct that strict scrutiny applies to government actions that treat individuals differently on account of race, religion, ethnicity, or national origin. *See* Opp'n 11 (citing *Johnson v. Cal.*, 543 U.S. 499, 505 (2005).) But the Policy does not make any such distinctions. Rather, it bars *all* caste discrimination linked to *any* race or ethnicity. Specifically, it bars *all* CSU community members from engaging in discrimination (regardless of their race, ethnicity, religion, national origin, or caste). And it protects all CSU community members from discrimination (regardless of their race, ethnicity, religion, national origin, or caste).

Plaintiffs' contention that strict scrutiny applies, then, is based not on the Policy and not on controlling authority, but instead on sleight of hand. Specifically, Plaintiffs argue that under the Policy, caste "is based on race, ethnicity, or national origin"; that it thus "employs a suspect class"; and that strict scrutiny thus applies. *See* Opp'n 12:3–9 (quoting *Ball v. Massanari*, 254 F.3d 817, 823 (9th Cir. 2001)). But there is a stark difference between "employing a suspect class" in a law (*i.e.*, providing differential treatment based on the protected class to which they belong)

and barring discrimination against *all* members of a protected class.  The former treats similarly-treated individuals differently, triggering scrutiny under the equal protection clause.  The latter treats similarly-treated individuals the same, and the equal protection clause takes no offense.  *See Barnes-Wallace v. City of San Diego*, 704 F.3d 1067, 1086 (9th Cir. 2012) ("In order for a state action to trigger equal protection at all, that action must treat similarly situated persons disparately.").

For example, strict scrutiny applies when a government action provides preferential treatment to members of **certain** races over others (*see Fisher v. Univ. of Tex.*, 570 U.S. 297, 310 (2013)), or when it treats one sex differently than another (*see Miss. Univ. for Women v. Hogan*, 458 U.S. 718, 724 (1982)).  In contrast, a policy prohibiting all forms of race discrimination does not treat individuals differently based on race—rather, it extends protections *regardless* of race, and strict scrutiny will not apply.  The same is true here.  CSU's Policy does not distinguish between individuals of different races or ethnicities.  Rather, it bars all race and ethnicity discrimination, including discrimination based on caste.

Plaintiffs venture one additional argument, claiming CSU affords protection to individuals from "often-discussed caste systems" (such as those in India and South Asia), but denies protection to caste systems that are less well-known.  *See* Opp'n 13:3–4 ("[T]o benefit from the Policy's protection the 'caste system' must be one that is 'often-discussed,' thereby permitting those rarely discussed 'caste systems' to be ignored.'").  Plaintiffs simply have their facts wrong.  The plain language of the Policy bars *all* race and ethnicity discrimination, including discrimination based on caste, whether the underlying caste system is often-discussed or not.  *See also* MPA 1 ("[The Policy] bars discrimination based on the often-discussed caste systems found in India, Nepal, Sri Lanka, Bangladesh, and Pakistan, but *so too does it bar discrimination based on other caste systems*, including systems originating in Japan, Africa, the Middle East, and beyond.") (emphasis supplied)).  There is no equal protection violation here.

### D. Plaintiffs' Establishment Clause Claims Fail.

#### 1. The Policy is neutral and has a secular purpose.

Plaintiffs' Establishment Clause claims are based on a caricature of CSU's Policy, not on what the Policy actually says. Plaintiffs claim the Policy "violates the Establishment Clause by defining the contours of the Hindu religion as including a caste system, characterized as racist and inhumane system of discrimination and violence against others, and treats it differently than other religions." Opp'n 14. But the Policy, of course, says no such thing. In reality, the Policy says nothing at all about Hinduism, and instead bars caste discrimination by anyone (regardless of their religion) and against anyone (regardless of their religion).

Instead of citing language from the Policy to support their claim of religious hostility, Plaintiffs' only citation is to their own Complaint, which in turn cites to a resolution by a student group (not CSU). *See* MPA 8:12-16. Based on that student resolution (not on any language of CSU's Policy itself), Plaintiffs contend that the Policy vilifies Hinduism, and that the Policy should be subjected to strict scrutiny.

This is not how Establishment Clause analysis works. The government, by enacting a policy, does not endorse wholesale the views of those private citizens who advocated for its passage. Rather, the question with respect to religious neutrality is whether *the government action itself* was based on hostility toward religion. *See Masterpiece Cakeshop Ltd. v. Colo. Civ. Rights Comm'n*, 138 S. Ct. 1719, 1731 (2018) (finding hostility to religion by Commission based on anti-religious remarks *by commissioner*). Here, CSU's Policy is entirely neutral toward religion, and there is no evidence or allegation of any hostility to religion by CSU.

Finding no support in the letter of the Policy, Plaintiffs argue that (i) mere use of the word "caste" is an act of hostility toward Hinduism, and that the Policy thus "cannot be neutral toward religion" (Opp'n 15:17–19), and (ii) the Policy imposes unique burdens on members of the Hindu faith (Opp'n 16:3-5). There are at least three problems here. *First*, Plaintiffs' argument defies the plain language of the

Policy. It does not single out Hinduism or any other religion; it bars all caste discrimination, whether connected to religion or not. *Second*, even if CSU's Policy had characterized caste discrimination as a feature of Hinduism (it did not), banning a practice that is *correlated* with a religion is not the same thing as showing hostility toward that religion. *See McGowan v. Maryland*, 366 U.S. 420, 422 (1961) (regulation of conduct that coincides with tenets of religion does not violate Establishment Clause); *Catholic League for Religious & Civ. Rights v. City & County of San Francisco*, 567 F.3d 595, 603 (9th Cir. 2009) (criticizing conduct that correlates with religious beliefs did not violate Establishment Clause). *Third*, the Ninth Circuit has specifically held that state-approved curricular materials describing the caste system as a "religious belief" did *not* express or imply any "hostility toward religion." *Cal. Parents for Equalization of Educ. Materials v. Torlakson*, 973 F.3d 1010, 1022 (9th Cir. 2020) ("*Torlakson II*"); *see also Cal. Parents for Equalization of Educ. Materials v. Noonan*, 600 F.Supp. 2d 1088, 1103, 1120 (associating Hinduism with "oppressive caste system" did not violate Constitution); *Cal. Parents for Equalization of Educ. Materials v. Torlakson*, 370 F. Supp. 1057, 1071–72 (N.D. Cal. 2019) ("*Torlakson I*") ("excessive discussion of caste" did not violate Constitution).

Plaintiffs' efforts to distinguish *Torlakson II* are puzzling. They claim that *Torlakson II* merely taught students about the caste system, while here, CSU "seeks to define the contours of Hinduism." Opp'n 15–16. That claim turns both cases on their heads. *Torlakson II* expressly involved a textbook that defined the relationship of Hinduism and the caste system—"Appellants object to the description of caste as a religious belief." *Torlakson II*, 973 F.3d at 1014. This case, in contrast, involves a CSU Policy that does not define Hinduism, and does not even mention it. If anything, this is a far easier case than *Torlakson II*. And as to *Noonan* and *Torlakson I*, Plaintiffs say nothing at all, and instead ignore the cases entirely.

### 2. Plaintiffs ignore the *Bremerton* "history and tradition" test.

8

Under *Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407, 2428 (2022), the Establishment Clause analysis requires "reference to historical practices and understandings." As Defendant explained (MPA 16–17), elimination of discrimination in education has been one of the defining features of modern American legal history. Unsurprisingly, Plaintiffs do not argue that history and tradition *favor* discrimination in education, or that they bar schools from restricting discrimination. The Establishment Clause claims thus fail on this front, too.

### E. Plaintiffs' Free Exercise Challenge Fails.

#### 1. The Policy does not impair religious conduct.

In order to state a Free Exercise claim, Plaintiffs must show that "a government practice substantially burdens a religious practice. . . ." *Sabra v. Maricopa County Cmty. Coll. Dist.*, 44 F.4th 867 (9th Cir. 2022). Upon which *religious practices*, then, does the Policy infringe? Plaintiffs fail to say in their Complaint, and they fail to say in their Opposition. If anything, they acknowledge that the Policy is *consistent* with their religious belief that all forms of discrimination are abhorrent. FAC ¶¶ 18, 51. The claims thus fail at the threshold.

#### 2. The Policy is neutral toward religion.

Plaintiffs' claims fail for an additional reason, too. The Policy is neutral and generally applicable. As Plaintiffs acknowledge, neutrality plays a pivotal role in Free Exercise analysis. *See* Opp'n 17 (citing *Tingley*, 47 F.4th at 1085 (9th Cir. 2022)). Neutral laws of general applicability are presumptively valid (*id.* at 1078), and will be sustained if they are supported by "any conceivable rational basis." *Erotic Service Provider Legal Educ. and Research Project v. Gascon*, 880 F.3d 450, 457 (9th Cir. 2018); *see also Heller v. Doe*, 509 U.S. 312, 320 (1993). Plaintiffs do not claim the Policy lacks any rational basis; rather, they argue only that the Policy is *not* neutral, and thus triggers strict scrutiny.

These argument fail. It cannot be seriously disputed that the Policy's text is neutral toward religion. It bars caste discrimination by anyone (regardless of their

religion) and against anyone (regardless of their religion).  And Plaintiffs' effort to re-write the Policy is based on statements by others—the DFEH (a state agency), the California Faculty Association ("CFA") (the faculty union), and the Cal State Student Association ("CSSA") (a student group).  The DFEH, the CFA, and the CSSA do not speak for Chancellor Koester nor for CSU.  CSU is an independent state entity (*see* MPA 10–11) and Plaintiffs do not argue otherwise.

Plaintiffs' effort to tie CSU to a single dictionary definition is likewise unavailing.  As an initial matter, Plaintiffs cherry-pick one of many definitions of caste from one of many dictionaries.  Webster's itself includes two additional definitions of caste that make no mention of Hinduism.  *See* MERRIAM-WEBSTER DICTIONARY – "caste, n. – . . . (2) a division of society based on differences of wealth, inherited rank or privilege, profession, occupation, or race; (3) system of stratification characterized by hereditary status, endogamy, and social barriers sanctioned by custom, law, or religion."  A reasonable reader of Webster's would not conclude that "caste" is exclusively a Hindu phenomenon.

Plaintiffs' reliance on *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 533 (1993), then, is misplaced.  *Lukumi* involved a city Ordinance that prohibited the ritual sacrifice of animals, and the text of city enactments disclosed that the purpose of the Ordinance was to restrict religious sacrifices by Santeria church members.  Kosher slaughter was exempted from the restrictions, further confirming that the focus of the Ordinance was on a single, disfavored religion.  *Id.* at 534–39.  None of those factors are present here.

All told, CSU's Policy bars all forms of race and ethnicity discrimination, including when such discrimination is based on caste.  It does not single out Hindus or anyone else.  The Policy is neutral, and Plaintiffs' Free Exercise claims fail.

## III. CONCLUSION

Chancellor Koester respectfully requests judgment on the pleadings.

Dated: June 12, 2023        QUARLES & BRADY LLP

By: */s/ Jeffrey P. Michalowski*
JEFFREY P. MICHALOWSKI
Attorneys for CHANCELLOR KOESTER

# CERTIFICATION OF WORD COUNT COMPLIANCE

The undersigned, counsel of record for Defendant Chancellor Koester certifies that this brief does not exceed 10 double-spaced pages pursuant to Judge Klausner's Standing Order of January 2020 and May 2023, and further certifies that this brief consists of 3,350 words, which complies with the word limit of L.R. 11-6.1.

Dated:  June 12, 2023                    QUARLES & BRADY LLP

                                         By:    */s/ Jeffrey P. Michalowski*
                                                JEFFREY P. MICHALOWSKI
                                                Attorneys for CHANCELLOR KOESTER