JOHN J. SHAEFFER (SBN 138331)
jshaeffer@FoxRothschild.com
FOX ROTHSCHILD LLP
Constellation Place
10250 Constellation Blvd., Ste. 900
Los Angeles, CA 90067
Telephone;   310.598.4150
Facsmile:    310.556.9828

MICHAEL K. TWERSKY (*pro hac vice*)
mtwersky@foxrothschild.com
BETH L. WEISSER (*pro hac vice*)
bweisser@foxrothschild.com
ERIKA PAGE (*pro hac vice*)
epage@foxrothschild.com
ALBERTO M. LONGO (*pro hac vice*)
alongo@foxrothschild.com
FOX ROTHSCHILD, LLP
980 Jolly Road, Suite 110
Blue Bell, PA 19422
Telephone:   610.397.6500
Facsimile:   610.397.0450

Attorneys for Plaintiffs
Sunil Kumar, Ph.D. and Praveen Sinha, Ph.D.

(*continued on following page*)

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| SUNIL KUMAR, Ph. D., PRAVEEN SINHA, Ph. D.,<br><br>                Plaintiffs,<br><br>        v.<br><br>DR. JOLENE KOESTER, in her official capacity as Chancellor of California State University,<br><br>                Defendant. | Case No. 2:22-cv-07550-RGK-MAA<br><br>**JOINT STATEMENT OF UNDISPUTED AND DISPUTED FACTS**<br><br>**Court Trial**:<br>Date:        October 24, 2023<br>Crtrm:       850<br>Judge:       Hon. R. Gary Klausner |

RICHARD A. PAUL (SBN 057976)
rich.paul@quarles.com
JEFFREY P. MICHALOWSKI (SBN 248073)
jeff.michalowski@quarles.com
MATTHEW W. BURRIS (SBN 325569)
matt.burris@quarles.com
ADRIELLI FERRER (SBN 348068)
adrielli.ferrer@quarles.com
**QUARLES & BRADY LLP**
101 West Broadway, Ninth Floor
San Diego, California 92101-8285
Telephone: 619-237-5200
Facsimile: 619-615-0700

Attorneys for Defendant Dr. Jolene Koester

JOINT STATEMENT OF UNDISPUTED AND DISPUTED MATERIAL FACTS

# UNDISPUTED FACTS

1.      Plaintiffs Sunil Kumar and Praveen Sinha are professors at California State University ("CSU"). [First Am. Compl. at ¶8 (ECF No. 80).]

2.      Plaintiffs were born in India and are adherents to Hinduism. [First Am. Compl. at ¶8 (ECF No. 80).]

3.      Defendant Dr. Jolene Koester is the Chancellor of the CSU and is being sued in her official capacity. [First Am. Compl. at ¶ 24 (ECF No. 80)].

4.      In 2021, CSU's Title IX and DHR Policy Revision Workgroup ("Title IX Workgroup") was convened by CSU's Chancellor to address systemwide policy issues, and began studying the issue of caste discrimination.  [Anson Decl. ¶ 3 (ECF No. 115-4); Deposition Transcript of Laura Anson ("Anson Dep. Tr.") 19:20-22:2 (available at ECF No. 115-13, which is Exh. 9 to Michalowski Decl.).]

5.      The CSU Policy Prohibiting Discrimination, Harassment, Sexual Misconduct, Sexual Exploitation, Dating Violence, Domestic Violence, Stalking and Retaliation (Nondiscrimination Policy) ("CSU Nondiscrimination Policy" or "Policy"), as revised on January 22, 2023 states:

> "The CSU prohibits the following conduct, as defined in Article VII.
>
> A.  Discrimination based on any Protected Status: i.e., Age, Disability (physical and mental), Gender (or sex, including sex stereotyping), Gender Identity (including transgender), Gender Expression, Genetic Information, Marital Status, Medical Condition, Nationality, Race or Ethnicity (including color, caste, or ancestry), Religion (or religious creed), Sexual Orientation, and Veteran or Military Status."

[CSU Nondiscrimination Policy, *Prohibited Conduct Covered Under this Policy*, Article II, Section A, 1-2 (available at ECF No. 115-6, which is Exh. 3 to the

1  Declaration of Laura Anson ("Anson Decl.") (ECF No. 115-04)].

2       6.     The Policy as amended added, among other things, the term "caste" for

3  the first time in CSU's history.  [CSU Nondiscrimination Policy, Article II, Section

4  A, pp. 1-2. (ECF No. 115-6).]

5       7.     The Policy that included the term caste became effective on January 1,

6  2022.  Anson Decl. ¶ 13 (ECF No. 115-4).

7       8.     The Policy's prohibition of caste discrimination applies to Plaintiffs.

8  [*See generally* CSU Nondiscrimination Policy (ECF No. 115-6).]

9       9.     Article VII of the Nondiscrimination Policy defines Discrimination as:

10 "Discrimination  is  (an)  Adverse  Action(s)  against  a  Complainant

11 because of their Protected Status."

12 [CSU  Nondiscrimination  Policy,  *Policy  Definitions*,  *Prohibited*

13 *Conduct Defined,* Article VII, Section A, 7 (ECF No. 115-06).]

14      10.    Article VII of the Nondiscrimination Policy defines Adverse Action as:

15           "Adverse  Action  means  an  action  engaged  in  by  the

16           Respondent  that  has  a  substantial  and  material  adverse

17           effect  on  the  Complainant's  ability  to  participate  in  a

18           university  program,  activity,  or  employment.  Minor  or

19           trivial actions or conduct not reasonably likely to do more

20           than anger or upset a Complainant does not constitute an

21           Adverse Action. An adverse employment action is any

22           conduct or employment action that is reasonably likely to

23           impair  an  employee's  job  performance  or  prospects  for

24           advancement or promotion.

25           If Adverse Action is taken because of a Complainant's

26           Protected  Status,  that  means  that  the  Complainant's

27           Protected Status is a substantial motivating reason (but not

28           necessarily the only reason) for the Adverse Action."

4

[CSU Nondiscrimination Policy, *Policy Definitions*, *Prohibited Conduct Defined*, Article VII, Section A, 7 (ECF No. 115-06).]

11. Article VII of the Nondiscrimination Policy defines Harassment as follows:

> "Harassment means unwelcome verbal, nonverbal or physical conduct engaged in because of an individual Complainant's Protected Status. If a Complainant is harassed because of their Protected Status, that means that the Complainant's Protected Status is a substantial motivating reason (but not necessarily the only reason) for the conduct. Harassment may occur when:
>
> a. Submitting to, or rejecting, the verbal, nonverbal or physical conduct is explicitly or implicitly a basis for:
>
> I. Decisions that adversely affect or threaten employment, or which are being presented as a term or condition of the Complainant's employment; or
>
> II. Decisions that affect or threaten the Complainant's academic status or progress, or access to benefits and services, honors, programs, or activities available at or through the university.
>
>  OR
>
> The conduct is sufficiently severe or pervasive so that its effect, whether intended or not, could be considered by a reasonable person under similar circumstances and with similar identities, and is in fact considered by the Complainant as creating an intimidating, hostile or offensive work or educational environment that denies or substantially limits an individual's ability to participate in

or benefit from employment and/or educational, services, activities, or other privileges provided by the CSU.

Harassment includes, but is not limited to, verbal harassment (e.g., epithets, derogatory comments, or slurs), physical harassment (e.g., assault, impeding or blocking movement, or any physical interference with normal work or movement), and visual forms of harassment (e.g., derogatory posters, cartoons, drawings, symbols, or gestures.). Single, isolated incidents will typically be insufficient to rise to the level of harassment."

[CSU Nondiscrimination Policy, *Policy Definitions*, *Prohibited Conduct Defined,* Article VII, Section A, 7-8 (ECF No. 115-06).]

12.    Article VII of the Nondiscrimination Policy defines Protected Status as:

"Protected Status includes Age, Disability (physical or mental), Gender (or sex), Genetic Information, Gender Identity (including transgender), Gender Expression, Marital Status, Medical Condition, Nationality, Race or Ethnicity (including color, caste, or ancestry), Religion or Religious Creed, Sexual Orientation, and Veteran or Military Status."

[CSU Nondiscrimination Policy, *Policy Definitions*, *Definitions of Capitalized Terms*, Article VII, Section B, 16 (ECF No. 115-06).]

13.    The Nondiscrimination Policy does not define caste. [*See generally* CSU Nondiscrimination Policy (ECF No. 115-06).]

14.    The Nondiscrimination Policy does not define "sex" or "color." [CSU Nondiscrimination Policy, *Policy Definitions*, *Definitions of Capitalized Terms*, Article VII, Section B, 13-17 (ECF No. 115-06); Deposition Transcript of Ajantha

1   Subramanian ("Subramanian Dep. Tr." 72:3-22 (Ex. 31 to the Supplemental
2   Declaration of Jeffrey P. Michalowski ("Michalowski Supp. Decl.").]

3        15.   The Title IX Workgroup considered multiple definitions of the term
4   "caste" as used in the Nondiscrimination Policy. The Title IX Workgroup did not
5   recommend a definition of the term "caste" be included in the proposed Policy
6   which was later adopted by the Chancellor's office. Pl. Tr. Br. at Ex. J (ECF No.
7   114-11) (Bates No. CSU 000936-000937);Twersky Decl. at Ex. A, relevant pages
8   from Anson Dep. Tr., 94:19-101:4.]

9        16.   There is not one universally accepted definition of caste. [Pl. Tr. Br. at
10   Ex. B (ECF No. 114-3), 32:23-24.]

11        17.   The Merriam-Webster dictionary definition contains multiple
12   definitions of "caste:"

13       1:  one of the hereditary social classes in Hinduism that restrict the
14       occupation of their members and their association with members of other
15       castes

16       2    a:  a division of society based on differences of wealth, inherited rank
17       or privilege, profession, occupation, or race

18          b:  the position conferred by caste standing:  PRESTIGE
19             art and religion have lost *caste*  -- F.L. Baumer

20       3:    a system of rigid social stratification characterized by hereditary status,
21       endogamy, and social barriers sanctioned by custom, law, or religion

22       4:  a specialized form (such as the worker of an ant or bee) of polymorphic
23       social insect that carries out a particular function in the colony

24          Soldier *castes* for fighting enemy ants
25   [*Merriam-Webster*, https://www.merriam-webster.com/dictionary/caste]

26        18.   The Nondiscrimination Policy does not discuss, name, or mention
27   Hinduism. [CSU Nondiscrimination Policy (ECF No. 115-06); Deposition
28   Transcript of Sunil Kumar, Ph.D. ("Kumar Dep. Tr.") 136:20-137:14 (available at

ECF No. 115-14, which is Exh. 11 to the Declaration of Jeffrey P. Michalowski ("Michalowski Decl.") (ECF No. 115-08); Deposition Transcript of Praveen Sinha ("Sinha Dep. Tr.") 140:1-11 (available at ECF No. 115-22, which is Exh. 18 to Michalowski Decl.).]

19.     The Nondiscrimination Policy does not discuss, name, or mention Dalits, Brahmins, Kshatriyas, Vaishyas, or Shudras. [*See,* CSU Nondiscrimination Policy (ECF No. 115-06).]

20.     The Nondiscrimination Policy does not discuss, name, or mention the terms "India" or "South Asia." [*See,* CSU Nondiscrimination Policy (ECF No. 115-06).]

21.     Prior to recommending the word "caste" be added to CSU's Nondiscrimination Policy, the Title IX Workgroup solicited and/or received feedback from approximately twenty stakeholder groups.  [Anson Decl. ¶ 9 (ECF No. 115-4); Anson Dep. Tr. 19:20-20:25 (ECF No. 115-12).]

22.     The California State Students Association ("CSSA") and the California Faculty Association ("CFA") were two of approximately twenty stakeholder groups to make known their views about caste discrimination. [Anson Dep. Tr. 19:20-20:25, 35:15-36:9 (ECF No. 115-12).]

23.     The CFA and CSSA, as well as the Associated Students, Inc. of the California Polytechnic State University at San Luis Obisbo ("Cal Poly SLO ASI"), issued Resolutions in support of adding caste to the Nondiscrimination Policy of which the Title IX workgroup was aware.  [Anson Decl. ¶ 10 (ECF No. 115-4); Anson Dep. Tr. 19:20-20:25, 51:20-52:9 (ECF No. 115-12).]

24.     The CSSA Resolution  states, in part, that:

> **WHEREAS**:  Caste is a structure of oppression that affects over 1 billion  people across the world based in birth that determines social status and assigns "spiritual purity"; and
>
> **WHEREAS**:  There are four main caste groups:  Brahmins,

Kshatriyas, Vaishyas, and Shudras, with lower caste Shudras and those outside the caste system, known as Dalits meaning "broken but resilient" and formerly known as "untouchables", considered oppressed by caste;

****

**WHEREAS**: Caste-oppressed groups continue to experience profound injustices including socioeconomic inequalities, usurpation of their land, rights, and experience brutal violence at the hands of the "upper" Castes . . .

[Pl. Tr. Br. at Ex. D (ECF No. 114-5).]

25. The CFA Resolution states, in part, that:

**WHEREAS**,  Caste is a structure of oppression that affects over 1 billion people across the world based in birth that determines social status and assigns spiritual purity, and

**WHEREAS**, There are four main caste groups:  Brahmins, Kshatriyas, Vaishyas, and Shudras, with lower caste Shudras and those outside the caste system, known as Dalits meaning "broken but resilient" and formerly known as "untouchables", considered oppressed by caste,

**WHEREAS**, Caste is present in the Hindu religion and common in communities in South Asia and the South Asia Diaspora,

**WHEREAS**: Caste-oppressed groups continue to experience profound injustices including socioeconomic inequalities, usurpation of their land, rights, and experience brutal violence at the hands of the "upper" Castes . . .

Pl. Tr. Br. at Ex. C (ECF No. 114-4).

26. The Cal Poly SLO ASI Resolution, sent to CSU's Chancellor on April 6, 2021 ("ASI Resolution"), states, in part:

**WHEREAS**:  Caste is a structure of oppression that affects over 1 billion

9

people across the world based in birth that determines social status and assigns "spiritual purity"; and

**WHEREAS**:  There are four main caste groups:  Brahmins, Kshatriyas, Vaishyas, and Shudras, with lower caste Shudras and those outside the caste system, known as Dalits meaning "broken but resilient" and formerly known as "untouchables", considered oppressed by caste;

**WHEREAS**: Caste-oppressed groups continue to experience profound injustices including socioeconomic inequalities, usurpation of their land, rights, and experience brutal violence at the hands of the "upper" Castes . . .

Pl. Tr. Br. at Ex. E (ECF No. 114-6).

27.   The Cal Poly SLO ASI submitted a letter to CSU's Chancellor with its Resolution that states, in part:  "Caste is a structure of oppression in Hindu society based on ones spiritual purity."

Pl. Tr. Br. at Ex. E (ECF No. 114-6).

28.   The CFA's primary purpose is to maintain a collective bargaining agreement for the employees they represent. [California Faculty Association, *CFA Bylaws*, *Article II: Purposes,* 3 (amended Apr. 2021)  (Ex. 1 to Defendant's Request for Judicial Notice in support of Opp'n ("RJN")).]

29.   The CSSA is a "student-led organization" that engages and advocates for the needs of half a million students across the CSU, but "maintain[s] autonomy from the CSU Office of the Chancellor in the stances it takes [and] the work it carries out."  [Cal State Student Association, *The Constitution of the California State Student Association, Article II: Mission and Purpose & Article VI: Relationship to External Bodies,* 6, 15 (2022–2023) (Ex. 2 to RJN).]

30.   The Cal Poly SLO ASI is the "student body organization" that "is the official voice of Cal Poly Students." [ASI of California Polytechnic State University at San Luis Obispo, *ASI Bylaws*, *ASI Board of Directors**, 4.1. Purpose of*

10

1  *the ASI Board of Directors*, 6 (May 17, 2023)  (Ex. 3 to RJN).]

2      31.    CSSA and Cal Poly SLO ASI are "auxiliary organizations" the purpose

3  of which is to provide essential activities closely related to, but not normally

4  included as part of, the regular instructional program of CSU. [Cal. Educ. Code §§

5  89300, 89901.]

6      32.    CFA is a not a CSU auxiliary organization and does not represent the

7  CSU in any capacity.  [Cal. Educ. Code §§ 89902.]

8      33.    In response to a July 4, 2021 email from Wenda Fong, current chair of

9  the CSU Board of Trustees, regarding CSU's consideration to include caste in the

10  Nondiscrimination Policy, CSU interim executive Vice Chancellor of Academic

11  and Student affairs Fred Wood explained:

12          We first became aware of student interest in this issue when we

13          received a number of "form letters" from both CSU students

14          (mainly from SLO) and students from a number of other non-CSU

15          universities regarding this issue.  We then received a resolution

16          from the SLO ASI which was followed by a CSSA resolution.

17          AVC Hong then briefed the Chancellor's counsel based on her

18          research of the issue, and on the discussions at the CSSA, which

19          she reported was dominated by input from a number of non-CSU

20          speakers. Anticipating media interest, we developed the attached

21          "Talking Points" as we began further discussion of what steps we

22          might take next.  Since this issue has a number of HR and OGC

23          related aspects, we have created a small workgroup to discuss this

24          in greater detail and to bring recommendations to the Chancellor's

25          Council for consideration.  Thanks again for asking about this.  I

26          hope this brief is helpful.

27  [Twersky Decl. at Ex. E (Bates No. CSU 001215).]

28      34.    CSU did not rely on any of their designated experts in this case when

11

deciding to amend the Policy to include caste.  Twersky Decl. at Exs. B (Rich Tr. at 8:18-22); C (Ravitch Tr. at 13:19-25) & D (Subramanian Tr. at 11:20-24).

35.    CSU's experts were retained solely for purposes of this litigation after it commenced. Twersky Decl. at Exs. B (Rich Tr. at 8:18-22); C (Ravitch Tr. at 13:19-25) & D (Subramanian Tr. at 11:20-24).

## DISPUTED FACTS

36.    The term caste is often associated with Hinduism.

**Plaintiff's Citations**: [Declaration of Michael K. Twersky, Esq. (filed on October 3, 2023 in conjunction with Plaintiffs' Opposition to Defendant's Trial Brief) ("Twersky Decl.") (ECF No. ___) at Ex.D, relevant pages from Deposition Transcript of Dr. Ajantha Subramanian ("Subramanian Dep. Tr.") (Defendant's expert stating that caste "is often associated with Hinduism"), 106:21-23; *see also Merriam-Webster*, https://www.merriam-webster.com/dictionary/caste (defining caste as "one of the hereditary social classes in Hinduism").]

**Defendant's Citations**: Disputed due to vagueness and incomplete citation. Subramanian Dep. Tr. 106:21-108:2 (Ex .31 to Michalowski Supp. Decl.) (Hinduism is not derived from Hinduism, but it is "often associated with Hinduism . . . but not associated solely with Hinduism, I should say.  It's associated with Hinduism and with other religious formations in South Asia.")

37.    The term "caste" is not derived from Hinduism.

**Plaintiffs' Citations:** Twersky Decl. at Ex. D, 106:21-23. (Defendant's expert stating that caste "is often associated with Hinduism"), 106:21-23; *see also Merriam-Webster*, https://www.merriam-webster.com/dictionary/caste (defining caste as "one of the hereditary social classes in Hinduism").

**Defendant's Citations**: Subramanian Dep. Tr. 106:21-23.

38.    There is not one universally accepted definition of "race."

**Defendant's Citations**: Deposition Transcript of Camille Gear Rich ("Rich Dep. Tr.") 20:19-22, 46:20-47:13 (Ex. 30 to the Michalowski Supp. Decl.); Subramanian

1   Dep. Tr. 49:10-51:16, 52:22-54:5 (Ex. 31 to Michalowski Supp. Decl.)

2   **Plaintiffs' Citations**: By its very definition, this an expert "opinion" not a "fact".

3   *See also* Plaintiffs' Objections to Disputed Facts.

4         39.    There is no one universally accepted definition of "ethnicity."

5   **Defendant's Citations**: E.g., Merriam-Webster, https://www.merriam-

6   webster.com/dictionary/ethnicity; Merriam-Webster, https://www.merriam-

7   webster.com/dictionary/ethnic; The Britannica Dictionary,

8   https://www.britannica.com/dictionary/ethnicity.

9   **Plaintiffs' Citations**: *See* Plaintiffs' Objections to Disputed Facts.

10         40.    There is no one universally accepted definition of "religion."

11   **Defendant's Citations**: E.g., Merriam-Webster, https://www.merriam-

12   webster.com/dictionary/religion; The Britannica Dictionary,

13   https://www.britannica.com/dictionary/religion.

14   **Plaintiffs' Citations**: *See* Plaintiffs' Objections to Disputed Facts.

15         41.    There is no one universally accepted definition of "sex."

16   **Defendant's Citations**: E.g., Merriam-Webster, https://www.merriam-

17   webster.com/dictionary/sex; The Britannica Dictionary,

18   https://www.britannica.com/dictionary/sex.

19   **Plaintiffs' Citations**: *See* Plaintiffs' Objections to Disputed Facts.

20         42.    Caste systems are descent-based systems of social stratification that

21   exists in many parts of the world, including South Asia, East Asia, Africa, and the

22   Americas.

23   **Defendant's Citations**: Expert Report by Dr. Ajantha Subramanian ("Subramanian

24   Report") 3, which is Ex. 37 to the Declaration of Dr. Ajantha Subramanian

25   ("Subramanian Decl."). For clarity, Ex. 37, authenticated through the Subramanian

26   Decl. is identical to ECF No. 115-30, Exhibit 26.

27   **Plaintiffs' Citations**: By its very definition, this an expert "opinion" not a "fact".

28   *See also* Plaintiffs' Objections to Disputed Facts.

43. Caste is not coextensive with Hinduism or any other religion.

**Defendant's Citations**: Subramanian Report, 7-10 (Ex. 37 to Subramanian Decl.).

**Plaintiff's Citations:** By its very definition, this an expert "opinion" not a "fact". *See also* Plaintiffs' Objections to Disputed Facts.

44. Caste is not coextensive with India or South Asia.

**Defendant's Citations**: Subramanian Report, 3-4 (Ex. 37 to Subramanian Decl.); Expert Report of Professor Frank S. Ravitch ("Ravitch Report"), 9-10 (available at ECF No. 115-33, which is Exh. 28 to the Declaration of Frank S. Ravitch ("Ravitch Decl.") (ECF No. 115-32).

**Plaintiff's Citations**: By its very definition, this an expert "opinion" not a "fact". *See also* Plaintiffs' Objections to Disputed Facts.

45. Caste is a social practice among most communities and all the major religions (Hindus, Muslims, Sikhs and Christians) in South Asia.

**Defendant's Citations**: Kumar Dep. Tr. 78:10–16 (ECF No. 115-14); Exh. 3 to Kumar Dep. Tr., which is Ex. 33 to the Michalowski Supp. Decl.; Sinha Dep. Tr. 112:20-114:21 (ECF No. 115-22).

**Plaintiffs' Citations**: **DISPUTED:** Caste can be a social practice within communities but it is not exclusively so, and it is often tied only to Hindus and people of South Asian descent. *See, e.g., Merriam-Webster*, https://www.merriam-webster.com/dictionary/ca; Twersky Decl. at Ex. D, Subramanian Dep. Tr., 106:11-23.

46. The Merriam-Webster dictionary contains multiple definitions of "race:"

1    a. see usage paragraph below : any one of the groups that humans are often divided into based on physical traits regarded as common among people of shared ancestry

     b. dated : a group of people sharing a common cultural, geographical, linguistic, or religious origin or background

c. archaic : the descendants of a common ancestor : a group sharing a

common lineage

2   a: a group of living things considered as a category

b archaic : BREED

3   biology : a group within a species that is distinguishable (as

morphologically, genetically, or behaviorally) from others of the same

species

also : a usually informal taxonomic category representing such a group that is

often considered equivalent to a subspecies

4   archaic : a group of people sharing some habit or characteristic (such

as profession or belief)

**<u>Defendant's Citations</u>**: Merriam-Webster, https://www.merriam-

webster.com/dictionary/race

**<u>Plaintiffs' Citations</u>**: *See* Plaintiffs' Objections to Disputed Facts.

47.   The Merriam Webster dictionary contains two definitions of the term

"ethnicity:"

1: ethnic quality or affiliation

2: a particular ethnic affiliation or group.

Both definitions turn on multiple definitions of the term "ethnic:"

1a: of or relating to large groups of people classed according to common

racial, national, tribal, religious, linguistic, or cultural origin or background

b: being a member of a specified ethnic group

c: of, relating to, or characteristic of a minority ethnic group

2: of or relating to the Gentiles or to nations not converted to Christianity :

PAGAN

**<u>Defendant's Citations</u>**: Merriam-Webster, https://www.merriam-

webster.com/dictionary/ethnicity; Merriam-Webster, https://www.merriam-

webster.com/dictionary/ethnic

**Plaintiffs' Citations**:  *See* Plaintiffs' Objections to Disputed Facts.

48.     The Merriam-Webster dictionary contains multiple definitions of "sex," and a usage note stating that "usage of sex and gender is by no means settled."

> 1a: either of the two major forms of individuals that occur in many species and that are distinguished respectively as female or male especially on the basis of their reproductive organs and structures
>
> b: the sum of the structural, functional, and sometimes behavioral characteristics of organisms that distinguish males and females
>
> c: the state of being male or female
>
> d: males or females considered as a group
>
> 2a: sexually motivated phenomena or behavior
>
> b: SEXUAL INTERCOURSE
>
> 3: GENITALIA

**Defendant's Citations**: Merriam-Webster, https://www.merriam-webster.com/dictionary/sex

**Plaintiffs' Citations**:  *See* Plaintiffs' Objections to Disputed Facts.

49.     The Title IX Workgroup consisted of 9 CSU administrators who met privately to, among other things, consider recommending the addition of caste to the Nondiscrimination Policy.

**Plaintiffs' Citations:** Twersky Decl. at Ex. A, Anson Dep. Tr., 19:12-25, 23:9-21, 24:1-11; *id.* at 27:1-10 (Defendant's counsel asserting that any communications within the Title IX Workgroup are privileged because it included "two representatives from the Office of General Counsel…."); *id.* at Ex. E, July 26, 2021 email exchange between Fred Wood and Wenda Fong, CSU 001215.

**Defendant's Citations:** Anson Decl. ¶¶ 3-5, 9, 11 (ECF No. 115-4) (working group formed at direction of CSU Chancellor to discuss and recommend Nondiscrimination Policy revisions – not to amend it for purpose of adding caste;

JOINT STATEMENT OF UNDISPUTED AND DISPUTED MATERIAL FACTS

working group held seven private meetings, but reached out broadly to stakeholder groups for feedback and received significant input and public feedback); Anson Dep. Tr. 19:20-20:19, 26:12-15 (ECF No. 115-12) (no workgroup member assigned to address caste, working group sought feedback from approximately 20 different stakeholder groups, reviewed that feedback, and incorporated it into Policy).

50.     The Title IX Workgroup was generally aware of the CFA and CSSA resolutions, but did not actually review or rely on the documents.

**Defendant's Citations**: Anson. Dep. Tr. 35:11-36:9 (ECF No. 115-13).]

**Plaintiffs' Citations**: [Anson Decl. ¶ 10 (ECF No. 115-4); Anson Dep. Tr. 19:20-20:25; 32:25-33:13; 35:19-36:9 (ECF No. 115-13.]

51.     The Title IX Workgroup was aware of, and considered, the Merriam-Webster dictionary definition.

**Plaintiffs' Citations**: Pltfs. Tr. Br. at Ex. J (ECF No. 114-11) (Bates No. CSU 000936-000937); Twersky Decl. at Ex. B, Anson Dep. Tr., 94:19-101:4.

**Defendant's Citations**: Anson Dep. Tr. 99:18-102:25 (ECF No. 115-12), Ex J to Longo Decl. (ECF 114-11.)

52.     The term caste as used in the Policy is not defined on CSU's websites or in any written material provided to the CSU community.

**Plaintiffs' Citations:** Pl. Tr. Br. at Ex. B (ECF No. 114-3), 32:8-20(acknowledging that "there is nowhere" to find the definition of caste used in the Nondiscrimination Policy).

**Defendant's Citations:** See Def.'s Objections to Plaintiff's Statements of Disputed Fact.

53.     Article VII of the Nondiscrimination Policy defines Race or Ethnicity as: "Race or Ethnicity includes ancestry, color, caste, ethnic group identification, and ethnic background."  [CSU Nondiscrimination Policy, *Policy Definitions*, *Definitions of Capitalized Terms*, Article VII, Section B, 16 (ECF No. 115-06).]

**Plaintiffs' Citations:** CSU Nondiscrimination Policy, *Policy Definitions*,

*Definitions of Capitalized Terms*, Article VII, Section B(20), p. 16 (defining terms Race or Ethnicity) (ECF No. 115-06).

**Defendant's Citations**: CSU Nondiscrimination Policy, *Policy Definitions*, *Definitions of Capitalized Terms*, Article VII, Section B, 13-17 (ECF No. 115-06); Subramanian Dep. Tr. 72:3-22 (policy illustrates but does not define race or ethnicity); (Ex. 31 to Michalowski Supp. Decl.).

54.     The CSU Nondiscrimination Policy defines more than 40 terms in its "Definitions" section, including:  gender, gender identity, sex stereotyping, race, ethnicity, religion, and nationality.

**Plaintiffs' Citations:** CSU Nondiscrimination Policy, Article VII, Section B (10), (16), (20), (22), pp. 14-16 (ECF No. 115-06) ("Race or Ethnicity" included as terms in the section of the Nondiscrimination Policy drafted by CSU entitled "***Definitions***" of capitalized terms (emphasis added).

**Defendant's Citations:** CSU Nondiscrimination Policy, *Policy Definitions*, *Definitions of Capitalized Terms*, Article VII, Section B, 13-17 (ECF No. 115-06) (policy illustrates but does not define race or ethnicity, nationality, protected status, religion or religious creed); Subramanian Dep. Tr. 72:3-22 (Ex. 31 to Michalowski Supp. Decl.) (regarding race or ethnicity).

55.     Article VII of the Nondiscrimination Policy does not define "race" or "ethnicity."

**Defendant's Citations**: CSU Nondiscrimination Policy, *Policy Definitions*, *Definitions of Capitalized Terms*, Article VII, Section B, 13-17 (ECF No. 115-06); Subramanian Dep. Tr. 72:3-22 (policy does not define race or ethnicity) (Ex. 31 to Michalowski Supp. Decl.)

**Plaintiffs' Citations**: CSU Nondiscrimination Policy, Article VII, Section B (20), p. 16 (ECF No. 114-2) (contained in section of the Nondiscrimination Policy drafted by CSU entitled "Definitions" not illustrations).

56.     Article VII of the Nondiscrimination Policy provides illustrations of

"Race or Ethnicity" – "Race or Ethnicity includes ancestry, color, caste, ethnic group identification, and ethnic background."

**Defendant's Citations**: CSU Nondiscrimination Policy, *Policy Definitions*, *Definitions of Capitalized Terms*, Article VII, Section B, 13-17 (ECF No. 115-06); Subramanian Dep. Tr. 72:3-22 (policy does not define race or ethnicity) (Ex. 31 to Michalowski Supp. Decl.

**Plaintiffs' Citations**:  CSU Nondiscrimination Policy, Article VII, Section B (20), p. 16 (ECF No. 114-2) (contained in section of the Nondiscrimination Policy drafted by CSU entitled "Definitions" not illustrations).

57.    CSU acknowledges that "if an employee or student were unfamiliar with the term caste . . . . [t]hey would need only reach for a dictionary (or more, likely, consult Google or other online resources to find quick and comprehensive information."

**Plaintiffs' Citations**:  Defendant's Trial Brief (ECF No. 115) at p. 24.

**Defendant's Citations**: Rich Dep. Tr. 51:1-25 (Ex. 30 to Michalowski Supp. Decl.) (one unfamiliar with term may look to university policies and materials put out by human resources, Title IX office); Kumar Dep. Tr. 179:11-184:21 (ECF No. 115-14) (testifying he would go to "university authorities" for questions regarding Policy); Sinha Dep. Tr. 49:23-50:22, 126:2-128:7 (ECF No. 115-16) (same). See also, Def.'s Objections to Plaintiff's Statements of Disputed Fact.

58.    The CSSA resolution did not mention the term "Hindu."

**Plaintiffs' Citations**: Pl. Tr. Br. at Ex. D (ECF No. 114-5) (which includes footnotes to www.equalitylabs.org/castesurvey, which includes numerous references to the term "Hindu").

**Defendant's Citations**: CSSA Resolution (ECF No. 114-5, which is Ex. D to the Declaration of Alberto M. Longo (ECF No. 114-1).

59.    The terms "Brahmins, Kshatriyas, Vaishyas, Shudras and Dalits" are associated with the Hindu religion and people from South Asia.

**Defendant's Citations**: See Def.'s Objections to Plaintiff's Statements of Disputed Fact.

**Plaintiff's Citations**: Twersky Decl. at Ex G, relevant pages of Deposition testimony of Plaintiff Praveen Sinha ("Sinha Dep. Tr.") at 88: 14-22; *id.* at Ex. ___, Subramanian Dep. Tr. at 100:22-25 to 101:3-12; *id.* at Ex. ___, Anson Dep. Tr. at 31:1-6; *id.* at 53:5-15.

60.     The Cal Poly SLO ASI Resolution did not mention the term "Hindu."

**Defendant's Citations:** ASI Resolution, 3-4 (ECF No. 114-6, which is Ex. E to the Longo Decl.).]

**Plaintiffs' Citations**: Pl. Tr. Br. at Ex. E (ECF No. 114-6) ASI Resolution (which includes footnote to www.equalitylabs.org/castesurvey, which includes numerous references to the term "Hindu").

61.     CSU did not intend for its Policy to target Hinduism or any other religion.

**Defendant's Citation**: Anson Decl. ¶ 8 (ECF No. 115-4); Anson Dep. Tr. 49:25-50:3, 73:6-11 (ECF No. 115-13).

**Plaintiffs' Citation**: Inclusion of the word caste without definition is targeting Hinduism as explained in Plaintiffs' Opposition to Defendant's Trial Brief (ECF No. ___), pp. 6, 7.  *See also* Plaintiffs' Objections to Disputed Facts

62.     The Policy prohibits caste discrimination by all members of the CSU community, regardless of their religion or national origin.

**Defendant's Citations**: See Sinha Dep. Tr. 135:13–137:15 (ECF No. 115-22); Anson Decl. ¶ 14 (ECF No. 115-4); *see,* CSU Nondiscrimination Policy (ECF No. 115-06).

**Plaintiff's Citation**:  *See* Plaintiffs' Objections to Disputed Facts.

63.     There is no evidence that the Chancellor or any CSU administrator ever showed any hostility toward Hinduism.

**Defendant's Citations**: Kumar Dep. Tr. 135:23–139:10 (ECF No. 115-14); Sinha

20

Dep. Tr. 151:4-9 (ECF No. 115-22); Pls.' Resp. to Def.'s Interrogs. 8:11-9:25 (ECF No. 115-9, which is Exh. 5 to Michalowski Decl.).

**Plaintiffs' Citations**: Inclusion of the word caste without definition, and relying on the Resolutions to add caste, shows hostility towards Hinduism as explained in Plaintiffs' Opposition to Defendant's Trial Brief (ECF No. ____), pp. 6, 7.

64.    The Nondiscrimination Policy has not been enforced against Plaintiffs on the basis of caste.

**Defendant's Citations**: Kumar Dep. Tr. 146:16–147:21 (ECF No. 115-14); Sinha Dep. Tr. 27:10–28:22 (ECF No. 115-22); Pls.' Resp. to Def.'s Interrogs. 8:11-9:25 (ECF No. 115-9).

**Plaintiffs' Citations**: *See* Plaintiffs' Objections to Disputed Facts.

65.    No one has threatened to enforce the Nondiscrimination Policy against Plaintiffs on the basis of caste.

**Defendant's Citations**: Kumar Dep. Tr. 146:16 –147:21 (ECF No. 115-14); Sinha Dep. Tr. 27:10–28:22 (ECF No. 115-22); Pl. Kumar's Resp. to Def.'s Req. for Admis. 4:8-10 (ECF No. 115-10), which is Exh. 6 to Michalowski Decl.; Pl. Sinha's Resp. to Def.'s Req. for Admis. 4:12-21 (ECF No. 115-11), which is Exh. 7 to Michalowski Decl.

**Plaintiff's Citations**: *See* Plaintiffs' Objections to Disputed Facts.

66.    Plaintiffs are unaware of any actions taken against them due to the addition of "caste" to the Policy.

**Defendant's Citations**: Pls.' Resp. to Def.'s Interrogs. 8:11-9:25 (ECF No. 115-9).

**Plaintiffs' Citations**: *See* Plaintiffs' Objections to Disputed Facts.

67.    "Both [Plaintiffs] hold the sincere religious belief that neither caste nor a discriminatory caste system are in any way part of the Hindu religion or its teachings."

**Defendant's Citations**: First Amended Complaint ¶ 18.

**Plaintiffs' Citations**: *See* Plaintiffs' Objections to Disputed Facts.

1  68. Plaintiff Kumar's religious beliefs do not require him to treat people of
2  different castes differently.

3  **Defendant's Citations:** Kumar Dep. Tr. 108:13–20 (ECF No. 115-14).

4  **Plaintiffs' Citations**: *See* Plaintiffs' Objections to Disputed Facts.

5  69. Plaintiff Kumar cannot identify any way in which he has changed his
6  religious beliefs or practice because of the Nondiscrimination Policy and states
7  "there is no reason to change [his] beliefs so far."

8  **Defendant's Citations**: Kumar Dep. Tr. 106:1–17 (ECF No. 115-14).

9  **Plaintiffs' Citations**: *See* Plaintiffs' Objections to Disputed Facts.

10  70. Plaintiff Sinha's religious beliefs do not require him to treat people of
11  different castes differently.

12  **Defendant's Citations**: Sinha Dep. Tr. 91:6–13 (ECF No. 115-22).

13  **Plaintiffs' Citations**: *See* Plaintiffs' Objections to Disputed Facts.

14  71. Plaintiff Sinha has not changed his religious beliefs or practice due to
15  CSU's implementation of the Nondiscrimination Policy.

16  **Defendant's Citations**: Sinha Dep. 90:23–91:5 (ECF No. 115-22).

17  **Plaintiffs' Citations**: *See* Plaintiffs' Objections to Disputed Facts.

18  72. CSU's Nondiscrimination Policy has not required any religious
19  organization of which plaintiffs are members to alter its doctrines and/or teachings,
20  or to alter its internal policies, procedures or practices.

21  **Defendant's Citations**: Pl. Kumar's Resp. to Def.'s Req. for Admis. 5:3-23 (ECF
22  No. 115-10), which is Exh. 6 to Michalowski Decl.; Pl. Sinha's Resp. to Def.'s Req.
23  for Admis. 5:14-6:7 (ECF No. 115-11), which is Exh. 7 to Michalowski Decl.

24  **Plaintiffs' Citations**: *See* Plaintiffs' Objections to Disputed Facts.

25  73. The Court found that "Plaintiffs' injuries are concrete and personal as
26  they are CSU employees and practitioners of the Hindi faith."

27  **Plaintiffs' Citations**: ECF 102, Order Re: Defendant's Motion for Judgment on the
28  Pleadings.

1  **Defendant's Citations**: See Def.'s Objections  to Plaintiff's Statements of Disputed

2  Facts.

3          74.     The Court found that Plaintiffs "alleged a sufficient causal connection

4  between the Policy and their injury, as the inclusion of the term 'caste' is the source

5  of their injury."

6  **Plaintiffs' Citations**: ECF 102, Order Re: Defendant's Motion for Judgment on the

7  Pleadings.

8  **Defendant's Citations**: See Def.'s Objections  to Plaintiff's Statements of Disputed

9  Facts.

10         Respectfully submitted,

11

12  Dated:  October 3, 2023          FOX ROTHSCHILD LLP

13                                   By:  *s/ Michael K. Twersky*

14                                         JOHN J. SHAEFFER
                                           MICHAEL K. TWERSKY
15                                         BETH L. WEISSER
                                           ERIKA PAGE
16                                         ALBERTO M. LONGO
                                           Attorneys for Plaintiffs Sunil Kumar, Ph,D.
17                                         and Praveen Sinha. Ph.D.

18  Dated:  October 3, 2023          QUARLES & BRADY LLP

19

20                                   By:  *s/ Jeffrey P. Michalowski*

21                                         RICHARD A. PAUL
                                           JEFFREY P. MICHALOWSKI
22                                         MATTHEW W. BURRIS
                                           ADRIELLI FERRER
23                                         Attorneys for Defendant Dr. Jolene Koester

24

25

26

27

28

JOINT STATEMENT OF UNDISPUTED AND DISPUTED MATERIAL FACTS

# SIGNATURE ATTESTATION

Pursuant to Local Rule 5-4.3.4(a)(2)(i), I hereby certify that the content of this document is acceptable to Michael K. Twersky, counsel for Plaintiffs, and that I have obtained Mr. Twersky's authorization to affix his/her electronic signature to this document.

Dated:  October 3, 2023          QUARLES & BRADY LLP

By: _s/ Jeffrey P. Michalowski_
RICHARD A. PAUL
JEFFREY P. MICHALOWSKI
MATTHEW W. BURRIS
ADRIELLI FERRER
Attorneys for Defendant Dr. Jolene Koester

JOINT STATEMENT OF UNDISPUTED AND DISPUTED MATERIAL FACTS