UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                  No JS6

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-07550-RGK-MAA | Date | November 21, 2023 |
|---|---|---|---|
| Title | *Sunil Kumar, Ph. D. et al v. Dr. Jolene Koester, et al.* | | |

Present: The Honorable  R. GARY KLAUSNER, UNITED STATES DISTRICT JUDGE

| Joseph Remigio | Not Reported | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendant: |
|---|---|
| Not Present | Not Present |

**Proceedings:**        **(IN CHAMBERS) Order Re: Court Trial on the Briefs**

## I.    INTRODUCTION

On February 28, 2023, Sunil Kumar and Praveen Sinha ("Plaintiffs") filed the operative First Amended Complaint against Jolene Koester ("Defendant") in her official capacity as Chancellor of California State University ("CSU"). (ECF No. 80.) Plaintiffs seek a declaratory judgment finding that the inclusion of the word "caste" in CSU's interim discrimination, harassment, and retaliation policy (the "DHR Policy" or "Policy") is unconstitutional. Specifically, Plaintiffs allege that the Policy violates their constitutional rights under (1) the First Amendment's Free Exercise Clause; (2) the First Amendment's Establishment Clause; (3) the Fourteenth Amendment's Equal Protection Clause; and (4) the Fourteenth Amendment's Due Process Clause. Plaintiff additionally asserted similar claims under the California Constitution.

On May 18, 2023, Defendant moved for Judgment on the Pleadings. (ECF No. 90.) The Court granted the Motion in part and dismissed Plaintiffs' Free Exercise and Equal Protection claims, as well as their state equivalents. Plaintiffs' Establishment Clause and Due Process claims proceeded to a court trial, which the parties elected be taken under submission. The Court has reviewed all trial briefing and, for the following reasons, **ENTERS JUDGMENT for Defendant**.

## II.    CONCLUSIONS OF FACT

Because the word "caste" is central to this case, the Court begins with a brief definition. "Caste" is an expansive term referring to social hierarchies that exist across the globe in many religions and societies, including in the United States. (*See, e.g.*, Twersky Decl., Ex. I at 5, ECF No. 120-12 (quoting the New York Times Magazine's use of "caste" in a discussion of racialized slavery in the United States).) But despite its broad use, the word "caste" is arguably most closely associated with Hindu and South Asian societies. For example, the Oxford English Dictionary ("OED") contains eight definitions of "caste," one of which is "[a]ny of the (usually hereditary) classes or social ranks into which Hindu

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                    No JS6

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-07550-RGK-MAA | Date | November 21, 2023 |
|---|---|---|---|
| Title | *Sunil Kumar, Ph. D. et al v. Dr. Jolene Koester, et al.* | | |

society is traditionally divided; a class of this sort forming part of a hierarchical social structure traditional in some parts of South Asia." (*Id.* at 3.) The OED also references the "four classes or varnas" described in ancient Hindu texts: Brahmin, Kshatriya, Vaishya, and Shudra. (*Id.*; Michalowski Decl., Ex. 12 at 43:9–11, ECF No. 115-16.) In addition to these four groups, a fifth group, known as Dalits, exist outside the varna system. (Twersky Decl., Ex. I at 3.)

Plaintiffs are CSU professors who are practitioners of the Hindu faith. Plaintiffs vehemently dispute that caste discrimination is part of the Hindu religion. (Michalowski Decl., Ex. 11 at 108:13–20, ECF No. 115-15; Michalowski Decl., Ex. 18 at 89:5–20, ECF No. 115-22). Instead, Plaintiffs abhor caste discrimination and believe Hinduism requires them to treat all people equally. (Michalowski Decl., Ex. 11 at 108:13–20; Michalowski Decl., Ex. 18 at 89:5–20.) Perhaps unsurprisingly, Plaintiffs have not faced disciplinary action at CSU related to discriminatory behavior, nor have they faced any allegations of discrimination from any member of the CSU community. (Michalowski Decl., Ex. 11 at 146:16–147:21; Michalowski Decl., Ex. 18 at 27:10–28:9.)

In January 2023, CSU implemented a revised version of its DHR Policy. The newly revised Policy includes the word "caste." In particular, the Policy prohibits:

> Discrimination based on any Protected Status: i.e., Age, Disability (physical and mental), Gender (or sex, including sex stereotyping), Gender Identity (including transgender), Gender Expression, Genetic Information, Marital Status, Medical Condition, Nationality, Race or Ethnicity (including color, caste, or ancestry), Religion (or religious creed), Sexual Orientation, and Veteran or Military Status.

(Longo Decl., Ex. A at 1, ECF No. 114-2.) The Policy additionally defines "Race or Ethnicity" to "include[] ancestry, color, caste, ethnic group identification, and ethnic background." (*Id.* at 16.) The Policy does not define "caste." Although CSU considered including a definition, it ultimately concluded that a definition was not necessary because "caste" was used to further clarify the meaning of the phrase "Race or Ethnicity." (Anson Decl. ¶ 7, ECF No. 115-4.)

Defendant revised the Policy based upon independent recommendations from the Title IX and DHR Policy Revision Workgroup ("Workgroup"). (Anson Decl. ¶ 3.) The Workgroup met at least seven times prior to the Policy's implementation and consisted of nine members, including representatives from CSU's human resources, Title IX compliance, and student affairs departments. (*Id.* ¶¶ 4–5.)

Although the Workgroup met privately, it solicited feedback from the broader CSU community. In November 2021, the Workgroup distributed a draft of the Policy to roughly twenty CSU stakeholder groups. (*Id.* ¶ 9; Michalowski Decl., Ex. 8 at 20:11–12, ECF No. 115-12.) The Workgroup received

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                                    No JS6

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-07550-RGK-MAA | Date | November 21, 2023 |
|---|---|---|---|
| Title | *Sunil Kumar, Ph. D. et al v. Dr. Jolene Koester, et al.* | | |

numerous responses to the Policy, but none commented on the addition of the word "caste." (Anson Decl. ¶ 11.)

In addition to this solicited feedback, the Workgroup was also aware that two stakeholder groups—the California Faculty Association ("CFA") and California State Student Association ("CSSA")—had passed resolutions (the "Resolutions") in support of adding the word "caste" to the Policy.[1] The Resolutions clearly reference South Asian caste discrimination, as they both identify "Brahmins, Kshatriyas, Vaishyas, and Shudras" as the "four main caste groups" and identify an oppressed group of people, known as Dalits, who exist entirely outside of the caste system. (Longo Decl., Ex. C at 1, ECF No. 114-4; Longo Decl., Ex. D at 1, ECF No. 114-5.) Although the CSSA resolution does not explicitly reference Hinduism, the CFA resolution describes caste as "present in the Hindu religion and common in communities in South Asia and in the South Asian Diaspora." (Longo Decl., Ex. C at 1.)[2]

## III.   CONCLUSIONS OF LAW

After the Court's order regarding Defendant's Motion for Judgment on the Pleadings, Plaintiffs have two surviving theories of unconstitutionality. First, Plaintiffs allege that the Policy violates the Due Process Clause as vague. Second, Plaintiffs allege that the Policy violates the Establishment Clause. Plaintiffs additionally assert parallel claims under the California Constitution. According to Defendant, Plaintiffs lack standing to assert these claims. Moreover, Defendant argues that Plaintiffs' claims fail on the merits. The Court addresses each argument in turn.

### A.   Standing

Article III of the Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016). One of the essential components of the Article III case or controversy requirement is that a plaintiff have standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). To demonstrate that he has standing, a plaintiff must show: (1) that he "suffered an injury in fact" that is "concrete and particularized"; (2) "a causal connection between the injury and the conduct complained of"; and (3) that it is "likely . . . that the injury will be redressed by a favorable decision." *Id.* at 560–61 (internal quotation marks omitted). A court "has an independent

---

[1] The Workgroup was also aware of a resolution promulgated by ASI, a student association at California Polytechnic State University, which is affiliated with CSU. (Michalowski Decl., Ex. 8 at 51:20–52.) The ASI resolution contains language nearly identical to the CFA and CSSA Resolutions, describing Brahmins, Kshatriyas, Vaishyas, and Shudras as the "four main caste groups" and describing caste as "a structure of oppression in Hindu society." (Longo Decl., Ex. E at 1–2, ECF No. 114-6.)

[2] Defendant requests that the Court take judicial notice of several documents. (ECF Nos. 117-13, 122-3.) Because the Court does not rely on these materials, the Requests are **DENIED as moot**.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                        No JS6

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-07550-RGK-MAA | | Date | November 21, 2023 |
|---|---|---|---|---|
| Title | *Sunil Kumar, Ph. D. et al v. Dr. Jolene Koester, et al.* | | | |

obligation" to assure that these requirements are satisfied. *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009).

       1.      *Due Process Clause*

Plaintiffs allege that the Policy violates the Due Process Clause as vague because it uses, but does not define, the word, "caste." According to Plaintiffs, the fact that "caste" is an expansive term with numerous definitions makes it impossible for Plaintiffs—or anyone else—to decipher what the Policy proscribes. The Court previously determined that Plaintiffs had standing to challenge the Policy under the Due Process Clause because "standing requirements to challenge [a provision] under the Fourteenth Amendment Due Process Clause are broader than they otherwise might be" when, as here, the challenged provision implicates a First Amendment right. *Arce v. Douglas*, 793 F.3d 968, 987 (9th Cir. 2015).

The Court's subsequent research revealed, however, that a plaintiff asserting a pre-enforcement facial challenge is not entitled to the relaxed standing requirements described in *Arce*, which involved a challenge to a law that had previously been enforced. Instead, a plaintiff asserting a pre-enforcement facial challenge must show that: (1) he intends to engage in conduct that implicates his constitutional rights; (2) his "intended future conduct is arguably proscribed by" the challenged provision; and (3) he faces a credible threat of prosecution.[3] *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159, 162 (2014). Although Plaintiffs meet the first *Driehaus* requirement, they fail to establish the second and third.

Whether a plaintiff has satisfied the first *Driehaus* prong "resembles an invitation to reach the merits of [a plaintiff's] constitutional claims." *State of Arizona v. Yellen*, 34 F.4th 841, 849 (9th Cir. 2022). Plaintiffs have alleged that the Policy impermissibly stigmatizes Hinduism and therefore infringes upon their religious freedom. For standing purposes, the Court accepts that this is true and concludes that the first *Driehaus* requirement is satisfied. *See id.* (taking "as true all material allegations in the complaint" that a challenged provision was "unconstitutionally ambiguous and coercive.").

The second *Driehaus* prong requires that a plaintiff's future conduct be proscribed by the challenged provision. Here, Plaintiffs' intended conduct—practicing their religion—is protected, rather than proscribed by the Policy, which prohibits "Discrimination based on . . . Religion (or religious creed)." The Policy, therefore, does not in any way proscribe Plaintiffs' intended conduct, and Plaintiffs fail to satisfy the second *Driehaus* requirement.

---

[3] Because this issue has not been raised previously, the Court issued an Order to Show Cause ordering Plaintiffs to address the *Driehaus* standing requirements. (ECF No. 123.) Plaintiffs timely responded. (ECF No. 124.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                    No JS6

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-07550-RGK-MAA | Date | November 21, 2023 |
|---|---|---|---|
| Title | *Sunil Kumar, Ph. D. et al v. Dr. Jolene Koester, et al.* | | |

Regarding the third *Driehaus* prong, Plaintiffs have not shown a credible threat of prosecution. The Ninth Circuit has adopted a three-factor test "to help determine whether a threat of enforcement is genuine enough to confer an Article III injury." *Tingley v. Ferguson*, 47 F.4th 1055, 1067 (9th Cir. 2022). To make this determination, courts consider: (1) whether a plaintiff has a "concrete plan" to violate the challenged provision, (2) if authorities have "communicated a specific warning or threat to initiate proceedings" and (3) any "history of past prosecution or enforcement." *Id.* (quoting *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000)). When a challenged provision is "relatively new," the third factor "carries little weight." *See Tingley*, 47 F.4th at 1069 (quoting *Cal. Trucking Ass'n v. Bonta*, 996 F.3d 644, 653 (9th Cir. 2021)) (internal quotation marks omitted).

Here, Plaintiffs reject Defendant's alleged association of Hinduism with an oppressive and inhumane caste system. Instead, Plaintiffs believe that Hinduism requires them to treat all people equally. Plaintiffs, therefore, have articulated a desire to comply with the Policy's prohibition against racial discrimination through their religious practices—not to violate it. Further, Plaintiffs provide no evidence to show that the Policy would be enforced against them. Although Plaintiffs argue that their nondiscriminatory religious practices could be misconstrued as discriminatory and unjustly punished under the Policy, such a threat of future enforcement is merely "theoretically possible" and "not reasonable or imminent" at this time. *Thomas*, 220 F.3d at 1141.

Plaintiffs allege that the Policy subjects their religious beliefs to ridicule. As a result, Plaintiffs are hesitant to discuss Hinduism and certain Hindu texts at CSU. Plaintiffs argue that because the Policy results in "self-censorship," they have standing to challenge the Policy for vagueness notwithstanding the *Thomas* test. *Cal. Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088 (9th Cir. 2003). In *Getman*, the Ninth Circuit reasoned, "*Thomas* did not purport to overrule years of Ninth Circuit and Supreme Court precedent recognizing the validity of pre-enforcement challenges to statutes infringing upon constitutional rights." *Id.* at 1094. The Court further noted, "[i]n an effort to avoid the chilling effect of sweeping restrictions, the Supreme Court has endorsed what might be called a 'hold your tongue and challenge now' approach rather than requiring litigants to speak first and take their chances with the consequences." *Id.* (quoting *Ariz. Right to Life Pol. Action Comm. v. Bayless*, 320 F.3d 1002, 1006 (9th Cir. 2003)). Importantly, the court in *Getman* made clear that "[t]he self-censorship door to standing does not open for every plaintiff." *Id.* at 1095. Instead, a plaintiff who has suffered self-censorship only has standing if he has "an actual and well-founded fear that the law will be enforced against him." *Id.* (quoting *Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383, 393 (1988)).

Here, Plaintiffs fail to demonstrate a well-founded fear of enforcement for several reasons. First, as discussed above, Plaintiffs' religious freedom is protected by the Policy, which prohibits discrimination based on "Religion (or religious creed)." Second, CSU has long had a Policy against discrimination based on race or ethnicity. Plaintiffs have presumably been practitioners of Hinduism for

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                                    No JS6

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-07550-RGK-MAA | | Date | November 21, 2023 |
|---|---|---|---|---|
| Title | *Sunil Kumar, Ph. D. et al v. Dr. Jolene Koester, et al.* | | | |

the duration of their time at CSU yet have never faced any allegations of discrimination. Finally, Defendant's expert testified that universities implementing new policies typically do not respond to alleged violations in a "draconian or punitive" manner. (Longo Decl., Ex. C at 60:3–4, ECF No. 124-2.) Instead, it is more desirable to "find a resolution that's more about conciliation" and to approach "more subtle forms of discrimination" with "a more measured stance in the early phases of this kind of change to ensure that everyone has the opportunity to really understand what the rules are." (*Id.* at 60:1–13.)

For the above reasons, Plaintiffs have failed to meet the second and third *Driehaus* standing requirements to assert a pre-enforcement Due Process challenge. Accordingly, the Court **DISMISSES** Plaintiffs' federal Due Process Clause claim for lack of subject matter jurisdiction.

In addition to their federal Due Process Clause claim, Plaintiffs also assert a violation of California's due process clause. California's due process clause and the federal Due Process Clause are "identical in scope." *Owens v. City of Signal Hill*, 154 Cal. App. 3d 123, 127 n.2 (1984). Accordingly, Plaintiffs also fail to establish that they have standing to challenge the Policy under the state constitution and the Court similarly **DISMISSES** that claim.

2.      *Establishment Clause*

Plaintiffs argue that the Policy violates the Establishment Clause because it impermissibly stigmatizes Hinduism. The Court previously determined that this injury is sufficient to confer standing under the Establishment Clause, which is "primarily aimed at protecting non-economic interests of a spiritual, as opposed to a physical or pecuniary nature." *Cath. League for Religious & C.R. v. City & Cnty. of S.F.*, 624 F.3d 1043, 1049 (9th Cir. 2010). And although a mere "desire to have the government conform to the Constitution" is not a concrete injury, Plaintiffs' injury is concrete and particularized because Plaintiffs are CSU employees and adherents to the Hindu faith. *See id.* at 1051, 1053 (holding that Catholics residing in San Francisco had standing to challenge a San Francisco resolution that expressed disapproval of Catholicism). The Court additionally determined that Plaintiffs sufficiently demonstrated the causation and redressability prongs of standing.

Despite the Court's previous determination, Defendant argues that Plaintiffs lack standing at trial because they have failed to produce evidence of their injury. The Court disagrees. Whether a plaintiff has standing is a jurisdictional issue that "in no way depends on the merits" of his claims. *Yellen*, 34 F.4th at 849 (quoting *Warth v. Selden*, 422 U.S. 490, 500 (1975)). The procedural posture of this case does not affect Plaintiffs' standing because "[s]tanding is not about who wins the lawsuit; it is about who is allowed to have their case heard in court." *Cath. League*, 624 F.3d at 1048. Because the Court has determined that Plaintiffs have standing to bring their Establishment Clause claim, the Court next analyzes the claim's merits.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                          No JS6

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-07550-RGK-MAA | Date | November 21, 2023 |
|---|---|---|---|
| Title | *Sunil Kumar, Ph. D. et al v. Dr. Jolene Koester, et al.* | | |

**B.   Merits**

The First Amendment's Establishment Clause prohibits governments from making any "law respecting an establishment of religion." U.S. Const. amend. I; *see also Everson v. Bd. of Ed. of Ewing*, 330 U.S. 1 (1947) (incorporating the Establishment Clause to the states). Adherence to the Establishment Clause "demands religious neutrality—government may not exercise a preference for one religious faith over another." *Van Orden v. Perry*, 545 U.S. 677, 709 (2005). To determine whether a government policy violates the Establishment Clause, courts must strive to "faithfully reflect the understanding of the Founding Fathers" by "referenc[ing] . . . historical practices and understandings." *Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407, 2428 (2022) (quoting *Town of Greece, N.Y. v. Galloway*, 572 U.S. 565, 576 (2014)) (cleaned up). In other words, courts must consider whether a challenged provision comports with the Founding Fathers' First Amendment policy goals and considerations.

The First Amendment was enacted against the backdrop of political and religious turmoil. *Everson*, 330 U.S. at 8–9. Early in our history, several colonies had government sponsored religions. *Engel v. Vitale*, 370 U.S. 421, 427–28 (1962). This resulted in citizens being taxed to support religious institutions incompatible with their own beliefs or punished because they refused to participate in public worship. *Reynolds v. United States*, 98 U.S. 145, 162 (1878). Congress enacted the First Amendment to "protect the integrity of individual conscience in religious matters" and "guard against the civic divisiveness that follows when the government weighs in on one side of religious debate." *McCreary Cnty., Ky. v. ACLU of Ky.*, 545 U.S. 844, 876 (2005). Because of this history, government policies favoring a particular religion or favoring religion over nonreligion have been struck down as unconstitutional. *See, e.g., Sch. Dist. of Abington Twp., Pa. v. Schempp*, 374 U.S. 203, 223 (1963) (holding that daily reading and recitation of verses from the Holy Bible at a public elementary school violated the Establishment Clause). Similarly, the government violates the Establishment Clause when it involves itself in internal church affairs. *See, e.g., Hosanna-Tabor Evangelical Lutheran Church & Sch. v. E.E.O.C.*, 565 U.S. 171, 181 (2012) (holding that the Establishment Clause "bar[s] the government from interfering with the decision of a religious group to fire one of its ministers.").

At the same time, history demonstrates that "the Establishment Clause does not compel the government to purge from the public sphere all that in any way partakes of the religious." *Van Orden*, 545 U.S. at 699. Indeed, in the same week that Congress adopted the First Amendment, it also passed legislation approving paid Congressional chaplains. *Lynch v. Donnelly*, 465 U.S. 668, 674 (1984). Similarly, "legislative prayer, while religious in nature, has long been understood as compatible with the Establishment Clause." *Town of Greece*, 572 U.S. at 575. The history and tradition behind these practices is why the government does not violate the Establishment Clause when it opens legislative sessions with prayer delivered by a publicly funded chaplain. *Marsh v. Chambers*, 463 U.S. 783, 793 (1983).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                    No JS6

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-07550-RGK-MAA | Date | November 21, 2023 |
|---|---|---|---|
| Title | *Sunil Kumar, Ph. D. et al v. Dr. Jolene Koester, et al.* | | |

Here, Plaintiffs contend that the Policy violates the Establishment Clause in two ways. First, Plaintiffs contend that the Policy amounts to government disapproval of Hinduism. Second, Plaintiffs contend that the Policy defines Hinduism to include a caste system. The Court addresses each alleged violation in turn.

1.      *Disapproval of Hinduism*

Plaintiffs argue that the Policy amounts to government disapproval of Hinduism, and therefore violates the Establishment Clause's fundamental requirement of neutrality towards religion. Defendant, however, appears to argue that a historical understanding of the Establishment Clause does not prohibit the government from disparaging a particular religion. According to Defendant, the Establishment Clause was enacted to address "tangible and coercive government actions" and not the kind of harm Plaintiffs allege here. (Def.'s Trial Br. at 18, ECF No. 115.)

Defendant's argument is unpersuasive. The Establishment Clause has long been understood to protect religious diversity. *See Abington Twp.*, 374 U.S. at 214 (recognizing that the Founding Fathers understood that religious freedom "was indispensable in a country whose people came from the four quarters of the earth and brought with them a diversity of religious opinion."). Government disapproval of a minority religion, therefore, would undoubtedly offend the historical principle of religious tolerance underlying the Establishment Clause. *See Larson v. Valente*, 456 U.S. 228, 244 (1982) ("The clearest command of the Establishment Clause is that one religious denomination cannot be officially preferred over another.").

While government disapproval of Hinduism would violate the Establishment Clause, Plaintiffs must demonstrate that the Policy does, in fact, disfavor Hinduism. *See Kennedy*, 142 S. Ct. at 2429 (reasoning that although government coercion of religious practices would violate the Establishment Clause, the evidence presented did not demonstrate that coercion had occurred). Plaintiffs argue that both the Policy's express language and the input the Workgroup relied upon in enacting the Policy demonstrate anti-Hindu sentiments. Neither argument is convincing.

Although the Policy does not explicitly reference Hinduism, Plaintiffs argue that "the very inclusion of the term 'caste' supports the conclusion that CSU intended to target Hindus." (Pls.' Opening Br. at 14, ECF No. 114.) In support of this contention, Plaintiffs point to the fact that the dictionary definition of "caste" associates the term with Hinduism. But the dictionaries Plaintiffs cite also define "caste" without any reference to Hinduism. (*See, e.g.*, Twersky Decl., Ex. I at 5 (defining "caste" as "[a] distinct class or rank in any society").) The fact that "caste" is readily defined without reference to Hinduism demonstrates that the use of the word, by itself, does not evince any impermissible hostility towards religion.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA                    No JS6

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-07550-RGK-MAA | Date | November 21, 2023 |
|---|---|---|---|
| Title | *Sunil Kumar, Ph. D. et al v. Dr. Jolene Koester, et al.* | | |

The Court's inquiry does not end with the express language of the Policy. *See Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 540 (1993) ("We reject the contention . . . that our inquiry must end with the text of the laws at issue. Facial neutrality is not determinative. . . . [T]he Establishment Clause . . . extends beyond facial discrimination."). Plaintiffs argue that the CFA and CSSA Resolutions demonstrate anti-Hindu sentiments. And because Defendant considered its stakeholders' input when amending the Policy, Defendant, in turn, expressed disapproval of Hinduism when it included the word "caste" in the Policy.

Plaintiffs' argument fails for two reasons. First, Plaintiffs have not demonstrated that CFA or CSSA speak for Defendant. The Workgroup was tasked with providing Defendant with "independent recommendations . . . after vetting and considering various inputs." (Anson Decl. ¶ 10.) Among these inputs were the opinions of about twenty stakeholder groups. Plaintiffs do not offer any evidence that the Workgroup inappropriately considered the two Resolutions amongst the large amount of feedback it received from a wide array of CSU stakeholders. Nor do Plaintiffs meaningfully call the Workgroup's independence from CFA or CSSA into question.

Second, Plaintiffs' argument fails because the resolutions do not express anti-Hindu sentiments. To be sure, the Resolutions clearly denounce caste discrimination that occurs in South Asian societies and CFA's resolution explicitly references the presence of caste discrimination in "the Hindu religion." But CFA's resolution does not link caste discrimination to Hinduism exclusively. Instead, the resolution states, "Caste is present in the Hindu religion *and* common in communities in South Asia and in the South Asian Diaspora." (Longo Decl., Ex. C at 1 (emphasis added).) This description of "caste" recognizes caste discrimination as a social ill that permeates South Asian culture and society. It does not condemn the Hindu religion or its practitioners.

A recent Ninth Circuit decision is in accord. In *California Parents for the Equalization of Educational Materials v. Torlakson*, the plaintiffs challenged the California State Board of Education's history and social science curriculum, which described caste as "a social and cultural structure as well as a religious belief." 973 F.3d 1010, 1014 (9th Cir. 2020). Much like Plaintiffs here, the plaintiffs in *Torlakson* argued that associating Hinduism with caste stigmatized the religion. *Id.* The Ninth Circuit found that the curriculum did not violate the Establishment Clause. *Id.* at 1021.

In short, Plaintiffs fail to demonstrate that the Policy conveys disapproval of Hinduism, and therefore fail to show a violation of the Establishment Clause on these grounds.

2.      *Defining Religious Doctrine*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA        No JS6

### CIVIL MINUTES - GENERAL

| Case No. | 2:22-cv-07550-RGK-MAA | Date | November 21, 2023 |
|---|---|---|---|
| Title | *Sunil Kumar, Ph. D. et al v. Dr. Jolene Koester, et al.* | | |

Plaintiffs argue that by including the term "caste" in the Policy, Defendant "took an official position as to what being Hindu means." (Pls.' Opening Br. at 16.) The Establishment Clause was enacted to prevent the establishment of a state religion. Therefore, history and tradition demonstrate that the Establishment Clause does not permit the government to take official positions on religious doctrines. *See, e.g., Commack Self-Service Kosher Meats, Inc. v. Weiss*, 294 F.3d 415, 432 (2d Cir. 2002), *cert. denied*, 537 U.S. 1187 (2003) (holding state statutes defining "kosher" violated the Establishment Clause).

Just as Plaintiffs fail to show that the Policy disapproves of Hinduism, they also fail to demonstrate that the Policy defines Hindu doctrines. As Plaintiffs themselves admit, caste discrimination occurs across the world amongst adherents of many religions. The Policy, which does not reference Hinduism, prohibits "discrimination based on . . . Race or Ethnicity (including color, caste, or ancestry)." No reasonable reader would conclude that the Policy defines Hinduism to include a caste system. Plaintiffs' argument that the Policy defines Hindu doctrines because the CFA and CSSA Resolutions associate Hinduism with caste discrimination also fails. As discussed above, Plaintiffs have not demonstrated that the Resolutions and their reasoning are attributable to Defendant.

Because Plaintiffs have not shown that the Policy impermissibly defines religious doctrines, their second theory of an Establishment Clause violation also fails. Accordingly, the Court **ENTERS JUDGMENT for Defendant** with respect to the federal Establishment Clause claim.

Plaintiffs assert a claim under California's establishment clause in addition to their federal claim. The California Supreme Court has explained that the state's establishment clause is not "any more protective of the doctrine of separation of church and state than the First Amendment [E]stablishment [C]lause." *E. Bay Asian Loc. Dev. Corp. v. State of California*, 24 Cal. 4th 694, 719 (2000). Accordingly, the Court **ENTERS JUDGMENT for Defendant** with respect to the state establishment clause claim. Finally, because Plaintiffs' claim for declaratory relief is derivative of their other claims, the Court **ENTERS JUDGMENT for Defendant** with respect to the claim for declaratory relief.

## IV.    CONCLUSION

For the foregoing reasons, the Court **DISMISSES** Plaintiffs' Due Process Clause challenge and Plaintiffs' state due process claim. Regarding the remaining claims, the Court **ENTERS JUDGMENT for Defendant**. Defendant shall submit a final judgment consistent with this Order within seven days of this Order's issuance.

**IT IS SO ORDERED.**

JRE/ak